Lester M. Kirshenbaum, Esq.
Jonathan M. Agudelo, Esq.
Kaye Scholer LLP
425 Park Avenue
New York, New York 10022
Telephone:  (212) 836-8000
Facsimile:   (212) 836-8689
E-mail:  lester.kirshenbaum@kayescholer.com
             jonathan.agudelo@kayescholer.com

*Attorneys for Petitioning Creditor Joseph Rosenberg*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

-----------------------------------------------------------x
In re:                                                                  :
                                                                              :   Chapter No. 8-14-72941-las
                                                                              :
**GERSHON BARKANY,**                                    :   Chapter 7
                                                                              :
                    Debtor.                                         :
-----------------------------------------------------------x

### SUPPLEMENTAL MEMORANDUM OF PETITIONING CREDITOR IN OPPOSITION TO MOTIONS TO DISMISS THIS BANKRUPTCY CASE

TO THE HONORABLE LOUIS A. SCARCELLA, UNITED STATES BANKRUPTCY JUDGE:

1.  On September 9, 2014, Petitioning Creditor Joseph Rosenberg filed his *Memorandum of Petitioning Creditor Joseph Rosenberg in Opposition to Motions Filed by Barkany and Barkany Asset Recovery and Management LLC to Dismiss the Involuntary Bankruptcy Petition* (D.I. 37) (the "Memorandum in Opposition") to the pending motions to dismiss this involuntary bankruptcy case.  Among other things, the Memorandum in Opposition

1

discussed certain acts and conduct of the Locke Lord Creditor Group[1] which, even absent any other considerations, establish that this bankruptcy case should continue. This Court is the only forum in which all claims and other matters relating to the Barkany Estate can be fairly adjudicated.

2. In this supplemental memorandum we respectfully bring to this Court's attention additional instances of self-dealing by the Locke Lord Creditor Group and its representatives, in furtherance of its single minded purpose of collect on its claims to the exclusion of others, and regardless of the effect on others.

3. This Court has already been apprised of the eleven pending litigations in different courts in New York instituted by the Locke Lord Creditor Group, including a number of actions against charitable institutions.

4. However, the Locke Lord Creditor Group's attempts to recover monies from charitable organizations have not been limited to litigation. Upon information and belief, Locke Lord has contacted various charitable organizations directly and demanded repayment to the Locke Lord Creditor Group of all amounts previously transferred by Barkany to those charities. Perhaps the more egregious example of this inappropriate activity concerns Locke Lord's dealings and communications with an organization based in Monsey, New York called Gateways.

5. Upon information and belief, between January 2011 and early 2014, Locke Lord regularly communicated with the head of Gateways, Rabbi Mordechai Suchard, through emails, phone calls and perhaps some personal visits as well, and pressured Gateways to pay over to the

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Opposition.

Locke Lord Creditor Group almost $700,000.  Upon further information and belief, Locke Lord understood that Gateways was not being represented by counsel in connection with Locke Lord's ongoing pressure tactics and collection efforts.  As a result of Locke Lord's efforts beginning in August 2011 and continuing through May 2014, Gateways sent out monthly checks to Locke Lord Creditor Group which totaled $240,000.  A copy of the most recent check sent by Gateways to Locke Lord dated May 15, 2014, is attached as Exhibit A.

6. Attached hereto as Exhibits 2-5 are just a few out of the many items of correspondence sent by Shalom Jacob to Rabbi Suchard between February 1, 2011 and the first quarter of 2014.  It is respectfully submitted that these exhibits raise serious questions concerning whether the action taken on behalf of the Locke Lord Creditor group were lacking in good faith, and whether these actions rise to the level of inequitable conduct.

7. The first such communication, Exhibit 2, is an email from Shalom Jacob of Locke Lord dated February 1, 2011, which purportedly was sent to "confirm" the substance of a phone conversation which Jacob had with Rabbi Suchard on January 30, 2011.

