1    UNITED STATES BANKRUPTCY COURT

2    EASTERN DISTRICT OF NEW YORK

3    Case No. 14-72941-las

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    GERSHON BARKANY,

8

9          Debtor.

10

11   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

12

13                  U.S. Bankruptcy Court

14                  Long Island Federal Courthouse

15                  Central Islip, NY 11722

16

17                  September 30, 2014

18                  10:54 AM

19

20   B E F O R E :

21   HON JUDGE LOUIS A. SCARCELLA

22   U.S. BANKRUPTCY JUDGE

23

24

25

1    Hearing Re:  A status conference to determine the status of

2    discovery, schedule an evidentiary hearing, and any other

3    matter that may affect this proceeding. [51]

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sherri L. Breach & Melissa Looney

1  A P P E A R A N C E S :

2  LAW OFFICE OF MICHAEL J. JANNUZZI

3       Attorney for Debtor

4       775 Park Avenue, #205

5       Huntington, New York 11743

6

7  BY:  MICHAEL J. JANNUZZI, ESQ.

8

9  LOCKE LORD, LLP

10      Attorneys for BARM

11      3 World Financial Center

12      New York, New York 10281

13

14 BY:  ALLEN C. WASSERMAN, ESQ.

15      SHALOM JACOB, ESQ.

16

17 KAYE SCHOLER, LLP

18      Attorneys for Joseph Rosenberg

19      425 Park Avenue

20      New York, New York 10022

21

22 BY:  LESTER M. KIRSHENBAUM, ESQ.

23      JONATHAN AGUDELO, ESQ.

24

25

1

2    RUSKIN MOSCOU FALTISCHEK, P.C.

3         Attorneys for Whitefish Group, LLC, Sarah Lightford,

4         Mario Lightford, Jonathan Lightford & Edward Butler.

5         East Tower, 15th Floor

6         1425 RXR Plaza

7         Uniondale, New York 11556

8

9    BY:  JENNIFER L. HARTMANN, ESQ.

10

11   VOUTE LOHRFINK MAGRO & MCANDREW LLP

12        Attorney for Steven Kwestel, creditor

13        170 Hamilton Avenue

14        White Plains, NY 10601

15

16   BY:  EDWARD WARREN, ESQ.

17

18   AGOSTINO & ASSOCIATES PC

19        Attorney for Marina District Development Co., LLC

20        14 Washington, Place

21        Hackensack, NJ 07601

22

23   BY:  JEREMY KLAUSNER, ESQ.

24

25

1    UNITED STATES ATTORNEY'S OFFICE

2         610 Federal Plaza

3         Central Islip, NY 11722

4

5    BY:  CHRISTOPHER CAFFERONE, ESQ.

6         DINE C. LEONARDO, ESQ.

7

8    GOLDBERG RIMBERG & FRIEDLANDER

9         Attorneys for Canadian Northern Realty, LLC

10        115 Broadway 3rd Floor

11        New York, NY  10006

12

13   BY:  JOEL SCHNECK, ESQ.

14        ROBERT RIMBERG, ESQ.

15

16   Also Appearing:

17   EDWARD WARREN for Zucker & Kwestel and Steven Kwestel

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2            THE CLERK:  -- -- Scarcella presiding.

3            THE COURT:  Good morning.  Everybody be seated.

4        (Pause)

5            THE COURT:  All right.  Good morning.  This is the

6    matter of Gershon Barkany.  Maybe Mr. Jannuzzi can step

7    up --

8            MR. JANNUZZI:  Good morning, Judge.

9            THE COURT:  -- to the plate.

10            MR. JANNUZZI:  Michael Jannuzzi for Gershon

11    Barkany.

12            THE COURT:  And give me the appearances of

13    everyone else, please.

14            MR. WASSERMAN:  Allen Wasserman, Locke Lord for

15    BARM.

16            MR. JACOB:  Shalom Jacob with Locke Lord as well.

17            THE COURT:  Thank you.

18            MR. RIMBERG:  Robert Rimberg for the Canadian

19    Northern parties.

20            MR. SCHNECK:  Joel Schneck from Goldberg and

21    Rimberg as well. ).

22            MR. KIRSHENBAUM:  Good morning, Your Honor.

23    Lester Kirshenbaum on behalf of petitioning creditor, Joseph

24    Rosenberg.

25            MR. KLAUSNER:  Jeremy Klausner, Agostino &

1   Associations for for petitioning creditor, Marina District

2   Development Company.

3            MR. WARREN:  Edward Warren (ph) for interested

4   parties Zucker & Kwestel and Steven Kwestel.

5            MR. AGUDELO:  Good morning, Your Honor.  Jonathan

6   Agudelo for petitioning creditor, Joseph Rosenberg.

7            MS. HARTMANN:  Good morning, Your Honor.  Jennifer

8   Hartmann for interested parties, Whitefish Group, LLC, Sarah

9   Lightford (ph), Mario Lightford, Jonathan Lightford and

10  Edward Butler.

11           THE COURT:  Thank you.

12           MR. CAFFERONE:  Chris Cafferone for the United

13  States, Your Honor.

14           MS. LEONARDO:  And Diane Leonardo for the United

15  States.

16           MR. CAFFERONE:  Good morning, Your Honor.

17           THE COURT:  Thank you.

18           Well, maybe Mr. Jannuzzi can provide me with an

19  update.  The first matter of business, I would just like to

20  know where things stand with respect to the exchange of

21  information, discovery, and the scheduling of an evidentiary

22  hearing with respect to the debtor's motion to dismiss based

23  upon what the debtor is asserting is a bona fide dispute as

24  to liability or amount of the claim asserted by Borgata

25  (ph).

1          MR. WASSERMAN:  I can probably best report on the

2    discovery --

3          MR. JANNUZZI:  I don't mind, Mr. Wasserman doing

4    it, but --

5          THE COURT:  Whoever is in the best position.  I'm

6    happy to hear from Mr. Wasserman, so that's fine.

7          MR. WASSERMAN:  Thank you, Judge.

8          I can give you a hyper-detailed chronology of what

9    we've done with respect to discovery or a general overview

10   with respect to Borgata.

11         THE COURT:  Well, give me the general overview

12   first and then maybe we can get into the hyper detail.

13         MR. WASSERMAN:  Okay.  The general overview is, is

14   that shortly after we were last here and exchange of

15   documents began, counsel for the Borgata provided us with

16   various schedules.  That was followed by a number of

17   conference calls involving Mr. Klausner, Mr. Belsky (ph) and

18   one of my colleagues, Mr. Katz.  I participated in one of

19   those calls.

20         The call was very productive.  Mr. Belsky asked

21   Mr. Klausner a number of questions.  There were various

22   acronyms used in terms which Mr. Belsky didn't understand.

23   He was also trying to understand how the gaming industry

24   works and the flow of credit and markers and things of that

25   nature work.  Mr. Klausner was able to answer most of

1    Mr. Belsky's questions.  On a number of questions

2    Mr. Klausner said he would have to go back to people at the

3    Borgata to get answers.

4         He did that.  There were follow up conversations.

5    In addition, Mr. Belsky, having done an initial analysis of

6    the documents had a number of questions and required some

7    follow up documentation.  That documentation was provided.

8    There were -- I believe there were further discussions,

9    either by phone or by email.

10         Where it stands now as I understand it is

11    Mr. Belsky had requested a live version of a schedule so

12    that he could more easily work with the numbers to be able

13    to confirm their accuracy.

14         Mr. Klausner, I think quite appropriately,

15    expressed concern that as a general matter they did not want

16    to give a live spreadsheet because those numbers could then

17    be manipulated and then there might be an issue as to what

18    was the document which was originally produced.

19         So to avoid that issue, Mr. Klausner asked that we

20    agree that the initial document that he provided us would be

21    the official document and that the subsequent live document

22    would not be used for any purpose.  We agreed to that.  My

23    understanding was that as of 9/24 Mr. Klausner said he would

24    get that done and get it to us on Monday, which was

25    yesterday.  I don't know whether we received it or not.

1          But, basically, the parties have been very

2     actively engaged in exchanging the information, reviewing

3     the information.  I think once Mr. Belsky has that live

4     document he will be much closer to completing his review and

5     analysis.  Anticipating the question that I would ask if I

6     were you, Your Honor, I can't give you the date by which he

7     will have completed that.  I think we'll be in a better

8     position to know that after he receives the live document

9     that he can work with.

10          THE COURT:  Thank you.

11          Counsel for Borgata, anything to add to that?

12          MR. KLAUSNER:  No.  I do not.  The only thing I

13     need to add is they didn't get the spreadsheet yesterday.  I

14     had a moderate disaster at my home which kept me out of the

15     office, but the only thing keeping me from doing it is I had

16     communicated with Mr. Katz from Mr. Wasserman's office that

17     I wanted to Bate stamp the non-live version of the document,

18     send that to them along with the spread -- the live

19     spreadsheet and I just -- I haven't had the opportunity to

20     do that because I wasn't in the office yesterday.  I hope to

21     get that out to them today.

22          MR. WASSERMAN:  By the way, so there's no

23     confusion, the cooperation has been exemplary and I

24     certainly wasn't suggesting that Mr. Klausner was -- was

25     delaying things.  To the contrary --

1          MR. KLAUSNER:  No.  No.  I just -- we're here and

2    I was going to talk to Allen yesterday and I -- I didn't get

3    a chance because I was pulling up wet carpeting.

4          THE COURT:  I am pleased to hear that there's

5    cooperation.  I wasn't inferring that there was any delay.

6          MR. WASSERMAN:  Oh, okay.  I just --

7          THE COURT:  So that's fine.

8          MR. WASSERMAN:  They've been working very well in

9    trying to -- to get to the number and ultimately tie up

10   whatever loose ends there are.

11         THE COURT:  All right.  So at this stage we're not

12   able to pinpoint when the exchange of information and the

13   review of those documents will be completed, in order for us

14   to set down for the evidentiary hearing on that threshold

15   issue of the alleged bona fide dispute with respect to the

16   Borgata claim.

17         MR. WASSERMAN:  That's a fair statement.  What we

18   would certainly undertake to do is, as soon as we feel we're

19   in that position, we could either notify the Court by -- by

20   telephone or by letter and we would do that as soon as we

21   are in that position.

22         THE COURT:  I would appreciate that.  If you could

23   file a letter letting us know that you are now ready for us

24   to schedule the evidentiary hearing and what steps need to

25   be taken prior to that evidentiary hearing.

1           MR. WASSERMAN:  Okay.

2           THE COURT:  Okay.  Thank you.

3           Yes.

4           MR. RIMBERG:  Your Honor, on the issue of

5     discovery, we put in our objection to it -- to the filing

6     and we requested that we be copied on any of the discovery.

7     We've been advised by Mr. Kirshenbaum that we're not

8     entitled to see any of the discovery that's being exchanged.

9     We're part of the action.  We are objecting.  We did bring

10    (indiscernible - 11:02:53) affirmation at this point and we

11    would like copies of whatever's being exchanged, and that it

12    shouldn't be held in some kind of secret what's going on.

13          THE COURT:  That's not before me.  So to the

14    extent that you feel that you want to take some type of

15    discovery, you think you're entitled to take discovery --

16    exactly what discovery do you need?

17          MR. RIMBERG:  The discovery that's being

18    exchanged.  I'm not looking to recreate the wheel here and

19    serve additional demands, but we are a party.  Discovery's

20    exchanged.  We did put in an appearance.  We put in papers.

21    We would like to get whatever's been exchanged.  If need be

22    we'll make a motion.  We figured since everybody's here

23    today it would be a lot more efficient just to bring it up

24    to the Court that we be copied on what's being exchanged.

25          THE COURT:  Mr. Kirshenbaum.

1          MR. KIRSHENBAUM:  Your Honor, I can only speak for

2     my client, Mr. Zelinger (ph) (sic), so when I received a

3     letter from Mr. Rimberg's colleague, Mr. Schneck requesting

4     that he be copied on all documents and be permitted to

5     attend depositions and so forth, I, on behalf of my client,

6     told them that I did not think that was appropriate.  I

7     would not give him any of my documents that we ended up

8     giving to BARM to the extent that we're going to be doing

9     that.  That's, I guess, in a -- nothing that we have to

10    bring to you.

11          I would not consent to his participation in any

12    depositions that would ensue from matters that related to

13    the very limited issue of the question of whether BARM could

14    raise the -- prove that the Zelinger claim was subject to

15    bona fide dispute.

16          I don't believe that he has -- my view is that I

17    don't believe that they have standing to participate in

18    that.  If Mr. Rimberg feels otherwise, he can certainly

19    bring a motion.  But I don't want there to be any

20    misimpression.  I did not respond to Mr. Scheck with respect

21    to any party involved here other than my client,

22    Mr. Rosenberg.

23          THE COURT:  Are you looking for the information

24    that's been exchanged with respect to the Borgata or are you

25    going beyond that because the issue right now that we're

1    going to be dealing with initially is the threshold issue

2    with respect to the claim asserted by the Borgata in the --

3    in the involuntary petition.

4              MR. RIMBERG:  That's all I'm looking for, Your

5    Honor.  I'm in the same position as BARM in this.  I don't

6    agree with the filing.  I think it was in bad faith, and I

7    would like to see the documents that are being produced.

8              Like I said, I'm not looking just to serve to

9    serve.  Let me see what's there and if it suffices based on

10    the request I'm fine with the request that they served.  So

11    I'm not looking to recreate the wheel.

12              THE COURT:  Have you made that request -- that's

13    assuming that you have standing to move as against each of

14    the petitioning creditors.  But put that aside for the

15    moment.

16              Have you made that request to counsel for Borgata

17    for that information?

18              MR. RIMBERG:  The request was made and then we got

19    the letter from Mr. Kirshenbaum which gave the impression

20    that all discovery was cut off.

21              Now if it was only as to his client and counsel

22    for Borgata doesn't have a problem, then -- then there's no

23    issue.  But the way the letter was worded, it seems like we

24    were not going to be permitted to participate in the

25    proceedings.

1          THE COURT:  Well, I would suggest that you have a

2     conversation with counsel for the Borgata and see where that

3     takes you.

4          MR. KLAUSNER:  Judge, I can respond briefly.

5          The issue that I would have is that Borgata is a

6     defendant in a case in which Mr. Rimberg's clients were the

7     plaintiff.  And it seems -- and that case is stayed, the

8     automatic stay, and it seems that Mr. Rimberg is attempting

9     to conduct discovery with respect to that case through this

10    case in which he has no standing, and for that reason alone

11    I would have to object.

12         THE COURT:  Thank you.

13         He's objecting.  So to the extent that you think

14    you should be participating in discovery you can bring on

15    the appropriate motion and we'll set it down for a hearing.

16    But what I'm hearing is that they're consenting to disclose

17    any of the --

18         MR. RIMBERG:  And --

19         THE COURT:  -- information.

20         MR. RIMBERG:  -- there's an action by BARM as well

21    against them so I'm not standing in a unique position here.

22    So for whatever reason they're looking to exclude, but if

23    they want us to bring a motion, we'll bring a motion.

24         THE COURT:  Yes.

25         MR. RIMBERG:  Okay.

1          THE COURT:   Thank you.

2          Let me hear from the United States Attorney

3    because that has to do with the forfeiture order and the

4    import of the forfeiture order and maybe present a better

5    understanding of where things stand with respect to the

6    criminal case.

7          When -- just to let you know, when we were here

8    the last time the Court did make an inquiry as to whether or

9    not there was a forfeiture order and was advised that there

10   was no forfeiture order in place.  And then the Court, you

11   know, subsequently learned that there is a forfeiture order

12   in place.

13         So I would like to know what the import of that is

14   and how -- how or what relationship there is between the

15   Government's prosecution of the criminal case with respect

16   to Mr. Barkany and the role that BARM is playing and whether

17   or not that is a dual role.  I did hear from Barm's counsel

18   about judicial oversight and it's not clear whether or not

19   that judicial oversight is really the judicial oversight of

20   the Government or not.

21         So maybe you can give me a little bit of

22   information with respect to the forfeiture order and the

23   relationship, if any, between the Government and BARM with

24   respect to collecting assets and property of Barkany in

25   order to compensate the victims in some type of restitution,

1    fine or penalty.

2             MR. CAFFERONE:  Okay, Your Honor.  The -- as Your

3    Honor knows, Mr. Barkany pleaded guilty.  He waived

4    indictment, pleaded guilty back in June of 2013.  As part of

5    his plea he agreed to the entry of a preliminary order of

6    forfeiture in the amount of, I think it was $62 million.

7    That preliminary order of forfeiture gives the United States

8    the right to seize any assets that it can trace to the

9    fraud.  So that's sort of the -- that's the preliminary

10   order of forfeiture.

11            When the judgment is entered when the defendant

12   gets sentenced, then that enter -- that preliminary order of

13   forfeiture converts into a final order of forfeiture.  At

14   that time we expect we'll be asking the Court to also impose

15   a restitution order.

16            Now the forfeiture order is different than the

17   restitution.  The forfeiture actually is a money judgment to

18   the United States.  Restitution goes to the victims and it

19   gets distributed by the probation department.

20            The forfeiture judgment in this case, anything

21   that we collect we have to petition Washington.  There's a -

22   - there's an organization called Afmils (ph) that if -- if

23   the United States Attorney here in the Eastern District

24   determines that that forfeiture should go to victims, we

25   make an application to Washington to get that approval.

1          In a case like this where it's unlikely that

2    victims will be made whole and there will be money left over

3    and the defendant doesn't have the -- you know, the ability

4    to pay additional funds, it's likely, but there's no

5    guarantees that the U.S. Attorney will ask Washington to use

6    any monies that we recovered in forfeiture to pay back

7    victims to make restitution.  But that won't happen until

8    after a restitution order has been put in place and that

9    happens after sentencing.

10          In terms of the role of Locke Lord and Barm, I

11   would just note, Your Honor, they have been extremely

12   cooperative throughout the process dating back to before Mr.

13   Barkany was arrested.  They produced documents to the United

14   States.  They've met with the FBI.  They've explained the

15   work that they have done in trying to find assets.  They met

16   as recently as within the last couple of months because

17   there were some issues that came up in the criminal case as

18   to whether or not Mr. Barkany was committing additional

19   fraud.  We did an investigation report back to the District

20   Court.  We found that there was no issues on that front as

21   far as we know.

22          But they, again, voluntarily provided documents.

23   In the course of that they met with us and went through the

24   documents.  So they have been extremely cooperative

25   throughout the process.  They've made us aware that they

1    have assets that they -- that they have found and recovered

2    from Mr. Barkany.  We're completely aware of that.

3              In terms of the forfeiture, I don't think it runs

4    afoul of the forfeiture order.  What we told counsel was

5    that if there are any assets that they are currently in the

6    position of that we can trace to the fraud, the United

7    States Attorney's Office, the forfeiture that we have trumps

8    their individual rights.

9              So were we to want to go and seize those assets we

10   could.  Because they're held in, you know -- because they're

11   being held by counsel for the victims, we expect that we'll

12   have to get together with all the victims, determine how --

13   what the appropriate distribution, you know, should be. They

14   have done a tremendous amount of work in finding those

15   assets, recovering those assets.  And we certainly -- we

16   welcome, you know, their hard work on that front.  Like I

17   said, they were cooperative with us in sharing information.

18             And that we also have our forfeiture agent, our

19   forfeiture assistant who will continue to look for

20   additional assets of Mr. Barkany's.  We will also -- we're

21   working with Mr. Barkany now and his counsel in the criminal

22   case and Mr. Jannuzzi as well with respect to new monies

23   that may be earned by Mr. Barkany.  He's kept us apprised of

24   that situation.  Apparently, he has some oil deals that may

25   generate some additional money.

1          THE COURT:  Uh-huh.

2          MR. CAFFERONE:  We've talked to criminal counsel

3    and we're trying to work with all of the victims in the case

4    so that that money gets distributed back to the victims to

5    try to make full restitution here.  That's the Government's

6    interest as well as the victims' interest here, is that we

7    get as much money back to the folks that lost it as

8    possible, and that's why the U.S. Government has -- had

9    agreed to allow Mr. Barkany, while he's out on bail, to

10   continue to work.  He -- he has some restrictive bail

11   conditions, but it permits him to try to work to get some

12   income to pay back victims.

13          And Mr. Barkany also has been cooperative with

14   that process, too.  He met with us recently to walk through

15   the deals to, you know, advise us as to time lines on when

16   he expects pay -- monies to come in.