8. In the very first sentence of the February 1 email, Jacob wrote: "As I have advised you, we [i.e., Locke Lord] represent **the creditors** of Gershon Barkany." (emphasis added).  It is respectfully submitted that this sentence was phrased in a way which would leave the reader with the incorrect impression that Locke Lord represented all of Barkany's creditors.

9. The February 1, 2011 email then goes on to purport to obtain Rabbi Suchard's agreement regarding (i) the characterization on Barkany's transfers to Gateways as having been loans, and (ii) Gateways' commitment to "repay" the monies to Locke Lord pursuant to the terms set out by Jacob in the e-mail.

10. Finally, and most disturbingly, Jacob wrote the following: "Please keep this matter in the strictest confidence."

This simple sentence strongly suggests that as early as February 1, 2011, barely two months after Barkany had confessed his fraudulent conduct to the Locke Lord Creditor Group, and seven months before Barkany executed the Confession of Judgment drafted by Locke Lord (which Locke Lord held in private for an additional 20 months), the Locke Lord Creditor Group had already made the decision to keep the Barkany Ponzi scheme "under wraps", while the group took possession and control over all of Barkany's assets and began the liquidation of those assets (apparently with a minimum aggregate value of between $22 million and $32 million), while they hoped that Barkany would generate new income to pay down his debts to the Locke Lord Creditor Group.

11. Jacob's July 2011 letter to Rabbi Suchard (Exhibit 3) is equally troubling on its face. Once again, Jacob began his correspondence by reiterating that "we [*i.e.* Locke Lord] represent the creditors (the "Creditors") of Gershon Barkany and his various entities". Moreover, the second paragraph of the July 20, 2011 letter is even more troubling. Jacob purports to memorialize Gateways' "acknowledgement" that it (i.e., Gateways) is indebted to Barkanys Creditors in the amount of $695,000!

> This will re-confirm the acknowledgement by Gateways that it is indebted to the Creditors in the aggregate amount of at least $690,560.00 on account of (i) unauthorized loans made by Barkany to Gateways in the amount of $650,000 and (ii) unauthorized donations made by Barkany to Gateways in the amount of $40,560.00.

12. Exhibits 4 and 5 attached to this memorandum are further examples of emails sent by Mr. Jacob to Rabbi Suchard in which Jacob (i) pushes Rabbi Suchard to wire $300,000 to Locke Lord for the "benefit" of Locke Lord's clients, (ii) inquiries concerning the status of

Gateways' fundraising efforts to obtain $300,000 in contributions in order to pay down Locke Lord's clients, and reiterates to Rabbi Suchard that

> It is imperative that we [*i.e.*, Locke Lord] get money before year end [*i.e.*, 12/31/12].

13. In sum the activities discussed above clearly merit a full review and appropriate investigation by a bankruptcy trustee.

14. In addition to the foregoing, it is respectfully brought to the Court's attention that, upon information and belief, one of the litigations commenced by the Locke Lord Creditor Group, entitled *Pinsky v. Torah Encounters* (New York Supreme Court, Nassau County – Index No. 601066/2011) has been settled pursuant to the terms of a confidential settlement agreement. Upon information and belief, the settlement terms in that case involved the transfer of certain real property in Israel for the benefit of the Locke Lord Creditor Group. This is another matter that most certainly is an appropriate area of investigation by a bankruptcy trustee.

15. Finally, we respectfully bring to the Court's attention the fact that the Locke Lord Creditor Group has also instituted litigation in Israel against Barkany's sister and brother in law to recover alleged fraudulent conveyances from Barkany.

Dated:  New York, New York
        September 12, 2014                    KAYE SCHOLER LLP

                                              By: */s/ Lester M. Kirshenbaum*
                                              Lester M. Kirshenbaum, Esq.
                                              Jonathan M. Agudelo, Esq.
                                              425 Park Avenue
                                              New York, New York 10022-3598
                                              Tel:  (212) 836-8000
                                               lester.kirshenbaum@kayescholer.com
                                               jonathan.agudelo@kayescholer.com

                                              *Attorneys for Petitioning Creditor Joseph Rosenberg*