17          The -- so that's some of what has been going on.

18          I would also note there is the confession of

19   judgment, the affidavit that Mr. Barkany had signed prior to

20   his arrest was used by the United States Government in its

21   criminal complaint.  There have been no motions, no

22   arguments made in the criminal case that suggest that that

23   was improperly obtained or coerced in any way.  It was used

24   by the Government.  It was -- it was actually very valuable

25   evidence in -- in the case.

1          I think it was probably a significant contributing

2    factor to his decision to waive indictment, to not even ask

3    the Government to present the case to the grand jury.  And

4    he pled guilty, like I said, without sharing -- you know, he

5    -- he pled guilty early in the case and I think that was

6    part of the reason, because he knew with a signed affidavit

7    that basically admitted that he was running a Ponzi scheme

8    it was going to be hard to defend the case.  And he had sort

9    of demonstrated prior to that that he was trying to

10   cooperate with the victims, trying to make them whole.

11         And so, yeah, that was one of the things I just

12   wanted to point out for the Court.

13         In terms of, you know, whether -- there was also a

14   tax refund that was -- was obtained that Mr. Barkette (ph)

15   had immediately brought to the attention of the Government

16   and said, hey, we received a large tax refund check, what do

17   you want us to do with it.  In the short run, my biggest

18   concern was that that money not go back to Mr. Barkany and

19   he spend it.  I wanted to make sure it was preserved for

20   victims.  We had advised them to hold it in escrow.  He did

21   that.  We then subsequently learned from Locke Lord that

22   they had a claim to that tax refund.  We -- I consulted with

23   our forfeiture assistant.  Since we weren't able to, at that

24   point, trace those funds we didn't have any specific right

25   to them.  We told Mr. Barkette he should do with them

1    however he -- whatever he decided.  We obviously would

2    prefer that they go back to victims.  I think he decided

3    that it was the best course to voluntarily provide those tax

4    refund monies to Locke Lord.

5            But, yeah, we were aware of that.  We were

6    involved in that process.  I believe it was the summer of

7    last year we were made aware of all of that.  And, again,

8    our biggest concern is that that money get into the hands of

9    victims and not be spent by Mr. Barkany.  And he was -- like

10    I said, Mr. Barkany was -- was cooperative throughout that.

11    Once he got the check he gave it over to criminal counsel.

12    Criminal counsel noticed -- notified us immediately.

13            And then -- so that's really where the case is at.

14    We had a court appearance.  It was, I believe, last month.

15    We have another one coming up in early November.  I -- we

16    wanted to -- we put it over till November so that the

17    defendant could provide us with a status update as to

18    whether or not money is coming in from those oil deals.

19            So we'll see at that point.  I think some money is

20    supposed to come in by then.  We'll see if it does and then

21    we'll determine what the next course is, whether we'll

22    continue to allow him to be out of -- out of custody and

23    delay the sentencing because that's what's happening right

24    now.  The sentencing is being delayed to see if he can earn

25    some money to pay back victims.  And on November 5th we'll

1    get an update to see if it's worth delaying the sentencing

2    further so that he can continue to try to endeavor to make

3    victims whole.

4         THE COURT:  Thank you.  I -- that's very helpful.

5    I did notice that the order of forfeiture provides for a

6    forfeiture money judgment, and it's 62 million, but it's

7    less the value of any assets or monies that the -- and I'm

8    quoting from the forfeiture order itself "less the value of

9    any assets or monies that the defendant repaid to the

10   victims prior to the date of sentencing."

11        So is it contemplated that monies that are being

12   held by BARM -- and it's my understanding that it could be

13   upwards of $22 million, and I don't know if the tax refund

14   is included in that 22 million.  But is it contemplated that

15   there would be a distribution of any portion of those funds

16   prior to sentencing?

17        MR. CAFFERONE:  Your Honor, the -- in terms of the

18   distribution I -- our understanding is, so -- so the way

19   Your Honor reads that is that the 62 million, you know, that

20   that judgment is reduced by the 22 some odd million plus the

21   tax refund.  So that judgment will be 40 or something less

22   than 40.

23        In terms of distribution we don't have the ability

24   to distribute any funds.  We don't have access to any funds.

25   We're not holding any of them.  But we wouldn't be able to

1    distribute any funds until the judgment's been entered.  So

2    in terms of whether Locke Lord intends to distribute funds,

3    we don't have the ability to distribute funds.

4              Is that correct?

5              MS. LEONARDO:  And we don't have a restitution

6    order yet either.

7              MR. CAFFERONE:  So we would -- with the money

8    judgment, you know, the -- if we were -- if we were -- if we

9    had seized assets, we wouldn't be able to forfeit those

10   assets to the United States Treasury until the judgment's

11   been entered.

12             But in this case, because it's unlikely that

13   victims will be made whole and there will be money leftover,

14   we wouldn't do that anyway until a restitution order's been

15   put in place.

16             THE COURT:  Well, thank you because that becomes a

17   -- you know, an important issue for the Court because, as

18   you've mentioned, the forfeiture is there in place as it

19   usually is in these types of matters of and as many issues

20   where we have between the concept of the forfeiture and the

21   distributive scheme of the bankruptcy code, how assets are

22   going to be distributed.

23             But putting that issue aside for the moment, when

24   you say that the crime victims are going to now benefit from

25   the forfeiture of the assets, BARM is holding this $22

1    million and at some point there will be the restitution.  At

2    some point the crime victims or the victims of the crime are

3    now going to be receive some type of distribution.

4         But it doesn't appear at this moment -- and I'll

5    certainly hear from Mr. Wasserman who may correct my

6    misunderstanding of this.  But it doesn't appear at the

7    moment that we know the universe of the crime victims.

8         So the question that I have is that is it

9    contemplated that monies would be distributed before we know

10   the universe of those victims because the purpose of the

11   forfeiture really is to compensate the victims of the fraud.

12        MR. WASSERMAN:  I can speak to that, Judge.

13        THE COURT:  Thank you.

14        MR. WASSERMAN:  There are monies which BARM has

15   recovered to date and we'll use the number 22 million for

16   purposes of this discussion.

17        BARM consists of victims of the fraud and using

18   the Government's nomenclature we'll call it the first fraud,

19   the first Ponzi scheme.  Mr. Barkany then committed a

20   second --

21        THE COURT:  Uh-huh.

22        MR. WASSERMAN:  -- Ponzi scheme, a second fraud,

23   and you have counsel for the victims of that fraud here.

24        In our view these are all the victims of Mr.

25   Barkany's fraud.  In the years since Mr. Barkany's Ponzi

1   scheme has become public the only other parties who have

2   stepped forward and who have claimed to be victims of this

3   fraud are Mr. Rosenberg and Mr. -- I've suddenly forgotten

4   --

5            UNIDENTIFIED SPEAKER:  Mr. Kessler.

6            MR. WASSERMAN:  Mr. Kessler.  Sorry.

7            They're the only two people who have claimed to

8   also be victims of a fraud.  We are reasonably confident, in

9   fact, we're quite confident, that once those two claims are

10  -- I should note that the Borgata, they do not claim to be a

11  fraud victim.  They claim to be a creditor.  So they're in a

12  separate category.

13           So you have -- you have the universe of victims

14  and you have two parties who claim to be victims and,

15  ultimately, that -- that will be determined in this court.

16  The value of their claims are less than half a million

17  dollars as stated in the petition and the schedules annexed

18  to it.

19           BARM does anticipate making a distribution at some

20  point when tax returns are filed for Barm.  What BARM

21  anticipates doing, and we've advised counsel for the

22  petitioners is that in no event, although we don't feel

23  we're obligated to do so, we will hold back a million

24  dollars, which is more than double the amount of the two

25  petitioners' claims who claim to be victims.  That money

1   will be held back and will be available should Your Honor

2   determine that the petitioners are, in fact, victims and the

3   value of their claim.

4           And it's whether Your Honor determines it, the

5   Government determines it, or in any forum or even through a

6   settlement those funds will be preserved so that there isn't

7   an issue.

8           We do believe -- and I do want to be clear here so

9   there's no confusion, BARM obtained a judgment.  That

10  judgment has been recognized by the courts.  It's being used

11  by the Government as Mr. Cafferone said.  No one other than

12  petitioners in this court have challenged that judgment.

13  And most importantly, Mr. Barkany and his criminal counsel

14  have not.

15          Pursuant to that judgment we have engaged in

16  collection efforts and have recovered monies.  And BARM is

17  now holding those monies.  We believe that those are Barm's

18  monies to distribute because they were collected pursuant to

19  a judgment and we are victims of the fraud.

20          So we don't believe that this Court has

21  jurisdiction, respectfully, over those monies.  We do

22  recognize the Government's position that ultimately what

23  they have trumps everything.  The Government, though -- and

24  I'm glad Your Honor invited them to be here today.  They --

25  they've, I think cleared the record that BARM has not been

1    operating in secret; that we've been working with the

2    Government; that they're aware of our activities and they

3    appreciate that the monies that we're collecting are going

4    to the victims.

5              As to fresh money which comes in, for instance,

6    Mr. Cafferone mentioned that Mr. Barkany is involved in some

7    business ventures and that new money may come in.  We claim

8    no superior right to that money because it's not money that

9    BARM has recovered.  Presumably, what the Government will do

10   is one of a number of things.

11             One, they will look to the victims as a group to

12   see if the victims can reach some sort of agreement on how

13   that (indiscernible - 11:23:57) will be allocated on a pro

14   rata basis.  And I will tell the Court that the victims, at

15   least on this side of the courtroom, have been working

16   towards achieving an equitable formula which will ensure

17   that the victims at a minimum receive their percentage of

18   the new money on a pro rata basis and, in fact, victims of

19   the second fraud might receive an additional incentive

20   merely because they didn't have the benefit of the monies

21   that we've already recovered.

22             Should it be determined either in this court or by

23   the Government or in some other venue that Mr. Rosenberg and

24   Mr. Kessler are victims and their pro rata share is

25   determined, they will -- they will participate as well.

1            So I know you're not asking for this.  It seems to

2    me that in light of what -- what you heard at the last

3    hearing, what you've heard from the Government, I'm not sure

4    what role there is for this Court or for a trustee for that

5    matter to play.  This is not a Madoff style bankruptcy.

6    BARM has spent a small fortune and devoted considerable

7    resources to identifying funds that are available for

8    restitution.  Don't believe that there's anything out there

9    or that there's much out there that we haven't identified.

10            So that's a role that a trustee would normally

11    play early on in a bankruptcy.  I'm not sure there's a role

12    for a trustee in that respect.

13            With regard to identifying the victims, this is

14    not something that recently broke in the news.  It's been

15    public information for years now that Mr. Barkany

16    perpetrated a Ponzi scheme.  The only people who have come

17    forward and claim to be victims are all represented in this

18    courtroom.  I represent the vast majority of them.  Mr.

19    Rimberg represents the second largest group, which together

20    probably account for 98 or 99 percent of the losses incurred

21    by his victims.  And then you have two of the petitioners in

22    this courtroom, they're the only victims -- the universe of

23    victims are in this courtroom.

24            THE COURT:  What about -- thank you.

25            What about the situation where I know that we

1    heard from Mr. Mulholland (ph) last time that his clients

2    are potential creditors because they are defendants in

3    actions that have been commenced by BARM in state court

4    seeking the return of monies that his clients received based

5    upon an alleged fraudulent conveyance or whatever theories

6    you may asserting against them.

7         If they had to disgorge fund and they then became

8    a creditor claiming that they were the victims of the fraud,

9    would they, too, be able to participate in this collective

10   out of court workout that you're undertaking?  In other

11   words, they would then get their pro rata distribution from

12   the BARM distribution.  Is -- because when you say that and

13   when the Government says that the victims of the fraud, the

14   crime victims are going to be compensated and, you know, it

15   would happen as a result of the forfeiture order or, in this

16   instance, we've got the forfeiture money judgment in place.

17        We have BARM -- BARM undertaking for quite a long

18   period of time a collection with respect to and a

19   liquidation with respect to the debtor's assets.  And now

20   you've got a pool of money and it may be that that pool of

21   money is going to increase.

22        And so the concern that the Court has -- and you

23   addressed that concern in part.  The concern the Court has

24   is that all of the victims of the crime would get to

25   participate (indiscernible - 11:27:58) in whatever

1    distribution that there may be.  So that if down the road

2    there is another crime victim as a result of whether they

3    come out of the woodwork in some fashion or it's a result of

4    your being successful in the litigation -- and I -- I

5    apologize.  I know Mr. Mulholland is not here, but I think

6    someone from his office may be.  Would they be able to, in

7    essence, opt-in for lack of a better term, opt-in to this

8    pro rata or equitable distribution of the monies that have

9    been collected by Barm?

10            MR. WASSERMAN:  I'm going to let my partner --

11            THE COURT:  Thank you.

12            MR. WASSERMAN:  -- Shalom Jacob respond.

13            MR. JACOB:  Thank you, Your Honor.

14            Just by way of introduction one of the first

15   people who turned over assets to us that belonged to Mr.

16   Barkany was Mr. Lifert (ph) represented by Mr. Mulholland.

17   That was either December 2010 or January 2011.

18            I don't know what prompted him because I didn't

19   even know who he was.  He contacted me.  Mr. Barkany had

20   made an investment in a -- I believe a military residential

21   property complex in Texas and -- with our stolen funds and

22   he voluntarily turned that over to us and we've been holding

23   it ever since.

24            We don't really know -- and this is an example of

25   illiquid assets we hold.  Some illiquid assets we have no

1    idea what it's worth, but we are holding it.

2            Several months later Mr. Lifert contacted me again

3    and told me that an entity in which he and Mr. Barkany were

4    partners had been used in a check-hiding scheme supposedly

5    committed by Mr. Barkany.  So Mr. Lifert and his clients had

6    been cooperative in this process until they got sued.

7            Now if Your Honor wants to know what's going to

8    happen with them, it's really hard to say because we don't

9    know what the outcome is going to be.  I would say, Your

10   Honor, if we recover fictitious profits, I don't see why

11   they would have a claim for fictitious profits.  I don't see

12   why anyone, including our clients, would have a claim for

13   fictitious profits.  Anything beyond principal they would

14   not have a claim for.

15           And, Your Honor, you know the cases better than

16   any of us.  If we are able to get to the point that we can

17   recover principal against them, that means there's something

18   wrong over there and we're going to have to figure out how

19   they get treated.  We'll talk to the Government.  We'll talk

20   to our colleagues, to Mr. Rimberg and Mr. Schneck.  We're

21   not going to do anything secret.  But I'm having a hard time

22   understanding how they would be creditors and under what

23   circumstances.  They've never claimed to be creditors, okay,

24   and for the return for fictitious profits I don't see that

25   they would become either creditors or victims.

1    And, Judge, I will tell you.  I've gotten a lot of

2   calls from people in this case who have gotten money and

3   they claim to be victims, but there's a big difference

4   between victims who have gotten money and victims who have

5   lost money.  And, unfortunately, we represent people who

6   have lost a lot of money.

7    I'll take the same opportunity to address, because

8   it's very similar, the issue of a Mr. Monte Shulman (ph) who

9   put in an objection, but I do not believe was in court.  Mr.

10  Shulman is counsel to the school (indiscernible - 11:31:11)

11  which received over a million dollars in donations of our

12  stolen money.  That school has been cooperative from the

13  very beginning in helping us recover assets.

14    Mr. Shulman's brother-in-law, Rabbi Naftoli Iscro

15  (ph), got $600,000 of our stolen money.  He has been

16  cooperative from day one.  We sued Mr. Shulman because he

17  helped Mr. Barkany transfer money to Mr. Barkany's sister in

18  Israel.  I can't tell you whether he knew or not.  That's

19  what the litigation will show.  But we sued him.  He -- we

20  know for sure.  We have his emails in which he acknowledged

21  to Mr. Barkany that he would make a transfer that Mr.

22  Barkany was not able to make without triggering homeland

23  security alerts.

24    Okay.  He then transferred the money.  We have

25  been trying to get it back from Mr. Barkany's sister in

1    Israel who got close to $600,000.  And that's why we sued

2    him.  Now can he ever be a victim?  Maybe, but I don't see

3    how.  And this is the nature of the claims that we brought.

4         So if somebody came long and said, I'm a

5    legitimate victim.  I really lost money with Mr. Barkany.  I

6    was taken the same way as your clients and I am net

7    negative.  Sure.  We'll take them into account and we'll

8    deal with them in the same way we dealt with our own

9    clients.  But not a single person has come to this court

10   claiming to be in that position.

11         THE COURT:  Thank you.  I appreciate that.  I mean

12   --

13         MR. JACOB:  Thank you.

14         THE COURT:  -- the Court was just concerned and

15   wanted to make sure that BARM isn't some exclusive, you

16   know, club for lack of a better term and then would exclude

17   other victims of the crime that might be out there.

18         So to the extent that there are victims of the

19   crime, they would all be part of whatever restitution,

20   whatever distribution was going to be made to the crime

21   victims here would be a radical distribution.

22         Okay.  No.  Thank you.

23         Mr. Kirshenbaum.

24         MR. KIRSHENBAUM:  Your Honor, thank you.

25         Your Honor, I would like to hand up a copy of an

1    email that -- an actual email exchange that Mr. Wasserman

2    and I had over the last couple of days, the last week.  I

3    have copies that I can --

4              THE COURT:  Do you have a copy for Mr. Wasserman

5    --

6              MR. KIRSHENBAUM:  Yes, I do.

7              THE COURT:  -- and for others here?

8              MR. KIRSHENBAUM:  I do, Your Honor.  I have a few

9    copies.  Everyone -- most people may have received this, so

10   -- but I'll give -- I printed out some on my home computer

11   this morning.  I can give Mr. Wasserman a copy so he'll have

12   it again.  But, again, it's -- it's from him, and Mr.

13   Jannuzzi.  He's been copied on these -- on this

14   correspondence as well.

15             And you'll see, Your Honor, the first email in the

16   chain actually is an email that I sent to Mr. Wasserman and

17   Mr. Jacob not two days ago, Your Honor, but a week ago

18   Sunday.  And in that email we had heard, Your Honor, just

19   from people talking, that even though nothing was said about

20   this at the hearing before Your Honor two weeks ago, we had

21   heard that BARM was getting ready to make a distribution to

22   its members.

23             Now remember, Your Honor, its members consist of

24   roughly ten or 12 people, around that.  And just as last

25   week or two weeks ago when we were in front of the court and

1    Your Honor asked whether there was a forfeiture order in

2    place and the answer was no, there was a lot of discussion

3    -- there was a lot of discussion about the money that BARM

4    was holding, again, which BARM recently admitted was $22

5    million, even though they filed a partial satisfaction of

6    judgment less than a year ago where the partial satisfaction

7    of judgment was just, I think, for $10.6 million.  They

8    admitted there's $22 million.  Mr. Jannuzzi said it was --

9    the value was closer to $32 million.  There was a lot of

10   discussion about that two weeks ago, not a word was said

11   about any intention to distribute anything.

12          As I said, last Sunday, after having heard about

13   this, not knowing whether it was accurate or not, I sent an

14   email to Mr. Wasserman and Mr. Jacob asking them about that.

15   And Wednesday after there was some intermediate email

16   traffic, Mr. Wasserman complained about me emailing him on

17   Sunday.  There was some intermediate traffic.

18          But last Wednesday, in the late morning, early

19   afternoon, Mr. Wasserman and the -- that's the top email, he

20   admitted that they are planning -- that BARM is planning on

21   making a partial distribution -- or a distribution to its

22   members before the end of the year.  Now, again, before the

23   end of the year presumably can be anytime between tomorrow

24   and December 31st.

25          And -- and then he, after he -- after having

1    received this when he said, okay, we will set aside up to

2    one million dollars for your clients in case you can prove

3    anything.  So that was not something that they intended to

4    do before hand, but now apparently they intend to do that.

5           I can -- I can tell Your Honor that I heard from

6    (indiscernible) counsel, he called me last week subsequent

7    to the hearing and he learned all sorts of things at the

8    hearing two weeks ago that he had not been aware of before

9    either.

10          But at any rate, Your Honor, it's clear from the

11   letter that BARM -- and BARM did stand up in response to

12   your question and say, yes, they're planning to make a

13   distribution before the year end.

14          Now, Your Honor, this was eluded to by the

15   Assistant U.S. Attorney in his remarks as well.  The -- it

16   -- I don't know and I don't believe anyone in this room

17   other than the BARM people know what they've recovered, what

18   the sources of funds that they -- that they've recovered

19   generate from, whether they're hard assets that were

20   liquidated, whether they're soft assets.  Your Honor, I do

21   know that a forfeiture order as it was again eluded to by

22   the U.S. Attorney, the forfeiture order, any forfeiture

23   order will only deal with assets that can be traced to the

24   crime so that the results of the crime are used in

25   connection with the crime.

1              And BARM received many, many assets from Mr.

2    Barkany.  You've heard many people say and presumably before

3    this hearing, before the case is over you'll hear more about

4    this; that there were apparently many deals that were done,

5    many transactions that were done by Mr. Barkany at some

6    point in time, whether it was before the fraud began,

7    whether it was while the fraud was going on.  But there

8    apparently were a series of legitimate deals.

9              In fact, you heard the last -- two weeks ago --

10   and none of what was said two weeks ago, just like nothing

11   that you heard today, Your Honor, is evidence as was pointed

12   out.  Nothing that Mr. Wasserman said is of evidentiary

13   value nor of Mr. Jacob is of evidentiary value.  But you --

14   you've heard, Your Honor, at some point you will hear that

15   the ten or 12 members of BARM at the current time made

16   substantial, substantial profits, so many of them at least

17   made substantial profits on many of their transactions with

18   Mr. Barkany.

19             And so we don't know the source of any of these

20   assets, whether they would be subject to the forfeiture

21   order at all.  Again, there really is no concrete forfeiture

22   order in place yet, and there may not be a forfeiture order

23   for some time.

24             At -- when there is a forfeiture order, Your

25   Honor, I guess at that stage of the game we will -- someone

1    will have to determine, well, were any of the assets that

2    were turned over to BARM either the fruit of fraudulent

3    transactions or used in connection with the perpetration of

4    the fraud, or were there -- were they the fruits of real

5    transactions.  And if they're the fruits of real

6    transactions, Your Honor, then presumably the victims don't

7    have any better right to the -- now, again, we don't know

8    what universe of victims is, but the victims have no more

9    right to the -- to the proceeds than the other creditors of

10   Mr. Barkany.  That's number one.

11           Now number two, Your Honor, to the extent that --

12   to the extent that some of the assets that were turned over

13   to BARM and have been liquidated were fruits of the

14   fraudulent scheme, or were used by Mr. Barkany in connection

15   with perpetrating the fraud, I'm not aware Your Honor of any

16   law that Mr. Wasserman stood up today and said, well, you

17   know, Your Honor, we, my guys, were the victims of the first

18   fraud.  Mr. (indiscernible) guys were the victims of the

19   second fraud.  And we have an entitlement to certain things

20   that they may not have an entitlement to at all.  I don't

21   believe, Your Honor, that that's the law.  I don't know that

22   there's any cutoff point here at all.  I -- that entitles

23   one group that's an earlier group to proceeds that are --

24   that may have been generated before some later victims.

25           Now maybe, Your Honor, maybe, Your Honor, if, if

1   they could trace -- BARM could trace some of the assets that

2   were turned over to them directly to the amount that the

3   BARM members were defrauded and that -- frauded -- defrauded

4   of, and they are asserting some type of constructive trust

5   against a particular fund, that's another story.  But I

6   don't believe, Your Honor, they could do that.

7           To my knowledge, Your Honor, based on what I know,

8   and I don't know nearly as much as what they know because

9   they've been -- they've been looking at this thing for four

10  years or more.  I do not believe, Your Honor, that any of

11  the assets that were turned over to them can be directly

12  traced to the very last transactions that their group

13  invested in which resulted in their losses.  Okay.  I -- I

14  believe, Your Honor, that there were assets that Mr. Barkany

15  got involved in.  There were deals that had gone back to

16  2008.  There were properties all over the place.  They were

17  turned over to Barm.

18          Remember, Barm's group -- members of the BARM

19  group made money in 2008.  They made money in 2009.  They

20  made money at the beginning of 2010, and then apparently

21  they got hurt late in the day.  And so I don't believe, Your

22  Honor, that what was turned over to them is in any way

23  directly traceable to the amount that they're currently due

24  and owing.  So that's number one, Your Honor.

25          Number two, to the extent you heard both the U.S.

1    Attorney today as well as you heard other people say that --

2    that Mr. Barkany's going out and -- and engaging in new

3    deals, oil and gas deals.

4            So, Your Honor, first of all, if he's engaging in

5    all these oil and gas deals, just as an aside, and he's --

6    and he's making -- he's in the process of earning money,

7    well, that undercuts the argument that Mr. Wasserman made to

8    you, Your Honor, last time that -- that Mr. Barkany is

9    dependent upon Mr. Rosenberg to basically pay his rent, his

10   food and everything else and, therefore -- which is totally

11   untrue, Your Honor.  But -- and, therefore, because Mr.

12   Barkany doesn't have any money and is not earning any money,

13   therefore Mr. Barkany really is not in a position to object

14   to Mr. Zelinger's (ph) claim and, therefore, they should

15   have the right to do it.

16           By the way, this dependency on Mr. -- this

17   supposed dependency on Mr. Zelinger which doesn't exist

18   didn't prevent Mr. Barkany from asking that Mr. Zelinger's

19   petition be thrown out, but -- but even though -- even

20   though Mr. Barkany is not dissuaded according to Mr.

21   Rosenberg from actually asking that the voluntary petition

22   be thrown out, somehow he's not going to object to the claim

23   even though -- because of this concern that Mr. Zelinger

24   will come (indiscernible).  It doesn't exist.  But that's

25   just an aside, Your Honor.

1        You heard again about these oil and gas deals.

2   And if Mr. Barkany has been going out the last year, year

3   and a half, two years or certainly ever since he pleaded

4   guilty and he's been engaging in new transactions with the

5   oversight of the Government and others, not -- not many

6   other creditors, but certain creditors apparently seem to

7   know and others don't, clearly, Your Honor, none of those

8   would be fruits of the fraud.  So none of those would be

9   subject to a forfeiture order.  That's new money that he's

10  earning.  The victims would have no more right to those

11  monies than any other creditors of Mr. Barkany.

12        Certainly, all those monies, Your Honor, would be

13  subject to -- would be subject to the oversight of a

14  Bankruptcy Court, okay, just as an example.  There are all

15  sorts, Your Honor, of frauds and conveyance actions that are

16  being prosecuted right now, all sorts of them.  Most of

17  these fraudulent conveyance actions are not traceable to the

18  fraud, okay.  These are estate causes of action.  These are

19  debtor/creditor causes of action.  These are not even Mr.

20  Barkany's causes of action.  Mr. Barkany could not sue to

21  recover fraudulent conveyance.  All right.  Either a

22  creditor can or the estate can.

23        These are also not necessarily assets that would

24  be subject to a forfeiture order.  These are also assets

25  that would be -- that right now had -- you have -- you had

1    own group suing a group suing certain defendants and another

2    group suing others.  It's simply a race to the courthouse.

3            So all of these, all of these pieces, Your Honor,

4    all of these pieces are a part of a puzzle that we believe,

5    we believed when we filed the petition and we still believe

6    are appropriately subject to and really need to be overseen

7    and administered by a Bankruptcy Court because, Your Honor,

8    the Government's forfeiture procedures are, first of all,

9    not really a replacement for a bankruptcy case.  The

10   Government has its own rules and regulations.  The

11   Government could decide what it wants to chase, what it

12   doesn't want to chase.

13           I -- if the Government is going to start making up

14   different classes of victims, I mean, I -- again, Your

15   Honor, these are all -- these are all items that I think

16   clearly may involve participation by the criminal justice

17   system, by the Government as part of the criminal justice

18   system, clearly also have more than a minor Bankruptcy Court

19   component to them.  There are many, many, many cases

20   involving major fraudsters that have been both dealt with by

21   the Department of Justice and dealt by the Bankruptcy Court.

22   And you have bankruptcy trustees working together with

23   officials of the Department of Justice all the time.

24           Very often, as Your Honor knows, some large cases,

25   some notorious cases, many smaller cases, the Government and

1    a bankruptcy trustee will work out an arrangement, a

2    cooperative arrangement in terms of who is going to deal

3    with what and how things are going to be distributed.  But

4    that's the only way, Your Honor, the combined process to

5    oversee everything to make sure that everyone is treated

6    fairly.

7            Now fairly may mean different things in different

8    context because certain persons in certain categories may

9    have a better entitlement to particular assets than do

10   others.  But that's the reason, Your Honor, for a bankruptcy

11   trustee to be working with the Department of Justice and a

12   Bankruptcy Court to be working as part of the overall

13   process to make sure that the entirety of the assets of the

14   estate and all of the creditors, including all of the

15   victims who may have a right to some assets, that all of the

16   creditors of the estate are treated fairly.

17           Now, Your Honor, again, nothing that these

18   gentlemen said today is evidence and nothing that I'm saying

19   is evidence.  But I will tell you, Your Honor, that I have

20   -- I have been informed and I have reason to believe there

21   are other victims of the fraud out there who have friendly

22   relationships with Mr. Barkany and, therefore, for some

23   reason may not have chosen to chase him and may not

24   necessarily be filing an involuntary petition against him

25   because Mr. Barkany says he doesn't want to be in

1   bankruptcy, but who -- who will and expect to participate in

2   any distributions or any assets.  There are other people out

3   there.

4          There are relatives.  There are non-relatives.

5   And just because they have not come forward and sued others

6   and -- or not filed an involuntary petition does not mean

7   they don't exist.  I'm amazed that people would stand up and

8   say, I represent the whole universe of creditors.  They

9   don't know that.  And I --

10          THE COURT:  Well, I don't think they're saying

11   they represent the whole universe of creditors.  I think

12   what they're saying is they represent certainly what they

13   believe to be the large majority of creditors.

14          MR. KIRSHENBAUM:  And --

15          THE COURT:  But they have also -- excuse me.  They

16   have also said that to the extent that there are any other

17   victims of the crime, those victims of the crime would be

18   able to opt-in.  The issue comes down to as to how the

19   (indiscernible) distribution or equitable distribution of

20   the funds that BARM has would be distributed in order to

21   provide compensation to those victims of the crime.

22          With respect to the other argument -- and, again,

23   you were quite correct.  This is not evidence.  I'm not

24   making any findings.  I'm not making any conclusions of law.

25          But with respect to the other argument, that

1    really goes to, I think, if this involuntary bankruptcy is

2    proper -- in other words, if the three petitioning creditors

3    did indeed or do indeed have qualified claims.  They're not

4    subject to the bona fide dispute as to liability or amount,

5    and we are in this bankruptcy proceeding, then the next

6    issue that we have to grapple with is the motions to dismiss

7    brought by the debtor, and BARM has also brought a motion to

8    dismiss under 305 with respect to what would be in the best

9    interest of the debtor and creditors.

10           And I would suspect that the arguments that you're

11   making now, you would make those arguments at that hearing,

12   should we ever reach that hearing.  First, we've got to get

13   through the issue as to whether or not the Borgata has a

14   qualified claim and whether or not we do indeed are here in

15   this Bankruptcy Court.

16           MR. WASSERMAN:  Your Honor, I just have two very

17   quick things while they're fresh in your mind.

18           One, that the string of emails that counsel showed

19   you, I fully expected he intended to introduce that today so

20   I did spell check and I'm fairly confident my grammar was

21   accurate.  And I also believe that everything I said in

22   court today is consistent with what I told Mr. Kirshenbaum.

23           The other thing -- and I only raise this now --

24   it's a little bit premature.  You're probably wondering when

25   Mr. Kirshenbaum keeps referring to his client, Mr. Zelinger,

1    who is he talking about.

2            MR. KIRSHENBAUM:  I meant Mr. Rosenberg, Your

3    Honor.  That was my mistake.

4            MR. WASSERMAN:  No.  He keeps saying Mr. Zelinger

5    over and over and over, and I would encourage you to read

6    the transcript because that tells you what this is about.

7    Mr. Zelinger is not a creditor of Mr. Barkany.  Mr. Zelinger

8    is not one of the petitioners.  There are three.  None of

9    them are named Zelinger.

10            What Mr. Zelinger is is a defendant in a lawsuit

11    that BARM brought.  That's who Mr. Kirshenbaum is working

12    for, Mr. Zelinger.  This bankruptcy petition was brought to

13    stop legitimate lawsuits, and Mr. Kirshenbaum is working for

14    Mr. Zelinger who is not a party to this, but he said the

15    name over and over and over again because that's who he

16    takes directions from; that's who is probably financing this

17    -- paying his bills; that's why he keeps saying that name.

18    And that's an improper purpose to bring this bankruptcy, to

19    stop lawsuits which are going forward against his true

20    client, Mr. --

21            MR. KIRSHENBAUM:  Your Honor --

22            MR. WASSERMAN:  -- Zelinger.

23            MR. KIRSHENBAUM:  Your Honor --

24            MR. WASSERMAN:  He said it.  I didn't.

25            MR. KIRSHENBAUM:  Okay.  Your Honor, just for the

1    record Mr. Zelinger and Mr. Rosenberg are brothers in law

2    and --

3              THE COURT:  Brothers in law?

4              MR. KIRSHENBAUM:  Brothers in law, yes, and Mr.

5    Zelinger actually filed a pleading in this court in

6    opposition to the motions to dismiss.  So that's been up

7    front.  Mr. Zelinger and Mr. Rosenberg are defendants in one

8    of the litigations brought by Barm.  They're also defendants

9    in a litigation brought by Canadian North, (indiscernible)

10   clients.  And Mr. Zelinger's position is the same as the

11   lifers and all of the creditors who filed that -- their

12   pleading represented by Mr. Mulholland in opposition to the

13   motions to dismiss, and they are similarly situated to

14   (indiscernible) who are also being sued and are contingent

15   creditors.

16             Mr. Zelinger is being -- is being sued by BARM and

17   by Canadian North, and Mr. Zelinger has asserted third party

18   claims against Mr. -- against Mr. Barkany as has Mr.

19   Rosenberg.  So it just so happens, Your Honor, that Mr.

20   Zelinger is not owed money.  Mr. Zelinger placed monies with

21   Mr. Barkany.  Mr. Zelinger, at the point in time when the

22   music stopped, was not owed anything.

23             And so he is being sued by Barm.  When the music

24   stopped, Your Honor, Mr. Rosenberg was still owed a lot of

25   money.  He's also being sued.  That's why Mr. Rosenberg is

1    one of the petitioning creditors.  Mr. Zelinger is not.  But

2    they are -- they are brothers in law and they are both --

3    they've both been involved in this since the outset.  As I

4    said, Mr. Zelinger has filed a pleading in this court.

5            Now, Your Honor, I just want to point out also,

6    because they keep on referring to the claims.  I want to

7    reiterate that the -- that the involuntary petition asserted

8    the claims by all of the creditors, including Borgata, but

9    in particular as it relates to Mr. Rosenberg and Mr.

10   Kessler, the claims that they simply had the next -- we are

11   owed money, vis-à-vis their dealings with Mr. Barkany

12   individually.  And Mr. Rosenberg's claim against Mr. Barkany

13   plus all of the Barkany entities, which are all the entities

14   that pleaded guilty, I'm sorry, that when -- that pleaded

15   the agreed or allow the entry of the confession of judgment,

16   all of those entities are part of the BARM claim, the

17   Canadian Northern claim.  They don't differentiate between

18   entities.

19           Mr. Rosenberg's claim against the totality of the

20   Barkany entities is well in excess of his claims against Mr.

21   Barkany personally, but with the involuntary petition was

22   filed only against Mr. Barkany, not against Mr. Barkany and

23   all of the entities.  There are about 22 or 23 entities, I

24   believe.  And so it would have been very unwieldy, in our

25   view, to file an involuntary on that basis and so the

1    involuntary was filed against Mr. Barkany only.  And for

2    those purposes, we broke out the claim that Mr. Rosenberg

3    had against Mr. Barkany separately from the balance of the

4    claim, so I just want that to be made clear and I think

5    that's something that they understand as well.

6           But at any rate, Your Honor, I think that just,

7    you know, coming just to kind of bring this thing to a

8    close, there are -- even what you've heard I think, Your

9    Honor, points out the fact that there are many, many

10   potential aspects of this overall matter, this overall case

11   that go well beyond the forfeiture order, that relate to who

12   was a victim, who is not a victim, whether some of the

13   victims may be suing others of the victims, how that shakes

14   out, whether some of the victims are suing certain of the

15   other victims because they're trying to force Mr. Barkany to

16   ** assets that they still believe may exist, that he's

17   hiding and they think by putting pressure they'll be able to

18   accomplish that.

19          There are so many aspects to this overall case,

20   Your Honor, that ultimately, I believe, Your Honor, this

21   case hopefully will remain in bankruptcy, but I do think,

22   Your Honor, based on what you've heard today that it is very

23   important that we have some type of agreement on the record

24   from BARM that can be so ordered by the Court.  Or, Your

25   Honor, that the Court actually enter an order which

1    basically freezes all of the monies that BARM is currently

2    holding, until at a minimum, the proceedings before Your

3    Honor have reached some type of conclusion, because, as I

4    said, there is no evidence -- there's no evidence in this

5    courthouse, that I'm aware of, and there's certainly no

6    evidence in this record which would support the right of the

7    10 or 12 persons or entities that are part of the BARM group

8    at the present time to take any of the assets that have been

9    liquidated before anyone else.

10            And, Your Honor, this case is fractured enough as

11   it is.  I can only imagine how much more fractured it would

12   be if assets were distributed to 10 or 12 persons and then

13   ultimately it was determined that those 10 or 12 persons had

14   no more right to what they received than anyone else.  And

15   since that is so far from having been established, Your

16   Honor, I think that preservation of the status quo is

17   absolutely critical here.

18            The email that I sent to Mr. Wasserman on -- and

19   Mr. Jacob on Sunday simply asked them to agree to a

20   preservation of the status quo, so that everyone's rights

21   are protected.

22            The suggestion that Mr. Wasserman made in his

23   email to me Wednesday afternoon, which is, we'll set aside

24   $1 million for the involuntary petitioning creditors, even

25   though we don't think they're entitled to it, but just in

1    case they are, $1 million is more than enough to compensate

2    you for your trouble and we're going to distribute the rest

3    of the monies.  I don't think that does it all, Your Honor.

4    We don't know who the universe of the victims is, which

5    other victims and perhaps non-victims are entitled to

6    sharing that money and, again, Your Honor, to the extent

7    they're not traceable to the fraud, everyone would be

8    entitled to a share.

9           The only way to protect everyone's rights is to

10   freeze those monies.  BARM has been holding those monies for

11   four years.  Now, all of the sudden, we're in bankruptcy and

12   there's a rush now to distribute before year's end.  I think

13   Your Honor, that that would be a terrible injustice to the

14   full universe of persons that may have an equal claim, or at

15   least a partial claim to some or all of the proceeds that

16   BARM is holding.  And as -- for all we know, Your Honor,

17   BARM may still be liquidating assets and clearly, Your

18   Honor, that's not something that the U.S. Attorney and the

19   Government has been involved in until now.  They weren't

20   aware what was going on and they apparently either feel that

21   they don't, as a matter of their jurisdiction or for

22   whatever other reason, they don't seem really to be involved

23   and don't -- I don't know, Your Honor, that they would be in

24   a position to tell BARM they cannot do that.

25           Apparently, Your Honor, I believe, based on what I

1    heard from the U.S. attorney this morning, they may not feel

2    that they are in a position to tell BARM not to distribute.

3    And if that's the case, Your Honor, I believe that certainly

4    the bankruptcy court is in a position to do that as long as

5    the case remains in front of this Court.

6              MR. JANNUZZI:  Your Honor, if I may very quickly.

7              THE COURT:  Yes.

8              MR. JANNUZZI:  With respect to the list of assets

9    that BARM has recovered, in fact, during the last Mr.

10   Kirshenbaum produced a list of assets.  We know -- we have a

11   very clear understanding as to each asset that was turned

12   over.  We know the date that my client obtained that asset.

13   We know what my client paid for that asset.  What we are

14   working on is what the value of the asset was as of the day

15   it was turned over to BARM or what's a reasonable amount to

16   be considered as recovery for BARM when that asset was

17   conveyed to them.

18             And since these assets make up all different types

19   of property, some of which the value has not been realized.

20   For example, there was stock that was turned over.  It

21   hasn't yet been sold, if there was a new company that the

22   value of that company hasn't been realized yet.  Those are

23   the issues that we're working out.

24             And I took great offense from both sides

25   accusations that my client was somehow beholden to

1    everybody.  Mr. Barket and myself worked very hard to make

2    sure that what Mr. Barkany does is not only monitored, but

3    that the people who are the victims of his fraud are aware

4    of what's been recovered and how it's being distributed.

5            Now, we've all talked about the IRS distribution.

6    There was actually two IRS distributions and they totaled

7    over $1 million.  In each instance, when Mr. Barkany made

8    Mr. Barket aware of it, Mr. Barket relayed that information

9    to me.  I notified not only Locke Lord folks, but I also

10   notified Mr. Rimberg.

11           I circulated an email that both of them understood

12   that we were turning over this money and it was agreed that

13   dollar for dollar that we turned over on that IRS refund

14   would go to the reduction of the amount that was due under

15   any forfeiture, under any restitution and for each and every

16   asset that we produced -- and with respect to money that's

17   already been turned over, there's going to be a similar

18   disclosure and there's going to be a similar agreement.  And

19   we don't always get along.

20           Your Honor is aware that that email and that

21   schedule of assets was part of an email exchange and letters

22   that went to Judge Wexler that clearly we were not getting

23   along and that happens, but all of us understand that we

24   have an obligation to our clients and all of us put aside

25   those moments where we have these intense disagreements, get

1    past it and resolve the issue.  That's going to continue to

2    happen.

3              Now, at the time, I didn't let K. Sholer (ph)

4    know, because K. Sholer wasn't making a claim at the time.

5    I believe -- and you can correct me if I'm wrong, the plea

6    agreement was entered into in November of 2012.  I believe

7    Mr. Wasserman is absolutely correct when he said we know the

8    universe of victims.  And when you talk about bankruptcy

9    cases which intertwine with the criminal cases, you talk

10   about Madoff, Drier, Rossi (ph), thousands of victims,

11   hundreds of millions of dollars.  Not here.  The money is

12   substantial, I agree with you on that, but the universe of

13   victims is relatively small and it's manageable and it's

14   been managed and it will continue to be managed.

15             And when we get to the other part of these

16   motions, I'll address these issues further, but for today,

17   please understand there is absolutely a list of assets.  Mr.

18   Kirshenbaum produced it for you during the last hearing.

19   That list will be constantly worked on until it's in the

20   final number, which will be reported to the Government and

21   be incorporated into a forfeiture and restitution order at

22   the time of sentencing.

23             And with respect to forfeiture, it's not --

24   there's two components to it, Judge, so that we make sure

25   because it didn't seem that way as what Mr. Kirshenbaum

1    said.  Forfeiture also serves to compensate -- and please

2    correct me if I'm wrong -- compensate the victims of the

3    crime as well as taking the property in excess of that that

4    was used in the fruits of the con and compensating it or

5    forfeiting it to the Government.  Those two issues will be

6    decided what the time of sentencing.

7              So, again, judge, I point out that we are working

8    and we will be reporting not only to this Court to the

9    extent that it remains there's a jurisdictional issue.

10   Until that's resolved we'll be reporting what the value of

11   those assets are and we'll certainly be reporting it to

12   Judge Wexler every step of the way.

13             THE COURT:  Thank you.

14             MR. CAFFERONE:  Your Honor, perhaps I could offer

15   a suggestion and maybe this helps.  If we could put --

16   perhaps we can put the case over for a month or six weeks.

17   In that timeframe, the Government will endeavor to create a

18   universe of victims.

19             What I'd ask the parties here to do, which Mr.

20   Rimberg and Locke Lord have already done, they've been

21   cooperative about identifying the victims, the amounts of

22   loss, is I'd ask that counsel for Mr. Rosenberg and Mr.

23   Kessler contact the U.S. Attorney's office, let us know who

24   their victims are, what their amounts of loss is.  We'll

25   compile a list.  We'll come back to the Court.  What that

1   will allow us to do is ensure -- the Government's number one

2   objective here is to get as much money to victims as

3   possible, but we don't favor one victim over another and we

4   want to ensure that victims aren't getting left out because

5   they weren't identified, they didn't have able counsel like

6   Locke Lord and Mr. Rimberg to represent them.

7         So if there are other victims that counsel for the

8   petitioners here are aware of, they should notify the United

9   States.  We'll compile a list and perhaps then, we'll be in

10  a position to know, okay, in terms of crime victims -- this

11  is not creditors, this is crime victims -- we have the

12  complete universe of crime victims and either they all agree

13  or they don't agree on the distribution of the monies that

14  are sitting in Locke Lord's, you know, their escrow.  And

15  then they can also get on board with the new monies that

16  will come in and this is how the distribution is going to

17  proceed.

18        I would also suggest that to the extent Your Honor

19  has the authority that it would seem to make sense that no

20  distribution, if Your Honor can order them or direct them

21  not to make distributions while we compile that list to

22  ensure that everyone is -- gets an opportunity to be heard,

23  that would seem to make sense that we don't have to worry

24  about one victim getting excluded and so that would be a

25  suggestion of mine.  I think four to six weeks, we should --

1   between our (indiscernible - 12:06:01) we should be able to

2   compile a list particularly because Mr. Barkany has also

3   been cooperative.  And we'll set a meeting with him to see

4   if he can help us identify other victims, if there are any.

5   So I just --

6          THE COURT:  Thank you.  The Court appreciates that

7   suggestion and I'm happy to hear from Mr. Wasserman, but

8   this suggestion does indeed take into account one of the

9   points that was raised by Mr. Kirshenbaum, but articulated

10  also by the United States Attorney's office and that is in

11  essence maintaining the status quo while we take the

12  opportunity to identify the universe of crime victims, which

13  is an important concept.

14         MR. WASSERMAN:  I think it's an excellent

15  suggestion without prejudice to our position that we don't

16  believe we can be held to.  We will make no distributions

17  over the next six weeks, assuming that allows sufficient

18  time for the Government to do what they've undertaken and if

19  they haven't done so, we're certainly willing to extend

20  that.  I think it's an excellent suggestion.

21         MR. KIRSHENBAUM:  Your Honor, may I -- just so

22  that we're all on the same wave length, I think it's very,

23  very important recognizing Mr. Wasserman's position.  And I

24  respect Mr. Wasserman's position on behalf of his client.

25         You know, if it's five weeks, six weeks, I mean,

1    you know that's going to come, that's going to go and I'm

2    sure there was no magic date.  I would just simply

3    respectfully request, Your Honor, that the Court enter an

4    order on the record, I think consistent with what the

5    Government is suggesting, which basically says that there

6    will be no distributions of the funds currently held by BARM

7    until notice is given to this Court and of BARM's intention

8    and everyone has an opportunity to come in and take position

9    if they want to oppose or whatever.

10            Because otherwise six weeks is going to come and

11    perhaps with best of intentions, but probably maybe a little

12    bit misguided monies are dissipated, they're going to have

13    to chase and that's (indiscernible - 12:08:04) benefit.  So

14    this way, Your Honor, we can try to get them done in six

15    weeks.

16            We can be in touch with -- with the Government,

17    that is, and with the forfeiture expert and so forth.  And

18    then, Your Honor, perhaps we can set this down for a hearing

19    in maybe six weeks time when you can hear from the

20    Government and maybe from the parties in terms of where

21    things stand and whether the Government is comfortable in

22    terms of a partial distribution.  Maybe the Government will

23    not be.  Maybe everyone will be comfortable.  Maybe partial

24    distribution can be made to all victims at that stage of the

25    game, but that would be a way to preserve everyone's rights,

1    to protect everyone and frankly, not prejudice anyone.

2              THE COURT:  Well, I agree.  I think maintaining

3    the status quo is very important and I'll ask Mr. Wasserman

4    if he would agree on behalf of BARM that obviously during

5    this six week period that there's going to be this exchange

6    of information and trying to gather in who might the

7    universe be.  We've already agreed that BARM would not make

8    any distribution during that six week period, but picking up

9    on what Mr. Kirshenbaum had to say and sort of again

10   maintaining the cooperation and the status quo, to the

11   extent that BARM intends to make a distribution, I would

12   want the Court to be notified so that all parties would have

13   an opportunity to be heard with respect to the distribution

14   that BARM would be making.

15             And considering that there's going to be this six

16   week period, I don't anticipate that we're going to have any

17   type of a hearing with respect to any potential distribution

18   during the six week period.

19             MR. WASSERMAN:  We have no objection to that.

20   Actually I think that's what I was suggesting earlier.  What

21   I would strongly encourage the Court to do is emphasize to

22   all parties involved that this is a real six week and that

23   they have to devote themselves to trying to accomplish what

24   needs to be done in that six weeks.  I don't want to be here

25   six weeks from now and hear Mr. Kirshenbaum or any of the

1    counsel say, well there are other people we've had trouble

2    contacting them, give them a little bit more time.  This

3    needs to be real.  This needs to happen and I would hope,

4    Your Honor, would emphasize to all parties that this is not

5    going to be a continuing period of time.  That use the six

6    weeks at your own peril.

7              THE COURT:  I think that just taking into account

8    what the United States attorney has advised us that during

9    the six week period, I think everybody will be cooperating

10   and moving toward the end goal, so I would strongly urge

11   everyone to furnish whatever information, keep constant

12   communication during the next six week period.

13             Now, my question is during this six week period, I

14   suspect that you're still going to move forward with respect

15   to the issue of whether or not Borgata has a qualified claim

16   or are we going to hold that during this six week period?

17             MR. RIMBERG:  Your Honor, if I could be heard on

18   that. It's a little bit of renewal of my prior application.

19   Everybody is exchanging information, however, Borgata wants

20   to keep me excluded.  I happen to want the same information

21   and I'd like to know if Borgata has a valid claim or not as

22   well.

23             Counsel simply says well there's a state court

24   action.  Everybody has a state court action against them.

25   (Indiscernible - 12:11:20), I do.  So to verbally say, well

1    we're objection and therefore make the motion seems a waste

2    of everybody's time and judicial resources.  If we're

3    exchanging information all around, let's exchange

4    information all around.  I shouldn't be excluded.  I have

5    $7.5 million that nobody contests (indiscernible - 12:11:37)

6    the money was (indiscernible - 12:11:39).

7              So I have the right to have the same information

8    that's at everybody else's fingertips and while everybody

9    else is exchanging being told, listen you sit on the side,

10   we're going to protect everybody else who doesn't object to

11   the bankruptcy, but you, you sit on the side and that's

12   really where we're at with this, so I renew my application

13   that I be able to participate in the proceedings and not be

14   excluded which is essentially what Mr. Kirshenbaum and the

15   Borgata counsel wants to have done in this Court.

16             If there is a proceeding whether this is a good

17   bankruptcy or not, whether he was forced into it, whether it

18   was right or it was wrong, I have the same right to have

19   that information.  If it stays in bankruptcy, I'm still

20   going to need that information anyhow, so no matter what

21   happens, I'm getting information.  I might as well be able

22   to participate from day one to see if this whole thing is a

23   sham or not a sham or maybe I'm going to say, you know what,

24   it's not a sham, let's proceed.

25             THE COURT:  So the information -- again, we renew

1    your request and I will hear from counsel for Borgata. I

2    suspect what the answer is going to be.  You renew your

3    request.  Are you looking for the information that the

4    Borgata has turned over to BARM, Mr. Belsky (ph), for a

5    review with respect to their claim?

6              MR. RIMBERG:  Yes.

7              THE COURT:  And that's the specific information

8    that you are looking for?

9              MR. RIMBERG:  Correct.

10             THE COURT:  Counsel?

11             MR. KLAUSNER:  Your Honor, with all due respect to

12    Mr. Rimberg, I don't think he's in the same position as

13    BARM.  BARM has a motion pending.  Your Honor, held a

14    hearing last week basically upholding BARM's position and

15    their standing to bring the motion.

16             They have the forensic accountant whose

17    information Mr. Barkany's objection is based on, so I don't

18    believe they're in the same position and at the end of the

19    day, maybe Mr. Rimberg will get the information, but today

20    is not that day.  He's not entitled to it at this point and

21    as a petitioning creditor, I do have to object.

22             THE COURT:  Just one point with respect to the

23    issue of the standing, the Court issued an order and at some

24    point if it becomes relevant, the Court will consider

25    reconsidering its determination as to whether or not BARM

1    may prosecute its motion to dismiss against Rosenberg, but

2    not against Kessler or against both Mr. Rosenberg and Mr.

3    Kessler or against neither of them, so that issue is put off

4    for another day as to whether or not the standing issue

5    should be expanded or it may be determined that the standing

6    is not in place with respect to both Kessler Rosenberg or it

7    is, but as far as the information in the documents are

8    concerned, they are refusing to turn it over.  I would

9    strongly suggest if you feel that it's absolutely necessary

10    for you to get that information with respect to the Borgata

11    claim, bring it on by motion.

12            MR. RIMBERG:  I have one quick question, Your

13    Honor.  We joined in on the motion, okay, so if discovery is

14    allowed on the motion, why wouldn't I be allowed to

15    participate?  I didn't think that (indiscernible - 12:14:44)

16    application --

17            THE COURT:  The motion that the Court is going to

18    consider is the motion of the debtor to dismiss the

19    involuntary petition based upon a claim that there is a bona

20    fide dispute as to liability or amount with respect to the

21    Borgata claim, so in order to prepare for that particular

22    hearing, the parties are exchanging the information and it

23    may turn out that one way or another someone is convinced

24    that they have a qualified claim or that they don't have a

25    qualified claim.  And either way, the Court will take the

1    next step after that.

2         MR. RIMBERG:  But I'm part of that motion, Your

3    Honor.  That's my point.  It's not like I didn't submit

4    papers.

5         THE COURT:  And the issue is whether or not you

6    can be part of that motion.

7         MR. RIMBERG:  And why -- I'm just curious all of

8    the sudden, why all of the sudden I would not be part of

9    that motion if I submitted --

10        THE COURT:  Well, you filed a joinder, but there's

11   been nothing before me to make a ruling on whether or not

12   you should be a part of that motion.

13        MR. RIMBERG:  So the Court is then advising that I

14   start the motion practice from the beginning.

15        THE COURT:  I'm asking you that if you want to

16   take discovery of Borgata and Borgata is refusing to turn

17   over documents voluntarily to you, you do not have a

18   consensual agreement with respect to the exchange of

19   documents you're going to have to make a motion.

20        MR. RIMBERG:  Okay.

21        MR. JANNUZZI:  I believe Your Honor was saying

22   should we push that Borgata hearing until we do this six

23   weeks.  And I just note that it's very expensive, at least

24   for my client, I'm sure for all the clients, to come out on

25   separate days and there may be an economy to doing it all on

1    the same day.

2              MR. KLAUSNER:  I don't disagree with Mr. Jannuzzi

3    at all.  I would like to get it resolved.  I strongly and

4    firmly believe that it will be resolved without a hearing.

5    I believe that once Mr. Belsky has fully examined the

6    information that's been provided and the additional live

7    spreadsheets that he will get hopefully today, that this

8    will all become moot.  I mean, I believe that Mr. Belsky has

9    the information that he needs right now.

10             I provided him with two separate account

11   statements for Mr. Barkany, one without a running total,

12   another with a running total.  He can see Mr. Barkany, the

13   balance of Mr. Barkany's account as credit came in and money

14   came in and credit went out and it plainly shows exactly

15   where all the money coming in went, where all the money

16   going out went, every single transaction that he gave to me,

17   so Mr. Belsky does have the information.  I'm more than

18   happy to make it as easy as possible for him.

19             And I do join with Mr. Jannuzzi's request.  It is

20   very difficult for me to get here and very expensive for my

21   client.  It took me over two hours to get here today. It

22   will probably take me another two hours to get back to my

23   office, so anything we can do to make this more efficient I

24   agree with Mr. Jannuzzi 100 percent.

25             MR. WASSERMAN:  I just want to make sure we're all

1  on the same page with respect to our agreement not to

2  distribute any funds for six weeks -- and we can figure out

3  what date that is -- that's something we will stipulate to

4  and agree to.  We don't expect that that will be an order

5  from the Court.  Is that your understanding, Judge?

6          THE COURT:  No.  My understanding is that you

7  could stipulate to it and submit it for my signature.  It

8  would be so ordered by the Court.

9          MR. WASSERMAN:  We would have a problem with that,

10 because we don't recognize that the Court has the authority

11 to do that.  We will stipulate and agree to be bound by the

12 stipulation.

13         If they were to make a proper motion, which Your

14 Honor has suggested that's what parties need to do to get

15 certain relief, then let the parties make a motion.  We will

16 oppose the motion and we can have due process.

17         We will stipulate to it, but I don't have the

18 authority to do anything which would lead to an order.

19         THE COURT:  Well, we have your agreement today on

20 the record --

21         MR. WASSERMAN:  Absolutely.

22         THE COURT:  -- that no distribution would be made

23 during this six week period and to the extent that there is

24 going to be a distribution beyond the six week period,

25 assuming you don't extend that six week period by agreement.

1    If there is going to be a distribution once the six week

2    period has terminated and it is not agreed to on a

3    consensual basis to be extended --

4              MR. WASSERMAN:  Absolutely.

5              THE COURT:  -- you would notify the Court that you

6    intend to make the distribution so that all parties would

7    have an opportunity -- a full and fair opportunity to be

8    heard with respect to that proposed distribution.

9              MR. WASSERMAN:  Absolutely.

10             THE COURT:  Thank you.  The Court is satisfied,

11   Mr. Kirshenbaum.

12             VOICES:  Multiple talking.

13             THE COURT:  Thank you.  Does anyone else wish to

14   be heard?

15             MR. WASSERMAN:  Can we have a later time for our

16   next appearance?

17             THE COURT:  We were just talking about that.  Does

18   11:00 work better?  Is that --

19             UNIDENTIFIED SPEAKER:  Yes, Judge.  It took me

20   three hours to get here today.

21             THE COURT:  Three hours?

22             UNIDENTIFIED SPEAKER:  Three hours.

23             UNIDENTIFIED SPEAKER:  It works for me, Your

24   Honor.

25             THE COURT:  Is 11:00 better?

1          UNIDENTIFIED SPEAKER:  That's fine, Your Honor.

2          UNIDENTIFIED SPEAKER:  That is better, Your Honor.

3          THE COURT:  All right.  So we're going to adjourn

4     to November 13 at 11:00.  If the parties reach an agreement

5     with respect to whether or not Borgata has a qualified

6     claim, I would ask that you notify the Court one way or the

7     other.  Obviously if the parties determine that we need the

8     evidentiary hearing with respect to the Borgata claim, we're

9     going to need to set that down for an evidentiary hearing,

10    so as soon as the parties have reached their conclusion on

11    that, please notify the Court.

12         UNIDENTIFIED SPEAKER:  Yes, sir.

13         THE COURT:  Is that it?  Anything further?

14         MR. KIRSHENBAUM:  Your Honor, one other -- I guess

15    combination of housekeeping, but also in terms of procedure

16    and I hope that I am properly conveying, I think, at least

17    in the formal agreement, that Mr. Wasserman and I kind of

18    reached last Wednesday relates to discovery with respect to

19    the Rosenberg claim.

20         We agreed, I think, but we wanted to also make

21    sure that this was fine from Your Honor's point of view,

22    that we would defer discovery with respect to the Rosenberg

23    claim and their potential challenge to the Rosenberg claim

24    until after the Borgata claim has been dealt with.  And

25    furthermore, to the -- the claim is ultimately not

1    challenged or upheld by the Court and for purposes of

2    satisfying the requirements of the involuntary petition that

3    Your Honor would then hold a separate hearing in terms of

4    whether BARM was still going to be permitted to move forward

5    with an objection to the Rosenberg claim.

6            And so it may be some time before it would really

7    make sense for the parties to spend more money with respect

8    to that particular aspect, so that our proposal is subject

9    the Court's approval would be to defer any discovery with

10   respect to the challenge to the Rosenberg claim until we

11   have further input from the Court when and if that becomes

12   relevant.

13           THE COURT:  I think that's fine.  I think for the

14   purposes of judicial economy and efficiency here, rather

15   than have the parties spend money with respect to discovery

16   on the Rosenberg's claim, let's get past the Borgata claim

17   first.

18           MR. WASSERMAN:  I would ask, if perhaps there

19   might be a condition on that.  One thing that I asked Mr.

20   Kirshenbaum when we spoke and I do think it will be helpful

21   with respect to what the Government has proposed.  I asked

22   Mr. Kirshenbaum, can you tell me the amount of the Rosenberg

23   claim and can you tell me the amount of the Kessler claim.

24   Actually I think we only spoke about Rosenberg and his

25   answer was, no I can't.  I think at a minimum, we should

1    know the amount of the claim and I think the law speaks in

2    terms of whether there's liability and the amount of

3    liability.

4              And as part of what the Government is proposing to

5    do, not only would Mr. Rosenberg have to establish that he

6    has a claim, but he has to come up with the amount and it

7    seems that we're at a standstill if we go six weeks and we

8    still don't know the amount of Mr. Rosenberg's claim.

9              THE COURT:  Well, I think in the context of what

10   the Government is going to be doing over the next six weeks,

11   certainly they can have the conversation with Mr.

12   Kirshenbaum and determine or at least Mr. Kirshenbaum can

13   provide the information with respect to the Rosenberg claim.

14   I would say that discovery should just be put on hold with

15   respect to the parties.

16             As I said, I think it's just more efficient and

17   for judicial economy, because to the extent that now they're

18   going to give you information, you might want more

19   information, then he's going to want information and then

20   you're all back to spending money, which might maybe spent

21   needlessly.

22             We need to wait the outcome and determination of

23   the Borgata claim.  But I think the information that you're

24   asking for obviously is critical and I think that could be

25   gleaned by virtue of the process that's now going to be

1   undertaken during the next six week period.

2         MR. KIRSHENBAUM:  Well, we'll be in touch with the

3   Government, of course we intend to do that.

4         Just so Your Honor understands the context here,

5   you know, there was -- Your Honor is now well aware that

6   there was this confession and judgment that was entered into

7   in Queen Supreme Court in August of , I believe, 2012.  And

8   in terms of -- in the context of judgment enforcement

9   proceedings, that BARM instituted and served the K. Sholer

10  clients Mr. Zelinger and Mr. Rosenberg and the companies

11  that they work for, virtually every single document

12  involving every single transaction between either of those

13  individuals or those companies and Mr. Barkany was produced

14  to BARM going back over a year.  And BARM had the

15  opportunity to take Mr. Rosenberg's deposition, Mr.

16  Zellinger's deposition, which they did.

17        On the other hand, Your Honor, we have not up to

18  this point in time, received one item, one piece of paper

19  from BARM with respect to any of BARM's analysis in terms of

20  what -- who were the terms as creditor, how, et cetera.  So

21  BARM -- if we're going to move forward with the objection to

22  the claim, BARM owes us a heck of a lot more than what we

23  owe them.  They have virtually everything, so again, you

24  know, this is -- this can' be a one way street.  We're going

25  to talk to the Government and we'll have our dialogue with

1    the Government and at some point in time, maybe we'll be

2    discussing the Rosenberg claim further with BARM, but until

3    that -- until that becomes appropriate we're going to be

4    dealing with the Government.  I think the agreement is we're

5    not going to be dealing with the Rosenberg claim or for that

6    matter, with BARM's potential objection to the Rosenberg

7    claim.  We're going to focus (indiscernible) we're going to

8    come back in six weeks.  Your Honor may determine at some

9    point in time that (indiscernible) claim is perfectly valid

10   and that maybe BARM does not have the right to object to

11   Rosenberg's claim.

12            MR. WASSERMAN:  Your Honor, I just thought counsel

13   might actually know the amount of the claim.  The answer is

14   he doesn't and at some point, perhaps they'll reveal it to

15   all of us.

16            THE COURT:  All right.  So there will be no

17   discovery with respect to the Rosenberg claim or the Kessler

18   claim.  The discovery that will take place or continue to

19   take place will have to do with the Borgata claim.  I trust

20   everybody will cooperate with the Government with respect to

21   identifying the universe of the crime victims over this six

22   week period and we'll see everyone back here on the 13th of

23   November at 11:00.

24            Counselor?

25            MR. RIMBERG:  Quick question.  For the return date

1    of the motion does the Court want to set a date or should we

2    just --

3              MR. KIRSHENBAUM:  Judge, can we make it November

4    13th, so again just to avoid an extra trip out here?

5              THE COURT:  We can put it on for November 13th at

6    11:00.  This way no one has to make multiple trips out here

7    and there's a lot of lawyers, so we can put it on for the

8    13th of November at 11:00.  I do suggest if the parties can

9    come to some resolution where the information can be

10   exchanged on a consensual basis, that's fine.  It may be

11   that well before the 13th of November, the parties have

12   determined whether or not there's going to be a hearing at

13   all on the issue of the Borgata claim, which may moot your

14   efforts to -- which may moot the filing of the motion and

15   the time and money that it would take to file a motion.

16             MR. RIMBERG:  Fine, Your Honor.  Thank you.

17             THE COURT:  Thank you.  Is that it?  Okay, court

18   is now adjourned.

19             VOICES:  Thank you.

20             THE COURT:  Well, actually we're not adjourned.

21   We have an 11:00 calendar, but you can all leave.

22        (Laughter)

23             THE COURT:  I'm sure you don't want to stay for

24   that.

25        (Proceedings concluded at 12:29 p.m.)

1              C E R T I F I C A T I O N

2

3    We, Sherri L. Breach and Melissa Looney, CERT*D-397,

4    certified that the foregoing transcript is a true and

5    accurate record of the proceedings.

6    Sherri L
7    Breach            Digitally signed by Sherri L Breach
                        DN: cn=Sherri L Breach, o, ou,
                        email=digital1@veritext.com, c=US
8                       Date: 2014.10.03 11:17:34 -04'00'

9    SHERRI L. BREACH

10   AAERT Certified Electronic Reporter & Transcriber

11   CERT*D-397   Melissa       Digitally signed by Melissa Looney
                                DN: cn=Melissa Looney, o, ou,
                                email=digital1@veritext.com,
12                Looney        c=US
                                Date: 2014.10.03 11:19:12 -04'00'

13   Melissa Looney

14   AAERT Certified Electronic Transcriber, CET-607

15

16

17

18   Veritext

19   330 Old Country Road

20   Suite 300

21   Mineola, New York 11501

22

23

      Date: October 2, 2014

24

25

**[& - annexed]**

| & | 2 | a | |
|---|---|---|---|
| **&**  2:25 4:4,11,18 | **2**  75:23 | **aaert**  75:10,14 | **advise**  20:15 |
| 5:8,17 6:25 7:4 | **2008**  40:16,19 | **ability**  18:3 23:23 | **advised**  12:7 16:9 |
| 75:10 | **2009**  40:19 | 24:3 | 21:20 26:21 61:8 |
| **0** | **2010**  31:17 40:20 | **able**  8:25 9:12 | **advising**  65:13 |
| | **2011**  31:17 | 11:12 21:23 23:25 | **affect**  2:3 |
| **07601**  4:21 | **2012**  55:6 72:7 | 24:9 30:9 31:6 | **affidavit**  20:19 21:6 |
| **1** | **2013**  17:4 | 32:16 33:22 45:18 | **affirmation**  12:10 |
| **1**  51:24 52:1 54:7 | **2014**  1:17 75:23 | 50:17 57:5 58:1 | **afmils**  17:22 |
| **10**  51:7,12,13 | **205**  3:4 | 62:13,21 | **afoul**  19:4 |
| **10.6**  36:7 | **22**  23:13,14,20 | **absolutely**  51:17 | **afternoon**  36:19 |
| **100**  66:24 | 24:25 25:15 36:4,8 | 55:7,17 64:9 67:21 | 51:23 |
| **10006**  5:11 | 49:23 | 68:4,9 | **agent**  19:18 |
| **10022**  3:20 | **23**  49:23 | **access**  23:24 | **ago**  35:17,17,20,25 |
| **10281**  3:12 | **3** | **accomplish**  50:18 | 36:6,10 37:8 38:9 |
| **10601**  4:14 | | 60:23 | 38:10 |
| **10:54**  1:18 | **3**  3:11 | **account**  29:20 34:7 | **agostino**  4:18 6:25 |
| **115**  5:10 | **30**  1:17 | 58:8 61:7 66:10,13 | **agree**  9:20 14:6 |
| **11501**  75:21 | **300**  75:20 | **accountant**  63:16 | 51:19 55:12 57:12 |
| **11556**  4:7 | **305**  46:8 | **accuracy**  9:13 | 57:13 60:2,4 66:24 |
| **11722**  1:15 5:3 | **31st**  36:24 | **accurate**  36:13 | 67:4,11 |
| **11743**  3:5 | **32**  36:9 | 46:21 75:5 | **agreed**  9:22 17:5 |
| **11:00**  68:18,25 69:4 | **330**  75:19 | **accusations**  53:25 | 20:9 49:15 54:12 |
| 73:23 74:6,8,21 | **397**  75:3,11 | **achieving**  28:16 | 60:7 68:2 69:20 |
| **11:02:53**  12:10 | **3rd**  5:10 | **acknowledged** | **agreement**  28:12 |
| **11:23:57**  28:13 | **4** | 33:20 | 50:23 54:18 55:6 |
| **11:27:58**  30:25 | | **acronyms**  8:22 | 65:18 67:1,19,25 |
| **11:31:11**  33:10 | **40**  23:21,22 | **action**  12:9 15:20 | 69:4,17 73:4 |
| **12**  35:24 38:15 51:7 | **425**  3:19 | 42:18,19,20 61:24 | **agudelo**  3:23 7:5,6 |
| 51:12,13 | **5** | 61:24 | **alerts**  33:23 |
| **12:06:01**  58:1 | | **actions**  30:3 42:15 | **alleged**  11:15 30:5 |
| **12:08:04**  59:13 | **51**  2:3 | 42:17 | **allen**  3:14 6:14 11:2 |
| **12:11:20**  61:25 | **5th**  22:25 | **actively**  10:2 | **allocated**  28:13 |
| **12:11:37**  62:5 | **6** | **activities**  28:2 | **allow**  20:9 22:22 |
| **12:11:39**  62:6 | | **actual**  35:1 | 49:15 57:1 |
| **12:14:44**  64:15 | **600,000**  33:15 34:1 | **add**  10:11,13 | **allowed**  64:14,14 |
| **12:29**  74:25 | **607**  75:14 | **addition**  9:5 | **allows**  58:17 |
| **13**  69:4 | **610**  5:2 | **additional**  12:19 | **amazed**  45:7 |
| **13th**  73:22 74:4,5,8 | **62**  17:6 23:6,19 | 18:4,18 19:20,25 | **amount**  7:24 17:6 |
| 74:11 | **7** | 28:19 66:6 | 19:14 26:24 40:2,23 |
| **14**  4:20 | | **address**  33:7 55:16 | 46:4 53:15 54:14 |
| **14-72941**  1:3 | **7.5**  62:5 | **addressed**  30:23 | 64:20 70:22,23 71:1 |
| **1425**  4:6 | **775**  3:4 | **adjourn**  69:3 | 71:2,6,8 73:13 |
| **15th**  4:5 | **9** | **adjourned**  74:18,20 | **amounts**  56:21,24 |
| **170**  4:13 | | **administered**  43:7 | **analysis**  9:5 10:5 |
| | **9/24**  9:23 | **admitted**  21:7 36:4 | 72:19 |
| | **98**  29:20 | 36:8,20 | **annexed**  26:17 |
| | **99**  29:20 | | |

**answer** 8:25 36:2
63:2 70:25 73:13
**answers** 9:3
**anticipate** 26:19
60:16
**anticipates** 26:21
**anticipating** 10:5
**anytime** 36:23
**anyway** 24:14
**apologize** 31:5
**apparently** 19:24
37:4 38:4,8 40:20
42:6 52:20,25
**appear** 25:4,6
**appearance** 12:20
22:14 68:16
**appearances** 6:12
**appearing** 5:16
**application** 17:25
61:18 62:12 64:16
**appreciate** 11:22
28:3 34:11
**appreciates** 58:6
**apprised** 19:23
**appropriate** 13:6
15:15 19:13 73:3
**appropriately** 9:14
43:6
**approval** 17:25
70:9
**argument** 41:7
45:22,25
**arguments** 20:22
46:10,11
**arrangement** 44:1,2
**arrest** 20:20
**arrested** 18:13
**articulated** 58:9
**aside** 14:14 24:23
37:1 41:5,25 51:23
54:24
**asked** 8:20 9:19
36:1 51:19 70:19,21
**asking** 17:14 29:1
36:14 41:18,21
65:15 71:24

**aspect** 70:8
**aspects** 50:10,19
**asserted** 7:24 14:2
48:17 49:7
**asserting** 7:23 30:6
40:4
**asset** 53:11,12,13,14
53:16 54:16
**assets** 16:24 17:8
18:15 19:1,5,9,15
19:15,20 23:7,9
24:9,10,21,25 30:19
31:15,25,25 33:13
37:19,20,23 38:1,20
39:1,12 40:1,11,14
42:23,24 44:9,13,15
45:2 50:16 51:8,12
52:17 53:8,10,18
54:21 55:17 56:11
**assistant** 19:19
21:23 37:15
**associates** 4:18
**associations** 7:1
**assuming** 14:13
58:17 67:25
**attempting** 15:8
**attend** 13:5
**attention** 21:15
**attorney** 3:3 4:12
4:19 16:2 17:23
18:5 37:15,22 41:1
52:18 53:1 61:8
**attorney's** 5:1 19:7
56:23 58:10
**attorneys** 3:10,18
4:3 5:9
**august** 72:7
**authority** 57:19
67:10,18
**automatic** 15:8
**available** 27:1 29:7
**avenue** 3:4,19 4:13
**avoid** 9:19 74:4
**aware** 18:25 19:2
22:5,7 28:2 37:8
39:15 51:5 52:20
54:3,8,20 57:8 72:5

**b**

**b** 1:20
**back** 9:2 17:4 18:6
18:12,19 20:4,7,12
21:18 22:2,25 26:23
27:1 33:25 40:15
56:25 66:22 71:20
72:14 73:8,22
**bad** 14:6
**bail** 20:9,10
**balance** 50:3 66:13
**bankruptcy** 1:1,13
1:22 24:21 29:5,11
42:14 43:7,9,18,21
43:22 44:1,10,12
45:1 46:1,5,15
47:12,18 50:21
52:11 53:4 55:8
62:11,17,19
**barkany** 1:7 6:6,11
16:16,24 17:3 18:13
18:18 19:2,21,23
20:9,13,19 21:18
22:9,10 25:19 27:13
28:6 29:15 31:16,19
32:3,5 33:17,21,22
34:5 38:2,5,18
39:10,14 40:14 41:8
41:12,13,18,20 42:2
42:11,20 44:22,25
47:7 48:18,21 49:11
49:12,13,20,21,22
49:22 50:1,3,15
54:2,7 58:2 66:11
66:12 72:13
**barkany's** 19:20
25:25,25 33:17,25
41:2 42:20 63:17
66:13
**barket** 54:1,8,8
**barkette** 21:14,25
**barm** 3:10 6:15
13:8,13 14:5 15:20
16:16,23 18:10
23:12 24:25 25:14
25:17 26:19,20,20
27:9,16,25 28:9

29:6 30:3,12,17,17
31:9 34:15 35:21
36:3,4,20 37:11,11
37:17 38:1,15 39:2
39:13 40:1,3,17,18
45:20 46:7 47:11
48:8,16,23 49:16
50:24 51:1,7 52:10
52:16,17,24 53:2,9
53:15,16 59:6 60:4
60:7,11,14 63:4,13
63:13,25 70:4 72:9
72:14,14,19,21,22
73:2,10
**barm's** 16:17 27:17
40:18 59:7 63:14
72:19 73:6
**based** 7:22 14:9
30:4 40:7 50:22
52:25 63:17 64:19
**basically** 10:1 21:7
41:9 51:1 59:5
63:14
**basis** 28:14,18
49:25 68:3 74:10
**bate** 10:17
**began** 8:15 38:6
**beginning** 33:13
40:20 65:14
**behalf** 6:23 13:5
58:24 60:4
**beholden** 53:25
**believe** 9:8 13:16,17
22:6,14 27:8,17,20
29:8 31:20 33:9
37:16 39:21 40:6,10
40:14,21 43:4,5
44:20 45:13 46:21
49:24 50:16,20
52:25 53:3 55:5,6
58:16 63:18 65:21
66:4,5,8 72:7
**believed** 43:5
**belonged** 31:15
**belsky** 8:17,20,23
9:5,11 10:3 63:4
66:5,8,17

**belsky's** 9:1
**benefit** 24:24 28:20
  59:13
**best** 8:1,5 22:3 46:8
  59:11
**better** 10:7 16:4
  31:7 32:15 34:16
  39:7 44:9 68:18,25
  69:2
**beyond** 13:25 32:13
  50:11 67:24
**big** 33:3
**biggest** 21:17 22:8
**bills** 47:17
**bit** 16:21 46:24
  59:12 61:2,18
**board** 57:15
**bona** 7:23 11:15
  13:15 46:4 64:19
**borgata** 7:24 8:10
  8:15 9:3 10:11
  11:16 13:24 14:2,16
  14:22 15:2,5 26:10
  46:13 49:8 61:15,19
  61:21 62:15 63:1,4
  64:10,21 65:16,16
  65:22 69:5,8,24
  70:16 71:23 73:19
  74:13
**bound** 67:11
**breach** 2:25 75:3,9
**briefly** 15:4
**bring** 12:9,23 13:10
  13:19 15:14,23,23
  47:18 50:7 63:15
  64:11
**broadway** 5:10
**broke** 29:14 50:2
**brother** 33:14
**brothers** 48:1,3,4
  49:2
**brought** 21:15 34:3
  46:7,7 47:11,12
  48:8,9
**business** 7:19 28:7
**butler** 4:4 7:10

**c**

**c** 3:1,14 5:6 6:1 75:1
  75:1
**cafferone** 5:5 7:12
  7:12,16 17:2 20:2
  23:17 24:7 27:11
  28:6 56:14
**calendar** 74:21
**call** 8:20 25:18
**called** 17:22 37:6
**calls** 8:17,19 33:2
**canadian** 5:9 6:18
  48:9,17 49:17
**carpeting** 11:3
**case** 1:3 15:6,7,9,10
  16:6,15 17:20 18:1
  18:17 19:22 20:3,22
  20:25 21:3,5,8
  22:13 24:12 33:2
  37:2 38:3 43:9
  50:10,19,21 51:10
  52:1 53:3,5 56:16
**cases** 32:15 43:19
  43:24,25,25 55:9,9
**categories** 44:8
**category** 26:12
**causes** 42:18,19,20
**center** 3:11
**central** 1:15 5:3
**cert** 75:3,11
**certain** 39:19 42:6
  43:1 44:8,8 50:14
  67:15
**certainly** 10:24
  11:18 13:18 19:15
  25:5 42:3,12 45:12
  51:5 53:3 56:11
  58:19 71:11
**certified** 75:4,10,14
**cet** 75:14
**cetera** 72:20
**chain** 35:16
**challenge** 69:23
  70:10
**challenged** 27:12
  70:1

**chance** 11:3
**chase** 43:11,12
  44:23 59:13
**check** 21:16 22:11
  32:4 46:20
**chosen** 44:23
**chris** 7:12
**christopher** 5:5
**chronology** 8:8
**circulated** 54:11
**circumstances**
  32:23
**claim** 7:24 11:16
  13:14 14:2 21:22
  26:10,11,14,25 27:3
  28:7 29:17 32:11,12
  32:14 33:3 41:14,22
  46:14 49:12,16,17
  49:19 50:2,4 52:14
  52:15 55:4 61:15,21
  63:5 64:11,19,21,24
  64:25 69:6,8,19,23
  69:23,24,25 70:5,10
  70:16,16,23,23 71:1
  71:6,8,13,23 72:22
  73:2,5,7,9,11,13,17
  73:18,19 74:13
**claimed** 26:2,7
  32:23
**claiming** 30:8 34:10
**claims** 26:9,16,25
  34:3 46:3 48:18
  49:6,8,10,20
**classes** 43:14
**clear** 16:18 27:8
  37:10 50:4 53:11
**cleared** 27:25
**clearly** 42:7 43:16
  43:18 52:17 54:22
**clerk** 6:2
**client** 13:2,5,21
  14:21 46:25 47:20
  53:12,13,25 58:24
  65:24 66:21
**clients** 15:6 30:1,4
  32:5,12 34:6,9 37:2
  48:10 54:24 65:24

  72:10
**close** 34:1 50:8
**closer** 10:4 36:9
**club** 34:16
**code** 24:21
**coerced** 20:23
**colleague** 13:3
**colleagues** 8:18
  32:20
**collect** 17:21
**collected** 27:18 31:9
**collecting** 16:24
  28:3
**collection** 27:16
  30:18
**collective** 30:9
**combination** 69:15
**combined** 44:4
**come** 20:16 22:20
  28:7 29:16 31:3
  34:9 41:24 45:5
  56:25 57:16 59:1,8
  59:10 65:24 71:6
  73:8 74:9
**comes** 28:5 45:18
**comfortable** 59:21
  59:23
**coming** 22:15,18
  50:7 66:15
**commenced** 30:3
**committed** 25:19
  32:5
**committing** 18:18
**communicated**
  10:16
**communication**
  61:12
**companies** 72:10,13
**company** 7:2 53:21
  53:22
**compensate** 16:25
  25:11 52:1 56:1,2
**compensated** 30:14
**compensating** 56:4
**compensation**
  45:21

compile 56:25 57:9
  57:21 58:2
complained 36:16
complaint 20:21
complete 57:12
completed 10:7
  11:13
completely 19:2
completing 10:4
complex 31:21
component 43:19
components 55:24
computer 35:10
con 56:4
concept 24:20 58:13
concern 9:15 21:18
  22:8 30:22,23,23
  41:23
concerned 34:14
  64:8
concluded 74:25
conclusion 51:3
  69:10
conclusions 45:24
concrete 38:21
condition 70:19
conditions 20:11
conduct 15:9
conference 2:1 8:17
confession 20:18
  49:15 72:6
confident 26:8,9
  46:20
confirm 9:13
confusion 10:23
  27:9
connection 37:25
  39:3,14
consensual 65:18
  68:3 74:10
consent 13:11
consenting 15:16
consider 63:24
  64:18
considerable 29:6
considered 53:16

considering 60:15
consist 35:23
consistent 46:22
  59:4
consists 25:17
constant 61:11
constantly 55:19
constructive 40:4
consulted 11:22
contact 56:23
contacted 31:19
  32:2
contacting 61:2
contemplated 23:11
  23:14 25:9
contests 62:5
context 44:8 71:9
  72:4,8
contingent 48:14
continue 19:19
  20:10 22:22 23:2
  55:1,14 73:18
continuing 61:5
contrary 10:25
contributing 21:1
conversation 15:2
  71:11
conversations 9:4
converts 17:13
conveyance 30:5
  42:15,17,21
conveyed 53:17
conveying 69:16
convinced 64:23
cooperate 21:10
  73:20
cooperating 61:9
cooperation 10:23
  11:5 60:10
cooperative 18:12
  18:24 19:17 20:13
  22:10 32:6 33:12,16
  44:2 56:21 58:3
copied 12:6,24 13:4
  35:13
copies 12:11 35:3,9

copy 34:25 35:4,11
correct 24:4 25:5
  45:23 55:5,7 56:2
  63:9
correspondence
  35:14
counsel 8:15 10:11
  14:16,21 15:2 16:17
  19:4,11,21 20:2
  22:11,12 25:23
  26:21 27:13 33:10
  37:6 46:18 56:22
  57:5,7 61:1,23
  62:15 63:1,10 73:12
counselor 73:24
country 75:19
couple 18:16 35:2
course 18:23 22:3
  22:21 72:3
court 1:1,13 6:3,5,9
  6:12,17 7:11,17 8:5
  8:11 10:10 11:4,7
  11:11,19,22 12:2,13
  12:24,25 13:23
  14:12 15:1,12,19,24
  16:1,8,10 17:14
  18:20 20:1 21:12
  22:14 23:4 24:16,17
  25:13,21 26:15
  27:12,20 28:14,22
  29:4,24 30:3,10,22
  30:23 31:11 33:9
  34:9,11,14,14 35:4
  35:7,25 42:14 43:7
  43:18,21 44:12
  45:10,15 46:15,22
  48:3,5 49:4 50:24
  50:25 53:4,5,7 56:8
  56:13,25 58:6,6
  59:3,7 60:2,12,21
  61:7,23,24 62:15,25
  63:7,10,22,23,24
  64:17,17,25 65:5,10
  65:13,15 67:5,6,8
  67:10,19,22 68:5,5
  68:10,10,13,17,21
  68:25 69:3,6,11,13

70:1,11,13 71:9
  72:7 73:16 74:1,5
  74:17,17,20,23
court's 70:9
courthouse 1:14
  43:2 51:5
courtroom 28:15
  29:18,22,23
courts 27:10
create 56:17
credit 8:24 66:13,14
creditor 4:12 6:23
  7:1,6 26:11 30:8
  42:19,22 47:7 63:21
  72:20
creditors 14:14
  30:2 32:22,23,25
  39:9 42:6,6,11
  44:14,16 45:8,11,13
  46:2,9 48:11,15
  49:1,8 51:24 57:11
crime 24:24 25:2,2
  25:7 30:14,24 31:2
  34:17,19,20 37:24
  37:24,25 45:17,17
  45:21 56:3 57:10,11
  57:12 58:12 73:21
criminal 16:6,15
  18:17 19:21 20:2,21
  20:22 22:11,12
  27:13 43:16,17 55:9
critical 51:17 71:24
curious 65:7
current 38:15
currently 19:5
  40:23 51:1 59:6
custody 22:22
cut 14:20
cutoff 39:22

d

d 6:1 75:3,11
date 10:6 23:10
  25:15 53:12 59:2
  67:3 73:25 74:1
  75:23
dating 18:12

**day** 33:16 40:21 53:14 62:22 63:19 63:20 64:4 66:1
**days** 35:2,17 65:25
**deal** 34:8 37:23 44:2
**dealing** 14:1 73:4,5
**dealings** 49:11
**deals** 19:24 20:15 22:18 38:4,8 40:15 41:3,3,5 42:1
**dealt** 34:8 43:20,21 69:24
**debtor** 1:9 3:3 7:23 42:19 46:7,9 64:18
**debtor's** 7:22 30:19
**december** 31:17 36:24
**decide** 43:11
**decided** 22:1,2 56:6
**decision** 21:2
**defend** 21:8
**defendant** 15:6 17:11 18:3 22:17 23:9 47:10
**defendants** 30:2 43:1 48:7,8
**defer** 69:22 70:9
**defrauded** 40:3,3
**delay** 11:5 22:23
**delayed** 22:24
**delaying** 10:25 23:1
**demands** 12:19
**demonstrated** 21:9
**department** 17:19 43:21,23 44:11
**dependency** 41:16 41:17
**dependent** 41:9
**deposition** 72:15,16
**depositions** 13:5,12
**detail** 8:12
**detailed** 8:8
**determination** 63:25 71:22
**determine** 2:1 19:12 22:21 27:2

39:1 69:7 71:12 73:8
**determined** 26:15 28:22,25 51:13 64:5 74:12
**determines** 17:24 27:4,5
**development** 4:19 7:2
**devote** 60:23
**devoted** 29:6
**dialogue** 72:25
**diane** 7:14
**didn't** 10:13
**difference** 33:3
**different** 17:16 43:14 44:7,7 53:18
**differentiate** 49:17
**difficult** 66:20
**dine** 5:6
**direct** 57:20
**directions** 47:16
**directly** 40:2,11,23
**disagree** 66:2
**disagreements** 54:25
**disaster** 10:14
**disclose** 15:16
**disclosure** 54:18
**discovery** 2:2 7:21 8:2,9 12:5,6,8,15,15 12:16,17 14:20 15:9 15:14 64:13 65:16 69:18,22 70:9,15 71:14 73:17,18
**discovery's** 12:19
**discussing** 73:2
**discussion** 25:16 36:2,3,10
**discussions** 9:8
**disgorge** 30:7
**dismiss** 7:22 46:6,8 48:6,13 64:1,18
**dispute** 7:23 11:15 13:15 46:4 64:20
**dissipated** 59:12

**dissuaded** 41:20
**distribute** 23:24 24:1,2,3 27:18 36:11 52:2,12 53:2 67:2
**distributed** 17:19 20:4 24:22 25:9 44:3 45:20 51:12 54:4
**distribution** 19:13 23:15,18,23 25:3 26:19 30:11,12 31:1 31:8 34:20,21 35:21 36:21,21 37:13 45:19,19 54:5 57:13 57:16,20 59:22,24 60:8,11,13,17 67:22 67:24 68:1,6,8
**distributions** 45:2 54:6 57:21 58:16 59:6
**distributive** 24:21
**district** 1:2 4:19 7:1 17:23 18:19
**document** 9:18,20 9:21,21 10:4,8,17 72:11
**documentation** 9:7 9:7
**documents** 8:15 9:6 11:13 13:4,7 14:7 18:13,22,24 64:7 65:17,19
**doesn't** 25:6 41:24
**doing** 8:3 10:15 13:8 26:21 65:25 71:10
**dollar** 54:13,13
**dollars** 26:17,24 33:11 37:2 55:11
**donations** 33:11
**don't** 24:5 32:11 40:6
**double** 26:24
**drier** 55:10
**dual** 16:17

**due** 40:23 54:14 63:11 67:16

**e**

**e** 1:20,20 3:1,1 6:1,1 75:1
**earlier** 39:23 60:20
**early** 21:5 22:15 29:11 36:18
**earn** 22:24
**earned** 19:23
**earning** 41:6,12 42:10
**easily** 9:12
**east** 4:5
**eastern** 1:2 17:23
**easy** 66:18
**economy** 65:25 70:14 71:17
**edward** 4:4,16 5:17 7:3,10
**efficiency** 70:14
**efficient** 12:23 66:23 71:16
**efforts** 27:16 74:14
**either** 9:9 11:19 24:6 28:22 31:17 32:25 37:9 39:2 42:21 52:20 57:12 64:25 72:12
**electronic** 75:10,14
**else's** 62:8
**eluded** 37:14,21
**email** 9:9 35:1,1,15 35:16,18 36:14,15 36:19 51:18,23 54:11,20,21
**emailing** 36:16
**emails** 33:20 46:18
**emphasize** 60:21 61:4
**encourage** 47:5 60:21
**endeavor** 23:2 56:17
**ended** 13:7
**ends** 11:10

| | | | |
|---|---|---|---|
| enforcement 72:8 | evidentiary 2:2 | **f** | 43:8 46:12 70:17 |
| engaged 10:2 27:15 | 7:21 11:14,24,25 | **f** 1:20 75:1 | five 58:25 |
| engaging 41:2,4 | 38:12,13 69:8,9 | fact 26:9 27:2 28:18 | floor 4:5 5:10 |
| 42:4 | exactly 12:16 66:14 | 38:9 50:9 53:9 | flow 8:24 |
| ensue 13:12 | examined 66:5 | factor 21:2 | focus 73:7 |
| ensure 28:16 57:1,4 | example 31:24 | fair 11:17 68:7 | folks 20:7 54:9 |
| 57:22 | 42:14 53:20 | fairly 44:6,7,16 | follow 9:4,7 |
| enter 17:12 50:25 | excellent 58:14,20 | 46:20 | followed 8:16 |
| 59:3 | excess 49:20 56:3 | faith 14:6 | food 41:10 |
| entered 17:11 24:1 | exchange 7:20 8:14 | faltischek 4:2 | force 50:15 |
| 24:11 55:6 72:6 | 11:12 35:1 54:21 | far 18:21 51:15 | forced 62:17 |
| entirety 44:13 | 60:5 62:3 65:18 | 64:7 | foregoing 75:4 |
| entities 49:13,13,16 | exchanged 12:8,11 | fashion 31:3 | forensic 63:16 |
| 49:18,20,23,23 51:7 | 12:18,20,21,24 | favor 57:3 | forfeit 24:9 |
| entitled 12:8,15 | 13:24 74:10 | fbi 18:14 | forfeiting 56:5 |
| 51:25 52:5,8 63:20 | exchanging 10:2 | federal 1:14 5:2 | forfeiture 16:3,4,9 |
| entitlement 39:19 | 61:19 62:3,9 64:22 | feel 11:18 12:14 | 16:10,11,22 17:6,7 |
| 39:20 44:9 | exclude 15:22 34:16 | 26:22 52:20 53:1 | 17:10,13,13,16,17 |
| entitles 39:22 | excluded 57:24 | 64:9 | 17:20,24 18:6 19:3 |
| entity 32:3 | 61:20 62:4,14 | feels 13:18 | 19:4,7,18,19 21:23 |
| entry 17:5 49:15 | exclusive 34:15 | fictitious 32:10,11 | 23:5,6,8 24:18,20 |
| equal 52:14 | excuse 45:15 | 32:13,24 | 24:25 25:11 30:15 |
| equitable 28:16 | exemplary 10:23 | fide 7:23 11:15 | 30:16 36:1 37:21,22 |
| 31:8 45:19 | exist 41:17,24 45:7 | 13:15 46:4 64:20 | 37:22 38:20,21,22 |
| escrow 21:20 57:14 | 50:16 | figure 32:18 67:2 | 38:24 42:9,24 43:8 |
| esq 3:7,14,15,22,23 | expanded 64:5 | figured 12:22 | 50:11 54:15 55:21 |
| 4:9,16,23 5:5,6,13 | expect 17:14 19:11 | file 11:23 49:25 | 55:23 56:1 59:17 |
| 5:14 | 45:1 67:4 | 74:15 | forgotten 26:3 |
| essence 31:7 58:11 | expected 46:19 | filed 26:20 36:5 | formal 69:17 |
| essentially 62:14 | expects 20:16 | 43:5 45:6 48:5,11 | formula 28:16 |
| establish 71:5 | expensive 65:23 | 49:4,22 50:1 65:10 | forth 13:5 59:17 |
| established 51:15 | 66:20 | filing 12:5 14:6 | fortune 29:6 |
| estate 42:18,22 | expert 59:17 | 44:24 74:14 | forum 27:5 |
| 44:14,16 | explained 18:14 | final 17:13 55:20 | forward 26:2 29:17 |
| et 72:20 | expressed 9:15 | financial 3:11 | 45:5 47:19 61:14 |
| event 26:22 | extend 58:19 67:25 | financing 47:16 | 70:4 72:21 |
| everybody 6:3 54:1 | extended 68:3 | find 18:15 | found 18:20 19:1 |
| 61:9,19,24 62:8,8 | extent 12:14 13:8 | finding 19:14 | four 40:9 52:11 |
| 62:10 73:20 | 15:13 34:18 39:11 | findings 45:24 | 57:25 |
| everybody's 12:22 | 39:12 40:25 45:16 | fine 8:6 11:7 14:10 | fractured 51:10,11 |
| 62:2 | 52:6 56:9 57:18 | 17:1 69:1,21 70:13 | frankly 60:1 |
| everyone's 51:20 | 60:11 67:23 71:17 | 74:10,16 | fraud 17:9 18:19 |
| 52:9 59:25 | extra 74:4 | fingertips 62:8 | 19:6 25:11,17,18,22 |
| evidence 20:25 | extremely 18:11,24 | firmly 66:4 | 25:23,25 26:3,8,11 |
| 38:11 44:18,19 | | first 7:19 8:12 | 27:19 28:19 30:8,13 |
| 45:23 51:4,4,6 | | 25:18,19 31:14 | 38:6,7 39:4,15,18 |
| | | 35:15 39:17 41:4 | 39:19 42:8,18 44:21 |

52:7 54:3
**frauded** 40:3
**frauds** 42:15
**fraudsters** 43:20
**fraudulent** 30:5
  39:2,14 42:17,21
**freeze** 52:10
**freezes** 51:1
**fresh** 28:5 46:17
**friedlander** 5:8
**friendly** 44:21
**front** 18:20 19:16
  35:25 48:7 53:5
**fruit** 39:2
**fruits** 39:4,5,13
  42:8 56:4
**full** 20:5 52:14 68:7
**fully** 46:19 66:5
**fund** 30:7 40:5
**funds** 18:4 21:24
  23:15,24,24 24:1,2
  24:3 27:6 29:7
  31:21 37:18 45:20
  59:6 67:2
**furnish** 61:11
**further** 9:8 23:2
  55:16 69:13 70:11
  73:2
**furthermore** 69:25

**g**

**g** 6:1
**game** 38:25 59:25
**gaming** 8:23
**gas** 41:3,5 42:1
**gather** 60:6
**general** 8:9,11,13
  9:15
**generate** 19:25
  37:19
**generated** 39:24
**gentlemen** 44:18
**gershon** 1:7 6:6,10
**getting** 35:21 54:22
  57:4,24 62:21
**give** 6:12 8:8,11
  9:16 10:6 13:7
  16:21 35:10,11 61:2

71:18
**given** 59:7
**gives** 17:7
**giving** 13:8
**glad** 27:24
**gleaned** 71:25
**go** 9:2 17:24 19:9
  21:18 22:2 50:11
  54:14 59:1 71:7
**goal** 61:10
**goes** 17:18 46:1
**going** 11:2 12:12
  13:8,25 14:1,24
  20:17 21:8 24:22,24
  25:3 28:3 30:14,21
  31:10 32:7,9,18,21
  34:20 38:7 41:2,22
  42:2 43:13 44:2,3
  47:19 52:2,20 54:17
  54:18 55:1 57:16
  59:1,1,10,12 60:5
  60:15,16 61:5,14,16
  62:10,20,23 63:2
  64:17 65:19 66:16
  67:24 68:1 69:3,9
  70:4 71:10,18,19,25
  72:14,21,24 73:3,5
  73:7,7 74:12
**goldberg** 5:8 6:20
**good** 6:3,5,8,22 7:5
  7:7,16 62:16
**gotten** 33:1,2,4
**government** 16:20
  16:23 20:8,20,24
  21:3,15 27:5,11,23
  28:2,9,23 29:3
  30:13 32:19 42:5
  43:10,11,13,17,25
  52:19 55:20 56:5,17
  58:18 59:5,16,20,21
  59:22 70:21 71:4,10
  72:3,25 73:1,4,20
**government's** 16:15
  20:5 25:18 27:22
  43:8 57:1
**grammar** 46:20

**grand** 21:3
**grapple** 46:6
**great** 53:24
**group** 4:3 7:8 28:11
  29:19 39:23,23
  40:12,18,19 43:1,1
  43:2 51:7
**guarantees** 18:5
**guess** 13:9 38:25
  69:14
**guilty** 17:3,4 21:4,5
  42:4 49:14
**guys** 39:17,18

**h**

**hackensack** 4:21
**half** 26:16 42:3
**hamilton** 4:13
**hand** 34:25 37:4
  72:17
**hands** 22:8
**happen** 18:7 30:15
  32:8 55:2 61:3,20
**happening** 22:23
**happens** 18:9 48:19
  54:23 62:21
**happy** 8:6 58:7
  66:18
**hard** 19:16 21:8
  32:8,21 37:19 54:1
**hartmann** 4:9 7:7,8
**he'll** 35:11
**hear** 8:6 11:4 16:2
  16:17 25:5 38:3,14
  58:7 59:19 60:25
  63:1
**heard** 29:2,3 30:1
  35:18,21 36:12 37:5
  38:2,9,11,14 40:25
  41:1 42:1 50:8,22
  53:1 57:22 60:13
  61:17 68:8,14
**hearing** 2:1,2 7:22
  11:14,24,25 15:15
  15:16 29:3 35:20
  37:7,8 38:3 46:11
  46:12 55:18 59:18
  60:17 63:14 64:22

65:22 66:4 69:8,9
  70:3 74:12
**heck** 72:22
**held** 12:12 19:10,11
  23:12 27:1 58:16
  59:6 63:13
**help** 58:4
**helped** 33:17
**helpful** 23:4 70:20
**helping** 33:13
**helps** 56:15
**hey** 21:16
**hiding** 32:4 50:17
**hold** 21:20 26:23
  31:25 61:16 70:3
  71:14
**holding** 23:25 24:25
  27:17 31:22 32:1
  36:4 51:2 52:10,16
**home** 10:14 35:10
**homeland** 33:22
**hon** 1:21
**honor** 6:22 7:5,7,13
  7:16 10:6 12:4 13:1
  14:5 17:2,3 18:11
  23:17,19 27:1,4,24
  31:13 32:7,10,15
  34:24,25 35:8,15,17
  35:18,20,23 36:1
  37:5,10,14,20 38:11
  38:14,25 39:6,11,15
  39:17,21,25,25 40:6
  40:7,10,14,22,24
  41:4,8,11,25 42:7
  42:12,15 43:3,7,15
  43:24 44:4,10,17,19
  46:16 47:3,21,23,25
  48:19,24 49:5 50:6
  50:9,20,20,22,25
  51:3,10,16 52:3,6
  52:13,16,18,23,25
  53:3,6 54:20 56:14
  57:18,20 58:21 59:3
  59:14,18 61:4,17
  63:11,13 64:13 65:3
  65:21 67:14 68:24
  69:1,2,14 70:3 72:4

72:5,17 73:8,12
74:16
**honor's** 69:21
**hope** 10:20 61:3
69:16
**hopefully** 50:21
66:7
**hours** 66:21,22
68:20,21,22
**housekeeping** 69:15
**huh** 20:1 25:21
**hundreds** 55:11
**huntington** 3:5
**hurt** 40:21
**hyper** 8:8,12

**i**

**idea** 32:1
**identified** 29:9 57:5
**identify** 58:4,12
**identifying** 29:7,13
56:21 73:21
**illiquid** 31:25,25
**imagine** 51:11
**immediately** 21:15
22:12
**import** 16:4,13
**important** 24:17
50:23 58:13,23 60:3
**importantly** 27:13
**impose** 17:14
**impression** 14:19
**improper** 47:18
**improperly** 20:23
**incentive** 28:19
**included** 23:14
**including** 32:12
44:14 49:8
**income** 20:12
**incorporated** 55:21
**increase** 30:21
**incurred** 29:20
**indictment** 17:4
21:2
**indiscernible** 12:10
28:13 30:25 33:10
37:6 39:18 41:24
45:19 48:9,14 58:1

59:13 61:25 62:5,6
64:15 73:7,9
**individual** 19:8
**individually** 49:12
**individuals** 72:13
**industry** 8:23
**inferring** 11:5
**information** 7:21
10:2,3 11:12 13:23
14:17 15:19 16:22
19:17 29:15 54:8
60:6 61:11,19,20
62:3,4,7,19,20,21
62:25 63:3,7,17,19
64:7,10,22 66:6,9
66:17 71:13,18,19
71:19,23 74:9
**informed** 44:20
**initial** 9:5,20
**initially** 14:1
**injustice** 52:13
**input** 70:11
**inquiry** 16:8
**instance** 28:5 30:16
54:7
**instituted** 72:9
**intend** 37:4 68:6
72:3
**intended** 37:3 46:19
**intends** 24:2 60:11
**intense** 54:25
**intention** 36:11
59:7
**intentions** 59:11
**interest** 20:6,6 46:9
**interested** 7:3,8
**intermediate** 36:15
36:17
**intertwine** 55:9
**introduce** 46:19
**introduction** 31:14
**invested** 40:13
**investigation** 18:19
**investment** 31:20
**invited** 27:24
**involuntary** 14:3
44:24 45:6 46:1

49:7,21,25 50:1
51:24 64:19 70:2
**involve** 43:16
**involved** 13:21 22:6
28:6 40:15 49:3
52:19,22 60:22
**involving** 8:17
43:20 72:12
**irs** 54:5,6,13
**iscro** 33:14
**island** 1:14
**islip** 1:15 5:3
**israel** 33:18 34:1
**issue** 9:17,19 11:15
12:4 13:13,25 14:1
14:23 15:5 24:17,23
27:7 33:8 45:18
46:6,13 55:1 56:9
61:15 63:23 64:3,4
65:5 74:13
**issued** 63:23
**issues** 18:17,20
24:19 53:23 55:16
56:5
**item** 72:18
**items** 43:15

**j**

**j** 3:2,7
**jacob** 3:15 6:16,16
31:12,13 34:13
35:17 36:14 38:13
51:19
**jannuzzi** 3:2,7 6:6,8
6:10,10 7:18 8:3
19:22 35:13 36:8
53:6,8 65:21 66:2
66:24
**jannuzzi's** 66:19
**january** 31:17
**jennifer** 4:9 7:7
**jeremy** 4:23 6:25
**joel** 5:13 6:20
**join** 66:19
**joinder** 65:10
**joined** 64:13
**jonathan** 3:23 4:4
7:5,9

**joseph** 3:18 6:23
7:6
**judge** 1:21,22 6:8
8:7 15:4 25:12 33:1
54:22 55:24 56:7,12
67:5 68:19 74:3
**judgment** 17:11,17
17:20 20:19 23:6,20
23:21 24:8 27:9,10
27:12,15,19 30:16
36:6,7 49:15 72:6,8
**judgment's** 24:1,10
**judicial** 16:18,19,19
62:2 70:14 71:17
**june** 17:4
**jurisdiction** 27:21
52:21
**jurisdictional** 56:9
**jury** 21:3
**justice** 43:16,17,21
43:23 44:11

**k**

**k** 55:3,4 72:9
**katz** 8:18 10:16
**kaye** 3:17
**keep** 49:6 61:11,20
**keeping** 10:15
**keeps** 46:25 47:4,17
**kept** 10:14 19:23
**kessler** 26:5,6 28:24
49:10 56:23 64:2,3
64:6 70:23 73:17
**kind** 12:12 50:7
69:17
**kirshenbaum** 3:22
6:22,23 12:7,25
13:1 14:19 34:23,24
35:6,8 45:14 46:22
46:25 47:2,11,13,21
47:23,25 48:4 53:10
55:18,25 58:9,21
60:9,25 62:14 68:11
69:14 70:20,22
71:12,12 72:2 74:3
**klausner** 4:23 6:25
6:25 8:17,21,25 9:2
9:14,19,23 10:12,24

11:1 15:4 63:11
66:2
**knew** 21:6 33:18
**know** 7:20 9:25
10:8 11:23 16:7,11
16:13 18:3,21 19:10
19:13,16 20:15 21:4
21:13 23:13,19 24:8
24:17 25:7,9 29:1
29:25 30:14 31:5,18
31:19,24 32:7,9,15
33:20 34:16 37:16
37:17,21 38:19 39:7
39:17,21 40:7,8,8
42:7 45:9 50:7 52:4
52:16,23 53:10,12
53:13 55:4,7 56:23
57:10,14 58:25 59:1
61:21 62:23 71:1,8
72:5,24 73:13
**knowing** 36:13
**knowledge** 40:7
**knows** 17:3 43:24
**kwestel** 4:12 5:17
5:17 7:4,4

**l**

**l** 2:25 4:9 75:3,9
**lack** 31:7 34:16
**large** 21:16 43:24
45:13
**largest** 29:19
**las** 1:3
**late** 36:18 40:21
**laughter** 74:22
**law** 3:2 33:14 39:16
39:21 45:24 48:1,3
48:4 49:2 71:1
**lawsuit** 47:10
**lawsuits** 47:13,19
**lawyers** 74:7
**lead** 67:18
**learned** 16:11 21:21
37:7
**leave** 74:21
**left** 18:2 57:4
**leftover** 24:13

**legitimate** 34:5 38:8
47:13
**length** 58:22
**leonardo** 5:6 7:14
7:14 24:5
**lester** 3:22 6:23
**letter** 11:20,23 13:3
14:19,23 37:11
**letters** 54:21
**letting** 11:23
**liability** 7:24 46:4
64:20 71:2,3
**lifers** 48:11
**lifert** 31:16 32:2,5
**light** 29:2
**lightford** 4:3,4,4 7:9
7:9,9
**limited** 13:13
**lines** 20:15
**liquidated** 37:20
39:13 51:9
**liquidating** 52:17
**liquidation** 30:19
**list** 53:8,10 55:17,19
56:25 57:9,21 58:2
**listen** 62:9
**litigation** 31:4
33:19 48:9
**litigations** 48:8
**little** 16:21 46:24
59:11 61:2,18
**live** 9:11,16,21 10:3
10:8,17,18 66:6
**llc** 4:3,19 5:9 7:8
**llp** 3:9,17 4:11
**locke** 3:9 6:14,16
18:10 21:21 22:4
24:2 54:9 56:20
57:6,14
**lohrfink** 4:11
**long** 1:14 30:17
34:4 53:4
**look** 19:19 28:11
**looking** 12:18 13:23
14:4,8,11 15:22
40:9 63:3,8

**looney** 2:25 75:3,13
**loose** 11:10
**lord** 3:9 6:14,16
18:10 21:21 22:4
24:2 54:9 56:20
57:6
**lord's** 57:14
**loss** 56:22,24
**losses** 29:20 40:13
**lost** 20:7 33:5,6 34:5
**lot** 12:23 33:1,6
36:2,3,9 48:24
72:22 74:7
**louis** 1:21

**m**

**m** 3:22
**madoff** 29:5 55:10
**magic** 59:2
**magro** 4:11
**maintaining** 58:11
60:2,10
**major** 43:20
**majority** 29:18
45:13
**making** 26:19 36:21
41:6 43:13 45:24,24
46:11 55:4 60:14
**manageable** 55:13
**managed** 55:14,14
**manipulated** 9:17
**marina** 4:19 7:1
**mario** 4:4 7:9
**markers** 8:24
**matter** 1:5 2:3 6:6
7:19 9:15 29:5
50:10 52:21 62:20
73:6
**matters** 13:12 24:19
**mcandrew** 4:11
**mean** 34:11 43:14
44:7 45:6 58:25
66:8
**means** 32:17
**meant** 47:2
**meeting** 58:3
**melissa** 2:25 75:3
75:13

**members** 35:22,23
36:22 38:15 40:3,18
**mentioned** 24:18
28:6
**merely** 28:20
**met** 18:14,15,23
20:14
**michael** 3:2,7 6:10
**military** 31:20
**million** 17:6 23:6,13
23:14,19,20 25:1,15
26:16,23 33:11 36:5
36:7,8,9 37:2 51:24
52:1 54:7 62:5
**millions** 55:11
**mind** 8:3 46:17
**mine** 57:25
**mineola** 75:21
**minimum** 28:17
51:2 70:25
**minor** 43:18
**misguided** 59:12
**misimpression**
13:20
**mistake** 47:3
**misunderstanding**
25:6
**moderate** 10:14
**moment** 14:15
24:23 25:4,7
**moments** 54:25
**monday** 9:24
**money** 17:17 18:2
19:25 20:4,7 21:18
22:8,18,19,25 23:6
24:7,13 26:25 28:5
28:7,8,8,18 30:16
30:20,21 33:2,4,5,6
33:12,15,17,24 34:5
36:3 40:19,19,20
41:6,12,12 42:9
48:20,25 49:11 52:6
54:12,16 55:11 57:2
62:6 66:13,15,15
70:7,15 71:20 74:15
**monies** 18:6 19:22
20:16 22:4 23:7,9

23:11 25:9,14 27:16 27:17,18,21 28:3,20 30:4 31:8 42:11,12 48:20 51:1 52:3,10 52:10 57:13,15 59:12
**monitored** 54:2
**monte** 33:8
**month** 22:14 56:16
**months** 18:16 32:2
**moot** 66:8 74:13,14
**morning** 6:3,5,8,22 7:5,7,16 35:11 36:18 53:1
**moscou** 4:2
**motion** 7:22 12:22 13:19 15:15,23,23 46:7 62:1 63:13,15 64:1,11,13,14,17,18 65:2,6,9,12,14,19 67:13,15,16 74:1,14 74:15
**motions** 20:21 46:6 48:6,13 55:16
**move** 14:13 61:14 70:4 72:21
**moving** 61:10
**mulholland** 30:1 31:5,16 48:12
**multiple** 68:12 74:6
**music** 48:22,23

**n**

**n** 3:1 6:1 75:1
**naftoli** 33:14
**name** 47:15,17
**named** 47:9
**nature** 8:25 34:3
**nearly** 40:8
**necessarily** 42:23 44:24
**necessary** 64:9
**need** 10:13 11:24 12:16,21 43:6 62:20 67:14 69:7,9 71:22
**needlessly** 71:21
**needs** 60:24 61:3,3 66:9

**negative** 34:7
**neither** 64:3
**net** 34:6
**never** 32:23
**new** 1:2 3:5,12,12 3:20,20 4:7 5:11 19:22 28:7,18 41:2 42:4,9 53:21 57:15 75:21
**news** 29:14
**nj** 4:21
**nomenclature** 25:18
**non** 10:17 45:4 52:5
**normally** 29:10
**north** 48:9,17
**northern** 5:9 6:19 49:17
**note** 18:11 20:18 26:10 65:23
**notice** 23:5 59:7
**noticed** 22:12
**notified** 22:12 54:9 54:10 60:12
**notify** 11:19 57:8 68:5 69:6,11
**notorious** 43:25
**november** 22:15,16 22:25 55:6 69:4 73:23 74:3,5,8,11
**number** 8:16,21 9:1 9:6 11:9 25:15 28:10 39:10,11 40:24,25 55:20 57:1
**numbers** 9:12,16
**ny** 1:15 4:14 5:3,11

**o**

**o** 1:20 6:1 75:1
**object** 15:11 41:13 41:22 62:10 63:21 73:10
**objecting** 12:9 15:13
**objection** 12:5 33:9 60:19 62:1 63:17 70:5 72:21 73:6

**objective** 57:2
**obligated** 26:23
**obligation** 54:24
**obtained** 20:23 21:14 27:9 53:12
**obviously** 22:1 60:4 69:7 71:24
**october** 75:23
**odd** 23:20
**offense** 53:24
**offer** 56:14
**office** 3:2 5:1 10:15 10:16,20 19:7 31:6 56:23 58:10 66:23
**official** 9:21
**officials** 43:23
**oh** 11:6
**oil** 19:24 22:18 41:3 41:5 42:1
**okay** 8:13 11:6 12:1 12:2 15:25 17:2 32:23 33:24 34:22 37:1 40:13 42:14,18 47:25 57:10 64:13 65:20 74:17
**old** 75:19
**once** 10:3 22:11 26:9 66:5 68:1
**operating** 28:1
**opportunity** 10:19 33:7 57:22 58:12 59:8 60:13 68:7,7 72:15
**oppose** 59:9 67:16
**opposition** 48:6,12
**opt** 31:7,7 45:18
**order** 11:13 16:3,4 16:9,10,11,22,25 17:5,7,10,12,13,15 17:16 18:8 19:4 23:5,8 24:6 30:15 36:1 37:21,22,23 38:21,22,22,24 42:9 42:24 45:20 50:11 50:25 55:21 57:20 59:4 63:23 64:21 67:4,18

**order's** 24:14
**ordered** 50:24 67:8
**organization** 17:22
**originally** 9:18
**outcome** 32:9 71:22
**outset** 49:3
**overall** 44:12 50:10 50:10,19
**oversee** 44:5
**overseen** 43:6
**oversight** 16:18,19 16:19 42:5,13
**overview** 8:9,11,13
**owe** 72:23
**owed** 48:20,22,24 49:11
**owes** 72:22
**owing** 40:24

**p**

**p** 3:1,1 6:1
**p.c.** 4:2
**p.m.** 74:25
**page** 67:1
**paid** 53:13
**paper** 72:18
**papers** 12:20 65:4
**park** 3:4,19
**part** 12:9 17:4 21:6 30:23 34:19 43:4,17 44:12 49:16 51:7 54:21 55:15 65:2,6 65:8,12 71:4
**partial** 36:5,6,21 52:15 59:22,23
**participate** 13:17 14:24 28:25 30:9,25 45:1 62:13,22 64:15
**participated** 8:18
**participating** 15:14
**participation** 13:11 43:16
**particular** 40:5 44:9 49:9 64:21 70:8
**particularly** 58:2
**parties** 6:19 7:4,8 10:1 26:1,14 56:19

59:20 60:12,22 61:4
64:22 67:14,15 68:6
69:4,7,10 70:7,15
71:15 74:8,11
**partner** 31:10
**partners** 32:4
**party** 12:19 13:21
47:14 48:17
**pause** 6:4
**pay** 18:4,6 20:12,16
22:25 41:9
**paying** 47:17
**pc** 4:18
**penalty** 17:1
**pending** 63:13
**people** 9:2 26:7
29:16 31:15 33:2,5
35:9,19,24 37:17
38:2 41:1 45:2,7
54:3 61:1
**percent** 29:20 66:24
**percentage** 28:17
**perfectly** 73:9
**peril** 61:6
**period** 30:18 60:5,8
60:16,18 61:5,9,12
61:13,16 67:23,24
67:25 68:2 72:1
73:22
**permits** 20:11
**permitted** 13:4
14:24 70:4
**perpetrated** 29:16
**perpetrating** 39:15
**perpetration** 39:3
**person** 34:9
**personally** 49:21
**persons** 44:8 51:7
51:12,13 52:14
**petition** 14:3 17:21
26:17 41:19,21 43:5
44:24 45:6 47:12
49:7,21 64:19 70:2
**petitioners** 26:22,25
27:2,12 29:21 47:8
57:8

**petitioning** 6:23 7:1
7:6 14:14 46:2 49:1
51:24 63:21
**ph** 7:3,9,25 8:17
13:2 17:22 21:14
30:1 31:16 33:8,15
41:14 55:3,10 63:4
**phone** 9:9
**picking** 60:8
**piece** 72:18
**pieces** 43:3,4
**pinpoint** 11:12
**place** 4:20 16:10,12
18:8 24:15,18 30:16
36:2 38:22 40:16
64:6 73:18,19
**placed** 48:20
**plainly** 66:14
**plains** 4:14
**plaintiff** 15:7
**planning** 36:20,20
37:12
**plate** 6:9
**play** 29:5,11
**playing** 16:16
**plaza** 4:6 5:2
**plea** 17:5 55:5
**pleaded** 17:3,4 42:3
49:14,14
**pleading** 48:5,12
49:4
**please** 6:13 55:17
56:1 69:11
**pleased** 11:4
**pled** 21:4,5
**plus** 23:20 49:13
**point** 12:10 21:12
21:24 22:19 25:1,2
26:20 32:16 38:6,14
39:22 48:21 49:5
56:7 63:20,22,24
65:3 69:21 72:18
73:1,9,14
**pointed** 38:11
**points** 50:9 58:9
**ponzi** 21:7 25:19,22
25:25 29:16

**pool** 30:20,20
**portion** 23:15
**position** 8:5 10:8
11:19,21 14:5 15:21
19:6 27:22 34:10
41:13 48:10 52:24
53:2,4 57:10 58:15
58:23,24 59:8 63:12
63:14,18
**possible** 20:8 57:3
66:18
**potential** 30:2 50:10
60:17 69:23 73:6
**practice** 65:14
**prefer** 22:2
**prejudice** 58:15
60:1
**preliminary** 17:5,7
17:9,12
**premature** 46:24
**prepare** 64:21
**present** 16:4 21:3
51:8
**preservation** 51:16
51:20
**preserve** 59:25
**preserved** 21:19
27:6
**presiding** 6:2
**pressure** 50:17
**presumably** 28:9
36:23 38:2 39:6
**prevent** 41:18
**principal** 32:13,17
**printed** 35:10
**prior** 11:25 20:19
21:9 23:10,16 61:18
**pro** 28:13,18,24
30:11 31:8
**probably** 8:1 21:1
29:20 46:24 47:16
59:11 66:22
**probation** 17:19
**problem** 14:22 67:9
**procedure** 69:15
**procedures** 43:8

**proceed** 57:17
62:24
**proceeding** 2:3 46:5
62:16
**proceedings** 14:25
51:2 62:13 72:9
74:25 75:5
**proceeds** 39:9,23
52:15
**process** 18:12,25
20:14 22:6 32:6
41:6 44:4,13 67:16
71:25
**produced** 9:18 14:7
18:13 53:10 54:16
55:18 72:13
**productive** 8:20
**profits** 32:10,11,13
32:24 38:16,17
**prompted** 31:18
**proper** 46:2 67:13
**properly** 69:16
**properties** 40:16
**property** 16:24
31:21 53:19 56:3
**proposal** 70:8
**proposed** 68:8
70:21
**proposing** 71:4
**prosecute** 64:1
**prosecuted** 42:16
**prosecution** 16:15
**protect** 52:9 60:1
62:10
**protected** 51:21
**prove** 13:14 37:2
**provide** 7:18 22:3
22:17 45:21 71:13
**provided** 8:15 9:7
9:20 18:22 66:6,10
**provides** 23:5
**public** 26:1 29:15
**pulling** 11:3
**purpose** 9:22 25:10
47:18
**purposes** 25:16
50:2 70:1,14

pursuant 27:15,18
push 65:22
put 12:5,20,20
  14:14 18:8 22:16
  24:15 33:9 54:24
  56:15,16 64:3 71:14
  74:5,7
putting 24:23 50:17
puzzle 43:4

**q**

qualified 46:3,14
  61:15 64:24,25 69:5
queen 72:7
question 10:5 13:13
  25:8 37:12 61:13
  64:12 73:25
questions 8:21 9:1,1
  9:6
quick 46:17 64:12
  73:25
quickly 53:6
quite 9:14 26:9
  30:17 45:23
quo 51:16,20 58:11
  60:3,10
quoting 23:8

**r**

r 1:20 3:1 6:1 75:1
rabbi 33:14
race 43:2
radical 34:21
raise 13:14 46:23
raised 58:9
rata 28:14,18,24
  30:11 31:8
rate 37:10 50:6
reach 28:12 46:12
  69:4
reached 51:3 69:10
  69:18
read 47:5
reads 23:19
ready 11:23 35:21
real 39:4,5 60:22
  61:3

realized 53:19,22
really 16:19 22:13
  25:11 31:24 32:8
  34:5 38:21 41:13
  43:6,9 46:1 52:22
  62:12 70:6
realty 5:9
reason 15:10,22
  21:6 44:10,20,23
  52:22
reasonable 53:15
reasonably 26:8
receive 25:3 28:17
  28:19
received 9:25 13:2
  21:16 30:4 33:11
  35:9 37:1 38:1
  51:14 72:18
receives 10:8
recognize 27:22
  67:10
recognized 27:10
recognizing 58:23
reconsidering
  63:25
record 27:25 48:1
  50:23 51:6 59:4
  67:20 75:5
recover 32:10,17
  33:13 42:21
recovered 18:6 19:1
  25:15 27:16 28:9,21
  37:17,18 53:9 54:4
recovering 19:15
recovery 53:16
recreate 12:18
  14:11
reduced 23:20
reduction 54:14
referring 46:25
  49:6
refund 21:14,16,22
  22:4 23:13,21 54:13
refusing 64:8 65:16
regard 29:13
regulations 43:10

reiterate 49:7
relate 50:11
related 13:12
relates 49:9 69:18
relationship 16:14
  16:23
relationships 44:22
relatively 55:13
relatives 45:4,4
relayed 54:8
relevant 63:24
  70:12
relief 67:15
remain 50:21
remains 53:5 56:9
remarks 37:15
remember 35:23
  40:18
renew 62:12,25
  63:2
renewal 61:18
rent 41:9
repaid 23:9
replacement 43:9
report 8:1 18:19
reported 55:20
reporter 75:10
reporting 56:8,10
  56:11
represent 29:18
  33:5 45:8,11,12
  57:6
represented 29:17
  31:16 48:12
represents 29:19
request 14:10,10,12
  14:16,18 59:3 63:1
  63:3 66:19
requested 9:11 12:6
requesting 13:3
required 9:6
requirements 70:2
residential 31:20
resolution 74:9
resolve 55:1
resolved 56:10 66:3
  66:4

resources 29:7 62:2
respect 7:20,22 8:9
  8:10 11:15 13:20,24
  14:2 15:9 16:5,15
  16:22,24 19:22
  29:12 30:18,19
  45:22,25 46:8 53:8
  54:16 55:23 58:24
  60:13,17 61:14 63:5
  63:11,22 64:6,10,20
  65:18 67:1 68:8
  69:5,8,18,22 70:7
  70:10,15,21 71:13
  71:15 72:19 73:17
  73:20
respectfully 27:21
  59:3
respond 13:20 15:4
  31:12
response 37:11
rest 52:2
restitution 16:25
  17:15,17,18 18:7,8
  20:5 24:5,14 25:1
  29:8 34:19 54:15
  55:21
restrictive 20:10
result 30:15 31:2,3
resulted 40:13
results 37:24
return 30:4 32:24
  73:25
returns 26:20
reveal 73:14
review 10:4 11:13
  63:5
reviewing 10:2
right 6:5 11:11
  13:25 17:8 21:24
  22:23 28:8 39:7,9
  41:15 42:10,16,21
  42:25 44:15 51:6,14
  62:7,18,18 66:9
  69:3 73:10,16
rights 19:8 51:20
  52:9 59:25

**rimberg** 5:8,14 6:18
  6:18,21 12:4,17
  13:18 14:4,18 15:8
  15:18,20,25 29:19
  32:20 54:10 56:20
  57:6 61:17 63:6,9
  63:12,19 64:12 65:2
  65:7,13,20 73:25
  74:16
**rimberg's** 13:3 15:6
**road** 31:1 75:19
**robert** 5:14 6:18
**role** 16:16,17 18:10
  29:4,10,11
**room** 37:16
**rosenberg** 3:18 6:24
  7:6 13:22 26:3
  28:23 41:9,21 47:2
  48:1,7,19,24,25
  49:9 50:2 56:22
  64:1,2,6 69:19,22
  69:23 70:5,10,22,24
  71:5,13 72:10 73:2
  73:5,6,17
**rosenberg's** 49:12
  49:19 70:16 71:8
  72:15 73:11
**rossi** 55:10
**roughly** 35:24
**rules** 43:10
**ruling** 65:11
**run** 21:17
**running** 21:7 66:11
  66:12
**runs** 19:3
**rush** 52:12
**ruskin** 4:2
**rxr** 4:6

**s**

**s** 3:1 6:1
**sarah** 4:3 7:8
**satisfaction** 36:5,6
**satisfied** 68:10
**satisfying** 70:2
**saying** 44:18 45:10
  45:12 47:4,17 65:21

**says** 30:13 44:25
  59:5 61:23
**scarcella** 1:21 6:2
**scheck** 13:20
**schedule** 2:2 9:11
  11:24 54:21
**schedules** 8:16
  26:17
**scheduling** 7:21
**scheme** 21:7 24:21
  25:19,22 26:1 29:16
  32:4 39:14
**schneck** 5:13 6:20
  6:20 13:3 32:20
**scholer** 3:17
**school** 33:10,12
**seated** 6:3
**second** 25:20,22
  28:19 29:19 39:19
**secret** 12:12 28:1
  32:21
**security** 33:23
**see** 12:8 14:7,9 15:2
  22:19,20,24 23:1
  28:12 32:10,11,24
  34:2 35:15 58:3
  62:22 66:12 73:22
**seeking** 30:4
**seize** 17:8 19:9
**seized** 24:9
**send** 10:18
**sense** 57:19,23 70:7
**sent** 35:16 36:13
  51:18
**sentenced** 17:12
**sentencing** 18:9
  22:23,24 23:1,10,16
  55:22 56:6
**separate** 26:12
  65:25 66:10 70:3
**separately** 50:3
**september** 1:17
**series** 38:8
**serve** 12:19 14:8,9
**served** 14:10 72:9
**serves** 56:1

**set** 11:14 15:15 37:1
  51:23 58:3 59:18
  69:9 74:1
**settlement** 27:6
**shakes** 50:13
**shalom** 3:15 6:16
  31:12
**sham** 62:23,23,24
**share** 28:24 52:8
**sharing** 19:17 21:4
  52:6
**sherri** 2:25 75:3,9
**sholer** 55:3,4 72:9
**short** 21:17
**shortly** 8:14
**shouldn't** 12:12
**show** 33:19
**showed** 46:18
**shows** 66:14
**shulman** 33:8,10,16
**shulman's** 33:14
**sic** 13:2
**side** 28:15 62:9,11
**sides** 53:24
**signature** 67:7
**signed** 20:19 21:6
**significant** 21:1
**similar** 33:8 54:17
  54:18
**similarly** 48:13
**simply** 43:2 49:10
  51:19 59:2 61:23
**single** 34:9 66:16
  72:11,12
**sir** 69:12
**sister** 33:17,25
**sit** 62:9,11
**sitting** 57:14
**situated** 48:13
**situation** 19:24
  29:25
**six** 56:16 57:25
  58:17,25 59:10,14
  59:19 60:5,8,15,18
  60:22,24,25 61:5,9
  61:12,13,16 65:22
  67:2,23,24,25 68:1

  71:7,10 72:1 73:8
  73:21
**small** 29:6 55:13
**smaller** 43:25
**soft** 37:20
**sold** 53:21
**somebody** 34:4
**soon** 11:18,20 69:10
**sorry** 26:6 49:14
**sort** 17:9 21:8 28:12
  60:9
**sorts** 37:7 42:15,16
**source** 38:19
**sources** 37:18
**speak** 13:1 25:12
**speaker** 26:5 68:19
  68:22,23 69:1,2,12
**speaks** 71:1
**specific** 21:24 63:7
**spell** 46:20
**spend** 21:19 70:7,15
**spending** 71:20
**spent** 22:9 29:6
  71:20
**spoke** 70:20,24
**spread** 10:18
**spreadsheet** 9:16
  10:13,19
**spreadsheets** 66:7
**stage** 11:11 38:25
  59:24
**stamp** 10:17
**stand** 7:20 16:5
  37:11 45:7 59:21
**standing** 13:17
  14:13 15:10,21
  63:15,23 64:4,5
**stands** 9:10
**standstill** 71:7
**start** 43:13 65:14
**state** 30:3 61:23,24
**stated** 26:17
**statement** 11:17
**statements** 66:11
**states** 1:1 5:1 7:13
  7:15 16:2 17:7,18
  17:23 18:14 19:7

20:20 24:10 57:9
  58:10 61:8
**status**  2:1,1 22:17
  51:16,20 58:11 60:3
  60:10
**stay**  15:8 74:23
**stayed**  15:7
**stays**  62:19
**step**  6:6 56:12 65:1
**stepped**  26:2
**steps**  11:24
**steven**  4:12 5:17 7:4
**stipulate**  67:3,7,11
  67:17
**stipulation**  67:12
**stock**  53:20
**stolen**  31:21 33:12
  33:15
**stood**  39:16
**stop**  47:13,19
**stopped**  48:22,24
**story**  40:5
**street**  72:24
**string**  46:18
**strongly**  60:21
  61:10 64:9 66:3
**style**  29:5
**subject**  13:14 38:20
  42:9,13,13,24 43:6
  46:4 70:8
**submit**  65:3 67:7
**submitted**  65:9
**subsequent**  9:21
  37:6
**subsequently**  16:11
  21:21
**substantial**  38:16
  38:16,17 55:12
**successful**  31:4
**sudden**  52:11 65:8
  65:8
**suddenly**  26:3
**sue**  42:20
**sued**  32:6 33:16,19
  34:1 45:5 48:14,16
  48:23,25

**suffices**  14:9
**sufficient**  58:17
**suggest**  15:1 20:22
  57:18 64:9 74:8
**suggested**  67:14
**suggesting**  10:24
  59:5 60:20
**suggestion**  51:22
  56:15 57:25 58:7,8
  58:15,20
**suing**  43:1,1,2 50:13
  50:14
**suite**  75:20
**summer**  22:6
**sunday**  35:18 36:12
  36:17 51:19
**superior**  28:8
**support**  51:6
**supposed**  22:20
  41:17
**supposedly**  32:4
**supreme**  72:7
**sure**  21:19 29:3,11
  33:20 34:7,15 44:5
  44:13 54:2 55:24
  59:2 65:24 66:25
  69:21 74:23
**suspect**  46:10 61:14
  63:2
**system**  43:17,18

**t**

**t**  75:1,1
**take**  12:14,15 33:7
  34:7 51:8 58:8,11
  59:8 64:25 65:16
  66:22 72:15 73:18
  73:19 74:15
**taken**  11:25 34:6
**takes**  15:3 47:16
**talk**  11:2 32:19,19
  55:8,9 72:25
**talked**  20:2 54:5
**talking**  35:19 47:1
  68:12,17
**tax**  21:14,16,22
  22:3 23:13,21 26:20

**telephone**  11:20
**tell**  28:14 33:1,18
  37:5 44:19 52:24
  53:2 70:22,23
**tells**  47:6
**ten**  35:24 38:15
**term**  31:7 34:16
**terminated**  68:2
**terms**  8:22 18:10
  19:3 21:13 23:17,23
  24:2 44:2 57:10
  59:20,22 69:15 70:3
  71:2 72:8,19,20
**terrible**  52:13
**texas**  31:21
**thank**  6:17 7:11,17
  8:7 10:10 12:2
  15:12 16:1 23:4
  24:16 25:13 29:24
  31:11,13 34:11,13
  34:22,24 56:13 58:6
  68:10,13 74:16,17
  74:19
**theories**  30:5
**thing**  10:12,15 40:9
  46:23 50:7 62:22
  70:19
**things**  7:20 8:24
  10:25 16:5 21:11
  28:10 37:7 39:19
  44:3,7 46:17 59:21
**think**  9:14 10:3,7
  12:15 13:6 14:6
  15:13 17:6 19:3
  21:1,5 22:2,19
  27:25 31:5 36:7
  43:15 45:10,11 46:1
  50:4,6,8,17,21
  51:16,25 52:3,12
  57:25 58:14,20,22
  59:4 60:2,20 61:7,9
  63:12 64:15 69:16
  69:20 70:13,13,20
  70:24,25 71:1,9,16
  71:23,24 73:4
**third**  48:17

**thought**  73:12
**thousands**  55:10
**three**  46:2 47:8
  68:20,21,22
**threshold**  11:14
  14:1
**thrown**  41:19,22
**tie**  11:9
**till**  22:16
**time**  16:8 17:14
  20:15 30:1,18 32:21
  38:6,15,23 41:8
  43:23 48:21 51:8
  55:3,4,22 56:6
  58:18 59:19 61:2,5
  62:2 68:15 70:6
  72:18 73:1,9 74:15
**timeframe**  56:17
**today**  10:21 12:23
  27:24 38:11 39:16
  41:1 44:18 46:19,22
  50:22 55:16 63:19
  66:7,21 67:19 68:20
**told**  13:6 19:4 21:25
  32:3 46:22 62:9
**tomorrow**  36:23
**top**  36:19
**total**  66:11,12
**totaled**  54:6
**totality**  49:19
**totally**  41:10
**touch**  59:16 72:2
**tower**  4:5
**trace**  17:8 19:6
  21:24 40:1,1
**traceable**  40:23
  42:17 52:7
**traced**  37:23 40:12
**traffic**  36:16,17
**transaction**  66:16
  72:12
**transactions**  38:5
  38:17 39:3,5,6
  40:12 42:4
**transcribed**  2:25
**transcriber**  75:10
  75:14

transcript 47:6 75:4
transfer 33:17,21
transferred 33:24
treasury 24:10
treated 32:19 44:5
44:16
tremendous 19:14
triggering 33:22
trip 74:4
trips 74:6
trouble 52:2 61:1
true 47:19 75:4
trumps 19:7 27:23
trust 40:4 73:19
trustee 29:4,10,12
44:1,11
trustees 43:22
try 20:5,11 23:2
59:14
trying 8:23 11:9
18:15 20:3 21:9,10
33:25 50:15 60:6,23
turn 64:8,23 65:16
turned 31:15,22
39:2,12 40:2,11,17
40:22 53:11,15,20
54:13,17 63:4
turning 54:12
two 26:7,9,14,24
29:21 35:17,20,25
36:10 37:8 38:9,10
39:11 40:25 42:3
46:16 54:6 55:24
56:5 66:10,21,22
type 12:14 16:25
25:3 40:4 50:23
51:3 60:17
types 24:19 53:18

**u**

u.s. 1:13,22 18:5
20:8 37:15,22 40:25
52:18 53:1 56:23
uh 20:1 25:21
ultimately 11:9
26:15 27:22 50:20
51:13 69:25

undercuts 41:7
understand 8:22,23
9:10 50:5 54:23
55:17
understanding 9:23
16:5 23:12,18 32:22
53:11 67:5,6
understands 72:4
understood 54:11
undertake 11:18
undertaken 58:18
72:1
undertaking 30:10
30:17
unfortunately 33:5
unidentified 26:5
68:19,22,23 69:1,2
69:12
uniondale 4:7
unique 15:21
united 1:1 5:1 7:12
7:14 16:2 17:7,18
17:23 18:13 19:6
20:20 24:10 57:8
58:10 61:8
universe 25:7,10
26:13 29:22 39:8
45:8,11 52:4,14
55:8,12 56:18 57:12
58:12 60:7 73:21
untrue 41:11
unwieldy 49:24
update 7:19 22:17
23:1
upheld 70:1
upholding 63:14
upwards 23:13
urge 61:10
use 18:5 25:15 61:5
usually 24:19

**v**

valid 61:21 73:9
valuable 20:24
value 23:7,8 26:16
27:3 36:9 38:13,13
53:14,19,22 56:10

various 8:16,21
vast 29:18
ventures 28:7
venue 28:23
verbally 61:25
veritext 75:18
version 9:11 10:17
victim 26:11 31:2
34:2,5 50:12,12
57:3,24
victims 16:25 17:18
17:24 18:2,7 19:11
19:12 20:3,4,6,12
21:10,20 22:2,9,25
23:3,10 24:13,24
25:2,2,7,10,11,17
25:23,24 26:2,8,13
26:14,25 27:2,19
28:4,11,12,14,17,18
28:24 29:13,17,21
29:22,23 30:8,13,14
30:24 32:25 33:3,4
33:4 34:17,18,21
39:6,8,8,17,18,24
42:10 43:14 44:15
44:21 45:17,17,21
50:13,13,14,15 52:4
52:5,5 54:3 55:8,10
55:13 56:2,18,21,24
57:2,4,7,10,11,12
58:4,12 59:24 73:21
view 13:16 25:24
49:25 69:21
virtually 72:11,23
virtue 71:25
vis 49:11,11
voices 68:12 74:19
voluntarily 18:22
22:3 31:22 65:17
voluntary 41:21
voute 4:11

**w**

wait 71:22
waive 21:2
waived 17:3
walk 20:14

want 9:15 12:14
13:19 15:23 19:9
21:17 27:8 43:12
44:25 49:5,6 50:4
57:4 59:9 60:12,24
61:20 65:15 66:25
71:18,19 74:1,23
wanted 10:17 21:12
21:19 22:16 34:15
69:20
wants 32:7 43:11
61:19 62:15
warren 4:16 5:17
7:3,3
washington 4:20
17:21,25 18:5
wasserman 3:14
6:14,14 8:1,3,6,7,13
10:22 11:6,8,17
12:1 25:5,12,14,22
26:6 31:10,12 35:1
35:4,11,16 36:14,16
36:19 38:12 39:16
41:7 46:16 47:4,22
47:24 51:18,22 55:7
58:7,14 60:3,19
66:25 67:9,21 68:4
68:9,15 69:17 70:18
73:12
wasserman's 10:16
58:23,24
waste 62:1
wave 58:22
way 10:22 14:23
20:23 23:18 31:14
34:6,8 40:22 41:16
44:4 52:9 55:25
56:12 59:14,25
64:23,25 69:6 72:24
74:6
we've 8:9 12:7 20:2
26:21 28:1,21 30:16
31:22 46:12 54:5
60:7 61:1
wednesday 36:15
36:18 51:23 69:18

| | |
|---|---|
| **week** 35:2,17,25 37:6 60:5,8,16,18 60:22 61:9,12,13,16 63:14 67:23,24,25 68:1 72:1 73:22 | **x** |
| | **x** 1:4,11 |
| | **y** |
| | **yeah** 21:11 22:5 |
| **weeks** 35:20,25 36:10 37:8 38:9,10 56:16 57:25 58:17 58:25,25 59:10,15 59:19 60:24,25 61:6 65:23 67:2 71:7,10 73:8 | **year** 22:7 36:6,22 36:23 37:13 42:2,2 72:14 |
| | **year's** 52:12 |
| | **years** 25:25 29:15 40:10 43:3 52:11 |
| | **yesterday** 9:25 10:13,20 11:2 |
| **welcome** 19:16 | **york** 1:2 3:5,12,12 3:20,20 4:7 5:11 75:21 |
| **went** 18:23 54:22 66:14,15,16 | |
| **wet** 11:3 | |
| **wexler** 54:22 56:12 | **z** |
| **whatever's** 12:11 12:21 | **zelinger** 13:2,14 41:17,23 46:25 47:4 47:7,7,9,10,12,14 47:22 48:1,5,7,16 48:17,20,20,21 49:1 49:4 72:10 |
| **wheel** 12:18 14:11 | |
| **white** 4:14 | |
| **whitefish** 4:3 7:8 | |
| **willing** 58:19 | |
| **wish** 68:13 | **zelinger's** 41:14,18 48:10 |
| **wondering** 46:24 | **zellinger's** 72:16 |
| **woodwork** 31:3 | **zucker** 5:17 7:4 |
| **word** 36:10 | **à** |
| **worded** 14:23 | |
| **words** 30:11 46:2 | **à** 49:11 |
| **work** 8:25 9:12 10:9 18:15 19:14,16 20:3 20:10,11 44:1 68:18 72:11 | |
| **worked** 54:1 55:19 | |
| **working** 11:8 19:21 28:1,15 43:22 44:11 44:12 47:11,13 53:14,23 56:7 | |
| **workout** 30:10 | |
| **works** 8:24 68:23 | |
| **world** 3:11 | |
| **worry** 57:23 | |
| **worth** 23:1 32:1 | |
| **wouldn't** 24:9 | |
| **wrong** 32:18 55:5 56:2 62:18 | |