1    UNITED STATES BANKRUPTCY COURT

2    EASTERN DISTRICT OF NEW YORK

3    Case No. 8-14-72941-las

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    GERSHON BARKANY,

8

9            Debtors.

10

11   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

12

13                  U.S. Bankruptcy Court

14                  Alfonse M. D'Amato Federal Courthouse

15                  290 Federal Plaza

16                  Central Islip, New York

17

18                  September 16, 2014

19                  11:51 AM

20

21   B E F O R E :

22   HON LOUIS A. SCARCELLA

23   U.S. BANKRUPTCY JUDGE

24

25

1    Hearing re:  Motion to Dismiss Case Filed by Edward E.

2    Neiger on behalf of Gershon Barkany.  (Entered:

3    08/13/2014)[13]

4

5    Hearing re:  Motion to Dismiss Case Filed by Alan H. Katz on

6    behalf of Barkany Asset Recovery & Management, LLC.

7    (Entered 08/18/2014)[15]

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Nicole Yawn, Melissa Looney, Penny Skaw

1    A P P E A R A N C E S :

2    GERSHON BARKANY

3        Attorney for Debtors

4        775 Park Avenue

5        Suite 205

6        Huntington, NY 11743

7

8    BY:  MICHAEL JANNUZZI, ESQ.

9

10   KAYE SCHOLER, LLP

11       Attorneys for Petitioning Creditor, Joseph Rosenberg

12       425 Park Avenue

13       New York, NY 10022

14

15   BY:  LESTER M. KIRSHENBAUM, ESQ.

16       JONATHAN M. AGUDELO, ESQ.

17

18   RUSKIN MOSCOU FALTISCHEK, P.C.

19       Attorney for Ed Lowey (ph), Jonathan Lifeler (ph),

20       Murray Lifeler, and Sarah Lifeler and Whitefish, LLC.

21       East Tower, 15th Floor

22       1425 RXR Plaza

23       Uniondale, NY 11556-1425

24

25   BY:  MARK S. MULHOLLAND, ESQ.

1   LOCKE LORD

2        Attorneys for Barkany Asset Recovery & Management

3        3 World Financial Center

4        New York, NY 10281

5

6   BY:  ALLEN C. WASSERMAN, ESQ.

7        SHALOM JACOB, ESQ.

8

9   LAW OFFICE OF KRAMER & SHAPIRO, P.C.

10        Attorney for Petitioning Creditor, Paul Kessler (ph)

11        80-02 Kew Gardens Road

12        Suite 302

13        Kew Gardens, NY 11415

14

15   BY:  LISA SHAPIRO, ESQ.

16

17   AGOSTINO & ASSOCIATES

18        Attorney for Marina District Development Company

19        14 Washington Place

20        Hackensack, NJ 07601

21

22   BY:  JEREMY M. KLAUSNER, ESQ.

23

24

25

1    GOLDBERG & RIMBERG, PLLC

2        Attorney for Canadian Northern

3        145 Broadway

4        Suite 302

5        New York, NY 10006

6

7    BY:  JOEL S. SCHNECK, ESQ.

8

9    VOUTE LOHRFINK MAGRO & MCANDREW, LLP

10        Attorney for Contingent Creditors, interested party in

11        opposition, Grand (sic) West (sic), LLP and Steven

12        Pastak (ph)

13        170 Hamilton Avenue

14        White Plains, NY 10601

15

16    BY:  EDWARD G. WARREN, ESQ.

17

18    ALSO APPEARING:

19    EDWARD E. NEIGER, ESQ.

20

21

22

23

24

25

1                    P R O C E E D I N G S

2            THE COURT:  Thank you.  Please be seated.

3        (Pause)

4            Number 11, Gershon Barkany.

5            UNIDENTIFIED SPEAKER:  Are we skipping Kent (sic)

6    now (sic)?

7            THE COURT:  I'm sorry?

8            UNIDENTIFIED SPEAKER:  Are we skipping Kent?

9            THE CLERK:  No, (indiscernible - 11:52:42) at

10    10:00, 10:00.

11            THE COURTR:  At 10:00?

12            THE CLERK:  No, number 10 on the calendar.

13            THE COURT:  Oh.

14            UNIDENTIFIED SPEAKER:  10 or 11, Your Honor.

15            THE COURT:  Number 10 on the calendar?

16            Number 10 is a motion to dismiss filed by the

17    debtor.  Number 11 is the motion to dismiss filed by Barkany

18    Asset Recovery & Management.

19            UNIDENTIFIED SPEAKER:  Correct.

20            THE COURT:  Sort of involves the very same aspect.

21    And I'll get everybody's appearance, but, to the extent

22    we're going to address the motion to dismiss by Barkany,

23    obviously, you can come up.  And let me take the appearances

24    on number 10 on the calendar, which is the debtor's motion

25    to dismiss.  Let me get those appearances first, if I can.

1          MR. JANNUZZI:  For the debtor, Michael Jannuzzi,

2     Gershon Barkany.

3          MR. KIRSHENBAUM:  Good morning, Your Honor.

4     Lester Kirshenbaum, from Kaye Scholer, along with my

5     colleague, Jonathan Agudelo.  We represent a petitioning

6     creditor, Joseph Rosenberg.

7          THE COURT:  Thank you.

8          MS. SHAPIRO:  Good morning, Your Honor.  I'm Lisa

9     Levine Shapiro, Law Office of Kramer & Shapiro, P.C.  We

10    represent the petitioning creditor, Paul Kessler.

11         MR. KLAUSNER:  Morning, Judge.  Jeremy Klausner,

12    Agostino & Associates, representing petitioning creditor,

13    Marina District Development Company.

14         MR. WARREN:  Good morning, Your Honor.  Edward

15    Warren of Voute, Lohrfink, Magro & McAndrew.  I represent

16    contingent creditors, interested party in opposition, Grand

17    West, LLP and Steven Pastak.

18         MR. MULHOLLAND:  Mark Mulholland, of Ruskin Moscou

19    Faltischek.  I also represent a creditor and interested

20    parties, Ed Lowey, Jonathan Lifeler, Murray Lifeler, and

21    Sarah Lifeler and Whitefish, LLC.

22         THE COURT:  Thank you.

23         MR. WASSERMAN:  Allen Wasserman, Locke Lord, for

24    Barkany Asset Recovery & Management, LLC.

25         THE COURT:  Thank you.

1          MR. JACOB:  Good morning, Your Honor.  Shalom

2     Jacob, also of Locke Lord.

3          MR. SCHNECK:  Good morning, Your Honor.  Joel

4     Schneck, from the law firm of Goldberg & Rimberg, for

5     creditors, Canadian Northern Realty, LLC and their managers

6     (sic).

7          THE COURT:  Thank you.

8          MR. JANNUZZI:  Good morning, Your Honor.

9          THE COURT:  What I'd like to hear from the debtor

10    is just sort of a general overview.  And then, we need to

11    talk about the plethora of pleadings that have been filed

12    and the threshold issue that the Court is going to need to

13    address, and we'll talk collectively on how best to address

14    that threshold issue.  But, before I get to that, let me

15    just get a little bit of a background and an overview from

16    the debtor.

17         MR. JANNUZZI:  Sure, Judge.  The purpose of the

18    motion that I filed or the focus of that motion is that it

19    is not in the debtor or the creditor's best interests to

20    have an involuntary bankruptcy proceeding.  And secondly,

21    that the three required creditors with respect to one of

22    them, there is, in fact, a question that that particular

23    debtor is a disputed liability to the bankruptcy.  And

24    therefore, they haven't met the threshold requirements of

25    having three petitioning parties.

1          Mr. Barkany has two main groups of creditors that

2     collectively are owed $66 million as a result of a Ponzi

3     scheme which he has pled guilty to but has not been

4     sentenced.  The crime that he pled guilty to is mail fraud.

5     The maximum sentence for that crime is 20 years.

6          The amount of $66 million represents the net loss.

7     There has been to date $22 million paid back towards that

8     $66 million debt.  And there are still several assets, which

9     either need to be realized for value or the value itself has

10    to be ascertained and agreed.

11         Neither of the two groups, who are both

12    represented here today, are in favor of the bankruptcy

13    petition.  Collectively, the petitioners are less than three

14    percent of the Barkany debt, assuming that they all have

15    valid claims, which is far from a certainty.

16         Now, in the 305(a)(1), they're asking for

17    abstention, because, as I said to the Court, we do not

18    believe it's in the creditors' best interests.  There is a

19    criminal matter pending presently.

20         In that criminal case, there is a procedure set up

21    wherein Mr. Barkany has been given the opportunity to not

22    only turn over the assets and make the restitution that he

23    has so far, but to continue to work.  The proceeds of his

24    work would be paid to his criminal attorney, who is in

25    charge of monitoring his activity, who reports to the United

1    States Attorney's Office.  And, in turn, both parties report

2    to Judge Wexler.

3            If this restitution was to continue past

4    Mr. Barkany's sentencing, any restitution would be also

5    monitored by the United States Department of Probation.  I

6    don't know if we want to go into the details of it at this

7    point, Judge, given what you've said to me, but I will tell

8    you that, in looking at the case law, that I've reviewed and

9    relied upon in code section 305(a)(1), there is a series of

10   factors that a Court has to look at as to whether or not --

11   whether even when the Court has jurisdiction, the Court

12   should exercise or abstain from jurisdiction.  And, looking

13   at each of those factors, it is clear to me that none of

14   them favor the petitioners, and all of them favor the debtor

15   for the relief of dismissal of the bankruptcy petition.

16           THE COURT:  Let me just ask a question, because I

17   don't want to take your entire oral --

18           MR. JANNUZZI:  I understand.

19           THE COURT:  -- argument at this time.

20           MR. JANNUZZI:  The second part of our argument

21   relates to whether or not there is a disputed liability.

22           THE COURT:  And that's one of the questions that I

23   do have.  Is the debtor alleging that the purported claims

24   now, I'm not making any findings with respect to any claims,

25   and I'm not making any findings on the Section 303 at the

1    moment.  I'm just trying to get the background.

2              So is the debtor alleging that the purported

3    claims held by each of the petitioning creditors is subject

4    to a bona fide dispute as to liability or amount, or is the

5    allegation that it's only the claim asserted by Marina

6    District Development Co. that's subject to the bona fide

7    dispute?

8              MR. JANNUZZI:  It's only with respect to Marina

9    Development, Judge.

10             THE COURT:  And it's also, as I understand it,

11   there's an issue as to whether or not the Marina Development

12   even is the holder of a claim, or is it a question that they

13   hold the claim, but the debtor would have a counterclaim or

14   separate claims against Marina District Development, which I

15   think is going to abbreviate as MDDC?

16             MR. JANNUZZI:  That's correct.  I would like to

17   abbreviate it further and just call them Marina, if that's

18   okay with the Court?

19             THE COURT:  That's fine by me.

20             MR. JANNUZZI:  Okay.

21             THE COURT:  It's a little easier for me.

22             MR. KLAUSNER:  It might just be easier to call it

23   the Borgata, since it's the Borgata Hotel and Casino and

24   Spa.

25             THE COURT:  Okay.  Thank you.

1          MR. JANNUZZI:  With respect to Marina, Judge, what

2     my understanding is and what we specifically put into the

3     papers is that we were advised by a forensic accountant

4     hired by Barkany Asset Management Recovery, BARM, LLC that,

5     in fact, Marina Development has not been forthcoming with

6     information and that, on the documentation that he's looked

7     at originally, he was of the opinion that there was a

8     discrepancy of amount of $700,000.  The papers that were

9     filed by Marina did nothing to resolve that discrepancy, and

10    that a subsequent review of further documentation by that

11    same forensic accountant, S. David Belsky, who I believe is

12    here today, indicated that that $700,000 sum may actually be

13    over $1 million.

14          And, considering the fact that if, in fact, there

15    is a dispute as to this liability and this liability is not

16    owed by my client, then, in fact, that's another ground for

17    dismissal of this petition.

18          THE COURT:  And correct me if I misunderstood.

19    But is my understanding correct that the three petitioning

20    creditors are also defendants in actions that are pending

21    right now in state court?

22          MR. JANNUZZI:  To my knowledge, Judge, none of the

23    three petitioning creditors ever pursued Mr. Barkany for

24    enforcement of the debt they claim that is owed.  And it is

25    only upon them becoming defendants in state lawsuits that

1    they have filed this bankruptcy proceeding.

2            THE COURT:  Thank you.

3            Is there a forfeiture order that has been entered

4    in the criminal action?

5            MR. JANNUZZI:  I'm sorry, Judge?

6            THE COURT:  A forfeiture order, a criminal

7    forfeiture order?

8            MR. JANNUZZI:  No.

9            THE COURT:  Has that been --

10           MR. JANNUZZI:  He has not -- and this goes to the

11   last point I want to discuss with the Court about my

12   client's taking the 5th Amendment during his deposition.

13   There has not been a forfeiture or a restitution order,

14   which would probably be the more appropriate one in his

15   particular case, because he has not yet been sentenced.

16           But there has been a procedure put in place at the

17   time that he took a plea whereby that very method that I

18   described to the Court, where his criminal attorney is

19   monitoring his efforts at paying back this restitution,

20   reporting that to the U.S. Attorney and, in turn, reporting

21   it to Judge Wexler.

22           And these restitution efforts, while everybody on

23   this case has described as pie in the sky or they can't

24   believe it or it's unbelievable -- the fact of the matter

25   is, even with being hindered by the criminal prosecution, he

1    has gone out disclosing everything that he's facing.  He has

2    raised millions of dollars.  They have now bought three

3    different oil fields.  They are in production on two of

4    them, and there's interest in the sale or possibly a

5    discussion of the sale of one of them once it starts

6    producing.

7              And this would produce millions of dollars in

8    revenue, which will, in turn, satisfy much of the debt that

9    he faces.  So, for us, there is, in fact, a procedure in

10   place which makes this bankruptcy filing unnecessary.

11             THE COURT:  Well, let me ask a couple of questions

12   on the procedure that you say is in place, and you had

13   mentioned earlier, and I think also the papers also said it

14   as well that there is, you know, $22 million that has been

15   paid back.  Who is holding the $22 million, and what is the

16   mechanism that's in place for distribution of the 22

17   million?

18             In other words, is the 22 million or all of the

19   money that will now be collected under, let's say, the aegis

20   of BARM, if I got the abbreviation correct on that -- is

21   there going to be a ratable (sic) of distribution?  Is there

22   an equitable distribution of those funds?  And, if so, how

23   do you account for all of the different claims?

24             In other words, is the money that's coming in

25   under BARM -- and I understand Mr. Belsky is sort of the

1    person that's sort of in control of BARM.  And you're out

2    there, and you're recovering all of these funds, and you're

3    bringing various lawsuits.  What happens to the proceeds of

4    all of that, the 22 million plus?

5            MR. JAZZUNNI:  Well, the 22 million is before.  It

6    was paid before the commencement of the criminal action.

7            THE COURT:  And so, that 22 million was paid to?

8            MR. JAZZUNNI:  BARM.  Now, --

9            THE COURT:  And so, BARM is holding the 22

10   million, or BARM has disbursed that 22 million?

11           MR. JAZZUNNI:  I think BARM's attorneys would be

12   better suited to answer that question.

13           THE COURT:  Thank you.

14           Please.

15           MR. WASSERMAN:  I can speak to that.  Allan

16   Wasserman.

17           What BARM has done is, at the very outset of their

18   cooperation with Mr. Barkany, Mr. Barkany identified assets

19   that he had, liquid assets, hard assets, stock portfolios,

20   essentially anything that would help satisfy and make

21   restitution.  In addition, what BARM did was retain S. David

22   Belsky's firm as forensic accountants to help us determine

23   what assets were out there.

24           And, in connection with that, Mr. Barkany turned

25   over substantially all of his records.  And where he did not

1    have records such as bank statements, cancelled checks, and

2    things of that nature, he gave authorization to the banks to

3    turn those over.

4         In addition, he provided us with his computer hard

5    drive.  All of this so that Mr. Belsky could provide as

6    thorough and complete a picture as possible of where the

7    money went, who received money, who is owed money, whether

8    people are net losers or net beneficiaries.

9         As part of that process, as money came in, the

10   money is being held by BARM.  Because the process has not

11   been completed yet, the money has not been distributed.

12   That money will eventually be distributed on a pro rata

13   basis to people who have demonstrated that they are entitled

14   to those proceeds as net losers.

15        THE COURT:  And, if you're outside the bankruptcy

16   court, how would you put a mechanism in place to assure that

17   those who hold claims, hold valid claims would be able to

18   participate in this ratable distribution of the funds from

19   BARM?

20        MR. WASSERMAN:  Well, there are a number of ways

21   that that's accomplished.  Mr. Jannuzzi spoke to the

22   judicial oversight that is already in place.

23        One of the very first things that Mr. Barkany's

24   criminal counsel demanded of us, which we acceded to, is

25   that it was essential for Mr. Barkany that all monies that

1    were recovered be applied towards his restitution obligation

2    and that this was a process that had to be supervised by the

3    Court, and Mr. Barkany was obligated to make full

4    disclosure.  We have agreed to that.  And accordingly,

5    whatever monies are recovered will be applied towards

6    Mr. Barkany's restitution obligation.

7            With respect to what I would call members of the

8    BARM group, these are people who -- when Mr. Barkany first

9    approached us and, if you will, confessed to his crime, we

10   asked him to identify all of his victims.  He identified the

11   people who are members of the BARM group.

12           In addition, based on his forensic review of the

13   documents which were provided by Mr. Barkany or obtained by

14   us through subpoenas or cooperation with other parties,

15   Mr. Belsky did his own analysis of who the potential victims

16   are, the net losers.  Anyone who is a net loser who has lost

17   money to Mr. Barkany is welcome to participate in the

18   recovery.  They do have to abide by the procedures that

19   govern all members of BARM.

20           But the door is not closed, and it has never been

21   closed.

22           MR. NEIGER:  Judge, if I may just add one more

23   point to that.  Whether the money was collected prior or the

24   money is collected since the institution of the criminal

25   action, there will be a total restitution figure.  And, with

1    respect to that restitution figure, the Court will order, as

2    restitution does, a pro rata distribution of that money

3    that's collected.  We're hoping it's 100 percent, but 'til

4    that happens, it's a question.

5          But there will be a pro rata distribution of the

6    money that's been received, and we have been working and

7    cooperating to establish the value of what's been paid to

8    date.  And, in fact, there's been another, I'm going to say,

9    a million and three that's been received from Mr. Barkany in

10   the last nine months of IRS proceeds, which have also been

11   handed over to bar (sic).

12         THE COURT:  Thank you.

13         MR. JANNUZZI:  Judge, at this time, is it the

14   Court's desire that I go into the argument about my client

15   taking the 5th Amendment, or hold off on that for now?

16         THE COURT:  Well, I think I'd like to hear from

17   the petitioning creditors, because, as I mentioned earlier,

18   there is the threshold issue of the filing of the

19   involuntary and whether or not it's an eligible filing with

20   respect to the issue that's been raised on a bona fide

21   dispute.  And collectively, we'll figure out the best way to

22   handle that threshold issue.

23         But let me just hear sort of an overview from the

24   petitioning creditors, and then, we can get into a little

25   bit more substance.

1              MR. KIRSHENBAUM:  Thank you, Your Honor.  Lester

2     Kirshenbaum.  I represent in particular the petitioning

3     creditor, Joseph Rosenberg, but I think that to the extent

4     I'll be speaking on an overview basis for all three of the

5     petitioning creditors.

6              Your Honor, much of what you've heard this

7     morning, obviously, this is the first day you've heard this

8     case.  So we can certainly say that the Court is new to the

9     case.  The people that are on the left side of the courtroom

10    to my left are not necessarily new to the case, and I can

11    assure you that much of what you've heard for the first time

12    today are items that we've all heard for the first time

13    today as well.

14             There has never been an open process with respect

15    to BARM or with respect to anything else.  To our knowledge

16    -- and you go back, Your Honor, to the papers that we filed

17    in connection with our opposition to the motion to dismiss,

18    I think Your Honor is seeing there have been many, many

19    pieces of paper, many, many emails that I think are crystal

20    clear that BARM has made -- now maybe BARM, Your Honor --

21    it's a few days before the Rosh Hashanah holiday and the Yom

22    Kippur holiday.

23             And it could be that BARM is engaging in major

24    repentance today, Your Honor.  But that would be a very,

25    very brand new development.

1         Your Honor, going back to November, late November

2    2010, Mr. Barkany, under circumstances that he knows -- we

3    don't know -- approached certain of the creditors of the

4    BARM group and confessed to them that he had been engaged in

5    a Ponzi scheme.  While he told them that a number, perhaps

6    many of the transactions in which his investors had invested

7    had, in fact, earned supposedly profits, he was engaged in a

8    Ponzi scheme as well, and he could not repay the investors

9    that he was then talking to on their then outstanding

10   investments.

11        Now, that group, Your Honor, among others -- and

12   we have done very little discovery.  And, in fact, most of

13   the discovery that's been done in this regard was done very,

14   very recently by the Ziffman Kostel (ph) firm in connection

15   with their litigation.

16        But, Your Honor, that group included 1 person by

17   the name of Joe Pinsky (ph), who invested in 13 different

18   transactions, admitted under oath under examination by the

19   Ziffman Kostel lawyers that he had earned substantial

20   profits in the first 10 of the 13.  It involved a second

21   creditor by the name of Haim Silverburg (ph), who admitted

22   that he earned $1 million in profits on the first 4 or 5

23   transactions that he engaged in with Barkany and then

24   apparently lost a million-and-a-half in the sixth

25   transaction.

1        The deposition of Mr. Grohman, Charles Grohman,

2    who apparently is owed $45 million, was also taken.  And he

3    admitted that, in the first number of transactions that he

4    invested with Barkany, he made substantial, substantial

5    profits.  And Mr. Grohman, during the course of his

6    deposition, under oath, talked about a fellow by the name of

7    Jordan Most (ph), who apparently is Mr. Grohman's good

8    friend and the person who advised Mr. Grohman to get

9    involved in Mr. Barkany's investments.

10        And Mr. Most claims a debt of $5.4 million.

11    Mr. Grohman testified under oath that Most, Mr. Most had

12    made substantial monies on his first transactions with

13    Barkany.

14        So you're talking, Your Honor, about a group that

15    it could be that the entirety of the BARM group was engaged

16    in numerous transactions over time and many of them earned

17    substantial profits on many of their earlier deals.  It cold

18    well be, Your Honor, because their depositions have not been

19    taken that many of the other members of the BARM group could

20    be that their earlier profits outweigh what they ended up

21    being owed when this music stopped.

22        Now, notwithstanding that fact, Your Honor, the

23    BARM group retained counsel.  I don't know whether the

24    counsel basically went out and solicited BARM group.  But

25    the (indiscernible - 12:13:30) group got involved very early

1    on, and they met with Mr. Barkany time and time again.

2         While Mr. Barkany, as I understand, was generally

3    perhaps never represented by counsel, and Mr. Barkany came,

4    met with them for hours, met with Mr. Belsky for hours,

5    spilled his guts to them for hours, turned over all his

6    records, and basically did whatever they said.  This was

7    going on, Your Honor, unbeknownst to the rest of the world.

8              And that, Your Honor, a number of months later, in

9    a piece of paper, an amazing piece of paper entitled a

10   confession of judgment that's dated in August of 2011 --

11   they had been talking to this gentleman for 6 months.  No

12   one else knows about it, except, Your Honor, certain of the

13   charities, including a charity by the name of Gateways that

14   had started to be approached by Mr. Jacob as early as

15   February of 2011 supposedly, on behalf of all of the

16   creditors of Barkany.

17             And Gateways was told, "You better return the

18   money to us.  Let's work out a deal under which you agree to

19   return the money to the people Locke Lord represents.  And,

20   by the way, Gateways, keep this under confidence.  Don't let

21   anyone know what we're talking about."

22             Then, in August, Your Honor, a confession of

23   judgment is entered into by Barkany.  That confession of

24   judgment, Your Honor, as far as we know, was drafted by

25   Locke Lord.  That confession of judgment was not passed upon

1    by an attorney for Barkany.

2           That confession of judgment written by Locke Lord

3    basically lists a whole bunch of Barkany companies and a

4    whole bunch of creditors and says that Barkany and these

5    companies owe these creditors over $58 million.  No

6    explanation, no breakdown.  And, by the way, Your Honor,

7    it's important to note that, as far as we know, every single

8    member of the BARM group was involved in different

9    investments.  So virtually everyone.

10          It's not as if Grohman invested with Most, and

11   they invested with the other guy.  They all invested

12   separately.  So there's no one group, and everyone is

13   ordered (sic) or not.

14          And, when you do the math, Your Honor -- and I've

15   just done the math in the last few days after I had the

16   benefit of seeing a couple of these transcripts of the

17   depositions taken by the attorneys for Ziffman Kostel.  When

18   you do the math, it's clear that the $58 million that

19   Barkany claimed or admitted to owing all these creditors

20   completely ignored all of the profits that that entire

21   creditor group earned during all the wrong (sic)

22   transactions, which very, very easily, Your Honor, could

23   have very well eaten into a substantial amount of this

24   alleged debt.

25          Now, also, Your Honor, during the same period of

1    time -- and we don't know in days.  But, during the same

2    early period of time, it's been alluded to already Barkany

3    unsupervised without an attorney, without getting any court

4    protection, turned over all of his assets, all of his assets

5    to Locke Lord on behalf of their creditor group.

6           Now, Your Honor, those assets were the subject of

7    some incredible exchanges of correspondence between Locke

8    Lord and Mr. Jannuzzi at the end of June of this very year

9    in front of Judge Wexler, where Locke Lord sent a letter to

10   Judge Wexler on June 27th saying, "Judge, we believe that

11   Barkany has not been honest with us.  He's still being

12   dishonest with us."

13          "Barkany has not disclosed to us many assets.

14   There are many assets overseas that we have not seen.  We

15   believe that there are assets in Israel.  There may be

16   assets in the Ukraine.  There may be assets elsewhere.

17   Barkany has not been cooperating with us, and we're really

18   angry at it."

19          And that, Your Honor, is actually very consistent

20   with an email that Mr. Jacobs sent to Mr. Jannuzzi on

21   June 11th, which is in text (sic) to Mr. Jannuzzi's June 27

22   letter where Mr. Jacobs said to Mr. Barkany -- reiterated on

23   June 11th, "Your client's obligation is mainly to our

24   clients."  That's his exact words.

25          And, Your Honor, in Mr. Jannuzzi's letter to

1    Judge Wexler responding to Mr. Jacob's letter that same day,

2    Mr. Jannuzzi accused Locke Lord of being a lamb in sheep's

3    clothing.  And Mr. Jannuzzi's co-counsel, Mr. Barkett (ph),

4    said that Locke Lord was taking actions to basically favor

5    its creditor group over all the other creditors and accused

6    Locke Lord of not acting in good faith in this whole

7    process.

8            Mr. Jannuzzi, in his letter of June 22nd, said

9    that the assets that had been turned over to Barkany, I

10   think, Your Honor, all during that 6-month window of the end

11   of December, the end of the year of 2010 through maybe the

12   first months of 2011 was worth $32 million.  Now,

13   Your Honor, and up to that point in time, the only piece of

14   paper that I'm aware of that had ascribed any value to the

15   assets that were turned over to Barkany was a partial

16   satisfaction of judgment that was filed the Supreme Court

17   action in August of 2011 where the BARM group said the

18   assets -- we partially satisfied our claim in the amount of

19   $10.6 million.

20           So, between August of 2011 and June 2014, there's

21   nothing said about the assets turned over to BARM and what

22   it may be worth.  In response to Mr. Jannuzzi saying there

23   are $32 million worth of assets, BARM sent a letter back to

24   Judge Wexler on June 30.  Attaches for the first time, as

25   far as I know, Your Honor, publicly a schedule of the assets

1    supposedly turned over.  It consists of real estate.  It

2    consists of money.  It consists of stocks.  It consists of a

3    heck of a lot of stuff.  And they say it's worth 22 million.

4         So Mr. Jannuzzi said it's worth 32 million.  They

5    said it's worth 22 million.  So now, we have a discrepancy

6    between 22 and 32.  All this, Your Honor, between June of --

7    between August of 2011, when that confession of judgment was

8    signed, and June of 2014.  No one knows anything about this,

9    except the BARM group.

10        It gets worse, Your Honor.  As we said in our

11   paper, Barkany signed a confession of judgment in an action

12   entitled New York Supreme Court County of Queens Cortland

13   Realty and a whole bunch of other.  Cortland Realty is a $45

14   million creditor of Mr. Grohman.

15        Cortland Realty and all these other creditors --

16   but there's no index number, because Barkany signed that

17   after David -- that confession of judgment in August of

18   2011, and Locke Lord took that confession of judgment and

19   stuck it in a drawer.  It stuck it in a drawer until

20   March 25, 2013.

21        Two days, Your Honor, before the Government sought

22   the arrest of Mr. Barkany, all of a sudden, magically,

23   Cortman Realty and Locke Lord files an action.  It gets an

24   index number in the Supreme Court action in Queens, and now,

25   takes that confession of judgment that they had been sitting

1    with for 20 months at least and gets a judgment in the

2    amount of $58 million.  And again, doesn't (sic) list all

3    the Barnett (sic) fees, lists all of the BARM members, and

4    says the Barkany entities owe the BARM members $58 million

5    plus $8 million in interest, and a whole bunch of other

6    stuff, costs, attorneys' fees, the works, no delineation

7    person-by person.

8              Now, Your Honor, so therefore, BARM sits on this

9    for two-and-a-half years.  And apparently, Your Honor, while

10   that goes on, no one else knows about this fraud, and no one

11   else knows that Barkany has confessed to engaging in a Ponzi

12   scheme.

13             And so, therefore, Barkany goes out and does more

14   deals, does deals with Mr. Schneck's clients for which they

15   sued based on deals -- Ponzi scheme types of deals that

16   occurred during 2012 and 2013.  Had it actually been

17   commenced by the BARM group in August of 2011, when they had

18   -- when they got this confession of judgment, you wouldn't

19   have had any of those later deals.

20             You know, they talked about Borgata and the

21   Borgata claim.  Well, Barkany had been gambling at Borgata

22   since 2009.  But the outstanding balance, Your Honor,

23   Barkany had basically engaged in what's called the -- this

24   is all new to me, Your Honor, but a voluntary abstention

25   from continuing.

1          So, between the time that Barkany started gambling

2     and the time that that confession of judgment was, you know,

3     signed by Barkany, he entered into a partial cessation.  So

4     there was nothing going on with the Borgata for a while.

5          Now, had that action been filed, Your Honor, after

6     they got that confession of judgment in August of 2011 and

7     Barkany went back to Borgata and said, "Hey, I want to start

8     gambling again.  Give me credit."  Well, Borgata obviously

9     would not have given credit.

10          So a lot of what you see today, Your Honor, in

11     terms of what's around the table is directly due to the fact

12     that the BARM group got this confession of judgment that

13     they dictated and they wrote over a period of months while

14     Barkany wasn't represented by counsel.  Got all of the

15     assets.  Kept everything for themselves.

16          That's been their modus operandi since the

17     beginning.  Recently, of course, Your Honor, they started

18     lawsuits against everyone that they've identified, according

19     to them, may be a winner.  And they said give us everything

20     back.

21          But, as far as I know, no one has gone to the

22     various members of the BARM group and said you know what?

23     Mr. Pinsky, those first tapes are his actions (sic) where

24     you made a profit of $500,000, $600,000.  That's a

25     (indiscernible - 12:23:41).  You have to give that back.

1          Mr. Most, you earned well over $1 million in

2     profits for your earlier deal.  That's a fraudulent

3     conveyance.  You have to give that back.

4          No, the BARM members, apparently, are not being

5     sued.  They're not being sued.  There's no supervision going

6     on.  And there's nothing, Your Honor, in terms of any formal

7     agreement with the Government that anyone has seen.

8          Now, if things have been agreed to between the

9     United States Attorney and the creditor group, the BARM

10    group, I don't know, Your Honor.  But all I know,

11    Your Honor, is at the end of June, BARM was in asking or

12    telling Judge Wexler he should not permit Barkany to fly

13    because he's a flight risk and he's a crook and he's a

14    cheater and he continues to be one.

15         So, all of a sudden, magically, Your Honor,

16    between the end of June, that he's a flight risk and a fraud

17    and there are assets all over the world, which, Your Honor,

18    I certainly suggest he does -- finds the assets and goes

19    after the assets.  All of a sudden, none of that's important

20    any more.  I don't know why.  I don't know why.

21         So, Your Honor, that is the lay of this land in

22    terms of oversight.  Now, Your Honor, it's even worse than

23    that, because BARM, not only has collected assets and

24    liquidated some (sic) kept all that information, Your Honor,

25    I invite you to ask Mr. Wasserman if Your Honor were to

1    enter an order today keeping this case in bankruptcy,

2    whether BARM will voluntarily turn over -- there'll be a

3    trustee appointed, whether it's tomorrow, whether it's the

4    next day, whether BARM will agree to turn over all of the

5    assets that it's holding to the trustee.

6            Now, there's no better way to assure a complete,

7    fair, and equitable and ratable distribution than turning

8    everything over to a bankruptcy trustee who will do

9    everything under the supervision of the Bankruptcy Court.

10   Who gives Mr. Belsky the right to decide that?

11           Who gives Mr. Jacob and Mr. Wasserman the right to

12   decide that?  That's not the way our system works.  That's

13   not the way our system works.

14           And, Your Honor, restitution and forfeiture within

15   the context of a criminal case -- that happens.  That is not

16   equivalent to a bankruptcy.

17           Your Honor, I know, has practiced bankruptcy law

18   for many, many years, and Your Honor certainly appreciates

19   and understands that the bankruptcy court and the bankruptcy

20   process is set up specifically for the purpose of gathering

21   all the assets and having a fair and very consistent review

22   of all the claims, determining who the claimants are,

23   pursuing all of the fraudulent conveyances, pursuing all

24   avoidance actions, pursuing and scrutinizing potential bases

25   to declare someone to be an insider, that to have engaged in

1    under the influence and so forth, and ultimately determine

2    how everything shakes out.

3              That's a bankruptcy process, Your Honor.  That is

4    not a criminal process.

5              I believe, Your Honor, Mr. Jannuzzi's case is a

6    non-criminal attorney, a civil turf.  I'm a civil attorney.

7    I'm not a criminal attorney, but I know enough to know,

8    Your Honor, that the forfeiture process that goes on in the

9    context of a criminal case is not the substitute for a

10   bankruptcy proceeding.  It's never intended to be.

11             What bigger criminal cases within the last -- I

12   mean, in the history of bankruptcy law than the Madoff case?

13   Madoff's criminal case was not used as the basis for

14   dividing the assets, determining who the claimants are, and

15   dividing the assets.  That was done under the rubric, under

16   the supervision of a bankruptcy judge.  That's the only way

17   to handle a Ponzi case.

18             To suggest that this could be properly done within

19   the framework of a criminal proceeding, Your Honor, I just

20   think is literally turning things upside down.  In

21   particular, Your Honor, in this case, where you're not

22   coming in with a situation -- you're not dealing with a

23   situation where no one knew anything until a criminal

24   proceeding was filed.

25             The BARM group had two-and-a-half years head start

1    on everyone else.  Now, when they said, Your Honor, that

2    they are simply going with the list of creditors that was

3    supplied to them by Barkany, that's not true, either.

4    Because the very first -- it's a detail, Your Honor, but I

5    think it points to, frankly, the lack of good faith of this

6    group.

7              The very first list of creditors given to the

8    Locke Lord people by Barkany and the second one -- the first

9    one was given on November 27th, 2010.  The second one was

10   given on December 1st.  And I'll tell you why, Your Honor,

11   there were two.

12             But, at any rate, Your Honor, both of those lists

13   list Mr. Rosenberg.  But that doesn't fit well into the --

14   as a creditor.  And Mr. Rosenberg, Your Honor, is owed, by

15   the entirety of the Barkany group, over a million dollars.

16   But that doesn't include (indiscernible - 12:28:47).  Why?

17   Because Mr. Rosenberg is Mr. Barkany's father-in-law.

18             So therefore, if Mr. Rosenberg is Mr. Barkany's

19   father-in-law, clearly, Mr. Rosenberg is a bad guy.

20   Mr. Rosenberg had to have been helping BARM -- had to have

21   been helping Barkany in his scheme.  And so, therefore, he's

22   not part of the group.  Even though this same list that

23   lists the various people that are part of the BARM group

24   lists Rosenberg, no, Rosenberg is not part of the group.

25             Rosenberg, instead, Your Honor, is being sued,

1   because Mr. Belsky says the records that you've given to me,

2   Mr. Rosenberg, I don't buy those records.  Those records are

3   incomplete, and therefore, I'm suing you.  And they not only

4   sued Rosenberg for fraudulent conveyances -- which they're

5   not suing themselves.  But they're also suing Rosenberg for

6   aiding and abetting the fraud.

7          Why, Your Honor?  I don't know.  That's their --

8   you know, that's nothing (sic).  But they've been acting

9   like the 64,000 ton gorilla, whether it's been in

10  approaching charities and saying turn it over or I'll sue

11  you, whether -- actually, to the point, Your Honor, of

12  attorneys going to a charity office and saying turn it over.

13          "I'm going to come back next week.  Pay me.  Pay

14  me.  When are you going to raise funds to pay me, and when

15  are you going to sign a confession of judgment?  You owe the

16  money back to Barkany, because Barkany gave you a

17  contribution.  And Barkany shouldn't have given you a

18  contribution.  It wasn't his money.  So you owe the money to

19  Barkany."

20          But, since Barkany owes us the money, we want you

21  to sign a piece of paper agreeing that you owe the money to

22  us, and keep it quiet.  Don't tell anyone that you're doing

23  this.

24          This is what has been going on, Your Honor, for

25  three years.  And, while this has been going on, you have

1    the lawsuits.  By the way, Your Honor, most lawsuits were

2    only brought in 2014.  Most lawsuits were only brought in

3    2014 or late 2013.

4         Now, there can be a lot of explanations for that.

5    But, Your Honor, I think, Your Honor -- and this is

6    something for the trustee to look into.

7         I think that the reason a lot of the lawsuits were

8    not brought was because they did not -- they wanted to keep

9    what was going on private, to themselves as long as

10   possible.  They wanted to have a head start in terms of

11   getting the assets.  They wanted to dispose of the assets as

12   much as they could, as quickly as they could, and I think,

13   Your Honor, they were already benefiting.

14        Ultimately, there was a bankruptcy.  They would

15   have grabbed these assets early up in time so that the

16   avoidance period would be gone.

17        And, in fact, Your Honor, in the papers -- I think

18   it was the reply papers that were filed by Locke Lord just

19   yesterday in responding to one of the points we had in our

20   papers, Locke Lord said, "Well, that $1.2 million capacity

21   (sic) fund (sic) that we received in November -- that's 9

22   months ago.  So that's outside the preference (sic) period."

23        And I guess they were kind of anticipating maybe

24   someone will take a fraudulent conveyance.  We got that

25   signed back in 2012.  So it's outside the fraudulent

1    conveyance period as well.

2            This, Your Honor, has been a scheme.  This has

3    been a scheme that's been going on -- well, probably (sic)

4    engaged in the scheme in 2009 and 2010.  And a lot of people

5    were hurt by that, Your Honor.  And I'm not at all making

6    light of that.  Mr. Rosenberg was hurt by that.

7            The other people -- they said they've been hurt by

8    that a lot.  But I guess there are law firms that simply --

9    that funds were deposited in some of these deals, and there

10   are law firms that are being sued for tens of millions of

11   dollars because they supposedly did something wrong because

12   their escrow accounts were used.

13           By the way, Your Honor, Mr. Grohman, who lost $45

14   million -- the $45 million was wire transferred by

15   Mr. Grohman to various accounts at Mr. Barkany's suggestion

16   or Mr. Barkany's request, without Mr. Grohman seeing any

17   paperwork or any agreements with respect to any of this

18   money.  Mr. Grohman, who's a very sophisticated guy and

19   obviously a very wealthy guy, just on his own, without any

20   backup, without any checking, sent $4 million.

21           Should he have lost that money?  Absolutely not.

22   Is it terrible that he lost the money?  Absolutely not.

23   But, to turn around -- I'm going to sue the world.  I'm

24   going to beat up on everyone.  I'm going to beat up on

25   everyone, and I'm going to beat up on Barkany's family.

1          You don't need to beat up on Barkany's family,

2    because I believe, going back to the letter that they sent

3    to the judge June 27th, Barkany has not been forthcoming.

4    Barkany has hidden assets in Ukraine.  And Barkany has

5    hidden assets elsewhere.  We can't find them.

6          If we really pressure the family enough, if we

7    pressure the family enough, Barkany's going to be

8    forthcoming, and he's going to be pressured into turning

9    over assets.  This is what's been going on, Your Honor.

10   This is the picture that's been going on for the last three-

11   and-a-half years.

12         Now, everyone, Your Honor, sitting on -- to my

13   left and, Your Honor, to your right -- none of us, none of

14   us are advocating that this bankruptcy go forward in order

15   to avoid scrutiny.  We fully expect and we fully want that

16   this bankruptcy should go forward and there should be a

17   trustee.

18         And the trustee should investigate every single

19   transaction with my client, Your Honor.  And I expect it,

20   and my client expects it, and every single transaction with

21   each of the petitioning creditors.

22         And Mr. Mulholland is here.  He's going to speak

23   on behalf of Mr. Lowey and his other clients, who are being

24   sued by BARM.  And they fully expect and they want a

25   bankruptcy trustee who is fair and who is honorable and who

1    has no prejudices to come in and deal with that.

2            And, Your Honor, Mr. Schulman (ph), who also filed

3    an opposition but he could not be here today -- he filed an

4    opposition, and he made it very clear in his opposition that

5    he represents persons who are prepared to give back money.

6    But they want to give back money under the proper process to

7    the proper person.

8            So, Your Honor, everyone that's pushing for this

9    bankruptcy is not pushing for the bankruptcy for the purpose

10    of avoiding scrutiny.  They want proper scrutiny.  They also

11    want scrutiny, Your Honor, over everyone.

12            The ones who are trying to avoid scrutiny are the

13    BARM group and because they, Your Honor, don't want to be

14    investigated in terms of what they have done.  They don't

15    want to be investigated in terms of how they disclosed these

16    assets over the last couple of years.  They want to continue

17    to hold these assets.

18            They want to basically continue to control their

19    game, to sue everyone, to beat up on everyone, and then,

20    they'll decide how the money gets disposed of.  They're the

21    ones that want to avoid scrutiny.  Not us.

22            So, when they come in here and they say the

23    bankruptcy is just a horrible thing, it's going to put the

24    investigation process to a close, it's going to stop the

25    litigations, it's going to do everything that's bad, it's

1     going to stop us in our efforts, well, it may stop BARM in

2     its personal efforts.  Okay?  But the process will go

3     forward as it should go forward.  And that's, Your Honor,

4     all that we want.  That's all that we've advocated from the

5     beginning.

6              This is a process -- Your Honor, I've done this --

7     I've been in this business for a long time, as Your Honor

8     knows.  And I know what should happen.

9              If some person comes to me and says I'm the victim

10    of a Ponzi scheme and I looked into it and it seems to be a

11    Ponzi scheme and I gather up enough evidence so that it's

12    clear that there's a Ponzi scheme, first thing I tell that

13    client is let's go into bankruptcy.  If you have -- let's go

14    into bankruptcy court.

15             Let's get the petition.  Let's get the bankruptcy

16    -- let's get a bankruptcy court involved.

17             That's the way these cases are handled.  All these

18    Ponzi scheme cases are handled that way.  The cases that are

19    larger than this one, the cases that are smaller than this

20    one.  That's the only process that works.

21             It's the only process that is fair to everyone.

22    There is nothing unique about this case, Your Honor, except

23    that you have a group of creditors who were hurt.  I agree

24    they were hurt.  But so were a lot of other people.  And

25    they basically want to get everything back to themselves.

Case 8-14-72941-las   Doc 62   Filed 10/20/14   Entered 10/20/14 10:25:46

Page 39

1    They want to get paid.  How it comes back, when it

2    comes back, who I should sue, who I can walk away from, who

3    I'll try to cut a separate deal with -- Your Honor, it all

4    -- it's a -- it all smells, Your Honor.

5    It all smells from beginning to end.  And I

6    apologize to you as a member of the Court.  But this has

7    been just a horrible process that's gone on for years.

8    Now, in terms of the -- I just want to do Borgata

9    separately, Your Honor, because, while -- if Your Honor is

10   of the view that something needs to be done with respect to

11   that claim before Your Honor can rule, obviously, we'll

12   abide by the Court's decision.  And Mr. Klausner is here.

13   He represents Borgata.  And certainly, he knows the ins and

14   outs much better than I do with respect to their claim.

15   But, if one takes a step back, if one takes a step

16   back and looks at that claim, it is -- that claim is not on

17   the record before this Court, subject to bona fide dispute.

18   It's just not.  That claim, Your Honor, is based on a credit

19   request that Mr. Barkany made in the spring of 2012.

20   The credit request, the credit application is

21   Exhibit 1 to the declaration of a person in the collection

22   department at Borgata who filed the declaration in

23   connection with their opposition motion -- their opposition

24   to the motion to dismiss.  It's a credit application that

25   Barkany filled out in March, I believe, of 2012, but in that

VERITEXT REPORTING COMPANY

212-267-6868            www.veritext.com            516-608-2400

1    time period.  And it's Exhibit 1.

2            When one looks at the credit application -- it's a

3    one-page application -- one of the large (sic) is how much

4    debt do you have.  Barkany put in zero.  Barkany put in

5    zero.  Now, that is, Your Honor, March of 2012.  It is a

6    good six, seven months after he signed that confession of

7    judgment to $58 million.

8            And he comes to Borgata because he wants to gamble

9    again, and he says I have zero debt.  So clearly,

10   Your Honor, was Borgata the victim of a fraud by Barkany in

11   March of April of 2012 when they extended $200,000 or

12   $300,000 of credit to him, based on he was a prior customer,

13   based on his statement that he had zero debt at that point

14   in time?

15           Now again, Your Honor, had litigation been brought

16   on that confession of judgment in Queens court, in Queens

17   Supreme Court in the summer of 2011, when the confession of

18   judgment was filed, would Borgata have extended the credit,

19   no matter what Barkany put in his credit application?  Of

20   course not.

21           They didn't know, because no one knew.  No one

22   knew .  And so, Barkany gets credit again, Your Honor.  And

23   Barkany continues to bet.

24           Now, he came, Your Honor, again in March of 2013,

25   and he asked for an extension of credit.  Now, I'm getting

1    an education in that whole area, Your Honor.  Really, it's

2    an area I'm not familiar with, until the last few days.  But

3    apparently, if you have credit already, you don't need more

4    credit.  If for some reason, the casino owes you money, you

5    don't need more credit, right?

6            So Barkany wanted to gamble in March of 2012,

7    literally days before the litigation in Queens was finally

8    filed by BARM and within days of Barkany's arrest in the

9    criminal case.  And Barkany says I need more credit.  So

10   apparently, they gave him -- you get markers.  You get

11   markers.  You write out checks.

12           And so, you write out checks to the -- and you

13   don't need checks if the casino owes you money.  You only

14   write out more checks if the casino doesn't owe you money

15   but you want to get more credit.  So he fills out $240,000

16   worth of markers.  So he's now given $240,000 of credit,

17   which he proceeds to gamble and lose.

18           But he doesn't pay.  And, when Borgata, when

19   Borgata tried to cash these checks, they all come back, and

20   they're all attached to the exhibit.  They all come back

21   account closed.  Your Honor, I believe that those accounts

22   were closed well before, well before Barkany issued those

23   markers to Borgata in March.

24           Another fraud.  Another fraud which would have

25   never happened had everything been publicly disclosed.

1    Borgata was cheated out of $240,000.

2          And then, Barkany, Your Honor, writes a letter to

3    Borgata in the summer of 2013, the summer of 2013.  Now,

4    we're after the criminal case has already been filed.

5          We're after BARM has already sued, and Barkany's

6    writes to two people at Borgata and says, "I'm really sorry.

7    I owe the money.  I didn't pay it back.  I owe you the

8    money."

9          "I don't have the money to give you now.  I'm

10   trying to work everything out.  I really hope that, you

11   know, with the help of the Almighty, I'll be able to pay you

12   back in the future."

13         So BARM, Your Honor, files a claim.  And Barkany

14   doesn't dispute the claim.  As we said in our paper, if

15   Barkany, in his declaration, had disputed that claim, he'd

16   have committed more perjury.  What does he say?

17         He says well, you know, there's this forensic

18   accountant, Belsky.  And my lawyers -- this is what Barkany

19   says.  My lawyers tell me that, according to Belsky, I don't

20   owe Borgata money.  Borgata owes me money.  If that's all

21   true, then I don't owe Borgata money.

22         I mean, that's just a round about -- it's not

23   true.  Okay?  And, Your Honor, Belsky did a supposed

24   forensic investigation with respect to Borgata, where, on

25   the face of it, was incomplete information.  What do I mean

1    by that, Your Honor?

2           In Belsky's affidavit, he attaches a written

3    request that Barkany wrote to Borgata in 2011, I think it

4    was, saying there's this forensic -- it doesn't say why.

5    There's this forensic accountant that's been reviewing all

6    my transactions with you.  And my records are not as good as

7    yours.  Barkany admits he doesn't have the record.

8           My records are not as good as yours.  Please, you

9    know, speak to this guy, Belsky, and give him all the

10   missing records.  Well, you know what?  Borgata -- I mean,

11   they didn't know who Belsky was.  They didn't know who

12   Belsky was.  Why should they turn over their records to

13   Belsky?

14          So Belsky, working with information that

15   admittedly was inaccurate or incomplete, decides to turn, in

16   fact, oh, Barkany doesn't owe Borgata.  Borgata owes

17   Barkany.  They have incomplete records to begin with.

18   That's the whole basis for this dispute.

19          That is not a bona fide dispute, Your Honor.  It

20   can't possibly be, when you have the checks that all

21   bounced, when you have Barkany asking for the extension of

22   credit, when you have Barkany sending a letter in the summer

23   of 2013 saying, "I owe you the money.  I'm sorry I did that

24   to you.  I really hope to pay you back."

25          And Barkany does not say I don't owe them money.

1    I know I don't owe them money.  Not at all.

2          He says simply Belsky says I owe money.  So I do.

3    And Mr. Jannuzzi files a piece of paper on Monday saying

4    well, I had a deal for a bona fide dispute.  That is not a

5    bona fide dispute, Your Honor.

6          So we have a record before Your Honor that in

7    relying on, Your Honor, is very clear.  I know that

8    Your Honor's been inundated with paper.  And I appreciate

9    that.  A lot of paper.  But the record, Your Honor, is very

10   clear.

11         The record is that you've got a situation --

12   everything that I -- I'm going to make a statement now,

13   Your Honor.  I believe everything that I said to Your Honor

14   this morning in terms of some resolution (sic) of payer

15   (sic) is completely undisputed.

16         It is undisputed that Barkany came to Locke Lord

17   and some of his creditors in November and December of 2010

18   without counsel, and he submitted to that small group of

19   creditors that he had committed a Ponzi scheme and did not

20   tell anyone else.  That is undisputed.

21         And it is undisputed that, over the next few

22   months, he met extensively with Belsky and met extensively

23   with Locke Lord, turned over all his records and turned over

24   all of his assets without anyone supervising, without anyone

25   else knowing about it.  It's undisputed, Your Honor, that

1    Locke Lord starting going to charities and saying pay us

2    back.  That's undisputed as well.

3          It's undisputed that Mr. Jacob and some of his

4    colleagues drafted the confession of judgment that

5    Mr. Barkany signed and it was signed in August of 2011 and

6    was kept in a drawer for -- the confession of judgment said

7    I owe you $58 million.  That's undisputed.

8          It's undisputed that Locke Lord and Belsky and

9    presumably some others were liquidating those assets all

10   during that time.  Also undisputed.  All these facts are

11   undisputed.

12         It's undisputed, Your Honor, that as recently as

13   June, the end of June this year, Mr. Jacob and Mr. Wax (ph)

14   sent letters to Judge Wexler accusing Barkany of continuing

15   to lie to them, continuing to be engaged in fraud, and not

16   cooperating and had secreted assets overseas that they

17   cannot find.  And it's undisputed, Your Honor, that

18   Mr. Jannuzzi and his co-counsel, Mr. Barkett, responded on

19   June 27th saying, "These guys are protecting (sic) only

20   themselves.  These guys are wolves in sheep's clothing," and

21   a lot of other things.

22         And then, it's undisputed, Your Honor, that back

23   to the first time on June 30th, a substantial piece of paper

24   listing assets worth tens of millions of dollars were all of

25   a sudden supplied by Shalom Jacob to Judge Wexler and saying

1    well, Jannuzzi said they're worth $32 million.  We say it's

2    worth $22 million.

3            And it's also undisputed, Your Honor, that

4    Mr. Jacob has said on more than one occasion, "You owe your

5    primary obligation to my creditor, my creditor."  No one

6    else's creditors.  My creditors.

7            I believe, Your Honor, that's pretty much in one

8    of either Mr. Wax's letter or Mr. Jacob's letter to

9    Judge Wexler.  They make it plain that they're representing

10   their creditors and their creditors only.

11           So, all of a sudden, now two-and-a-half years,

12   three years down the road, now they're representing

13   everyone?  It doesn't work that way, Your Honor.  It doesn't

14   -- it would have worked that way even had they not done

15   everything that they've done in the last few years.

16           It certainly doesn't work.  So what you've got,

17   Your Honor -- oh, I just want to leave Your Honor very

18   briefly with this notion and the suggestion that Mr. Barkany

19   is engaged in major, major efforts to come up with the money

20   and with the oil fields and all these things.

21           Your Honor, fortunately, within the framework of

22   bankruptcy -- and actually, we've both been involved in

23   these types of cases.  There is a provision in the

24   bankruptcy code that can work for someone that has business

25   and has future business that can help pay back his

1  creditors, her creditors, its creditors.  And that is

2  Chapter 11.

3        And, in Chapter 11, as we know, there is a whole

4  procedure.  There is a procedure.  If the debtor wants to

5  put together a plan to pay off creditors, you put together a

6  plan.  You put together a disclosure statement.  It's

7  subject to Court scrutiny.  It's subject to creditor

8  scrutiny.

9        If Mr. Barkany really believes, really believes --

10  and I hope it's true -- that he has ongoing business and

11  future business that is going to result in so much in the

12  way of profits, notwithstanding his very checkered past,

13  that he can pay back all creditors, great.  He has the

14  absolute right, as Your Honor knows, to take this Chapter 7

15  case and voluntarily convert it to a Chapter 11.

16        Now, Your Honor, it may very well be that, in the

17  context of Mr. Barkany with his background, if he called for

18  a Chapter 11, a Chapter 11 trustee would be appointed.  And

19  that's perfectly fine.  And there's nothing wrong with that.

20        And, Your Honor, I've dealt with cases with Exxon

21  Oil (sic) and (indiscernible - 12:48:33).  The debtor, who,

22  for whatever reason, didn't deserve to operate his business

23  by himself going forward because of the things he'd done in

24  the past, worked together with the trustee.  And we had

25  great success.

1          So that's something that can be accomplished,

2     Your Honor.  There is nothing, there is nothing that can

3     possibly be accomplished by the BARM group, that can

4     possibly be accomplished in the criminal case that cannot be

5     equally accomplished and, frankly, much more effectively

6     accomplished within the framework of the bankruptcy.

7          There is nothing within all the principles of

8     bankruptcy, with the way the bankruptcy case and the

9     bankruptcy code of order (sic) that -- it all clashes with

10    the criminal process.  It's just not the case.

11         So they can suggest it, but it's absolutely

12    without basis.  There is no basis for it.

13         If Mr. Barkany wants to proceed in Chapter 11 or

14    he wants to proceed somehow in the Chapter 7 type

15    proceeding, right, he can do that as well.  But there is

16    nothing, nothing within the framework of a bankruptcy case

17    that would preclude Mr. Barkany from working on an

18    arrangement to pay back his creditors.

19         Now, Locke Lord would be because then they're

20    going to be looked at as well.  And, as I said, I think

21    there's going to be a lot of scrutiny that needs to go on

22    there.  And, because of that, Your Honor, they may be angry.

23    And I think this is what Mr. Jannuzzi's concerned about.

24         They're going to get angry, and they're going to

25    say you know what?  Mr. Barkany -- he really was rooting for

1  this bankruptcy, and he was working behind our back for this

2  bankruptcy.  And therefore, we're going to urge the U.S.

3  Attorney to stop this process now and maybe (sic) go forward

4  with the sentencing.

5           Your Honor, that may not be true, and that may not

6  happen.  And I can't really comment on that.  But I know,

7  Your Honor -- I know from all my experience that that,

8  whether it's a little true, whether it's a lot true, whether

9  it's not true at all, but that's not a consideration that

10  ultimately can determine this Court's decision in terms of

11  the outcome of this case.

12           This case, based on all of the facts and the

13  unrebutted record already here -- and it's all unrebutted.

14  It's all unrebutted -- is so overwhelming in proving the

15  need for an immediate bankruptcy case.  This case should not

16  remain out of bankruptcy another day.

17           This case is literally, this case is literally

18  three years late in getting started.  And, as I said, I

19  strongly suspect, Your Honor -- I would love to be proven

20  wrong.  And, if I am wrong and I am (indiscernible -

21  12:51:07), I apologize to everyone (sic).

22           But I strongly suspect, Your Honor, that, if

23  Your Honor would attempt (sic) an order of relief today and

24  we would go forward in bankruptcy today and Locke Lord would

25  be contacted tomorrow or the next day and say okay, you guys

1   are holding $24 million that you got and no one knew about

2   it, you've been liquidating it.  Turn it over to the trustee

3   so we can start administering that in the context of the

4   overall bankruptcy case.

5           I strongly suspect that Locke Lord will tell the

6   trustee, "No, that's our money.  We got that money.  It was

7   a payment of our debt, and it's outside the preference

8   period and tough.  And if the estate wants that money,

9   you're going to have to come and get it from us."

10          And I think that says it all, Your Honor.  That

11  says it all.

12          If that's not where Locke Lord's coming from, then

13  they should be perfectly, perfectly happy to go forward with

14  the bankruptcy, because Mr. Jacob is a bankruptcy attorney.

15  I believe Mr. Wasserman knows something about bankruptcy as

16  well.  They know -- they know that everything that needs to

17  be done here can be done much more effectively in bankruptcy

18  than outside of bankruptcy.

19          And finally, Your Honor, just one more point

20  because they make this -- if any creditor, whether it's the

21  BARM creditor group, whether it's the Canadian Northern

22  Creditor Group, the group represented by Mr. Schneck, if any

23  of them had claims against any party, whether it's my

24  client, whether it's Borgata, whether it's any of the other

25  defendants, which they believe are individual claims as

1  opposed to estate claims, right, because they were some type

2  of tort committed allegedly against their client directly,

3  so it would be a claim, whether it's a constructed trust,

4  whether it's for unjust enrichment, whether it's because of

5  defalcation, whether it's (indiscernible - 12:52:49).  If

6  any claim that's an individual claim is not in those, that's

7  not a trustee claim.

8          So they would come into court and they would say,

9  Judge Scarcella, we've got an individual claim.  This is

10  what it is.  We'd like you to lift the stay so that we can

11  pursue our individual claim against whomever it may be and

12  that's part of the -- that's outside of the bankruptcy

13  process, but that's dealt with in bankruptcy as well.

14          So there will be no one, Your Honor, there will be

15  no one in the slightest prejudiced.  No one prejudiced by

16  putting this case into bankruptcy.  That is where it

17  belongs.

18          To the extent that people want an unfair advantage

19  by the case staying outside of bankruptcy, well, you know, I

20  understand that people want unfair advantages, but that's

21  not what bankruptcy is all about.

22          So, Your Honor, we would urge -- and I know I've

23  spoken for a long time, but we would urge -- believe me,

24  Your Honor, this is stuff that these -- that the people on

25  the left have been wanting to tell someone, literally for

1    the last three years plus and we believe, Your Honor, that

2    this case is right for bankruptcy, that the record is clear

3    and that an order for relief should be entered today.  Thank

4    you.

5            THE COURT:  Mr. Kirshenbaum, thank you.

6            Does anyone else on behalf of the petitioning

7    creditors wish to be heard?

8            MR. KLAUSNER:  Judge, Mr. Kirshenbaum, who is not

9    a gambler, did a fairly credible job explaining.

10            THE COURT:  I did get the gist that this is all

11    new to him that he's not a gambler.  He mentioned that, I

12    think, twice, so it's clearly on the record.

13            UNIDENTIFIED SPEAKER:  Thank you.

14            MR. KLAUSNER:  Your Honor, to the extent that

15    you'd like a little elucidation, I can provide that, but the

16    gist of what Mr. Kirshenbaum said is correct.  Borgata

17    clearly does not owe Mr. Barkany any money.  Mr. Barkany

18    owes the Borgata $240,000.  The Borgata has the records to

19    demonstrate that without question.

20            And I just wanted to address one item.  Borgata

21    has apparently been accused of not cooperating with the

22    forensic accountant.  What the forensic accountant doesn't

23    know is that there are a whole host of rules and regulations

24    under the New Jersey Casino Control Act, the casinos must

25    abide by.  And one of them is that their credit people

1     aren't allowed to talk to outsiders.

2            Now, the forensic accountant never contacted

3     Borgata's general counsel.  BARM and the forensic accountant

4     never contacted me.  Nobody ever asked us for any additional

5     records.  There was an email to somebody in the credit

6     department at Borgata, who quite frankly, is not authorized

7     by law to talk to him.  And she sent him an email that said,

8     this is as much as I'm allowed to give you by law.  Here's

9     what we have, okay, and the matter ended there.  There was

10    no further communication, there were no further requests

11    from counsel or through me, but we do have the records.

12           What the forensic accountant failed to take into

13    account -- one of the things is cash that Mr. Barkany can

14    transfer money before he goes to gamble.  It's called a

15    front money deposit.  He makes a deposit, basically in

16    trust, it's held by the casino.  He goes to the casino.  He

17    sits down at a table and he says, I'd like to make a front

18    money withdrawal, let's say $100,000 he sent before he

19    arrived.

20           He sits down at the table.  He says, I'd like my

21    $100,000.  They give him $100,000 in chips.  He gambles, he

22    loses $50,000 and he says, you know what, I'm done.  He

23    cashes his chips, he's got $50,000 in his pocket and now he

24    leaves.

25           The forensic accountant didn't take that into

1    consideration, the cash component of gambling that he could

2    transfer this money to Borgata, yet leave with some of it or

3    most of it.  And the transactions can all be looked at that

4    way.

5              Unfortunately we did not have time to go through

6    every transaction.  Mr. Barkany has over 700 individual

7    transactions with Borgata.  Most of them are credit

8    transactions.

9              Mr. Kirshenbaum used the term marker.  What that

10    mean is if you have a credit account at a casino and you sit

11    down at a table and you decide you don't want to come with

12    any money, you don't want to bring money and you don't want

13    to send money in advance and you have a credit account, you

14    can sit down and you would say, I would like a marker for

15    $10,000.

16              What the casino does is they check your credit

17    make sure you have enough available credit and if you do,

18    somebody comes over and hands you a check.  The check is

19    drawn on your own bank account.  You sign it.  The casino

20    holds it as security.  That's what a marker is.

21              The casino requires, within a certain period, 45

22    days for checks over $5000, if you don't redeem the marker,

23    in other words, you don't pay back the credit that you

24    borrowed, they're required to deposit it in satisfaction of

25    the marker and that's what happened in this case.

1          He took out $240,000 worth of markers and all the

2    checks bounced.  That's the basis of the claim.  Before

3    then, they were even.  Mr. Barkany didn't owe the casino any

4    money and the casino didn't owe him any money.  Thank you.

5               THE COURT:  Thank you.

6               MR. MULHOLLAND:  Judge, would you like to hear

7    from the interested creditors at this point?

8               THE COURT:  Yes.  I would like to hear from the

9    interested creditors.

10              MR. MULHOLLAND:  The few comments I have, Judge, I

11   just feel like this is where they belong.  I'd like to

12   underscore what Mr. Kirshenbaum said in his reference to

13   Madoff.  In the days after Madoff hit the news line December

14   10, Friday, I believe it was.

15          I had the opportunity to file the very first claim

16   against Madoff here on Long Island and it was a private

17   action, an isolated action and within days I was in touch

18   with the lawyers in the city who were properly ramping up

19   the bankruptcy proceeding.  And I quickly deferred to them,

20   because I understood that my isolated action did not belong

21   and I saw the writing on the wall.  Madoff had to be taking

22   up under the umbrella of a single unified action.

23          And because of my involvement there, it was about

24   a year later that I had the opportunity to talk to a group

25   of some 50 plus investors who were victimized by the so-

1    called Long Island mini Madoff, Nicholas Cosmo (ph).  I knew

2    from what happened in Madoff that what had to happen there,

3    that case was inescapably drawn into a bankruptcy framework.

4    I knew it.  My clients wanted to bring a private right of

5    action, a private action rather, a fraud action.  I knew

6    what had to be done.  I saw the writing on the wall where

7    that case was going.  It had to be.

8            And of course, today, the Agape bankruptcy

9    proceeding remains pending here.  It started in front of

10    Judge Eisenberg.  Mr. Silverman, who was in court this

11    morning, continues to prosecute those claims as they must be

12    in one unified proceeding.

13            So Mr. Kirshenbaum said that he thought some of

14    the listeners here today were growing more concerned with

15    what they were hearing today.  I've learned a bunch in the

16    past hour and a half.

17            And I can say I came to court this morning, I

18    would say that my level of concern for my clients was

19    disturbed.  Disturbed to think that we might be targeted by

20    an isolated self interested group, rather than taken up in

21    the context of a bankruptcy proceeding, but after what I've

22    heard, Judge, I've gone from concerned to horrified.

23            I would be horrified to think that I'm going to be

24    subject to the vagaries of private procedures that BARM has

25    created and that's where I'm going to get my finality.  My

1    clients are four individuals, Judge, and they invested some

2    $5 million in '08, '09.  And Barkany has admitted publicly

3    that not only did he run Ponzi scheme, but he also ran a

4    bunch of legitimate investments in bona fide underlying

5    assets, real estate opportunities for the most part.

6              My clients participated, exclusively in those

7    early years, in legitimate, bona fide, actual assets that

8    they visited, that they saw on earth.  And so they are now

9    targeted in this claw back action where they're treated as

10   participants in the Ponzi scheme, so again, to underscore

11   what Mr. Kirshenbaum said, we welcome the opportunity to

12   have the claims against us scrutinized in this context.

13             We don't hide from this.  We don't run from this.

14   This is where we want to be.  This is where the entire story

15   of Barkany belongs and we are completely horrified at the

16   notion that we would have our situation looked at anywhere

17   else.

18             Judge, I think Mr. Kirshenbaum delivered a very

19   compelling message.  I'll answer any questions on behalf of

20   my clients, Jonathan Lifeler, his parents, Murray and Sarah

21   Lifeler, and Ed Lowey, they are legitimate investors and we

22   want this story taken up in this Court, Judge.

23             THE COURT:  What's the total amount of claims that

24   your clients hold?

25             MR. MULHOLLAND:  We have contingent claims of 5

1    million, because Mr. Wasserman and his crew are looking to

2    take 5 million from my clients of principle that they

3    invested and the minute that we are forced to disgorge it in

4    their state court proceeding, BARM against (indiscernible -

5    1:02:01), we will immediately become $5 million creditors of

6    Gershon, because that was real money that we put in and if

7    it's taken from us, we want it back.  And so as contingent

8    creditors, I understand we're -- as contingent claim

9    holders, I understand we are claimants for purposes of this

10    bankruptcy and with that standing we oppose the motion to

11    dismiss and we ask you to keep here, Judge.

12              THE COURT:  Thank you.

13              MR. WARREN:  Do you want to hear more from the

14    creditor or is it the interested parties?

15              THE COURT:  Sure.  That's fine.

16              MR. WARREN:  I'll be very brief, Your Honor.

17    Edward Warren of Voute Lohrfink Magro, McAndrew.  I

18    represent Zucker and Kwestel LLP and Steven Kwestel.  These

19    are the attorneys who were sued in the Nassau action that

20    was commenced in November of 2011.  So we've been rattling

21    sabers with the Barkany Ponzi scheme for quite some time.

22              The only thing that I would like to put before the

23    Court, not on the threshold issue -- I'm really not smart

24    enough to address that, I'll be honest -- but the issue of

25    whether or not to exercise discretion.  We have named

1    Barkany as a third party defendant, because my clients are

2    accused of aiding and abetting his fraud, so it's necessary

3    that the fraudster be part of that.

4              Mr. Barkany won't talk to -- won't be deposed.  He

5    takes the Fifth, even though he's already pled guilty to

6    defrauding one of my plaintiffs, he still won't come in to

7    be deposed.  He won't give us information.  I subpoena BARM

8    and another entity, Bar-cred (ph), they won't respond to the

9    subpoenas.  They say they have nothing to do with it.  I

10   have no idea who is collecting money, where is it going.

11   Today was the first time I heard what the mechanism was out

12   of all these years of litigation, today was the first time.

13             And yet, even though $22 million has been

14   collected, out of $58 million, my clients are still being

15   pursued for $47 million with the remaining claims.  So we

16   need to be in one place where all of us gets addressed at

17   one time.

18             It also begs the question that no one is answering

19   to me is who is minding the minders?  Who is approving Mr.

20   Belsky's fees?  Who is approving fees for Locke Lord

21   themselves?  Where is the oversight for that?  That is the

22   only thing that I would like to put before the Court today.

23   Thank you for your time.

24             THE COURT:  Thank you.

25             Mr. Jannuzzi, have you reviewed the documentation

1    that Borgata has demonstrating or alleging demonstrating

2    that Mr. Barkany owes the money, $240,000 I think is the

3    number that was (indiscernible - 1:04:26) about.

4            MR. JANNUZZI:  I have not seen that documentation,

5    Judge, and I don't know that I'd be qualified to review it

6    and know that I was even seeing something that mattered to

7    me.

8            Our argument has been -- and it was correctly

9    stated and it's exactly like this in our papers.  We were

10    told by a forensic accountant.  That person is obviously

11    qualified, that person had the consent of my client to get

12    all the records that the Borgata had on him and to review

13    those records.

14            From looking at those records, he came up with the

15    figures, the forensic accountant came up with the figures,

16    that there's a million dollar discrepancy.

17            The documents that could have cleared that up have

18    never been turned over as we stand here today.  So from

19    where I stand, it is not our argument that this money is

20    owed or not owed, it's that a forensic accountant has raised

21    an issue, somebody who is qualified, who has looked at

22    records.  We have adopted that his position is significant

23    from the standpoint that if he is correct, it is a $1.3

24    million swing to our creditors.

25            THE COURT:  But when you say $1.3 million swing,

1    is his basis that yes, there is a claim by Borgata, but

2    Barkany has a counterclaim of 1.7 million, so then when you

3    offset at the end of the day, the dollar amounts, Barkany

4    thinks that Borgata after the offset would owe me $1.3

5    million?

6           MR. JANNUZZI:  My understanding, Judge, is that

7    the net figure, the net discrepancy is $700,000.  How Mr.

8    Belsky arrived at that figure, I'm not sure, but the counsel

9    for BARM I'm sure is prepared to address that issue.

10          THE COURT:  But again, the issue being is it a

11   counterclaim that Belsky believes exists or is his claim

12   that there's absolutely no money owing to Borgata, despite

13   the records that Borgata will have and ultimately if we

14   address the threshold issue will be put into evidence?

15          MR. JANNUZZI:  I say that it is a issue that the

16   Borgata is not a bona fide creditor.  There's a bona fide

17   dispute and it's not in the nature of a counterclaim.  It's

18   that we never owed you 240, so you never had a credit for

19   that and in fact, you owe us a million and seventy.  But our

20   information is based on an accountant's review, not our own,

21   but we are adopting that argument today for purposes of

22   standing.

23          THE COURT:  So that the threshold issue that we

24   have to deal with is whether or not there is a bona fide

25   dispute, legal or factual, as to liability or amount.  And

1    you had said earlier that the only petitioning creditor's

2    claim that you are contesting with respect to the bona fide

3    dispute is the claim that is asserted by the petitioning

4    creditor, Borgata?

5            MR. JANNUZZI:  That's absolutely correct, Judge.

6            THE COURT:  So that we can deal with that

7    threshold issue because that's sort of the gate keeper to

8    come into this bankruptcy court in a certain respect, so

9    that we can deal with the bona fide dispute that you have

10   raised with respect to Borgata in one of three ways and

11   everyone should think about what's the most expedient way to

12   do this.

13           The Court could take it under submission and look

14   at all of the papers.  The Court could hold an evidentiary

15   hearing at which we will take testimony, we'll take

16   documentary evidence from Borgata, we'll take testimony and

17   any documentary evidence from Mr. Belsky and BARM and the

18   debtor on this particular issue, the threshold issue.  It's

19   a single, narrow issue to be determined.

20           Or lastly, if you all think that you're absolutely

21   correct and there's no material fact in dispute, you can

22   each file a cross motion for summary judgment, we'll make it

23   returnable and we'll make our decision, but as I understand

24   it, that is the narrow issue with respect to this

25   involuntary petition.

1          MR. JANNUZZI:  With respect to the threshold

2     issue, yes.

3          THE COURT:  That's correct.

4          MR. JANNUZZI:  Yes.  That is correct.  I don't

5     know what other counsel's position is, but my client would

6     ask for an evidentiary hearing on this, absolutely.

7          THE COURT:  And I ask the petitioning creditors,

8     we can set this down for an evidentiary hearing.  And again,

9     this is the threshold issue as to whether or not we have

10    three petitioning creditors that are eligible to file the

11    involuntary bankruptcy against Mr. Barkany.

12         MR. WASSERMAN:  Your Honor, it has been our

13    position that there's a bona fide dispute with respect to

14    Joseph Rosenberg and Kessler so we believe those are

15    threshold issues that should be addressed as well.

16         THE COURT:  We can address all three.  I'll ask --

17    I'll hear from Mr. Kirshenbaum, but if we're going to

18    address the threshold issue with respect to Borgata in the

19    very same proceeding, we can address the threshold issue

20    that you are contesting whether or not there is a -- whether

21    or not there is a bona fide dispute with respect to the

22    claims that have been asserted by the other two petitioning

23    creditors.

24         MR. KIRSHENBAUM:  Your Honor, the law on this is

25    very clear, that only the petitioning -- that only the

1    debtor has the right to challenge the bona fide claims of

2    the petitioning creditors, not any other creditors.

3              That law has been very clear since 1938.  We

4    talked about this at length in our papers.  Prior to 1938,

5    any creditor could challenge the involuntary petition.  The

6    law was changed in 1938 to make it clear that only the

7    debtor could challenge the involuntary petition and the

8    basic elements that of course comprise the involuntary

9    bankruptcy, which is that if you're dealing with a debtor

10   with more than 12 creditors, that you have at least three

11   creditors whose claim exceed the threshold of 15,000 and

12   change and that the debtor is not paying debts in the

13   ordinary course as they become due.

14             And the case law, Your Honor, is also clear -- is

15   also clear that what the creditors cannot do directly, they

16   cannot do in a roundabout way.  So meaning that if since the

17   creditors opposing the involuntary petition cannot challenge

18   the claims as not being -- as being subject to a bona fide

19   dispute, they cannot in the context of a motion to dismiss

20   or under 305 or 707 raise that issue, because they would

21   simply be allowed to do indirectly what they can't do

22   directly.  The case law on that is very clear.

23             One of the cases, Your Honor, that sticks in my

24   mind always in terms of the citation is the Market XT

25   bankruptcy case that Judge Gropper wrote on in great length

1    only because that was a case that I was involved in on

2    behalf of the petitioning creditors, but there are many and

3    we cite them all.

4           So, Your Honor, we can spend a lot of time on this

5    because you're dealing with transactions and you're dealing

6    with years and years of business, right.  I would

7    respectfully say, Your Honor, that the truth is Barkany has

8    not put the claim of Borgata into bona fide dispute and

9    therefore, there's no basis to keep this case out of

10   bankruptcy as we stand here and sit here today.

11          But if Your Honor is prepared to give Mr. Jannuzzi

12   that measure of latitude notwithstanding the record which is

13   before Your Honor, which is the -- with the checks that were

14   written on the account that was closed and therefore were

15   not honored and Mr. Barkany's letter saying, I owe you the

16   money, but I can't pay it back and I hope to pay it back in

17   the future.

18          And notwithstanding that you're prepared -- you're

19   view is you should give Mr. Jannuzzi the latitude of

20   challenging the bona fide nature of the Borgata claims and I

21   -- Your Honor really urge the Court and I think on very,

22   very solid grounds and consistent with all the case law and

23   the statute and the -- and the committee notes, the advisory

24   committee notes to the statute and to the rules that it be

25   limited to Borgata and that we take that up quickly and that

1    it, frankly, it's a hearing that Mr. Jannuzzi has to hold

2    because it's only the debtor's challenge.  It's not

3    Mr. Wasserman's challenge.  It is not Mr. Wax's challenge.

4    It's the debtor's challenge.  Only the debtor can challenge

5    that and only the debtor has standing to challenge that.

6              UNIDENTIFIED SPEAKER:  Your Honor, may we be

7    heard?

8              MR. KIRSHENBAUM:  Mr. Jannuzzi can put on any

9    evidence he wants.  Your Honor, I would -- I asked Mr.

10   Barkany about the Borgata claim at his deposition and he

11   took the Fifth.  And, Your Honor, we believe that that's an

12   additional basis to base -- you can challenge a claim.  You

13   can't use the Fifth Amendment as both the shield and the

14   sword.  And so therefore, Your Honor, we would expect if

15   Your Honor is going to hold a hearing that we have the

16   opportunity to examine Mr. Barkany about that and Mr.

17   Barkany can ask the Court for immunity on that, because,

18   Your Honor, I firmly believe that if Mr. Barkany is asked

19   the question directly and Mr. Barkany cannot hide behind the

20   Fifth, Mr. Barkany would say, yes I wrote those checks.  I

21   took out that credit.  I owe Borgata the money.  What I

22   wrote to Borgata in the summer of 2013 is accurate.  I owe

23   Borgata money.  And that's the end of the story, Your Honor.

24             If Borgata is owed one penny, it's the end of the

25   story, because the other two creditors, obviously, the

1    numbers are in the hundreds of thousands if not the

2    millions.

3            So, Your Honor, I think if we're going to conduct

4    a hearing, it has to -- I respectfully ask Your Honor that

5    it be done on that basis with Mr. Jannuzzi challenging the

6    claim, Mr. Jannuzzi representing Mr. Barkany, not Mr.

7    Wasserman, not Mr. Jacob, they've been at Mr. Barkany's

8    (indiscernible - 1:14:20) for years.  And Mr. Barkany,

9    frankly, is scared to death of them because he feels that

10   they're the ones that basically in a snap can basically snap

11   their fingers and he'll be behind bars.

12           That may be true, Your Honor, it may be not true.

13   I'm not suggesting it's true, but I think given the history

14   here that's happened over the last number of years, I think

15   that's really the psychology that you're looking at and it's

16   understandable.  It is understandable.  They've been calling

17   the shots.  They've been directing him now for years and so

18   it's a hearing that either Mr. Jannuzzi or Mr. Barkany has

19   to hold, not them and let them put on whatever evidence they

20   want in terms of the opposing -- the claim of Borgata and

21   subject, Your Honor, to speaking to Mr. Klausner who is of

22   course Borgata's attorney, my view is that we should hold

23   this hearing as quickly as is convenient for Mr. Klausner

24   and the Borgata witnesses and let's get done with this.

25           Because we need to be in front of Your Honor.  We

1    need to start getting order and honesty and integrity and

2    transparency to a process that has been completely opaque

3    and completely hidden from everyone since November of 2011 -

4    - 2010.

5              MR. JANNUZZI:  Judge, if I hear --

6              THE COURT:  Wait, just one moment.  I -- thank

7    you, Mr. Kirshenbaum.  I am familiar wit he cases that you

8    are referencing with respect to who can contest the

9    involuntary.  BARM, I think, is about to tell us that they

10   think they fall under some exception with respect to that.

11             MR. KIRSHENBAUM:  Uh-huh.

12             THE COURT:  So I will listen to counsel, but one

13   question for Mr. Jannuzzi and that is that presuming that

14   Borgata can meet the initial burden of presenting prima

15   facie evidence that there is a claim that is owed to the

16   Borgata, how do you propose now, because the burden shifts,

17   how do you now propose to sustain your burden of proof that

18   the claim isn't a bona fide dispute?

19             MR. JANNUZZI:  Okay.  Well, Judge, again, if I'm

20   having that hearing, I'm calling David Belsky as my witness

21   and Mr. Belsky could explain to the Court how he reached the

22   conclusions he reached and then the Court will decide it

23   accordingly.  But so that it's clear and for the second

24   time, I've heard my client described as someone who is

25   intimidated by Locke Lord and BARM and that's just not true.

1           Our concern is that we believe -- when I say we,

2    myself, the criminal attorney representing Mr. Barkany and

3    Mr. Barkany -- that the administration of this bankruptcy,

4    the 12 civil suits that are being pulled in and the claw

5    back action that Mr. Kirshenbaum has forecasted will be

6    forthcoming and the expenses that are going to be involved

7    with the trustee and the trustee's counsel will take money

8    away from the ever high target of paying back the money that

9    my client needs to pay back for purposes of restitution.

10          And that's the second part of this motion, Judge,

11   that we don't believe this is in the best interest of the

12   debtor or the creditors, that this will turn into a mushroom

13   of litigation, that expenses will be eaten up that will

14   exceed the amount that my client can pay back considering

15   restitution.

16          Already today, there's a dozen attorneys in the

17   room.  I'm sure the legal fees are over six figures and

18   they're only going to grow from here and we haven't even

19   started yet.  So there's two arguments before this Court and

20   the threshold issue for sure.  My client's not intimidated,

21   sir.  My client has a goal.  The goal is to pay people back

22   and this bankruptcy puts him further and further from that

23   goal and that's our main objection to this bankruptcy.

24          THE COURT:  Is your saying that you're further and

25   further from the goal because you're concerned about the

1    administrative expenses that would be incurred in a

2    bankruptcy?

3                  MR. JANNUZZI:  I'm saying all of the expenses,

4    Judge.  Because if there's a claw back on that $22 million

5    for example, right, and that goes into the bankruptcy

6    estate, some of that money is going to be used for

7    administration expenses associated with this bankruptcy.

8    I'm sure of it.  And there's going to be expert witnesses,

9    there's going to be accountants.  There's going to be all

10   kinds of things that are going to be drawing from that pool

11   of money.  And when that happens, the figure that my client

12   needs to make for purposes of restitution grows

13   geometrically and that's why I oppose this bankruptcy,

14   together with the fact that we've been told -- and I cannot

15   ignore whether it's accurate or note -- that there's a

16   discrepancy with respect to this and it needs to be put

17   before the Court in an evidentiary fashion so that Your

18   Honor can properly rule on it.

19                  All we've said is that we were told this has

20   happened.  That's all we've said in our motion papers, but

21   that's significant and it's a significant amount of money

22   and it needs to be discovered, it needs to be looked at.  If

23   Mr. Belsky is correct, it's a million three more for our

24   creditors.  If Mr. Belsky's wrong, then that one argument we

25   have related to threshold is defeated, but that needs to

1    take place, Judge.  Thank you.

2              THE COURT:  Thank you.

3              MR. WASSERMAN:  Mr. Kirshenbaum spoke for roughly

4    an hour and a half.  I won't speak that long, but I will ask

5    the Court to show the same patience with me as it showed

6    with Mr. Kirshenbaum.

7              At some point, I was waiting for Your Honor to

8    suggest that Mr. Kirshenbaum be sworn in as a testifying

9    witness.

10             THE COURT:  I look upon statements from Mr.

11   Kirshenbaum, Mr. Jannuzzi and from you as just pure

12   argument.  It's not evidence.  I'm not making any findings

13   whatsoever.  The only way I'm going to make any findings is

14   based upon admissible evidence.  I'm just trying to get an

15   understanding of the case, an understanding of the party's

16   positions.

17             I have one group that feels that the collective --

18   the collective nature of the bankruptcy process with a

19   radical distribution and scrutiny would benefit all

20   creditors.  And then I have this side of the room, which is

21   to my left, your right, this side of the room saying that

22   you would prefer the preference is in the best interest of

23   creditors is this continuing of this out of court work out

24   or out of court recovery, (indiscernible - 1:20:19) recovery

25   program.  So I'm just trying to get an understanding from

1    the parties as to where things are and how best that we can

2    all get to what I believe would be the same end game.

3    Everyone wants to get paid.

4            This group who feels they were defrauded wants to

5    get paid.  Your group who feels they were defrauded wants to

6    get paid.  So there needs to be the appropriate exit

7    strategy.

8            This group, Mr. Kirshenbaum and the others on the

9    petitioning creditors, they feel that exit strategy is

10   better suited in a collective proceeding in bankruptcy.

11           You, on the other hand and the debtor, on the

12   other hand, feel that the out of court asset recovery

13   program works better.

14           So I'm not -- I don't want you or anyone else here

15   to think that I'm making any findings whatsoever or coming

16   to any conclusions.  I'm just getting the background and

17   then we need to address the threshold issue as to whether or

18   not the petitioning creditors were eligible to file the

19   involuntary.

20           MR. WASSERMAN:  I appreciate that, Judge.

21           Mr. Kirshenbaum spoke for an hour and a half

22   without interruption.  I spoke for 30 seconds, so I'm going

23   to continue.

24           You cannot sit there and listen over and over and

25   over again, without it affecting your judgment, Mr.

1    Kirshenbaum saying, as far as I know or I believe and then

2    what follows is cast as fact.  Most of what Mr. Kirshenbaum

3    said is blatantly false.  It's an untruth.  I don't suggest

4    for a minute that it was intentional on his part, but yet

5    time and time again, in the first 45 minutes he stopped

6    doing it after the first 45 minutes, but it was, as far as I

7    know, and then he would state something as if it were a

8    fact.

9              There are a couple of those facts which we need to

10   look at because I do think they are important.  First of

11   all, how much is Joseph Rosenberg claiming?

12             In the petition he says 160,000.  Mr. Kirshenbaum

13   said he's owed a million.  The record reflects at times he's

14   thought it was 800,000, 850,000.  It's impossible on the

15   record that we have, based on the petition, whatever

16   documents have been submitted by the petitioners to

17   determine how much is Mr. Rosenberg claiming?  And in fact,

18   in the petition itself it says 160,000 minimum.  That's not

19   a number.  That's a range.

20             In addition, he says it's exclusive of the money

21   owed by Gershon Barkany's other entities, so based on the

22   petition and the record before this Court to date this Court

23   has no idea how much Joseph Rosenberg is owed.

24             What the Court does have, whatever the source of

25   it is, what the Court does have -- and they talk about

1    transparency, they're not trying to hide anything.  They

2    want everything on the table.  They want the sun to shine.

3    Let's test that.  You have a forensic accountant's

4    declaration in whether he analyzed in excruciating detail,

5    Mr. Rosenberg's claim.

6              In response, you have a sentence repeated a number

7    of times on the bankruptcy petition, 160,000.  In the

8    attachment, it says a minimum of 160,000.  Let Mr. Belsky,

9    the forensic accountant testify as to whether Joseph

10   Rosenberg is owed anything and if so, how much.  Because

11   based on the record before Your Honor, as we sit here today

12   -- as I stand here, as you sit -- there's a bona fide

13   dispute as to whether Mr. Rosenberg is owed anything and if

14   there is liability, what the amount of that claim is.

15             The same thing with respect to Kessler.  They want

16   transparency.  They want sunshine.  They want everyone

17   treated fairly, everything above board.  You have before

18   you, Judge, the declaration of Mr. Belsky, who again, after

19   exhaustive analysis and review of documents, undertaking,

20   obtaining documents, interviews, analyzing those documents,

21   creating charts and schedules, Mr. Belsky has determined

22   that the documents do not support Mr. Kessler's claim of a

23   minimum of $135,000 and may well be inconsistent with that

24   claim.

25             Transparency?  Let's have it.  Let's have a

1   hearing where you hear the evidence on that, because on the

2   record before you right now, there is a bona fide dispute.

3           Now, let's turn to Borgata.  I've got it as three

4   different names here, but I think we've agreed to call it

5   Borgata for convenience.  That's a claim of $240,000.

6   There's a dispute as with the other claims we believe there

7   should be a hearing and hopefully that's what the parties

8   will agree to and if it's an expedited hearing, so be it.

9   This should be resolved as quickly as possible.  But it's

10  important when you look at their papers, to understand the

11  confidence or the lack of confidence that they actually have

12  in that claim by the distortions which you heard from

13  counsel and which are in their papers.

14          And specifically I refer to their brief where it

15  says, Mr. Barkany specifically admitted -- specifically

16  admitted the existence and amount of liability.  That's at

17  page 2 of their brief.

18          And in making that statement, they rely on a

19  7/26/13 email from Gershon Barkany to the Borgata, to a D.

20  Brown.  And that's Exhibit G to her affidavit, her

21  declaration.

22          And in that declaration, Mr. Barkany says in

23  relevant part, I have a personal interest in taking care of

24  my obligation with your company, not only because I owe the

25  money -- and then he goes on.

1           MDTC, the Borgata argues -- based on that email --

2    the email speaks for itself and is a specific admission as

3    to the liability for and amount of the debt to Borgata.  And

4    amount of.  That's not true.  It wasn't true when Mr.

5    Kirshenbaum said it, when counsel for Borgata said it and

6    it's not true in the brief.  The email -- I read it ten or

7    fifteen times figuring they wouldn't say it if it wasn't

8    true and they certainly wouldn't stand up in court and

9    present it as fact to Your Honor, but it's not.  The email

10   never talks about the amount.  Nowhere does Mr. Barkany's

11   email specify the amount owed.

12           It doesn't stop them from arguing in court, and in

13   their brief that he admitted the amount of liability of his

14   debt, another falsehood.  That's why there has to be an

15   evidentiary hearing with respect to that.

16           Now, as to the standing issue.  Let's get to the

17   underlying purpose which -- and I'll rely on the

18   petitioner's brief.  The underlying purpose for the rule

19   prohibiting a response by a creditor, is that a creditor may

20   have an incentive to protect a preference or to gain some

21   unfair advantage at the expense of other creditors contrary

22   to policy of requiring equal distribution of the debtor's

23   assets among all creditors.  That's the underlying purpose

24   of that rule.

25           Now, while I'm not suggesting that this Court

1    cannot look to the case law of a sister district, I do note

2    that for this well settled principle, they do not cite to

3    any authority in this district, nor do they cite to any

4    Second Circuit authority.  So it's a universally held well

5    settled principle, but they could not find a case in this

6    district or a second Circuit Decision to cite to.

7            Now, the standing issue -- and Your Honor, I know

8    you put in quotation marks, the exception.  I'm sure you

9    didn't mean to minimize the argument --

10           THE COURT:  No, I did not mean to minimize the

11   argument.  Thank you for recognizing that.

12           MR. WASSERMAN:  Okay.  The issue of standing is

13   moot here, at least that's our position, because Barkany has

14   also moved for dismissal.

15           The concerns that gave rise to the creditor

16   lacking standing to object in an involuntary bankruptcy

17   petition, they're not present where the debtor himself has

18   moved to dismiss and has joined in the creditor's motion.

19           Now, yes, he didn't join in the entire motion in

20   all respects, but he did join in the motion and we would

21   direct the Court to a case which is not binding on Your

22   Honor, but we do believe is instructive and that's in re:

23   Kenval Marketing Corp., 38 B.R. 241.  It's an Eastern

24   District of Pennsylvania case.  It's cited in our brief and

25   they attempt to distinguish the case.

1        We believe that's an important case.  Here,

2    Barkany has objected and he's joined in our motion, the BARM

3    motion.  Moreover, standing for BARM is extremely important,

4    because for all practical purposes -- and they've argued

5    this extensively in their brief, less so in court today, but

6    they over and over again talk about Mr. Barkany taking the

7    Fifth that he can't -- he doesn't answer questions, which he

8    should answer.  He doesn't have the right to take the Fifth.

9        In essence, to some extent, Mr. Barkany is

10    paralyzed.  Mr. Barkany is between a rock and a hard place.

11    Now, it is not the rock and the hard place that counsel

12    suggests which is somehow Locke Lord controls Mr. Barkany

13    like a puppeteer controls a marionette, that's not the rock

14    and the hard place.  He's in the middle of criminal

15    proceedings, jeopardy has attached and his counsel has told

16    him he needs to invoke his Fifth amendment.

17        What does that do as far as Barkany being able to

18    assist the trustee and the Court in connection with his

19    bankruptcy?  The problem is he becomes paralyzed.  He

20    becomes useless and this is precisely the situation that was

21    faced in, in re; Westerly Development Corp. 141 B.R. 38.

22    It's a Southern District of New York case, 1992.  Again, a

23    sister district, it's not controlling here, but it's

24    instructive.  There the debtor was effectively paralyzed due

25    to a deadlock between its two shareholders.

1          The Court found that this fact warranted a

2     flexible application of the general standing rules.  Here,

3     Mr. Barkany to some extent is paralyzed in his ability to

4     lend effective participation in these proceedings, moreover

5     with respect to the specific issue of whether or not the

6     petitioner's claims are valid and the amount of those claims

7     he is certainly paralyzed.

8          THE COURT:  Well, let me ask you a question.

9     You're saying he is paralyzed.  He wasn't paralyzed to

10    challenge the Borgata claim is not the subject of a bona

11    fide dispute, why is he so paralyzed that he couldn't

12    challenge the other two petitioning creditors' claims?  Mr.

13    Jannuzzi said that with respect to if Borgata satisfied

14    their prima facie case and the burden then shifted to Mr.

15    Jannuzzi, he said that in order to sustain his burden of

16    proof, he would have to have the testimony of Mr. Belsky and

17    not (indiscernible - 1:32:41).  So I am trying to understand

18    why was the debtor able to challenge the Borgata claim, but

19    not challenge Mr. Rosenberg and is it Mr. Kessler?

20    Kessler's claim.

21         MR. WASSERMAN:  That's an excellent question as

22    with any question Your Honor asks.  Here's our response.

23    The Borgata is a stranger to Mr. Barkany.  Not only does he

24    claim that he doesn't owe the Borgata any money, but they

25    have absolutely no leverage of any kind over him.

1           Mr. Rosenberg, on the other hand -- and I won't

2    testify here, but we will -- if a hearing goes forward, Mr.

3    Rosenberg will testify and we also have his deposition in

4    his deposition transcript and I believe Mr. Barkany's

5    testimony to some extent.  Mr. Barkany, his wife and his

6    children, depend on Joseph Rosenberg, one of the

7    petitioners, for the money they need to survive.

8           Mr. Barkany cannot turn against Mr. Rosenberg

9    because he depends on Mr. Rosenberg to help pay their living

10   expenses, to help pay tuition, to help pay utilities, to

11   help pay other payments without which Mr. Barkany and his

12   family could not survive.  They might well be destitute.

13   That's the rock and the hard place.

14           And by the way, that's not a BARM created rock and

15   a hard place.  That's the leverage that Joseph Rosenberg has

16   on Mr. Barkany.  That's the difficulty here.

17           The other difficulty you have is as counsel -- as

18   Mr. Jannuzzi explained, he can't have Mr. Barkany come in

19   here and testify, even with respect to the Borgata claim.

20   Ultimately, he will have to rely on an independent forensic

21   accountant.  He's suggested he will rely on Mr. Belsky.

22   That option is available with respect to that.  He has

23   nothing at risk with respect to the Borgata.

24           He can't do the same with regard to Mr. Rosenberg

25   and I don't know whether or not the same is true with

1    respect to Mr. Kessler.

2            MS. LEVINE:  On that, I'd just like to add just

3    with all due respect that Mr. Kessler has nothing over Mr.

4    Barkany and in fact, Mr. Barkany has conceded that he owes

5    Mr. Kessler money.  There is no standing here to challenge

6    that.  The debtor did not challenge it as the Court noted.

7            THE COURT:  Thank you.

8            MR. WASSERMAN:  Now, we heard moral outrage is the

9    best way to describe what -- how Mr. Kirshenbaum articulated

10   his client's view and the view of the other petitioners and

11   creditors that BARM was acting in secret in the shadows and

12   that we were doing everything possible to prevent disclosure

13   because we didn't want the outside world to know what we

14   were doing.  And there are all these horrible of horribles

15   that he attributed to me, my colleagues and my clients with

16   respect to our behavior.  And he repeatedly said, we're

17   years late here.  We're years late.  This should have

18   started years ago.

19           But what he didn't tell you is that at least Mr.

20   Rosenberg was fully versed in what BARM was doing.  He fully

21   understood the role that Locke Lord was playing and he was a

22   participant.  And this will be evidence at the hearing

23   should Your Honor decide that transparency in the light of

24   day as Mr. Kirshenbaum insists on, will permit, Your Honor,

25   to hear evidence with respect to Mr. Rosenberg.

1          In November of 2011, three years ago, Mr.

2     Rosenberg transferred $560,000 -- $560,000 to Locke Lord in

3     satisfaction of certain obligations of Mr. Barkany in

4     connection with the Ponzi scheme which is the subject of

5     this whole dispute.  So, Mr. Rosenberg rather than say I

6     should call Mr. Kirshenbaum and get him involved in this

7     because this involves in bankruptcy court, because this is

8     outrageous that BARM is working in the shadows and Locke

9     Lord is conspiring with them.

10          Instead, Mr. Rosenberg -- maybe he did speak to

11     Mr. Kirshenbaum, as far as I know, he did speak to him

12     because Mr. Rosenberg, like (indiscernible - 1:37:28) is a

13     very intelligent man and would not have done something like

14     this without turning to his trusted counsel.

15          So Mr. Rosenberg transfers $560,000 from this

16     account.  And at the hearing, you will see the documentary

17     evidence to support that, to BARM, to Locke Lord.  This

18     wasn't something these people discovered the other day.

19     This isn't something that Mr. Kirshenbaum and the other

20     attorneys are just learning about and they're getting up to

21     speed.  This is 2011, over three years ago this was

22     happening.

23          They understood what was going on and do you know

24     what Mr. Rosenberg didn't do in 2011 and he didn't do in

25     2012 and he didn't do it in 2013?  He didn't say, why would

1    I pay over money to Locke Lord or to BARM because I'm owed

2    money?  I'm owed -- according to Mr. Kirshenbaum -- I'm owed

3    a million dollars or is it 160,000 or is it 800,000?  Is it

4    850,000?  That's not what Mr. Rosenberg did.  He

5    participated in the very process that Mr. Kirshenbaum

6    challenges here today.

7            Let's turn to, again, the secrecy because I was

8    accused of being a co-conspirator and I don't take it

9    personally.  Mr. Kirshenbaum was doing his job.  But he

10   needs to do his job and one of the things he can do is, he

11   can go to the publicly available court dockets or he can

12   simply go to Google and what he would have learned is his

13   statement, most of the lawsuits were only commenced in 2014

14   and that was to conceal all of the activity so there

15   wouldn't be a bankruptcy preference issue.  That was an

16   untruth, because when Mr. Kirshenbaum goes back to his

17   office or has his associate go back to the office, what they

18   will find is that years ago, there were publicly filed

19   complaints against a number of entities and in those

20   complaints the very language, which is contained in the

21   confession of judgment is in the complaints.

22           All of the things which Mr. Kirshenbaum claims we

23   were concealing in that confession of judgment, which we

24   locked in the drawer -- I think that was his expression --

25   we hid it away because we didn't want the world to know what

1  we knew that Mr. Barkany had perpetrated this Ponzi scheme

2  and that he was a crook and that we needed to hide that so

3  we could secretly coerce people to give us money.

4        The problem is, we filed complaints where we laid

5  out in detail what Mr. Barkany had done.  The word Ponzi

6  scheme appears over and over again, fraud.  In fact, Your

7  Honor, if Your Honor would take the confession of judgment

8  and put it next to any of those complaints, the language

9  will look remarkably similar.  We weren't trying to conceal

10  anything.  There was full disclosure and certainly,

11  Mr. Kirshenbaum's client, Mr. Rosenberg knew in 2011 what

12  was going on.

13        So the suggestion to the Court that what we were

14  doing was operating in secret to defraud people is pure and

15  utter nonsense.  And the suggestion that the Borgata, that

16  had they known -- had we not kept it a secret, they would

17  never have extended credit to Mr. Barkany.

18        That cannot be taken seriously, because the same

19  resources that were available to Mr. Kirshenbaum were

20  available to Borgata's counsel.  This was a matter of public

21  record for years before these petitioners suddenly found

22  religion right before the holidays to come into court and to

23  complain about the duplicity -- or supposed duplicity of

24  BARM.  That's not what happened here, Judge.

25        Now, with respect to the Borgata claim, I don't

1    know what due diligence they did.  What they did know is

2    that Mr. Barkany, according to a document that he signed --

3    and I believe according to the allegations made by the

4    Borgata -- that he was a compulsive gambler and they gave

5    him money time after time after time and time again.

6            What you will also find is if there's an

7    evidentiary hearing so that the sunlight can be cast on the

8    activities which occurred here, what you will find is that

9    at some point, the Borgata -- while it was Mr. Barkany who

10   was gambling in their casino -- when they needed to be paid,

11   they accepted payment from a corporate entity, not

12    Mr. Barkany.

13           Corporations don't go to the gaming tables at the

14   Borgata and gamble.  It was Mr. Barkany.  That should have

15   put them on notice to be suspicious that something is going

16   on here.  He's incurring debts to us and he's paying those

17   debts out of a corporation.  I don't know what world they

18   live in and maybe the gambling world is different, the

19   casino world is different, but that smells bad.  There's

20   something wrong there.

21           They didn't care.  They either didn't -- they do

22   due diligence on Mr. Barkany?  Couldn't have.  If they

23   Googled his name, they would have found he was a Ponzi

24   schemer.

25           Now, the other thing they talk about is, we didn't

1    go to the authorities.  That's something we should have done

2    right away, the minute we knew what was going on, we should

3    have gone to the authorities.  Again, Mr. Rosenberg didn't

4    go to the authorities when in 2011 he must have known what

5    was going on.

6            And in fact, you will see deposition testimony

7    from Mr. Rosenberg, I believe it was Mr. Rosenberg, who

8    talks about people are getting suspicious, we have to start

9    sprinkling money around.  He said that in an email to

10   Mr. Barkany.  He knew what was going on.  He fully

11   understood, but here's the problem, Judge.

12           Mr. Rosenberg claims he's owed 160,000 plus.  We

13   don't know what that number is.  That alone is a bona fide

14   dispute.  Mr. Kessler claims 135,000 and Borgata 240,000.

15   So they claim they're owed these amounts and they've known

16   it for quite some time.  Why weren't we in bankruptcy court

17   last year or the year before that?  Why didn't Mr. Rosenberg

18   go to Mr. Kirshenbaum and say in 2011, look, I know that

19   Mr. Barkany owes people money and he can't pay his debts and

20   he owes me money.  He owes me a million, 800,000, 160 --

21   pick whatever number they've used.  It doesn't really

22   matter.

23           Why didn't Mr. Rosenberg and Mr. Kessler and the

24   Borgata commence the proceeding a year ago or two years ago

25   or three years ago?  When did they commence the proceeding?

1    After they were sued.  Is that a coincidence?  I don't think

2    so.  That can't be a coincidence.  They commenced this

3    proceeding because they became defendants in law suits and

4    they wanted to bring those lawsuits to a halt.  That's the

5    purpose of these proceedings.  Because Mr. Rosenberg claims

6    he's owed money by Mr. Barkany, but he still gives him money

7    to support his family.

8            I'm not testifying.  That's what I believe the

9    evidence will show.  But he comes to this courtroom through

10   counsel and claims he's owed money.  These actions -- this

11   petition -- these petitioners are perpetrating a fraud on

12   this Court.

13           Now, I accept, Your Honor, that by your body

14   language and some words you've used and the way you've

15   described it, you are somewhat -- if even more than somewhat

16   uncomfortable with the idea of a quasi bankruptcy proceeding

17   going on outside of the confines of this courtroom and

18   that's what has been our process has been described as.

19           What I can tell you -- and I will try to be brief

20   -- is it played out a bit differently than Mr. Kirshenbaum

21   and his clients would have you believe.

22           You have Mr. Barkany confesses to his fraud.  By

23   the way, he didn't just confess to Locke Lord's clients.

24   There were other people who were aware of what he had done.

25   Mr. Barkany -- so we have a choice as attorneys representing

1    clients and that choice is, do we immediately report him to

2    the authorities?  Do we immediately run to bankruptcy court

3    or do we do what the Courts are consistently urging us as

4    attorneys and officers of the Court to do, which is try to

5    resolve your disputes.  Try not to invoke the judicial

6    process if it is not necessary.

7              And in this respect, we had a rather unique Ponzi

8    schemer.  In contrast to Mr. Madoff -- and to compare this

9    to Madoff is ridiculous.  There was a relatively small

10   number of victims.  We had the perpetrator of the scheme to

11   his credit, stepped up and said, I'm caught.  I better

12   cooperate.  It's in my best interest to make restitution, to

13   put as much money in the pockets of the people that I owe

14   money in the hopes -- and here's where I guess there's some

15   leverage -- in the hopes that I won't go to jail.

16             So we cooperated with Mr. Barkany and he

17   cooperated with us.  And I am proud of the work that my firm

18   did in working with Mr. Barkany once he had confessed to his

19   scheme, in helping make the victims of his scheme whole.  We

20   recovered securities accounts.  We liquidated hard assets.

21   We hired a forensic accountant -- hopefully I'm pointing to

22   Mr. Belsky and he's where I'm pointing.

23             We did all of the work necessary to help

24   Mr. Barkany make good on his pledge that I am going to make

25   restitution, I will make my victims whole.  And we were

1    successful, depending on what the number is and it's a

2    number which ultimately there will be agreement on.  It's

3    $22 million.  It's $32 million.  I'm not sure what the

4    number is and in part, there's a reason for that.  Some of

5    the assets have not been liquidated, they're still

6    operating.  The victims, who we represent have had to pump

7    money into those assets to enable us to reach a point where

8    we could sell them or someday sell them at a profit.

9            So the valuation issue is a difficult one, but we

10   are working on it.  So we recover a substantial amount of

11   money.  The next thing we do is, we send letters.  I believe

12   Mr. Kirshenbaum mentioned a former associate of ours,

13   Mr. Wax.  Mr. Wax and a number of associates and my partner

14   identified through the assistance of Mr. Belsky, people who

15   -- based on Mr. Belsky's review of the records -- received

16   money and may have received more than they put in and

17   letters were sent out.

18           We negotiated settlements with numerous parties.

19   We worked with various parties.  When we could not reach a

20   resolution, we did commence lawsuits in publicly filed

21   documents which were available to anybody who wanted to

22   look.

23           Now, as far as law enforcement goes, no one in

24   this room -- and certainly not Mr. Kirshenbaum -- knows when

25   we first spoke to the Government.  And as Mr. Kirshenbaum as

1   an experienced attorney would know, the one thing we would

2   not be permitted to do when approached by the Government,

3   would be to disclose to the world, by the way, the FBI is

4   investigating Mr. Barkany.  We should take out an ad in the

5   paper, so that people like the Borgata won't discover that.

6   But that's not the way our system works.  When you sit down

7   with the Government, the Government tells you, don't

8   disclose that you're talking to us.  Don't disclose that

9   you're cooperating.  We don't want him to flee.  We --

10  there's a list of things you're told not to do.

11          And just as the Borgata claims to have their

12  regulatory rules that they need to follow, the last thing

13  I'm doing is contravening what the FBI has told me I can or

14  cannot do, but the -- what will come out at the appropriate

15  time is that the FBI, the Government knew about

16   Mr. Barkany's activities long before he was ever arrested.

17  I guess the Government is also responsible for the Borgata's

18  losses, because the Government didn't take out the ad in the

19  paper.

20          I could go on and on and on, but I won't.  The

21  bottom line is you have three petitioners here with claims

22  where there is a bona fide dispute as to whether there's

23  liability and the amount of the claims.  In the interest of

24  full disclosure -- Your Honor has agreed that certainly the

25  Borgata claim will be subject of a hearing.  I can't imagine

1    why Mr. Kirshenbaum after standing on the soap box would

2    take the position, but Judge, you can't look at Kessler and

3    Rosenberg -- you can't look at that.  What are they hiding?

4           And the unique predicament of having Mr. Barkany,

5    who is the subject of the involuntary bankruptcy petition

6    being subject to criminal prosecution to be in jeopardy and

7    to have to take the Fifth, no case they cite deals with that

8    type of disability.  And I suggest, Your Honor, that you

9    would not do violence to the general rule, which is not an

10   inflexible rule with respect to standing.

11          If anything, give Mr. Kirshenbaum what he wants.

12   Shed light on Mr. Rosenberg's claim and Mr. Kessler's claim,

13   because Mr. Barkany had limitations as to what he could do,

14   but you know -- because you have the record and you heard

15   what has been said in court -- that there is a bona fide

16   dispute and it's an injustice if you do not hear that.  If

17   you have no questions, I'll sit down.

18          THE COURT:  Thank you.  All right.  The Court --

19          MR. JANNUZZI:  Your Honor, I'm sorry.

20          THE COURT:  Yes.

21          MR. JANNUZZI:  It's been a very long hearing, I

22   understand that, but at some point, we do need to address

23   the Fifth Amendment issue, whether it's before the hearing

24   that we're going to have the evidentiary hearing or today,

25   that's Your Honor's choice, but at some point we do need to

1    address that issue.

2            THE COURT:  Address which issue?  I'm sorry?

3            MR. JANNUZZI:  The Fifth Amendment issue as it was

4    raised by Mr. Barkany at his deposition and in the event

5    that Mr. Kirshenbaum's (indiscernible - 1:53:36) at the

6    evidentiary hearing, it will be raised at that time as well.

7            THE COURT:  Thank you.

8            MR. JANNUZZI:  It can be addressed whenever the

9    Court wants.

10           THE COURT:  Thank you.  The Court is going to take

11   a recess and then when we come back and we reconvene, we

12   will collectively select a date for the evidentiary hearing,

13   the parameters of the evidentiary hearing and we'll proceed

14   as expeditiously, as collectively we can figure out

15   depending on the Court's calendar, a schedule for that

16   evidentiary hearing.

17           I should point out that don't misinterpret

18   whatever body language you focused on or the import of my

19   questions.  As I said earlier, I am not reaching any

20   conclusions whatsoever.  I listen to argument of counsel.

21   I'll only reach a conclusion based upon the admissible

22   evidence that we'll be performing at the evidentiary

23   hearing.

24           I certainly have a better feel and a better

25   understanding of this case now at ten minutes of 2:00 than I

1    did when we first started and I appreciate the patience of

2    counsel in making their argument.  But again, I want to

3    reiterate, I have not drawn any conclusions and I'm not

4    making any findings until such time as we have the

5    evidentiary hearing and my conclusions and findings will be

6    based upon the admissible evidence.

7            So with that said, we'll recess until, I think the

8    cafeteria here might close at 2:00 or 2:30.  So if you want

9    to grab something to eat, you should probably dash

10   downstairs now.  I cannot vouch for the quality of the

11   cafeteria.  I'm assuming that it's fine.  And then we'll

12   reconvene at 2:45.

13           IN UNISON:  Thank you, Your Honor.

14       (Recess)

15           THE COURT:  Good afternoon.  Thank you.  Please be

16   seated.

17       (Pause)

18           THE COURT:  Okay.  We're trying to determine the

19   dates for an evidentiary hearing.  The gist I get from the

20   parties is that they want an evidentiary hearing with

21   respect to the issues that have been raised as to whether or

22   not the petitioning creditors hold a bona fide claim.

23           So the thought process on that would be as

24   follows:  September 22nd, which is next Monday, at 10

25   o'clock for the evidentiary hearing.  By Thursday,

1    September 18, 4 p.m., a list of exhibits to be filed with

2    the Court and I would appreciate if the parties could agree

3    on a joint exhibit book.  And I'd like to know whether or

4    not any of the parties have any objection to the

5    admissibility of any of those exhibits.  And the exhibits

6    should be listed in the order they're going to be introduced

7    into evidence.

8            Now, with respect to the evidentiary hearing, we

9    will address the debtor's motion to dismiss first, with

10   respect to the Borgata claim because if the debtor is

11   successful with respect to the Borgata claim, then we may

12   not need to continue the evidentiary hearing with respect to

13   Mulholland's motion with respect to Mr. Rosenberg and

14   Kessler.

15           On that point, on that point, the Court will

16   permit BARM's motion to dismiss with respect to

17   Mr. Rosenberg, taking into consideration that he is

18   Mr. Barkany's father-in-law and there may have been some

19   issues with respect to the challenge of Mr. Rosenberg's

20   claim by his son-in-law.  But, at this point, we are putting

21   to the side BARM's motion to dismiss with Mr. Kessler.  The

22   Court does not view the Kessler and Rosenberg issue with

23   respect to the debtor's ability to challenge in the same

24   light.

25           So we will address the Borgata issue first and, if

1    we can come to a determination with respect to Borgata and

2    if it's comes to pass that the debtor is successful in

3    objecting to the Borgata claim on the ground that there is a

4    bona fide dispute, then we may not even have to reach the

5    issues with respect to Mr. Rosenberg and then certainly not

6    even going further talk about the issues with Mr. Kessler.

7             So, with that said, yes, BARM's should be prepared

8    for Monday's hearing as well.

9             So, let me just go back.  And I will take a

10   feedback from the parties with respect to the scheduling

11   issues.  But here's what the Court's thought process is.  As

12   I said, Monday, September 22nd, 10 a.m. for the evidentiary

13   hearing.  By 4 p.m. this Thursday, a list of exhibits to be

14   filed with the Court.  And, as I said, I want the parties to

15   make every effort that it be a joint exhibit book and that

16   you can agree on the admissibility of these documents or any

17   of these exhibits into evidence.

18            If there is an issue with admissibility, the Court

19   would want to know that also by 4 p.m. on Thursday,

20   September the 18th.  And if there's an issue with

21   admissibility, I would hope, I would hope that the parties

22   would use their good faith efforts to at least agree on

23   foundation authentication.

24            By 4 p.m. on Thursday, the 18th, you are to file a

25   list of witnesses likely to be called.  That list should be

1    in the order in which you intend to call those witnesses and

2    if any of those witnesses are going to be a sponsoring

3    witness with respect to any of the documents you are going

4    to seek to introduce into evidence, the Court would want to

5    know the specific documents that that witness will be the

6    sponsoring witness for.

7              The Court will not take any further pleadings.

8    Certainly, there's been enough pleadings filed already.  And

9    the Court also will want to know if any of the parties wish

10   to proceed with direct examination by declaration.  And if

11   you want to proceed by declaration, then the declarations

12   would also have to be in by 4 p.m. on Thursday, the 18th.

13   But if you're going to proceed on direct examination by

14   declaration, which, of course, would expedite matters, then

15   the declarant, that particular witness, has to be present

16   for cross-examination.

17             Anybody have any questions concerning the

18   scheduling?

19             UNKNOWN SPEAKER:  Judge, may I speak to my client

20   for one second?

21             THE COURT:  Yes, you may.

22             MR. WASSERMAN:  I was going to ask if we could add

23   seven days to each of the dates.

24             THE COURT:  I'm -- as I said, when we were

25   checking on available dates, the sense I got is that the

1    parties wanted to move quickly.  I'm happy to accommodate

2    the scheduling as to when all of this is done and presented

3    to the Court.  I'm not certain, no one has said, that they

4    wanted to take discovery.  If parties want to take discovery

5    in advance of the hearing, then that's a whole different

6    scheduling order and the Court will issue a scheduling order

7    with respect to the timing of discovery, the witnesses, the

8    exhibits, a pre-trial statement and then we would proceed

9    with that.

10            So I'm happy to accommodate the schedules and try

11   and get the timing so that it fits into everyone's timing,

12   particularly if you want to take some discovery.  So I'm

13   happy to hear what the parties have to say.

14            MR. KIRSHENBAUM:  Your Honor, I'm -- assuming that

15   for the moment we are talking about a hearing that, again,

16   will involve first, a hearing with respect to the Borgata

17   claim --

18            THE COURT:  Yes.

19            MR. KIRSHENBAUM:  -- and then assuming that Your

20   Honor is persuaded at the conclusion of that hearing, that

21   there is no bona fide dispute as to the Borgata claim, then

22   a hearing that will follow with respect to the Rosenberg

23   claim?

24            THE COURT:  Yes.  We'll proceed first with Borgata

25   and then with Rosenberg.

1            MR. KIRSHENBAUM:  And then that's it -- so in

2      terms of the hearing?  Yes.

3            THE COURT:  Yes.

4            MR. KIRSHENBAUM:  So I would like to move forward

5      with the deposition that I noticed of Mr. Belsky right after

6      I got their objection because we've never been able to take

7      that or we haven't taken that for various reasons.  So I

8      would certainly like to depose him with respect to his

9      analysis of the Rosenberg claim as part of the preparation

10      of my response to that.

11            And, Your Honor, I would be available to take --

12      now that may throw off the schedule or Your Honor might

13      decide, depending if there's no discovery that -- that's

14      going to be taken with respect to the Borgata claim, perhaps

15      Your Honor would then think it made sense perhaps to hold

16      those two hearings on different dates.  In other words, go

17      forward with Kessler.  I'm sorry, go forward with Borgata

18      and then schedule the Rosenberg for later on the same, you

19      know, kind of rationale.  If for whatever reason Your Honor

20      were to be persuaded that there was a bona fide dispute as

21      to the Borgata claim.  Right?  Then there might not be any

22      need for a further hearing with respect to Rosenberg and

23      then there would not be any need for discovery with respect

24      to Belsky.

25            THE COURT:  Well, it also depends on whether or

1    not any other parties want to take discovery before the

2    hearing.

3            MR. JANNUZZI:  Judge, I would need at least

4    disclosure of the documents that the Borgata would be

5    relying upon to show that they are entitled to $240,000 from

6    my client.  I'd possibly want to take their deposition prior

7    to this hearing.

8            In addition, on Monday, September 22nd, my client

9    is due in front of the District Court (indiscernible -

10   3:27:52) at the very time of our hearing so --

11           THE COURT:  So if you want to take discovery of

12   Borgata.  You would like to take the discovery of

13   Mr. Belsky.  Mr. Wasserman, any discovery?

14           MR. WASSERMAN:  I believe so.  I have a suggestion

15   and I don't know how this -- I think this makes sense if

16   perhaps we recess and the parties discuss amongst themselves

17   what discovery they might want, what scheduling works and

18   then we would come back to the Court, if not today, then

19   tomorrow morning.

20           THE COURT:  I think that is a good idea.  Make it

21   as if it's your 26(f) planning conferences and what

22   discovery you think is necessary.  You let the Court know

23   that you've conferred, that this is the type of discovery

24   that you anticipate taking, this is the amount of days that

25   you think you need to conclude your discovery and then from

1    that, the Court can issue a scheduling order that will

2    incorporate that discovery and set it down for a hearing

3    that would be hopefully available for all of the parties.

4            MR. JANNUZZI:  Judge, one further thing.  Counsel

5    for the Borgata could address this issue.  Do they need an

6    additional order from this Court to produce the documents in

7    light of the regulations that you cited earlier in your

8    argument today?

9            MR. KLAUSNER:  I don't believe so at this point

10   since there's a -- there's a claim, that they are -- that

11   they owe, Mr. Barconi (ph) money.  At this point, I believe

12   they're entitled to defend against that.  I will check with

13   their general counsel but I tend to think, at this point,

14   not.

15           THE COURT:  Okay.  And to the extent that the

16   parties have a discovery dispute, the scheduling order will

17   take that into account and into consideration as to how that

18   discovery dispute would be brought before the Court.  It

19   will all be laid out in the scheduling order.  Yes?

20           MR. KLAUSNER:  Judge, I was speaking with

21   Mr. Wasserman earlier and presuming that there is not

22   prohibition, at this point, in getting Mr. Barconi's records

23   from him, I had offered to Mr. Wasserman that we'll be happy

24   to provide those records to Mr. Belsky and he can take a

25   look at them.

1           Quite frankly, Your Honor, it's much ado about

2    nothing.  The records are the records and they are going to

3    show what they show which is that he owes the Borgata money,

4    which Mr. Barconi, who's here now, I believe, he knows full

5    well that the money that he transferred, he either lost or

6    took back.  And that the $240,000 in unpaid markers is the

7    $240,000.  I have no issue with that.

8           I'm happy to provide the records to Mr. Belsky and

9    if Mr. Belsky still has a problem with it, if Mr. Jannuzzi

10   wants to take a deposition, I guess that's fine.  You know,

11   I certainly wouldn't oppose that.  But I think that if

12   Mr. Belsky has the records, then he can see where, you know,

13   the money came, the money went out and then the $240,000 and

14   he's satisfied that the money is accounted for, you know, I

15   think we could potentially dispense with that part of the

16   hearing and just resolve it amongst ourselves in a much more

17   efficient and --

18           UNKNOWN SPEAKER:  Cost.

19           MR. WASSERMAN:  We did talk and we're happy to

20   take counsel up on his offer and if we can proceed

21   informally and perhaps resolve the issue, we're more than

22   willing to do that.

23           THE COURT:  That's fine.  And if you do come to a

24   resolution on the Borgata claim, please advise the Court as

25   promptly as possible.

1          MR. WASSERMAN:  Can we -- after we consult amongst

2     ourselves, can we set up a conference call with the Court or

3     should we notify the Court by letter of what we propose so

4     that you can supply us with dates?

5          THE COURT:  I think a letter would be appropriate.

6          MR. KIRSHENBAUM:  I was -- Your Honor, I was going

7     to suggest or ask perhaps if we could schedule a conference

8     call and if we don't need it because we've agreed on

9     everything, then we can send the Court a letter, advise the

10    Court of that.

11          But, I think, Your Honor, that if there's a

12    dispute that we can't resolve among ourselves, I think it

13    would probably be much more efficient talking it through

14    with you through a conference call and getting a resolution

15    as opposed to start sending you letters, you know, with

16    respect to disputes.

17          THE COURT:  Well, I certainly don't want battling

18    letters and --

19          MR. KIRSHENBAUM:  Right.

20          THE COURT:  -- any letter that you would send to

21    the Court would be non-argumentative and then I would have

22    to limit the amount of pages that you're going to send in.

23          MR. KIRSHENBAUM:  That's what I -- I think a phone

24    call --

25          MS. WASSERMAN:  I envisioned a single, joint

1    letter.

2             THE COURT:  But the point -- whether it's a

3    single, joint letter, non-argumentative, by the way, again,

4    if we're going to do that or a conference call, I'm assuming

5    that all we're going to be discussing is really the timing

6    and the scheduling.  It shouldn't be already that you have a

7    discovery dispute.

8             I think what you're going to be doing, either this

9    afternoon or tomorrow, is, as I said earlier, as if you were

10   conducting a Rule 26(f) planning conference and then

11   reporting to the Court at the very next pre-trial with

12   respect to the discovery schedule or the discovery and the

13   type of discovery that you think you need and how long a

14   period of time you're going to need to take that discovery.

15   That's what I'm anticipating and that could be done in just

16   a single page letter to the Court confirming that you have

17   conferred and that you have decided that this is the

18   discovery that needs to be taken and this is the period of

19   time, we need 30 days, we need 60 days, we need "X" number

20   of days for discovery.

21            And then the Court then would make its

22   determination as to how long the discovery period should

23   take based upon the information that you give to the Court

24   and we'd issue the scheduling order.

25            MR. WASSERMAN:  Sounds right.

1          MR. KIRSHENBAUM:  And if we have a dispute that we

2     need resolved, we would request a conference with -- at that

3     stage?

4          THE COURT:  If you have a dispute as to how --

5          MR. KIRSHENBAUM:  Scope, for instance, scope --

6          THE COURT:  -- long the discovery period --

7          MR. KIRSHENBAUM:  -- or scope, or something like

8     that, I mean, as an example.

9          THE COURT:  I'm sorry.  Say that again.

10          MR. KIRSHENBAUM:  Say something like scope as an

11     example.  I mean --

12          THE COURT:  Well, I think the scope of discovery

13     is going to happen once you're in the discovery.  I'm

14     assuming that you're not going to have any dispute over the

15     timing of the discovery, how long it's going to take, what

16     you anticipate.  If you can't agree on how long a period of

17     time that it's going to take for you to complete your

18     discovery, then this is going to be a very long, drawn out

19     process, much longer than it really should be.

20          I think the parties are capable of meeting in good

21     faith and coming to a determination as to what discovery

22     needs to be taken and how long a period of time you need to

23     discovery for.

24          So, with that said, when do you want to send the

25     Court the letter?  You're going to try and meet this

1    afternoon?  You're going to try and meet tomorrow?  You want

2    to send the letter by Thursday that outlines the amount of

3    time that you need to take discovery?

4            MR. WASSERMAN:  That should give us ample time,

5    Judge.  Thursday.

6            UNKNOWN SPEAKER:  I agree.  Thursday would be the

7    right now.

8            THE COURT:  Have that letter to us by 4 o'clock on

9    Thursday?

10           MR. WASSERMAN:  Very good.

11           MR. KIRSHENBAUM:  Judge, again, I just want to

12   raise this again because, in terms of sequence, it does --

13   should we defer talking about the discovery with respect to

14   the Rosenberg claim?

15           THE COURT:  I --

16           MR. KIRSHENBAUM:  Until after we get a resolution

17   on the Borgata claim, right?  Because there -- because if

18   the Court rules that there's a bona fide dispute as to the

19   Borgata claim, then we don't go any further; right?  Why

20   spend time dealing with discovery with respect to a claim

21   that may become moot?  Spending someone's time and money on

22   a --

23           THE COURT:  It's a fair point as far as the

24   expenses are concerned to bifurcate it.  Does anybody else

25   have a view on the bifurcation of that, that we solely focus

1   on -- Mr. Kirshenbaum, I think if I understand you, let's

2   solely focus on the Borgata claim, discovery with respect to

3   Borgata and that would be the first thing that we address

4   and depending on how that hearing goes, then we would have

5   to deal with the issue of Mr. Rosenberg.

6            MR. WASSERMAN:  Our preference, Judge, would be to

7   do both the Borgata and Rosenberg given the intertwined

8   financial relationships between Mr. Barconi and

9   Mr. Rosenberg.  It's certainly possible, I don't know

10  whether it's the case, that Mr. Rosenberg might have given

11  money to the Borgata on Mr. Barconi's behalf.

12            It seems to me that we should just go forward with

13  both and, of course, if we resolve the Borgata claim

14  informally, then there'd be no need to go forward with that

15  discovery.

16            THE COURT:  I think it makes sense from economics

17  and expediency, and I do understand your point,

18  Mr. Kirshenbaum, but I think since Mr. Belsky is going to be

19  involved in the Borgata thing, I think it makes economic

20  sense for both of those issues to be heard at the same time.

21  So proceed with your discovery and take it from there.

22            It may be that very shortly within a matter of

23  days after reviewing the information that counsel for the

24  Borgata provides to the debtor's counsel that it may mean

25  that there'll no longer be any claim with respect to the

1    bona fides of the Borgata issue.

2         MR. KIRSHENBAUM:  Okay.

3         THE COURT:  Okay.  So by 4 p.m. on Thursday,

4    September 18, you will provide to the Court, if you can do

5    it in a single page, I -- the Court would appreciate that, a

6    discovery schedule.  Again, if it's a joint letter, non-

7    argumentative.

8         And then based upon that letter, the Court will

9    either determine that we need to hold either a conference

10   call or bringing everybody back for, the lack of a better, a

11   pre-trial conference, or a pre-evidentiary hearing

12   conference, however you wish to turn it, or the Court will

13   issue its own scheduling order based upon the dates that you

14   have given.

15        And just one other -- a point, I just want to

16   remind all counsel of the rules of civility and that all of

17   you confer in good faith, act in good faith, treat everyone

18   with civility, that applies to counsel and the Court and the

19   Court staff as well and, as far as the evidentiary hearing

20   is concerned, the Court will feel free to interrupt counsel

21   and ask questions as the Court feels it necessary or as the

22   Court determines.  So are we all set with that?  Okay?

23   Good?

24        IN UNISON:  Thank you.

25        THE COURT:  All right.  The Court is now

1    adjourned.

2        (Whereupon these proceedings were concluded at 3:39

3    P.M.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          C E R T I F I C A T I O N

2

3    We, Nicole Yawn, Melissa Looney, and Penny Skaw, certify

4    that the foregoing transcript is a true and accurate record

5    of the proceedings.

6

7

8    **Nicole**          Digitally signed by Nicole Yawn
                          DN: cn=Nicole Yawn, o, ou,
                          email=digital1@veritext.com,
9    **Yawn**            c=US
                          Date: 2014.10.15 16:34:21
10                        -04'00'

     Nicole Yawn

11   **Melissa**         Digitally signed by Melissa Looney
                          DN: cn=Melissa Looney, o, ou,
12   **Looney**          email=digital1@veritext.com, c=US
                          Date: 2014.10.15 16:34:51 -04'00'
13

     Melissa Looney

14

15   **Penny A**         Digitally signed by Penny A Skaw
                          DN: cn=Penny A Skaw, o, ou,
16   **Skaw**            email=digital1@veritext.com,
                          c=US
                          Date: 2014.10.15 16:35:30 -04'00'
17

18

19

     Veritext

20

     330 Old Country Road

21

     Suite 300

22

     Mineola, NY  11501

23

     Date:  October 15, 2014

24

25

| & |
|---|
| **&**   2:6 4:2,9,17 5:1,9 6:18 7:9,12,15,24 8:4 |

| 0 |
|---|
| **07601**   4:20 |
| **08**   57:2 |
| **08/13/2014**   2:3 |
| **08/18/2014**   2:7 |
| **09**   57:2 |

| 1 |
|---|
| **1**   9:16 10:9 12:13 20:16,22 29:1 39:21 40:1 |
| **1.2**   34:20 |
| **1.3**   60:23,25 61:4 |
| **1.7**   61:2 |
| **10**   6:12,14,15,16,24 20:20 55:14 93:24 95:12 |
| **10,000**   54:15 |
| **10.6**   25:19 |
| **100**   18:3 |
| **100,000**   53:18,21,21 |
| **10006**   5:5 |
| **10022**   3:13 |
| **10281**   4:4 |
| **10601**   5:14 |
| **10:00**   6:10,10,11 |
| **11**   6:4,14,17 47:2,3 47:15,18,18 48:13 |
| **11415**   4:13 |
| **11501**   109:22 |
| **11556-1425**   3:23 |
| **11743**   3:6 |
| **11:51**   1:19 |
| **11:52:42**   6:9 |
| **11th**   24:21,23 |
| **12**   64:10 69:4 |
| **12:13:30**   21:25 |
| **12:23:41**   28:25 |
| **12:28:47**   32:16 |
| **12:48:33**   47:21 |
| **12:51:07**   49:21 |
| **12:52:49**   51:5 |

| 13   2:3 20:17,20 |
|---|
| **135,000**   74:23 86:14 |
| **14**   4:19 |
| **141**   78:21 |
| **1425**   3:22 |
| **145**   5:3 |
| **15**   2:7 109:23 |
| **15,000**   64:11 |
| **15th**   3:21 |
| **16**   1:18 |
| **160**   86:20 |
| **160,000**   73:12,18 74:7,8 83:3 86:12 |
| **170**   5:13 |
| **18**   94:1 107:4 |
| **18th**   95:20,24 96:12 |
| **1938**   64:3,4,6 |
| **1992**   78:22 |
| **1:02:01**   58:5 |
| **1:04:26**   60:3 |
| **1:14:20**   67:8 |
| **1:20:19**   71:24 |
| **1:32:41**   79:17 |
| **1:37:28**   82:12 |
| **1:53:36**   92:5 |
| **1st**   32:10 |

| 2 |
|---|
| **2**   75:17 |
| **20**   9:5 27:1 |
| **200,000**   40:11 |
| **2009**   27:22 35:4 |
| **2010**   20:2 25:11 32:9 35:4 44:17 68:4 |
| **2011**   22:10,15 25:12 25:17,20 26:7,18 27:17 28:6 40:17 43:3 45:5 58:20 68:3 82:1,21,24 84:11 86:4,18 |
| **2012**   27:16 34:25 39:19,25 40:5,11 41:6 82:25 |
| **2013**   26:20 27:16 34:3 40:24 42:3,3 43:23 66:22 82:25 |

| 2014   1:18 25:20 |
|---|
| 26:8 34:2,3 83:13 109:23 |
| **205**   3:5 |
| **22**   9:7 14:14,15,16 14:18 15:4,5,7,9,10 26:3,5,6 46:2 59:13 70:4 89:3 |
| **22nd**   25:8 93:24 95:12 99:8 |
| **24**   50:1 |
| **240**   61:18 |
| **240,000**   41:15,16 42:1 52:18 55:1 60:2 75:5 86:14 99:5 101:6,7,13 |
| **241**   77:23 |
| **25**   26:20 |
| **26**   99:21 103:10 |
| **27**   24:21 |
| **27th**   24:10 32:9 36:3 45:19 |
| **290**   1:15 |
| **2:00**   92:25 93:8 |
| **2:30**   93:8 |
| **2:45**   93:12 |

| 3 |
|---|
| **3**   4:3 |
| **30**   25:24 72:22 103:19 |
| **300**   109:21 |
| **300,000**   40:12 |
| **302**   4:12 5:4 |
| **303**   10:25 |
| **305**   9:16 10:9 64:20 |
| **30th**   45:23 |
| **32**   25:12,23 26:4,6 46:1 89:3 |
| **330**   109:20 |
| **38**   77:23 78:21 |
| **3:27:52**   99:10 |

| 4 |
|---|
| **4**   20:22 35:20 94:1 95:13,19,24 96:12 105:8 107:3 |

| 425   3:12 |
|---|
| **45**   21:2 26:13 35:13 35:14 54:21 73:5,6 |
| **47**   59:15 |

| 5 |
|---|
| **5**   20:22 57:2,25 58:2 58:5 |
| **5.4**   21:10 |
| **50**   55:25 |
| **50,000**   53:22,23 |
| **500,000**   28:24 |
| **5000**   54:22 |
| **560,000**   82:2,2,15 |
| **58**   23:5,18 27:2,4 40:7 45:7 59:14 |
| **5th**   13:12 18:15 |

| 6 |
|---|
| **6**   22:11 25:10 |
| **60**   103:19 |
| **600,000**   28:24 |
| **64,000**   33:9 |
| **66**   9:2,6,8 |

| 7 |
|---|
| **7**   47:14 48:14 |
| **7/26/13**   75:19 |
| **700**   54:6 |
| **700,000**   12:8,12 61:7 |
| **707**   64:20 |
| **775**   3:4 |

| 8 |
|---|
| **8**   27:5 |
| **8-14-72941**   1:3 |
| **80-02**   4:11 |
| **800,000**   73:14 83:3 86:20 |
| **850,000**   73:14 83:4 |

| 9 |
|---|
| **9**   34:21 |

| a |
|---|
| **a.m.**   95:12 |
| **abbreviate**   11:15,17 |
| **abbreviation**   14:20 |

**abetting** 33:6 59:2
**abide** 17:18 39:12
 52:25
**ability** 79:3 94:23
**able** 16:17 42:11
 78:17 79:18 98:6
**absolute** 47:14
**absolutely** 35:21,22
 48:11 61:12 62:5,20
 63:6 79:25
**abstain** 10:12
**abstention** 9:17
 27:24
**acceded** 16:24
**accept** 87:13
**accepted** 85:11
**accommodate** 97:1
 97:10
**accomplished** 16:21
 48:1,3,4,5,6
**account** 14:23
 41:21 53:13 54:10
 54:13,19 65:14
 82:16 100:17
**accountant** 12:3,11
 42:18 43:5 52:22,22
 53:2,3,12,25 60:10
 60:15,20 74:9 80:21
 88:21
**accountant's** 61:20
 74:3
**accountants** 15:22
 70:9
**accounted** 101:14
**accounts** 35:12,15
 41:21 88:20
**accurate** 66:22
 70:15 109:4
**accused** 25:2,5
 52:21 59:2 83:8
**accusing** 45:14
**act** 52:24 107:17
**acting** 25:6 33:8
 81:11
**action** 13:4 15:6
 17:25 25:17 26:11
 26:23,24 28:5 55:17

55:17,20,22 56:5,5
 56:5 57:9 58:19
 69:5
**actions** 12:20 25:4
 28:23 30:24 87:10
**activities** 85:8 90:16
**activity** 9:25 83:14
**actual** 57:7
**ad** 90:4,18
**add** 17:22 81:2
 96:22
**addition** 15:21 16:4
 17:12 73:20 99:8
**additional** 53:4
 66:12 100:6
**address** 6:22 8:13
 8:13 52:20 58:24
 61:9,14 63:16,18,19
 72:17 91:22 92:1,2
 94:9,25 100:5 106:3
**addressed** 59:16
 63:15 92:8
**adjourned** 108:1
**administering** 50:3
**administration**
 69:3 70:7
**administrative** 70:1
**admissibility** 94:5
 95:16,18,21
**admissible** 71:14
 92:21 93:6
**admission** 76:2
**admits** 43:7
**admitted** 20:18,21
 21:3 23:19 57:2
 75:15,16 76:13
**admittedly** 43:15
**ado** 101:1
**adopted** 60:22
**adopting** 61:21
**advance** 54:13 97:5
**advantage** 51:18
 76:21
**advantages** 51:20
**advise** 101:24 102:9
**advised** 12:3 21:8

**advisory** 65:23
**advocated** 38:4
**advocating** 36:14
**aegis** 14:19
**affidavit** 43:2 75:20
**afternoon** 93:15
 103:9 105:1
**agape** 56:8
**ago** 34:22 81:18
 82:1,21 83:18 86:24
 86:24,25
**agostino** 4:17 7:12
**agree** 22:18 30:4
 38:23 75:8 94:2
 95:16,22 104:16
 105:6
**agreed** 9:10 17:4
 29:8 75:4 90:24
 102:8
**agreeing** 33:21
**agreement** 29:7
 89:2
**agreements** 35:17
**agudelo** 3:16 7:5
**aiding** 33:6 59:2
**alan** 2:5
**alfonse** 1:14
**allan** 15:15
**allegation** 11:5
**allegations** 85:3
**alleged** 23:24
**allegedly** 51:2
**alleging** 10:23 11:2
 60:1
**allen** 4:6 7:23
**allowed** 53:1,8
 64:21
**alluded** 24:2
**almighty** 42:11
**amazing** 22:9
**amendment** 13:12
 18:15 66:13 78:16
 91:23 92:3
**amount** 9:6 11:4
 12:8 23:23 25:18
 27:2 57:23 61:25
 69:14 70:21 74:14

75:16 76:3,4,10,11
 76:13 79:6 89:10
 90:23 99:24 102:22
 105:2
**amounts** 61:3 86:15
**ample** 105:4
**analysis** 17:15
 74:19 98:9
**analyzed** 74:4
**analyzing** 74:20
**angry** 24:18 48:22
 48:24
**answer** 15:12 57:19
 78:7,8
**answering** 59:18
**anticipate** 99:24
 104:16
**anticipating** 34:23
 103:15
**anybody** 89:21
 96:17 105:24
**apologize** 39:6
 49:21
**apparently** 20:24
 21:2,7 27:9 29:4
 41:3,10 52:21
**appearance** 6:21
**appearances** 6:23
 6:25
**appearing** 5:18
**appears** 84:6
**application** 39:20
 39:24 40:2,3,19
 79:2
**applied** 17:1,5
**applies** 107:18
**appointed** 30:3
 47:18
**appreciate** 44:8
 72:20 93:1 94:2
 107:5
**appreciates** 30:18
**approached** 17:9
 20:3 22:14 90:2
**approaching** 33:10
**appropriate** 13:14
 72:6 90:14 102:5

**approving** 59:19,20
**april** 40:11
**area** 41:1,2
**argued** 78:4
**argues** 76:1
**arguing** 76:12
**argument** 10:19,20
  18:14 60:8,19 61:21
  70:24 71:12 77:9,11
  92:20 93:2 100:8
**argumentative**
  102:21 103:3 107:7
**arguments** 69:19
**arrangement** 48:18
**arrest** 26:22 41:8
**arrested** 90:16
**arrived** 53:19 61:8
**articulated** 81:9
**ascertained** 9:10
**ascribed** 25:14
**asked** 17:10 40:25
  53:4 66:9,18
**asking** 9:16 29:11
  43:21
**asks** 79:22
**aspect** 6:20
**asserted** 11:5 62:3
  63:22
**asset** 2:6 4:2 6:18
  7:24 12:4 72:12
**assets** 9:8,22 15:18
  15:19,19,23 24:4,4
  24:6,13,14,15,16,16
  25:9,15,18,21,23,25
  28:15 29:17,18,19
  29:23 30:5,21 31:14
  31:15 34:11,11,15
  36:4,5,9 37:16,17
  44:24 45:9,16,24
  57:5,7 76:23 88:20
  89:5,7
**assist** 78:18
**assistance** 89:14
**associate** 83:17
  89:12
**associated** 70:7

**associates** 4:17 7:12
  89:13
**assuming** 9:14
  93:11 97:14,19
  103:4 104:14
**assure** 16:16 19:11
  30:6
**attached** 41:20
  78:15
**attaches** 25:24 43:2
**attachment** 74:8
**attempt** 49:23
  77:25
**attorney** 3:3,19
  4:10,18 5:2,10 9:24
  13:18,20 23:1 24:3
  29:9 31:6,6,7 49:3
  50:14 67:22 69:2
  90:1
**attorneys** 3:11 4:2
  15:11 23:17 33:12
  58:19 69:16 82:20
  87:25 88:4
**attorneys'** 27:6
**attorney's** 10:1
**attributed** 81:15
**august** 22:10,22
  25:17,20 26:7,17
  27:17 28:6 45:5
**authentication**
  95:23
**authorities** 86:1,3,4
  88:2
**authority** 77:3,4
**authorization** 16:2
**authorized** 53:6
**available** 54:17
  80:22 83:11 84:19
  84:20 89:21 96:25
  98:11 100:3
**avenue** 3:4,12 5:13
**avoid** 36:15 37:12
  37:21
**avoidance** 30:24
  34:16
**avoiding** 37:10

**aware** 25:14 87:24

**b**

**b** 1:21
**b.r.** 77:23 78:21
**back** 9:7 13:19
  14:15 19:16 20:1
  25:23 28:7,20,25
  29:3 33:13,16 34:25
  36:2 37:5,6 38:25
  39:1,2,15,16 41:19
  41:20 42:7,12 43:24
  45:2,22 46:25 47:13
  48:18 49:1 54:23
  57:9 58:7 65:16,16
  69:5,8,9,14,21 70:4
  83:16,17 92:11 95:9
  99:18 101:6 107:10
**background** 8:15
  11:1 47:17 72:16
**backup** 35:20
**bad** 32:19 37:25
  85:19
**balance** 27:22
**bank** 16:1 54:19
**bankruptcy** 1:1,13
  1:23 8:20,23 9:12
  10:15 13:1 14:10
  16:15 30:1,8,9,16
  30:17,19,19 31:3,10
  31:12,16 34:14
  36:14,16,25 37:9,9
  37:23 38:13,14,15
  38:16 46:22,24 48:6
  48:8,8,9,16 49:1,2
  49:15,16,24 50:4,14
  50:14,15,17,18
  51:12,13,16,19,21
  52:2 55:19 56:3,8
  56:21 58:10 62:8
  63:11 64:9,25 65:10
  69:3,22,23 70:2,5,7
  70:13 71:18 72:10
  74:7 77:16 78:19
  82:7 83:15 86:16
  87:16 88:2 91:5
**banks** 16:2

**bar** 18:11 59:8
**barconi** 100:11
  101:4 106:8
**barconi's** 100:22
  106:11
**barkany** 1:7 2:2,6
  3:2 4:2 6:4,17,22
  7:2,24 9:1,14,21
  12:4,23 15:18,18,24
  16:25 17:3,8,13,17
  18:9 20:2,23 21:4
  21:13 22:1,2,3,16
  22:23 23:1,3,4,19
  24:2,11,13,17,22
  25:9,15 26:11,16,22
  27:4,11,13,21,23
  28:1,3,7,14 29:12
  32:3,8,15,21 33:16
  33:16,17,19,20 36:3
  36:4,4 39:19,25
  40:4,4,10,19,22,23
  41:6,9,22 42:2,13
  42:15,18 43:3,7,16
  43:17,21,22,25
  44:16 45:5,14 46:18
  47:9,17 48:13,17,25
  52:17,17 53:13 54:6
  55:3 57:2,15 58:21
  59:1,4 60:2 61:2,3
  63:11 65:7 66:10,16
  66:17,18,19,20 67:6
  67:8,18 69:2,3
  75:15,19,22 77:13
  78:2,6,9,10,12,17
  79:3,23 80:5,8,11
  80:16,18 81:4,4
  82:3 84:1,5,17 85:2
  85:9,12,14,22 86:10
  86:19 87:6,22,25
  88:16,18,24 90:4
  91:4,13 92:4
**barkany's** 65:15
  67:7 73:21 76:10
  80:4 90:16
**barkany's** 10:4
  16:23 17:6 21:9
  32:17,18 35:15,16

35:25 36:1,7 41:8
42:5 94:18
**barkett** 25:3 45:18
**barm** 12:4 14:20,25
15:1,8,9,10,17,21
16:10,19 17:8,11,19
19:15,20,20,23 20:4
21:15,19,23,24 23:8
25:17,21,23 26:9
27:3,4,8,17 28:12
28:22 29:4,9,11,23
30:2,4 31:25 32:20
32:23 36:24 37:13
38:1 41:8 42:5,13
48:3 50:21 53:3
56:24 58:4 59:7
61:9 62:17 68:9,25
78:2,3 80:14 81:11
81:20 82:8,17 83:1
84:24
**barm's** 94:16,21
95:7
**barm's** 15:11
**barnett** 27:3
**bars** 67:11
**base** 66:12
**based** 17:12 27:15
39:18 40:12,13
49:12 61:20 71:14
73:15,21 74:11 76:1
89:15 92:21 93:6
103:23 107:8,13
**bases** 30:24
**basic** 64:8
**basically** 21:24 22:6
23:3 25:4 27:23
37:18 38:25 53:15
67:10,10
**basis** 16:13 19:4
31:13 43:18 48:12
48:12 55:2 61:1
65:9 66:12 67:5
**battling** 102:17
**beat** 35:24,24,25
36:1 37:19
**becoming** 12:25

**beginning** 28:17
38:5 39:5
**begs** 59:18
**behalf** 2:2,6 22:15
24:5 36:23 52:6
57:19 65:2 106:11
**behavior** 81:16
**believe** 9:18 12:11
13:24 24:10,15 31:5
36:2 39:25 41:21
44:13 46:7 50:15,25
51:23 52:1 55:14
63:14 66:11,18 69:1
69:11 72:2 73:1
75:6 77:22 78:1
80:4 85:3 86:7 87:8
87:21 89:11 99:14
100:9,11 101:4
**believes** 47:9,9
61:11
**belong** 55:11,20
**belongs** 51:17 57:15
**belsky** 12:11 14:25
16:5 17:15 22:4
30:10 33:1 42:18,19
42:23 43:9,11,12,13
43:14 44:2,22 45:8
61:8,11 62:17 68:20
68:21 70:23 74:8,18
74:21 79:16 80:21
88:22 89:14 98:5,24
99:13 100:24 101:8
101:9,12 106:18
**belsky's** 59:20
70:24 89:15
**belsky's** 15:22 43:2
**beneficiaries** 16:8
**benefit** 23:16 71:19
**benefiting** 34:13
**best** 8:13,19 9:18
18:21 69:11 71:22
72:1 81:9 88:12
**bet** 40:23
**better** 15:12 22:17
30:6 39:14 72:10,13
88:11 92:24,24
107:10

**bifurcate** 105:24
**bifurcation** 105:25
**bigger** 31:11
**binding** 77:21
**bit** 8:15 18:25 87:20
**blatantly** 73:3
**board** 74:17
**body** 87:13 92:18
**bona** 11:4,6 18:20
39:17 43:19 44:4,5
57:4,7 61:16,16,24
62:2,9 63:13,21
64:1,18 65:8,20
68:18 74:12 75:2
79:10 86:13 90:22
91:15 93:22 95:4
97:21 98:20 105:18
107:1
**book** 94:3 95:15
**borgata** 11:23,23
27:20,21,21 28:4,7
28:8 39:8,13,22
40:8,10,18 41:18,19
41:23 42:1,3,6,20
42:20,21,24 43:3,10
43:16,16 50:24
52:16,18,18,20 53:6
54:2,7 60:1,12 61:1
61:4,12,13,16 62:4
62:10,16 63:18 65:8
65:20,25 66:10,21
66:22,23,24 67:20
67:24 68:14,16 75:3
75:5,19 76:1,3,5
79:10,13,18,23,24
80:19,23 84:15,25
85:4,9,14 86:14,24
90:5,11,25 94:10,11
94:25 95:1,3 97:16
97:21,24 98:14,17
98:21 99:4,12 100:5
101:3,24 105:17,19
106:2,3,7,11,13,19
106:24 107:1
**borgata's** 53:3
67:22 84:20 90:17

**borrowed** 54:24
**bottom** 90:21
**bought** 14:2
**bounced** 43:21 55:2
**box** 91:1
**brand** 19:25
**breakdown** 23:6
**brief** 58:16 75:14
75:17 76:6,13,18
77:24 78:5 87:19
**briefly** 46:18
**bring** 54:12 56:4
87:4
**bringing** 15:3
107:10
**broadway** 5:3
**brought** 34:2,2,8
40:15 100:18
**brown** 75:20
**bunch** 23:3,4 26:13
27:5 56:15 57:4
**burden** 68:14,16,17
79:14,15
**business** 38:7 46:24
46:25 47:10,11,22
65:6
**buy** 33:2

c

**c** 3:1 4:6 6:1 109:1,1
**cafeteria** 93:8,11
**calendar** 6:12,15,24
92:15
**call** 11:17,22 17:7
75:4 82:6 96:1
102:2,8,14,24 103:4
107:10
**called** 27:23 47:17
53:14 56:1 95:25
**calling** 67:16 68:20
**canadian** 5:2 8:5
50:21
**cancelled** 16:1
**can't** 13:23 36:5
43:20 49:6
**capable** 104:20
**capacity** 34:20

care 75:23 85:21
case 1:3 2:1,5 9:20
  10:8 13:15,23 19:8
  19:9,10 30:1,15
  31:5,9,12,13,17,21
  38:22 41:9 42:4
  47:15 48:4,8,10,16
  49:11,12,15,15,17
  49:17 50:4 51:16,19
  52:2 54:25 56:3,7
  64:14,22,25 65:1,9
  65:22 71:15 77:1,5
  77:21,24,25 78:1,22
  79:14 91:7 92:25
  106:10
cases 31:11 38:17
  38:18,18,19 46:23
  47:20 64:23 68:7
cash 41:19 53:13
  54:1
cashes 53:23
casino 11:23 41:4
  41:13,14 52:24
  53:16,16 54:10,16
  54:19,21 55:3,4
  85:10,19
casinos 52:24
cast 73:2 85:7
caught 88:11
center 4:3
central 1:16
certain 20:3 22:12
  54:21 62:8 82:3
  97:3
certainly 19:8 29:18
  30:18 39:13 46:16
  76:8 79:7 84:10
  89:24 90:24 92:24
  95:5 96:8 98:8
  101:11 102:17
  106:9
certainty 9:15
certify 109:3
cessation 28:3
challenge 64:1,5,7
  64:17 66:2,3,3,4,4,5
  66:12 79:10,12,18

79:19 81:5,6 94:19
  94:23
challenges 83:6
challenging 65:20
  67:5
change 64:12
changed 64:6
chapter 47:2,3,14
  47:15,18,18 48:13
  48:14
charge 9:25
charities 22:13
  33:10 45:1
charity 22:13 33:12
charles 21:1
charts 74:21
cheated 42:1
cheater 29:14
check 54:16,18,18
  100:12
checkered 47:12
checking 35:20
  96:25
checks 16:1 41:11
  41:12,13,14,19
  43:20 54:22 55:2
  65:13 66:20
children 80:6
chips 53:21,23
choice 87:25 88:1
  91:25
circuit 77:4,6
circumstances 20:2
citation 64:24
cite 65:3 77:2,3,6
  91:7
cited 77:24 100:7
city 55:18
civil 31:6,6 69:4
civility 107:16,18
claim 11:5,12,13
  12:24 25:18 27:21
  39:11,14,16,16,18
  42:13,14,15 51:3,6
  51:6,7,9,11 55:2,15
  58:8 61:1,11 62:2,3
  64:11 65:8 66:10,12

67:6,20 68:15,18
  74:5,14,22,24 75:5
  75:12 79:10,18,20
  79:24 80:19 84:25
  86:15 90:25 91:12
  91:12 93:22 94:10
  94:11,20 95:3 97:17
  97:21,23 98:9,14,21
  100:10 101:24
  105:14,17,19,20
  106:2,13,25
claimants 30:22
  31:14 58:9
claimed 23:19
claiming 73:11,17
claims 9:15 10:23
  10:24 11:3,14 14:23
  16:17,17 21:10
  30:22 50:23,25 51:1
  56:11 57:12,23,25
  59:15 63:22 64:1,18
  65:20 75:6 79:6,6
  79:12 83:22 86:12
  86:14 87:5,10 90:11
  90:21,23
clashes 48:9
claw 57:9 69:4 70:4
clear 10:13 19:20
  23:18 37:4 38:12
  44:7,10 52:2 63:25
  64:3,6,14,15,22
  68:23
cleared 60:17
clearly 32:19 40:9
  52:12,17
clerk 6:9,12
client 12:16 18:14
  36:19,20 38:13
  50:24 51:2 60:11
  63:5 68:24 69:9,14
  69:21 70:11 84:11
  96:19 99:6,8
client's 69:20 81:10
clients 24:24 27:14
  36:23 54:4,18 57:1
  57:6,20,24 58:2
  59:1,14 81:15 87:21

87:23 88:1
client's 13:12 24:23
close 37:24 93:8
closed 17:20,21
  41:21,22 65:14
clothing 25:3 45:20
code 10:9 46:24
  48:9
coerce 84:3
coincidence 87:1,2
cold 21:17
colleague 7:5
colleagues 45:4
  81:15
collected 14:19
  17:23,24 18:3 29:23
  59:14
collecting 59:10
collection 39:21
collective 71:17,18
  72:10
collectively 8:13 9:2
  9:13 18:21 92:12,14
come 6:23 33:13
  37:1,22 41:19,20
  46:19 50:9 51:8
  54:11 59:6 62:8
  80:18 84:22 90:14
  92:11 95:1 99:18
  101:23
comes 38:9 39:1,2
  40:8 54:18 87:9
  95:2
coming 14:24 31:22
  50:12 72:15 104:21
commence 86:24,25
  89:20
commenced 27:17
  58:20 83:13 87:2
commencement
  15:6
comment 49:6
comments 55:10
committed 42:16
  44:19 51:2
committee 65:23,24

**communication**
53:10
**companies** 23:3,5
**company** 4:18 7:13
75:24
**compare** 88:8
**compelling** 57:19
**complain** 84:23
**complaints** 83:19
83:20,21 84:4,8
**complete** 16:6 30:6
104:17
**completed** 16:11
**completely** 23:20
44:15 57:15 68:2,3
**component** 54:1
**comprise** 64:8
**compulsive** 85:4
**computer** 16:4
**conceal** 83:14 84:9
**concealing** 83:23
**conceded** 81:4
**concern** 56:18 69:1
**concerned** 48:23
56:14,22 69:25
105:24 107:20
**concerning** 96:17
**concerns** 77:15
**conclude** 99:25
**concluded** 108:2
**conclusion** 92:21
97:20
**conclusions** 68:22
72:16 92:20 93:3,5
**conduct** 67:3
**conducting** 103:10
**confer** 107:17
**conference** 102:2,7
102:14 103:4,10
104:2 107:9,11,12
**conferences** 99:21
**conferred** 99:23
103:17
**confess** 87:23
**confessed** 17:9 20:4
27:11 88:18

**confesses** 87:22
**confession** 22:10,22
22:23,25 23:2 26:7
26:11,17,18,25
27:18 28:2,6,12
33:15 40:6,16,17
45:4,6 83:21,23
84:7
**confidence** 22:20
75:11,11
**confines** 87:17
**confirming** 103:16
**connection** 15:24
19:17 20:14 39:23
78:18 82:4
**consent** 60:11
**consideration** 49:9
54:1 94:17 100:17
**considering** 12:14
69:14
**consistent** 24:19
30:21 65:22
**consistently** 88:3
**consists** 26:1,2,2,2
**conspirator** 83:8
**conspiring** 82:9
**constructed** 51:3
**consult** 102:1
**contacted** 49:25
53:2,4
**contained** 83:20
**contest** 68:8
**contesting** 62:2
63:20
**context** 30:15 31:9
47:17 50:3 56:21
57:12 64:19
**contingent** 5:10
7:16 57:25 58:7,8
**continue** 9:23 10:3
37:16,18 72:23
94:12
**continues** 29:14
40:23 56:11
**continuing** 27:25
45:14,15 71:23

**contrary** 76:21
**contrast** 88:8
**contravening** 90:13
**contribution** 33:17
33:18
**control** 15:1 37:18
52:24
**controlling** 78:23
**controls** 78:12,13
**convenience** 75:5
**convenient** 67:23
**convert** 47:15
**conveyance** 29:3
34:24 35:1
**conveyances** 30:23
33:4
**cooperate** 88:12
**cooperated** 88:16
88:17
**cooperating** 18:7
24:17 45:16 52:21
90:9
**cooperation** 15:18
17:14
**corp** 77:23 78:21
**corporate** 85:11
**corporation** 85:17
**corporations** 85:13
**correct** 6:19 11:16
12:18,19 14:20
52:16 60:23 62:5,21
63:3,4 70:23
**correctly** 60:8
**correspondence**
24:7
**cortland** 26:12,13
26:15
**cortman** 26:23
**cosmo** 56:1
**cost** 101:18
**costs** 27:6
**counsel** 16:24 21:23
21:24 22:3 25:3
28:14 44:18 45:18
53:3,11 61:8 68:12
69:7 75:13 76:5
78:11,15 80:17

82:14 84:20 87:10
92:20 93:2 100:4,13
101:20 106:23,24
107:16,18,20
**counsel's** 63:5
**counterclaim** 11:13
61:2,11,17
**country** 109:20
**county** 26:12
**couple** 14:11 23:16
37:16 73:9
**course** 21:5 28:17
40:20 56:8 64:8,13
67:22 96:14 106:13
**court** 1:1,13 6:2,7
6:13,15,20 7:7,22
7:25 8:7,9,12 9:17
10:10,11,11,16,19
10:22 11:10,18,19
11:21,25 12:18,21
13:2,6,9,11,18
14:11 15:7,9,13
16:15,16 17:3 18:1
18:12,16 19:8 24:3
25:16 26:12,24 30:9
30:19 38:14,16 39:6
39:17 40:16,17 47:7
51:8 52:5,10 55:5,8
56:10,17 57:22,23
58:4,12,15,23 59:22
59:24 60:25 61:10
61:23 62:6,8,13,14
63:3,7,16 65:21
66:17 68:6,12,21,22
69:19,24 70:17 71:2
71:5,10,23,24 72:12
73:22,22,24,25 76:8
76:12,25 77:10,21
78:5,18 79:1,8 81:6
81:7 82:7 83:11
84:13,22 86:16
87:12 88:2,4 91:15
91:18,20 92:2,7
92:9,10,10 93:15,18
94:2,15,22 95:14,18
96:4,7,9,21,24 97:3
97:6,18,24 98:3,25

99:9,11,18,20,22
100:1,6,15,18
101:23,24 102:2,3,5
102:9,10,17,20,21
103:2,11,16,21,23
104:4,6,9,12,25
105:8,15,18,23
106:16 107:3,4,5,8
107:12,18,19,20,21
107:22,25,25
**court's** 92:15 95:11
**courthouse** 1:14
**courtr** 6:11
**courtroom** 19:9
87:9,17
**courts** 88:3
**court's** 18:14 39:12
49:10
**created** 56:25 80:14
**creating** 74:21
**cred** 59:8
**credible** 52:9
**credit** 28:8,9 39:18
39:20,20,24 40:2,12
40:18,19,22,25 41:3
41:4,5,9,15,16
43:22 52:25 53:5
54:7,10,13,16,17,23
61:18 66:21 84:17
88:11
**creditor** 3:11 4:10
7:6,10,12,19 19:3
20:21 23:21 24:5
25:5 26:14 29:9
32:14 46:5,5 47:7
50:20,21,22 58:14
61:16 62:4 64:5
76:19,19 77:15
**creditor's** 62:1
77:18
**creditors** 5:10 7:16
8:5,21 9:1 11:3
12:20,23 18:17,24
19:5 20:3 22:16
23:4,5,19 25:5
26:15 32:2,7 36:21
38:23 44:17,19 46:6

46:6,10,10 47:1,1,1
47:5,13 48:18 52:7
55:7,9 58:5,8 60:24
63:7,10,23 64:2,2
64:10,11,15,17 65:2
66:25 69:12 70:24
71:20,23 72:9,18
76:21,23 79:12
81:11 93:22
**creditors'** 9:18
**creditor's** 8:19
**crew** 58:1
**crime** 9:4,5 17:9
**criminal** 9:19,20,24
13:4,6,18,25 15:6
16:24 17:24 30:15
31:4,6,7,9,11,13,19
31:23 41:9 42:4
48:4,10 69:2 78:14
91:6
**crook** 29:13 84:2
**cross** 62:22 96:16
**crystal** 19:19
**customer** 40:12
**cut** 39:3

**d**

**d** 6:1 75:19
**dash** 93:9
**date** 9:7 18:8 73:22
92:12 109:23
**dated** 22:10
**dates** 93:19 96:23
96:25 98:16 102:4
107:13
**david** 12:11 15:21
26:17 68:20
**day** 19:7 25:1 30:4
49:16,25 61:3 81:24
82:18
**days** 19:21 23:15
24:1 26:21 41:2,7,8
54:22 55:13,17
96:23 99:24 103:19
103:19,20 106:23
**deadlock** 78:25
**deal** 22:18 29:2
37:1 39:3 44:4

61:24 62:6,9 106:5
**dealing** 31:22 64:9
65:5,5 105:20
**deals** 21:17 27:14
27:14,15,19 35:9
91:7
**dealt** 47:20 51:13
**death** 67:9
**debt** 9:8,14 12:24
14:8 21:10 23:24
40:4,9,13 50:7 76:3
76:14
**debtor** 6:17 7:1 8:9
8:16,19,23 10:14,23
11:2,13 47:4,21
62:18 64:1,7,9,12
66:4,5 69:12 72:11
77:17 78:24 79:18
81:6 94:10 95:2
**debtor's** 66:2,4
76:22 94:9,23
106:24
**debtors** 1:9 3:3
**debtor's** 6:24
**debts** 64:12 85:16
85:17 86:19
**december** 25:11
32:10 44:17 55:13
**decide** 30:10,12
37:20 54:11 68:22
81:23 98:13
**decided** 103:17
**decides** 43:15
**decision** 39:12
49:10 62:23 77:6
**declarant** 96:15
**declaration** 39:21
39:22 42:15 74:4,18
75:21,22 96:10,11
96:14
**declarations** 96:11
**declare** 30:25
**defalcation** 51:5
**defeated** 70:25
**defend** 100:12
**defendant** 59:1

**defendants** 12:20
12:25 50:25 87:3
**defer** 105:13
**deferred** 55:19
**defraud** 84:14
**defrauded** 72:4,5
**defrauding** 59:6
**delineation** 27:6
**delivered** 57:18
**demanded** 16:24
**demonstrate** 52:19
**demonstrated**
16:13
**demonstrating** 60:1
60:1
**department** 10:5
39:22 53:6
**depend** 80:6
**depending** 89:1
92:15 98:13 106:4
**depends** 80:9 98:25
**depose** 98:8
**deposed** 59:4,7
**deposit** 53:15,15
54:24
**deposited** 35:9
**deposition** 13:12
21:1,6 66:10 80:3,4
86:6 92:4 98:5 99:6
101:10
**depositions** 21:18
23:17
**describe** 81:9
**described** 13:18,23
68:24 87:15,18
**deserve** 47:22
**desire** 18:14
**despite** 61:12
**destitute** 80:12
**detail** 32:4 74:4
84:5
**details** 10:6
**determination** 95:1
103:22 104:21
**determine** 15:22
31:1 49:10 73:17
93:18 107:9

**determined** 62:19
74:21
**determines** 107:22
**determining** 30:22
31:14
**development** 4:18
7:13 11:6,9,11,14
12:5 19:25 78:21
**dictated** 28:13
**didn't** 40:21 42:7
43:11,11 47:22
**different** 14:3,23
20:17 23:8 75:4
85:18,19 97:5 98:16
**differently** 87:20
**difficult** 89:9
**difficulty** 80:16,17
**diligence** 85:1,22
**direct** 77:21 96:10
96:13
**directing** 67:17
**directly** 28:11 51:2
64:15,22 66:19
**disability** 91:8
**disbursed** 15:10
**disclose** 90:3,8,8
**disclosed** 24:13
37:15 41:25
**disclosing** 14:1
**disclosure** 17:4 47:6
81:12 84:10 90:24
99:4
**discover** 90:5
**discovered** 70:22
82:18
**discovery** 20:12,13
97:4,4,7,12 98:13
98:23 99:1,11,12,13
99:17,22,23,25
100:2,16,18 103:7
103:12,12,13,14,18
103:20,22 104:6,12
104:13,15,18,21,23
105:3,13,20 106:2
106:15,21 107:6
**discrepancy** 12:8,9
26:5 60:16 61:7

70:16
**discretion** 58:25
**discuss** 13:11 99:16
**discussing** 103:5
**discussion** 14:5
**disgorge** 58:3
**dishonest** 24:12
**dismiss** 2:1,5 6:16
6:17,22,25 19:17
39:24 58:11 64:19
77:18 94:9,16,21
**dismissal** 10:15
12:17 77:14
**dispense** 101:15
**dispose** 34:11
**disposed** 37:20
**dispute** 11:4,7
12:15 18:21 39:17
42:14 43:18,19 44:4
44:5 61:17,25 62:3
62:9,21 63:13,21
64:19 65:8 68:18
74:13 75:2,6 79:11
82:5 86:14 90:22
91:16 95:4 97:21
98:20 100:16,18
102:12 103:7 104:1
104:4,14 105:18
**disputed** 8:23 10:21
42:15
**disputes** 88:5
102:16
**distinguish** 77:25
**distortions** 75:12
**distributed** 16:11
16:12
**distribution** 14:16
14:21,22 16:18 18:2
18:5 30:7 71:19
76:22
**district** 1:2 4:18
7:13 11:6,14 77:1,3
77:6,24 78:22,23
99:9
**disturbed** 56:19,19
**dividing** 31:14,15

**dockets** 83:11
**document** 85:2
**documentary** 62:16
62:17 82:16
**documentation**
12:6,10 59:25 60:4
**documents** 17:13
60:17 73:16 74:19
74:20,20,22 89:21
95:16 96:3,5 99:4
100:6
**doesn't** 27:2 32:13
32:16 41:14,18
42:14 43:4,7,16
46:13,13,16
**doing** 33:22 73:6
81:12,14,20 83:9
84:14 90:13 103:8
**dollar** 60:16 61:3
**dollars** 14:2,7 32:15
35:11 45:24 83:3
**don't** 10:6,17 20:3
21:23 22:20 24:1
29:10,20,20 33:2,7
33:22 36:1 37:13,14
41:3,5,13 42:9,19
42:21 43:25 44:1
**door** 17:20
**downstairs** 93:10
**dozen** 69:16
**drafted** 22:24 45:4
**drawer** 26:19,19
45:6 83:24
**drawing** 70:10
**drawn** 54:19 56:3
93:3 104:18
**drive** 16:5
**due** 28:11 64:13
78:24 81:3 85:1,22
99:9
**duplicity** 84:23,23
**d'amato** 1:14

**e**

**e** 1:21,21 2:1 3:1,1
5:19 6:1,1 109:1
**earlier** 14:13 18:17
21:17,20 29:2 62:1

92:19 100:7,21
103:9
**early** 21:25 22:14
24:2 34:15 57:7
**earned** 20:7,19,22
21:16 23:21 29:1
**earth** 57:8
**easier** 11:21,22
**easily** 23:22
**east** 3:21
**eastern** 1:2 77:23
**eat** 93:9
**eaten** 23:23 69:13
**economic** 106:19
**economics** 106:16
**ed** 3:19 7:20 57:21
**education** 41:1
**edward** 2:1 5:16,19
7:14 58:17
**effective** 79:4
**effectively** 48:5
50:17 78:24
**efficient** 101:17
102:13
**effort** 95:15
**efforts** 13:19,22
38:1,2 46:19 95:22
**eisenberg** 56:10
**either** 9:9 32:3 46:8
67:18 85:21 101:5
103:8 107:9,9
**elements** 64:8
**eligible** 18:19 63:10
72:18
**else's** 46:6
**elucidation** 52:15
**email** 24:20 53:5,7
75:19 76:1,2,6,9,11
86:9
**emails** 19:19
**enable** 89:7
**ended** 21:20 53:9
**enforcement** 12:24
89:23
**engaged** 20:4,7,23
21:15 27:23 30:25
35:4 45:15 46:19

**engaging** 19:23 27:11
**enrichment** 51:4
**enter** 30:1
**entered** 2:2,7 13:3 22:23 28:3 52:3
**entire** 10:17 23:20 57:14 77:19
**entirety** 21:15 32:15
**entities** 27:4 73:21 83:19
**entitled** 16:13 22:9 26:12 99:5 100:12
**entity** 59:8 85:11
**envisioned** 102:25
**equal** 76:22
**equally** 48:5
**equitable** 14:22 30:7
**equivalent** 30:16
**escrow** 35:12
**esq** 3:8,15,16,25 4:6 4:7,15,22 5:7,16,19
**essence** 78:9
**essential** 16:25
**essentially** 15:20
**establish** 18:7
**estate** 26:1 50:8 51:1 57:5 70:6
**event** 92:4
**eventually** 16:12
**everybody** 13:22 107:10
**everybody's** 6:21
**everyone's** 97:11
**evidence** 38:11 61:14 62:16,17 66:9 67:19 68:15 71:12 71:14 75:1 81:22,25 82:17 87:9 92:22 93:6 94:7 95:17 96:4
**evidentiary** 62:14 63:6,8 70:17 76:15 85:7 91:24 92:6,12 92:13,16,22 93:5,19

**engaging** 93:20,25 94:8,12 95:12 107:11,19
**exact** 24:24
**exactly** 60:9
**examination** 20:18 96:10,13,16
**examine** 66:16
**example** 70:5 104:8 104:11
**exceed** 64:11 69:14
**excellent** 79:21
**exception** 68:10 77:8
**exchanges** 24:7
**exclusive** 73:20
**exclusively** 57:6
**excruciating** 74:4
**exercise** 10:12 58:25
**exhaustive** 74:19
**exhibit** 39:21 40:1 41:20 75:20 94:3 95:15
**exhibits** 94:1,5,5 95:13,17 97:8
**existence** 75:16
**exists** 61:11
**exit** 72:6,9
**expect** 36:15,19,24 66:14
**expects** 36:20
**expediency** 106:17
**expedient** 62:11
**expedite** 96:14
**expedited** 75:8
**expeditiously** 92:14
**expense** 76:21
**expenses** 69:6,13 70:1,3,7 80:10 105:24
**experience** 49:7
**experienced** 90:1
**expert** 70:8
**explain** 68:21
**explained** 80:18
**explaining** 52:9

**explanation** 23:6
**explanations** 34:4
**expression** 83:24
**extended** 40:11,18 84:17
**extension** 40:25 43:21
**extensively** 44:22 44:22 78:5
**extent** 6:21 19:3 51:18 52:14 78:9 79:3 80:5 100:15
**extremely** 78:3
**exxon** 47:20

**f**

**f** 1:21 99:21 103:10 109:1
**face** 42:25
**faced** 78:21
**faces** 14:9
**facie** 68:15 79:14
**facing** 14:1
**fact** 8:22 12:5,14,14 12:16 13:24 14:9 18:8 20:7,12 21:22 28:11 34:17 43:16 61:19 62:21 70:14 73:2,8,17 76:9 79:1 81:4 84:6 86:6
**factors** 10:10,13
**facts** 45:10 49:12 73:9
**factual** 61:25
**failed** 53:12
**fair** 30:7,21 36:25 38:21 105:23
**fairly** 52:9 74:17
**faith** 25:6 32:5 95:22 104:21 107:17,17
**fall** 68:10
**false** 73:3
**falsehood** 76:14
**faltischek** 3:18 7:19
**familiar** 41:2 68:7
**family** 35:25 36:1,6 36:7 80:12 87:7

**far** 9:15,23 22:24 23:7 25:25 28:21 73:1,6 78:17 82:11 89:23 105:23 107:19
**fashion** 70:17
**father** 32:17,19 94:18
**favor** 9:12 10:14,14 25:4
**fbi** 90:3,13,15
**february** 22:15
**federal** 1:14,15
**feedback** 95:10
**feel** 55:11 72:9,12 92:24 107:20
**feels** 67:9 71:17 72:4,5 107:21
**fees** 27:3,6 59:20,20 69:17
**fellow** 21:6
**fide** 11:4,6 18:20 39:17 43:19 44:4,5 57:4,7 61:16,16,24 62:2,9 63:13,21 64:1,18 65:8,20 68:18 74:12 75:2 79:11 86:13 90:22 91:15 93:22 95:4 97:21 98:20 105:18
**fides** 107:1
**fields** 14:3 46:20
**fifteen** 76:7
**fifth** 59:5 66:11,13 66:20 78:7,8,16 91:7,23 92:3
**figure** 17:25 18:1 18:21 61:7,8 70:11 92:14
**figures** 60:15,15 69:17
**figuring** 76:7
**file** 55:15 62:22 63:10 72:18 95:24
**filed** 2:1,5 6:16,17 8:11,18 12:9 13:1 19:16 25:16 28:5

31:24 34:18 37:2,3
39:22 40:18 41:8
42:4 83:18 84:4
89:20 94:1 95:14
96:8

**files** 26:23 42:13
44:3

**filing** 14:10 18:18
18:19

**filled** 39:25

**fills** 41:15

**finality** 56:25

**finally** 41:7 50:19

**financial** 4:3 106:8

**find** 36:5 45:17 77:5
83:18 85:6,8

**findings** 10:24,25
71:12,13 72:15 93:4
93:5

**finds** 29:18

**fine** 11:19 47:19
58:15 93:11 101:10
101:23

**fingers** 67:11

**firm** 8:4 15:22
20:14 88:17

**firmly** 66:18

**firms** 35:8,10

**first** 6:25 16:23
17:8 19:7,11,12
20:20,22 21:3,12
25:12,24 28:23 32:4
32:7,8 38:12 45:23
55:15 59:11,12 73:5
73:6,10 89:25 93:1
94:9,25 97:16,24
106:3

**fit** 32:13

**fits** 97:11

**flee** 90:9

**flexible** 79:2

**flight** 29:13,16

**floor** 3:21

**fly** 29:12

**focus** 8:18 105:25
106:2

**focused** 92:18

**follow** 90:12 97:22

**follows** 73:2 93:24

**forced** 58:3

**forecasted** 69:5

**foregoing** 109:4

**forensic** 12:3,11
15:22 17:12 42:17
42:24 43:4,5 52:22
52:22 53:2,3,12,25
60:10,15,20 74:3,9
80:20 88:21

**forfeiture** 13:3,6,7
13:13 30:14 31:8

**formal** 29:6

**former** 89:12

**forth** 31:1

**forthcoming** 12:5
36:3,8 69:6

**fortunately** 46:21

**forward** 36:14,16
38:3,3 47:23 49:3
49:24 50:13 80:2
98:4,17,17 106:12
106:14

**found** 79:1 84:21
85:23

**foundation** 95:23

**four** 57:1

**framework** 31:19
46:21 48:6,16 56:3

**frankly** 32:5 48:5
53:6 66:1 67:9
101:1

**fraud** 9:4 27:10
29:16 33:6 40:10
41:24,24 45:15 56:5
59:2 84:6 87:11,22

**fraudster** 59:3

**fraudulent** 29:2
30:23 33:4 34:24,25

**free** 107:20

**friday** 55:14

**friend** 21:8

**front** 24:9 53:15,17
56:9 67:25 99:9

**full** 17:3 84:10
90:24 101:4

**fully** 36:15,15,24
81:20,20 86:10

**fund** 34:21

**funds** 14:22 15:2
16:18 33:14 35:9

**further** 11:17 12:10
53:10,10 69:22,22
69:24,25 95:6 96:7
98:22 100:4 105:19

**future** 42:12 46:25
47:11 65:17

**g**

**g** 5:16 6:1 75:20

**gain** 76:20

**gamble** 40:8 41:6
41:17 53:14 85:14

**gambler** 52:9,11
85:4

**gambles** 53:21

**gambling** 27:21
28:1,8 54:1 85:10
85:18

**game** 37:19 72:2

**gaming** 85:13

**gardens** 4:11,13

**gate** 62:7

**gateways** 22:13,17
22:20

**gather** 38:11

**gathering** 30:20

**general** 8:10 53:3
79:2 91:9 100:13

**generally** 22:2

**gentleman** 22:11

**geometrically** 70:13

**gershon** 1:7 2:2 3:2
6:4 7:2 58:6 73:21
75:19

**getting** 24:3 34:11
40:25 49:18 68:1
72:16 82:20 86:8
100:22 102:14

**gist** 52:10,16 93:19

**give** 28:8,19,25 29:3
37:5,6 42:9 43:9

53:8,21 59:7 65:11
65:19 84:3 91:11
103:23 105:4

**given** 9:21 10:7
28:9 32:7,9,10 33:1
33:17 41:16 67:13
106:7,10 107:14

**gives** 30:10,11 87:6

**go** 10:6 18:14 19:16
36:14,16 38:2,3,13
38:13 48:21 49:3,24
50:13 54:5 83:11,12
83:17 85:13 86:1,4
86:18 88:15 90:20
95:9 98:16,17
105:19 106:12,14

**goal** 69:21,21,23,25

**goes** 13:10 27:10,13
29:18 31:8 53:14,16
70:5 75:25 80:2
83:16 89:23 106:4

**going** 6:22 8:12
11:15 14:21 18:8
20:1 22:7 28:4 29:5
32:2 33:12,13,14,15
33:24,25 34:9 35:3
35:23,24,24,25 36:2
36:7,8,9,10,22
37:23,24,25 38:1
44:12 45:1 47:11,23
48:20,21,24,24 49:2
50:9 56:7,23,25
59:10 63:17 66:15
67:3 69:6,18 70:6,8
70:9,9,10 71:13
72:22 82:23 84:12
85:15 86:2,5,10
87:17 88:24 91:24
92:10 94:6 95:6
96:2,3,13,22 98:14
101:2 102:6,22
103:4,5,8,14 104:13
104:14,15,17,18,25
105:1 106:18

**goldberg** 5:1 8:4

**good** 7:3,8,14 8:1,3
8:8 21:7 25:6 32:5

| | **h** | 92:13,16,23 93:5,19 | **honor** 6:14 7:3,8,14 |
|---|---|---|---|
| 40:6 43:6,8 88:24 | | 93:20,25 94:8,12 | 8:1,3,8 19:1,6,16,18 |
| 93:15 95:22 99:20 | **h** 2:5 | 95:8,13 97:5,15,16 | 19:20,24 20:1,11,16 |
| 104:20 105:10 | **hackensack** 4:20 | 97:20,22 98:2,22 | 21:14,18,22 22:7,8 |
| 107:17,17,23 | **haim** 20:21 | 99:2,7,10 100:2 | 22:12,22,24 23:6,14 |
| **google** 83:12 | **half** 20:24 27:9 | 101:16 106:4 | 23:22,25 24:6,19,25 |
| **googled** 85:23 | 31:25 36:11 46:11 | 107:11,19 | 25:10,13,25 26:6,10 |
| **gorilla** 33:9 | 56:16 71:4 72:21 | **hearings** 98:16 | 26:21 27:8,9,22,24 |
| **govern** 17:19 | **halt** 87:4 | **heck** 26:3 | 28:5,10,17 29:6,10 |
| **government** 26:21 | **hamilton** 5:13 | **held** 11:3 16:10 | 29:11,15,17,21,22 |
| 29:7 89:25 90:2,7,7 | **hand** 72:11,12 80:1 | 53:16 77:4 | 29:24,25 30:14,17 |
| 90:15,17,18 | **handed** 18:11 | **help** 15:20,22 42:11 | 30:18 31:3,5,8,19 |
| **grab** 93:9 | **handle** 18:22 31:17 | 46:25 80:9,10,10,11 | 31:21 32:1,4,10,12 |
| **grabbed** 34:15 | **handled** 38:17,18 | 88:23 | 32:14,25 33:7,11,24 |
| **grand** 5:11 7:16 | **hands** 54:18 | **helping** 32:20,21 | 34:1,5,5,13,17 35:2 |
| **great** 47:13,25 | **happen** 38:8 49:6 | 88:19 | 35:5,13 36:9,12,13 |
| 64:25 | 56:2 104:13 | **hey** 28:7 | 36:19 37:2,8,11,13 |
| **grohman** 21:1,1,5,8 | **happened** 41:25 | **he'd** 42:15 47:23 | 38:3,6,7,22 39:3,4,9 |
| 21:11 23:10 26:14 | 54:25 56:2 67:14 | **he's** 12:6 14:1 24:11 | 39:9,11,18 40:5,10 |
| 35:13,15,16,18 | 70:20 84:24 | 29:13,13,13,16 | 40:15,22,24 41:1,21 |
| **grohman's** 21:7 | **happening** 82:22 | 32:21 36:8,22 41:16 | 42:2,13,23 43:1,19 |
| **gropper** 64:25 | **happens** 15:3 18:4 | **hid** 83:25 | 44:5,6,7,9,13,13,25 |
| **ground** 12:16 95:3 | 30:15 70:11 | **hidden** 36:4,5 68:3 | 45:12,17,22 46:3,7 |
| **grounds** 65:22 | **happy** 50:13 97:1 | **hide** 57:13 66:19 | 46:13,17,17,21 |
| **group** 17:8,11 20:4 | 97:10,13 100:23 | 74:1 84:2 | 47:14,16,20 48:2,22 |
| 20:11,16 21:14,15 | 101:8,19 | **hiding** 91:3 | 49:5,7,19,22,23 |
| 21:19,23,24,25 23:8 | **hard** 15:19 16:4 | **high** 69:8 | 50:10,19 51:14,22 |
| 23:12,21 24:5 25:5 | 78:10,11,14 80:13 | **hindered** 13:25 | 51:24 52:1,14 58:16 |
| 25:17 26:9 27:17 | 80:15 88:20 | **hired** 12:4 88:21 | 63:12,24 64:14,23 |
| 28:12,22 29:9,10 | **hashanah** 19:21 | **history** 31:12 67:13 | 65:4,7,11,13,21 |
| 31:25 32:6,15,22,23 | **haven't** 8:24 | **hit** 55:13 | 66:6,9,11,14,15,18 |
| 32:24 37:13 38:23 | **he'll** 67:11 | **hold** 11:13 16:17,17 | 66:23 67:3,4,12,21 |
| 44:18 48:3 50:21,22 | **head** 31:25 34:10 | 18:15 37:17 57:24 | 67:25 70:18 71:7 |
| 50:22 55:24 56:20 | **hear** 8:9 18:16,23 | 62:14 66:1,15 67:19 | 74:11 76:9 77:7,22 |
| 71:17 72:4,5,8 | 55:6,8 58:13 63:17 | 67:22 93:22 98:15 | 79:22 81:23,24 84:7 |
| **groups** 9:1,11 | 68:5 75:1 81:25 | 107:9 | 84:7 87:13 90:24 |
| **grow** 69:18 | 91:16 97:13 | **holder** 11:12 | 91:8,19 93:13 97:14 |
| **growing** 56:14 | **heard** 19:6,7,11,12 | **holders** 58:9 | 97:20 98:11,12,15 |
| **grows** 70:12 | 52:7 56:22 59:11 | **holding** 14:15 15:9 | 98:19 101:1 102:6 |
| **guess** 34:23 35:8 | 66:7 68:24 75:12 | 30:5 50:1 | 102:11 |
| 88:14 90:17 101:10 | 81:8 91:14 106:20 | **holds** 54:20 | **honor's** 91:25 |
| **guilty** 9:3,4 59:5 | **hearing** 2:1,5 56:15 | **holiday** 19:21,22 | **honorable** 36:25 |
| **guts** 22:5 | 62:15 63:6,8 66:1 | **holidays** 84:22 | **honored** 65:15 |
| **guy** 23:11 32:19 | 66:15 67:4,18,23 | **hon** 1:22 | **honor's** 44:8 |
| 35:18,19 43:9 | 68:20 75:1,7,8 | **honest** 24:11 58:24 | **hope** 42:10 43:24 |
| **guys** 45:19,20 49:25 | 76:15 80:2 81:22 | **honesty** 68:1 | 47:10 65:16 95:21 |
| | 82:16 85:7 90:25 | | 95:21 |
| | 91:21,23,24 92:6,12 | | |

**hopefully** 75:7
88:21 100:3
**hopes** 88:14,15
**hoping** 18:3
**horrible** 37:23 39:7
81:14
**horribles** 81:14
**horrified** 56:22,23
57:15
**host** 52:23
**hotel** 11:23
**hour** 56:16 71:4
72:21
**hours** 22:4,4,5
**huh** 68:11
**hundreds** 67:1
**huntington** 3:6
**hurt** 35:5,6,7 38:23
38:24

**i**

**idea** 59:10 73:23
87:16 99:20
**identified** 15:18
17:10 28:18 89:14
**identify** 17:10
**ignore** 70:15
**ignored** 23:20
**imagine** 90:25
**immediate** 49:15
**immediately** 58:5
88:1,2
**immunity** 66:17
**import** 92:18
**important** 23:7
29:19 73:10 75:10
78:1,3
**impossible** 73:14
**inaccurate** 43:15
**incentive** 76:20
**include** 32:16
**included** 20:16
**including** 22:13
**incomplete** 33:3
42:25 43:15,17
**inconsistent** 74:23
**incorporate** 100:2

**incredible** 24:7
**incurred** 70:1
**incurring** 85:16
**independent** 80:20
**index** 26:16,24
**indicated** 12:12
**indirectly** 64:21
**indiscernible** 6:9
21:25 28:25 32:16
47:21 49:20 51:5
58:4 60:3 67:8
71:24 79:17 82:12
92:5 99:9
**individual** 50:25
51:6,9,11 54:6
**individuals** 57:1
**inescapably** 56:3
**inflexible** 91:10
**influence** 31:1
**informally** 101:21
106:14
**information** 12:6
29:24 42:25 43:14
59:7 61:20 103:23
106:23
**initial** 68:14
**injustice** 91:16
**ins** 39:13
**insider** 30:25
**insists** 81:24
**instance** 104:5
**institution** 17:24
**instructive** 77:22
78:24
**integrity** 68:1
**intelligent** 82:13
**intend** 96:1
**intended** 31:10
**intentional** 73:4
**interest** 14:4 27:5
69:11 71:22 75:23
88:12 90:23
**interested** 5:10 7:16
7:19 55:7,9 56:20
58:14
**interests** 8:19 9:18

**interrupt** 107:20
**interruption** 72:22
**intertwined** 106:7
**interviews** 74:20
**intimidated** 68:25
69:20
**introduce** 96:4
**introduced** 94:6
**inundated** 44:8
**invested** 20:6,17
21:4 23:10,11,11
57:1 58:3
**investigate** 36:18
**investigated** 37:14
37:15
**investigating** 90:4
**investigation** 37:24
42:24
**investments** 20:10
21:9 23:9 57:4
**investors** 20:6,8
55:25 57:21
**invite** 29:25
**invoke** 78:16 88:5
**involuntary** 8:20
18:19 62:25 63:11
64:5,7,8,17 68:9
72:19 77:16 91:5
**involve** 97:16
**involved** 20:20 21:9
21:25 23:8 38:16
46:22 65:1 69:6
82:6 106:19
**involvement** 55:23
**involves** 6:20 82:7
**irs** 18:10
**island** 55:16 56:1
**islip** 1:16
**isolated** 55:17,20
56:20
**israel** 24:15
**issue** 8:12,14 11:11
18:18,20,22 58:23
58:24 60:21 61:9,10
61:14,15,23 62:7,18
62:18,19,24 63:2,9
63:18,19 64:20

69:20 72:17 76:16
77:7,12 79:5 83:15
89:9 91:23 92:1,2,3
94:22,25 95:18,20
97:6 100:1,5 101:7
101:21 103:24
106:5 107:1,13
**issued** 41:22
**issues** 63:15 93:21
94:19 95:5,6,11
106:20
**item** 52:20
**items** 19:12
**it's** 9:18 11:5,8,10
11:21,23 13:24 18:3
18:4,19 19:21 23:7
23:10,18 24:2 26:3
26:4,5 29:22 30:3,3
30:5 31:10 32:4
33:9 34:25 37:23,24
37:25,25 38:11,21
39:4,18,24 40:1,2
41:1 42:22 44:25
45:3,8,12,17,22
46:1,3 47:6,7,10
48:10,11 49:8,8,9
49:13,14
**i'd** 8:9 18:16
**i'll** 6:21 19:4 32:10
33:10 39:3 42:11
**i'm** 6:7 7:8 10:24,25
11:1 13:5 18:8
25:14 31:6,7 33:3
33:13 35:5,23,23,24
35:25 38:9 40:25
41:2 42:6,9 43:23
44:12 87:8
**i've** 10:8 23:14 38:6
38:7 47:20

**j**

**jacob** 4:7 8:1,2
22:14 30:11 45:3,13
45:25 46:4 50:14
67:7
**jacobs** 24:20,22
**jacob's** 25:1 46:8

**jail** 88:15
**jannuzzi** 3:8 7:1,1
  8:8,17 10:18,20
  11:8,16,20 12:1,22
  13:5,8,10 16:21
  18:13 24:8,20 25:2
  25:8,22 26:4 44:3
  45:18 46:1 59:25
  60:4 61:6,15 62:5
  63:1,4 65:11,19
  66:1,8 67:5,6,18
  68:5,13,19 70:3
  71:11 79:13,15
  80:18 91:19,21 92:3
  92:8 99:3 100:4
  101:9
**jannuzzi's** 24:21,25
  25:3 31:5 48:23
**jazzunni** 15:5,8,11
**jeopardy** 78:15
  91:6
**jeremy** 4:22 7:11
**jersey** 52:24
**job** 52:9 83:9,10
**joe** 20:17
**joel** 5:7 8:3
**join** 77:19,20
**joined** 77:18 78:2
**joint** 94:3 95:15
  102:25 103:3 107:6
**jonathan** 3:16,19
  7:5,20 57:20
**jordan** 21:7
**joseph** 3:11 7:6
  19:3 63:14 73:11,23
  74:9 80:6,15
**judge** 1:23 7:11
  8:17 10:2,7 11:9
  12:1,22 13:5,21
  17:22 18:13 24:9,10
  24:10 25:1,24 29:12
  31:16 36:3 45:14,25
  46:9 51:9 52:8 55:6
  55:10 56:10,22 57:1
  57:18,22 58:11 60:5
  61:6 62:5 64:25
  68:5,19 69:10 70:4

71:1 72:20 74:18
  84:24 86:11 91:2
  96:19 99:3 100:4,20
  105:5,11 106:6
**judgment** 22:10,23
  22:24,25 23:2 25:16
  26:7,11,17,18,25
  27:1,18 28:2,6,12
  33:15 40:7,16,18
  45:4,6 62:22 72:25
  83:21,23 84:7
**judicial** 16:22 88:5
**june** 24:8,10,21,21
  24:23 25:8,20,24
  26:6,8 29:11,16
  36:3 45:13,13,19,23
**jurisdiction** 10:11
  10:12

## k

**katz** 2:5
**kaye** 3:10 7:4
**keep** 22:20 33:22
  34:8 58:11 65:9
**keeper** 62:7
**keeping** 30:1
**kent** 6:5,8
**kenval** 77:23
**kept** 28:15 29:24
  45:6 84:16
**kessler** 4:10 7:10
  63:14 74:15 79:19
  81:1,3,5 86:14,23
  91:2 94:14,21,22
  95:6 98:17
**kessler's** 74:22
  79:20 91:12
**kew** 4:11,13
**kind** 34:23 79:25
  98:19
**kinds** 70:10
**kippur** 19:22
**kirshenbaum** 3:15
  7:3,4 19:1,2 52:5,8
  52:16 54:9 55:12
  56:13 57:11,18
  63:17,24 66:8 68:7
  68:11 69:5 71:3,6,8

71:11 72:8,21 73:1
  73:2,12 76:5 81:9
  81:24 82:6,11,19
  83:2,5,9,16,22
  84:19 86:18 87:20
  89:12,24,25 91:1,11
  97:14,19 98:1,4
  102:6,19,23 104:1,5
  104:7,10 105:11,16
  106:1,18 107:2
**kirshenbaum's**
  84:11 92:5
**klausner** 4:22 7:11
  7:11 11:22 39:12
  52:8,14 67:21,23
  100:9,20
**knew** 31:23 40:21
  40:22 50:1 56:1,4,5
  84:1,11 86:2,10
  90:15
**know** 10:6 14:14
  20:3 21:23 22:21,24
  23:7 24:1 25:25
  27:20 28:2,21,22
  29:10,10,20,20
  30:17 31:7,7 33:7,8
  38:8 40:21 42:11,17
  43:9,10,11,11 44:1
  44:7 47:3 48:25
  49:6,7 50:16,16
  51:19,22 52:23
  53:22 60:5,6 63:5
  73:1,7 77:7 80:25
  81:13 82:11,23
  83:25 85:1,1,17
  86:13,18 90:1 91:14
  94:3 95:19 96:5,9
  98:19 99:15,22
  101:10,12,14
  102:15 106:9
**knowing** 44:25
**knowledge** 12:22
  19:15
**known** 84:16 86:4
  86:15
**knows** 20:2 22:12
  26:8 27:10,11 38:8

39:13 47:14 50:15
  89:24 101:4
**kostel** 20:14,19
  23:17
**kramer** 4:9 7:9
**kwestel** 58:18,18

## l

**lack** 32:5 75:11
  107:10
**lacking** 77:16
**laid** 84:4 100:19
**lamb** 25:2
**land** 29:21
**language** 83:20
  84:8 87:14 92:18
**large** 40:3
**larger** 38:19
**las** 1:3
**lastly** 62:20
**late** 20:1 34:3 49:18
  81:17,17
**latitude** 65:12,19
**law** 4:9 7:9 8:4 10:8
  30:17 31:12 32:17
  32:19 35:8,10 53:7
  53:8 63:24 64:3,6
  64:14,22 65:22 77:1
  87:3 89:23 94:18,20
**lawsuits** 12:25 15:3
  28:18 34:1,1,2,7
  83:13 87:4 89:20
**lawyers** 20:19 42:18
  42:19 55:18
**lay** 29:21
**learned** 56:15 83:12
**learning** 82:20
**leave** 46:17 54:2
**leaves** 53:24
**left** 19:9,10 36:13
  51:25 71:21
**legal** 61:25 69:17
**legitimate** 57:4,7,21
**lend** 79:4
**length** 64:4,25
**lester** 3:15 7:4 19:1
**letter** 24:9,22,25
  25:1,8,23 36:2 42:2

43:22 46:8,8 65:15
102:3,5,9,20 103:1
103:3,16 104:25
105:2,8 107:6,8
**letters** 45:14 89:11
89:17 102:15,18
**let's** 14:19 22:18
38:13,13,15,15,16
**level** 56:18
**leverage** 79:25
80:15 88:15
**levine** 7:9 81:2
**liability** 8:23 10:21
11:4 12:15,15 61:25
74:14 75:16 76:3,13
90:23
**lie** 45:15
**lifeler** 3:19,20,20
7:20,20,21 57:20,21
**lift** 51:10
**light** 35:6 81:23
91:12 94:24 100:7
**limit** 102:22
**limitations** 91:13
**limited** 65:25
**line** 55:13 90:21
**liquid** 15:19
**liquidated** 29:24
88:20 89:5
**liquidating** 45:9
50:2
**lisa** 4:15 7:8
**list** 27:2 32:2,7,13
32:22 90:10 94:1
95:13,25,25
**listed** 94:6
**listen** 68:12 72:24
92:20
**listeners** 56:14
**listing** 45:24
**lists** 23:3 27:3 32:12
32:23,24
**literally** 31:20 41:7
49:17,17 51:25
**litigation** 20:15
40:15 41:7 59:12
69:13

**litigations** 37:25
**little** 8:15 11:21
18:24 20:12 49:8
52:15
**live** 85:18
**living** 80:9
**llc** 2:6 3:20 7:21,24
8:5 12:4
**llp** 3:10 5:9,11 7:17
58:18
**locke** 4:1 7:23 8:2
22:19,25 23:2 24:5
24:7,9 25:2,4,6
26:18,23 32:8 34:18
34:20 44:16,23 45:1
45:8 48:19 49:24
50:5,12 59:20 68:25
78:12 81:21 82:2,8
82:17 83:1 87:23
**locked** 83:24
**lohrfink** 5:9 7:15
58:17
**long** 34:9 38:7
51:23 55:16 56:1
71:4 90:16 91:21
103:13,22 104:6,15
104:16,18,22
**longer** 104:19
106:25
**look** 10:10 34:6
62:13 71:10 73:10
75:10 77:1 84:9
86:18 89:22 91:2,3
100:25
**looked** 12:6 38:10
48:20 54:3 57:16
60:21 70:22
**looking** 10:8,12
58:1 60:14 67:15
**looks** 39:16 40:2
**looney** 2:25 109:3
109:13
**lord** 4:1 7:23 8:2
22:19,25 23:2 24:5
24:8,9 25:2,4,6
26:18,23 32:8 34:18
34:20 44:16,23 45:1

45:8 48:19 49:24
50:5 59:20 68:25
78:12 81:21 82:2,9
82:17 83:1
**lord's** 50:12 87:23
**lose** 41:17
**loser** 17:16
**losers** 16:8,14 17:16
**loses** 53:22
**loss** 9:6
**losses** 90:18
**lost** 17:16 20:24
35:13,21,22 101:5
**lot** 26:3 28:10 34:4
34:7 35:4,8 38:24
44:9 45:21 48:21
49:8 65:4
**louis** 1:22
**love** 49:19
**lowey** 3:19 7:20
36:23 57:21

| m |
|---|

**m** 1:14 3:15,16 4:22
**madoff** 31:12 55:13
55:13,16,21 56:1,2
88:8,9
**madoff's** 31:13
**magically** 26:22
29:15
**magro** 5:9 7:15
58:17
**mail** 9:4
**main** 9:1 69:23
**major** 19:23 46:19
46:19
**making** 10:24,25
35:5 71:12 72:15
75:18 93:2,4
**man** 82:13
**management** 2:6
4:2 6:18 7:24 12:4
**managers** 8:5
**march** 26:20 39:25
40:5,11,24 41:6,23
**marina** 4:18 7:13
11:5,8,11,14,17
12:1,5,9

**marionette** 78:13
**mark** 3:25 7:18
**marker** 54:9,14,20
54:22,25
**markers** 41:10,11
41:16,23 55:1 101:6
**market** 64:24
**marketing** 77:23
**marks** 77:8
**material** 62:21
**math** 23:14,15,18
**matter** 1:5 9:19
13:24 40:19 53:9
84:20 86:22 106:22
**mattered** 60:6
**matters** 96:14
**maximum** 9:5
**mcandrew** 5:9 7:15
58:17
**mddc** 11:15
**mdtc** 76:1
**mean** 31:12 42:22
42:25 43:10 54:10
77:9,10 104:8,11
106:24
**meaning** 64:16
**measure** 65:12
**mechanism** 14:16
16:16 59:11
**meet** 68:14 104:25
105:1
**meeting** 104:20
**melissa** 2:25 109:3
109:13
**member** 23:8 39:6
**members** 17:7,11
17:19 21:19 27:3,4
28:22 29:4
**mentioned** 14:13
18:17 52:11 89:12
**message** 57:19
**met** 8:24 22:1,4,4
44:22,22
**method** 13:17
**michael** 3:8 7:1
**middle** 78:14

**million** 9:2,6,7,8
  12:13 14:14,15,17
  14:18 15:4,5,7,10
  15:10 18:9 20:22,24
  21:2,10 23:5,18
  25:12,19,23 26:3,4
  26:5,14 27:2,4,5
  29:1 32:15 34:20
  35:14,14,20 40:7
  45:7 46:1,2 50:1
  57:2 58:1,2,5 59:13
  59:14,15 60:16,24
  60:25 61:2,5,19
  70:4,23 73:13 83:3
  86:20 89:3,3
**millions** 14:2,7
  35:10 45:24 67:2
**mind** 64:24
**minders** 59:19
**minding** 59:19
**mineola** 109:22
**mini** 56:1
**minimize** 77:9,10
**minimum** 73:18
  74:8,23
**minute** 58:3 73:4
  86:2
**minutes** 73:5,6
  92:25
**misinterpret** 92:17
**missing** 43:10
**misunderstood**
  12:18
**modus** 28:16
**moment** 11:1 68:6
  97:15
**monday** 44:3 93:24
  95:12 99:8
**monday's** 95:8
**money** 14:19,24
  16:7,7,7,9,10,11,12
  17:17,23,24 18:2,6
  22:18,19 26:2 33:16
  33:18,18,20,21
  35:18,21,22 37:5,6
  37:20 41:4,13,14
  42:7,8,9,20,20,21

43:23,25 44:1,2
  46:19 50:6,6,8
  52:17 53:14,15,18
  54:2,12,12,13 55:4
  55:4 58:6 59:10
  60:2,19 61:12 65:16
  66:21,23 69:7,8
  70:6,11,21 73:20
  75:25 79:24 80:7
  81:5 83:1,2 84:3
  85:5 86:9,19,20
  87:6,6,10 88:13,14
  89:7,11,16 100:11
  101:3,5,13,13,14
  105:21 106:11
**monies** 16:25 17:5
  21:12
**monitored** 10:5
**monitoring** 9:25
  13:19
**month** 25:10
**months** 18:10 22:8
  22:11 25:12 27:1
  28:13 34:22 40:6
  44:22
**moot** 77:13 105:21
**moral** 81:8
**morning** 7:3,8,11
  7:14 8:1,3,8 19:7
  44:14 56:11,17
  99:19
**moscou** 3:18 7:18
**motion** 2:1,5 6:16
  6:17,22,24 8:18,18
  19:17 39:23,24
  58:10 62:22 64:19
  69:10 70:20 77:18
  77:19,20 78:2,3
  94:9,13,16,21
**move** 97:1 98:4
**moved** 77:14,18
**mulholland** 3:25
  7:18,18 36:22 55:6
  55:10 57:25
**mulholland's** 94:13
**murray** 3:20 7:20
  57:20

**mushroom** 69:12
**music** 21:21

**n**

**n** 3:1 6:1 109:1
**name** 20:17,21 21:6
  22:13 85:23
**named** 58:25
**names** 75:4
**narrow** 62:19,24
**nassau** 58:19
**nature** 16:2 61:17
  65:20 71:18
**necessarily** 19:10
**necessary** 59:2 88:6
  88:23 99:22 107:21
**need** 8:10,12 9:9
  36:1 41:3,5,9,13
  49:15 59:16 67:25
  68:1 72:17 73:9
  80:7 90:12 91:22,25
  94:12 98:22,23 99:3
  99:25 100:5 102:8
  103:13,14,19,19,19
  104:2,22 105:3
  106:14 107:9
**needed** 84:2 85:10
**needs** 39:10 48:21
  50:16 69:9 70:12,16
  70:22,22,25 72:6
  78:16 83:10 103:18
  104:22
**negotiated** 89:18
**neiger** 2:2 5:19
  17:22
**neither** 9:11
**net** 9:6 16:8,8,14
  17:16,16 61:7,7
**never** 17:20 19:14
  22:3 31:10 41:25
  53:2,4 60:18 61:18
  61:18 76:10 84:17
  98:6
**new** 1:2,16 3:13 4:4
  5:5 19:8,10,25
  26:12 27:24 52:11
  52:24 78:22

**news** 55:13
**nicholas** 56:1
**nicole** 2:25 109:3,10
**nine** 18:10
**nj** 4:20
**non** 31:6 102:21
  103:3 107:6
**nonsense** 84:15
**northern** 5:2 8:5
  50:21
**note** 23:7 70:15
  77:1
**noted** 81:6
**notes** 65:23,24
**notice** 85:15
**noticed** 98:5
**notify** 102:3
**notion** 46:18 57:16
**notwithstanding**
  21:22 47:12 65:12
  65:18
**november** 20:1,1
  32:9 34:21 44:17
  58:20 68:3 82:1
**number** 6:4,12,15
  6:16,17,24 16:20
  20:5 21:3 22:8
  26:16,24 60:3 67:14
  73:19 74:6 83:19
  86:13,21 88:10 89:1
  89:2,4,13 103:19
**numbers** 67:1
**numerous** 21:16
  89:18
**ny** 3:6,13,23 4:4,13
  5:5,14 109:22

**o**

**o** 1:21 6:1 109:1
**o'clock** 93:25 105:8
**oath** 20:18 21:6,11
**object** 77:16
**objected** 78:2
**objecting** 95:3
**objection** 69:23
  94:4 98:6
**obligated** 17:3

**obligation** 17:1,6
  24:23 46:5 75:24
**obligations** 82:3
**obtained** 17:13
**obtaining** 74:20
**obviously** 6:23 19:7
  28:8 35:19 39:11
  60:10 66:25
**occasion** 46:4
**occurred** 27:16
  85:8
**october** 109:23
**offer** 101:20
**offered** 100:23
**office** 4:9 7:9 10:1
  33:12 83:17,17
**officers** 88:4
**offset** 61:3,4
**oh** 6:13 43:16 46:17
**oil** 14:3 46:20 47:21
**okay** 11:18,20,25
  38:2 42:23 49:25
  53:9 68:19 77:12
  93:18 100:15 107:2
  107:3,22
**old** 109:20
**once** 14:5 88:18
  104:13
**ones** 37:12,21 67:10
**ongoing** 47:10
**opaque** 68:2
**open** 19:14
**operandi** 28:16
**operate** 47:22
**operating** 84:14
  89:6
**opinion** 12:7
**opportunities** 57:5
**opportunity** 9:21
  55:15,24 57:11
  66:16
**oppose** 58:10 70:13
  101:11
**opposed** 51:1
  102:15
**opposing** 64:17
  67:20

**opposition** 5:11
  7:16 19:17 37:3,4,4
  39:23,23
**option** 80:22
**oral** 10:17
**order** 13:3,6,7,13
  18:1 30:1 36:14
  48:9 49:23 52:3
  68:1 79:15 94:6
  96:1 97:6,6 100:1,6
  100:16,19 103:24
  107:13
**ordered** 23:13
**ordinary** 64:13
**originally** 12:7
**outcome** 49:11
**outlines** 105:2
**outrage** 81:8
**outrageous** 82:8
**outs** 39:14
**outset** 15:17
**outside** 16:15 34:22
  34:25 50:7,18 51:12
  51:19 81:13 87:17
**outsiders** 53:1
**outstanding** 20:9
  27:22
**outweigh** 21:20
**overall** 50:4
**overseas** 24:14
  45:16
**oversight** 16:22
  29:22 59:21
**overview** 8:10,15
  18:23 19:4
**overwhelming**
  49:14
**owe** 23:5 27:4 33:15
  33:18,21 41:14 42:7
  42:7,20,21 43:16,23
  43:25 44:1,2 45:7
  46:4 52:17 55:3,4
  61:4,19 65:15 66:21
  66:22 75:24 79:24
  88:13 100:11
**owed** 9:2 12:16,24
  16:7 21:2,21 32:14

  60:20,20 61:18
  66:24 68:15 73:13
  73:21,23 74:10,13
  76:11 83:1,2,2
  86:12,15 87:6,10
**owes** 33:20 41:4,13
  42:20 43:16 52:18
  60:2 81:4 86:19,20
  86:20 101:3
**owing** 23:19 61:12

## p

**p** 3:1,1 6:1
**p.c.** 3:18 4:9 7:9
**p.m.** 94:1 95:13,19
  95:24 96:12 107:3
  108:3
**page** 40:3 75:17
  103:16 107:5
**pages** 102:22
**paid** 9:7,24 14:15
  15:6,7 18:7 39:1
  72:3,5,6 85:10
**paper** 19:19 22:9,9
  25:14 26:11 33:21
  42:14 44:3,8,9
  45:23 90:5,19
**papers** 12:3,8 14:13
  19:16 34:17,18,20
  60:9 62:14 64:4
  70:20 75:10,13
**paperwork** 35:17
**paralyzed** 78:10,19
  78:24 79:3,7,9,9,11
**parameters** 92:13
**parents** 57:20
**park** 3:4,12
**part** 10:20 16:9
  32:22,23,24 51:12
  57:5 59:3 69:10
  73:4 75:23 89:4
  98:9 101:15
**partial** 25:15 28:3
**partially** 25:18
**participant** 81:22
**participants** 57:10
**participate** 16:18
  17:17

**participated** 57:6
  83:5
**participation** 79:4
**particular** 8:22
  13:15 19:2 31:21
  62:18 96:15
**particularly** 97:12
**parties** 7:20 8:25
  10:1 17:14 58:14
  72:1 75:7 89:18,19
  93:20 94:2,4 95:10
  95:14,21 96:9 97:1
  97:4,13 99:1,16
  100:3,16 104:20
**partner** 89:13
**party** 5:10 7:16
  50:23 59:1
**party's** 71:15
**pass** 95:2
**passed** 22:25
**pastak** 5:12 7:17
**patience** 71:5 93:1
**paul** 4:10 7:10
**pause** 6:3 93:17
**pay** 33:13,13,14
  41:18 42:7,11 43:24
  45:1 46:25 47:5,13
  48:18 54:23 65:16
  65:16 69:9,14,21
  80:9,10,10,11 83:1
  86:19
**payer** 44:14
**paying** 13:19 64:12
  69:8 85:16
**payment** 50:7 85:11
**payments** 80:11
**pending** 9:19 12:20
  56:9
**pennsylvania** 77:24
**penny** 2:25 66:24
  109:3
**people** 16:8,13 17:8
  17:11 19:9 22:19
  32:8,23 35:4,7
  38:24 42:6 51:18,20
  51:24 52:25 69:21
  82:18 84:3,14 86:2

86:19 87:24 88:13
89:14 90:5
**percent** 9:14 18:3
**perfectly** 47:19
50:13,13
**performing** 92:22
**period** 23:25 24:2
28:13 34:16,22 35:1
40:1 50:8 54:21
103:14,18,22 104:6
104:16,22
**perjury** 42:16
**permit** 29:12 81:24
94:16
**permitted** 90:2
**perpetrated** 84:1
**perpetrating** 87:11
**perpetrator** 88:10
**person** 15:1 20:16
21:8 27:7,7 37:7
38:9 39:21 60:10,11
**personal** 38:2 75:23
**personally** 83:9
**persons** 37:5
**persuaded** 97:20
98:20
**petition** 9:13 10:15
12:17 38:15 62:25
64:5,7,17 73:12,15
73:18,22 74:7 77:17
87:11 91:5
**petitioner's** 76:18
79:6
**petitioners** 9:13
10:14 73:16 80:7
81:10 84:21 87:11
90:21
**petitioning** 3:11
4:10 7:5,10,12 8:25
11:3 12:19,23 18:17
18:24 19:2,5 36:21
52:6 62:1,3 63:7,10
63:22,25 64:2 65:2
72:9,18 79:12 93:22
**ph** 3:19,19 4:10
5:12 20:14,17,21
21:7 25:3 37:2

45:13 56:1 59:8
100:11
**phone** 102:23
**pick** 86:21
**picture** 16:6 36:10
**pie** 13:23
**piece** 22:9,9 25:13
33:21 44:3 45:23
**pieces** 19:19
**pinsky** 20:17 28:23
**place** 4:19 13:16
14:10,12,16 16:16
16:22 59:16 71:1
78:10,11,14 80:13
80:15
**plain** 46:9
**plains** 5:14
**plaintiffs** 59:6
**plan** 47:5,6
**planning** 99:21
103:10
**played** 87:20
**playing** 81:21
**plaza** 1:15 3:22
**plea** 13:17
**pleadings** 8:11 96:7
96:8
**please** 6:2 15:14
43:8 93:15 101:24
**pled** 9:3,4 59:5
**pledge** 88:24
**plethora** 8:11
**pllc** 5:1
**plus** 15:4 27:5 52:1
55:25 86:12
**pocket** 53:23
**pockets** 88:13
**point** 10:7 13:11
17:23 25:13 33:11
40:13 50:19 55:7
71:7 85:9 89:7
91:22,25 92:17
94:15,15,20 100:9
100:11,13,22 103:2
105:23 106:17
107:15

**pointing** 88:21,22
**points** 32:5 34:19
**policy** 76:22
**ponzi** 9:2 20:5,8
27:11,15 31:17
38:10,11,12,18
44:19 57:3,10 58:21
82:4 84:1,5 85:23
88:7
**pool** 70:10
**portfolios** 15:19
**position** 60:22 63:5
63:13 77:13 91:2
**positions** 71:16
**possible** 16:6 34:10
75:9 81:12 101:25
106:9
**possibly** 14:4 43:20
48:3,4 99:6
**potential** 17:15
30:24
**potentially** 101:15
**practical** 78:4
**practiced** 30:17
**pre** 97:8 103:11
107:11,11
**precisely** 78:20
**preclude** 48:17
**predicament** 91:4
**prefer** 71:22
**preference** 34:22
50:7 71:22 76:20
83:15 106:6
**prejudiced** 51:15
51:15
**prejudices** 37:1
**preparation** 98:9
**prepared** 37:5 61:9
65:11,18 95:7
**present** 76:9 77:17
96:15
**presented** 97:2
**presenting** 68:14
**presently** 9:19
**pressure** 36:6,7
**pressured** 36:8

**presumably** 45:9
**presuming** 68:13
100:21
**pretty** 46:7
**prevent** 81:12
**prima** 68:14 79:14
**primary** 46:5
**principle** 58:2 77:2
77:5
**principles** 48:7
**prior** 17:23 40:12
64:4 99:6
**private** 34:9 55:16
56:4,5,24
**pro** 16:12 18:2,5
**probably** 13:14
35:3 93:9 102:13
**probation** 10:5
**problem** 78:19 84:4
86:11 101:9
**procedure** 9:20
13:16 14:9,12 47:4
47:4
**procedures** 17:18
56:24
**proceed** 48:13,14
92:13 96:10,11,13
97:8,24 101:20
106:21
**proceeding** 8:20
13:1 31:10,19,24
48:15 55:19 56:9,12
56:21 58:4 63:19
72:10 86:24,25 87:3
87:16
**proceedings** 78:15
79:4 87:5 108:2
109:5
**proceeds** 9:23 15:3
16:14 18:10 41:17
**process** 16:9,10
17:2 19:14 25:7
30:20 31:3,4,8 37:6
37:24 38:2,6,20,21
39:7 48:10 49:3
51:13 68:2 71:18
83:5 87:18 88:6

93:23 95:11 104:19
**produce** 14:7 100:6
**producing** 14:6
**production** 14:3
**profit** 28:24 89:8
**profits** 20:7,20,22
21:5,17,20 23:20
29:2 47:12
**program** 71:25
72:13
**prohibiting** 76:19
**prohibition** 100:22
**promptly** 101:25
**proof** 68:17 79:16
**proper** 37:6,7,10
**properly** 31:18
55:18 70:18
**propose** 68:16,17
102:3
**prosecute** 56:11
**prosecution** 13:25
91:6
**protect** 76:20
**protecting** 45:19
**protection** 24:4
**proud** 88:17
**proven** 49:19
**provide** 16:5 52:15
100:24 101:8 107:4
**provided** 16:4
17:13
**provides** 106:24
**proving** 49:14
**provision** 46:23
**psychology** 67:15
**public** 84:20
**publicly** 25:25
41:25 57:2 83:11,18
89:20
**pulled** 69:4
**pump** 89:6
**puppeteer** 78:13
**pure** 71:11 84:14
**purported** 10:23
11:2
**purpose** 8:17 30:20
37:9 76:17,18,23

87:5
**purposes** 58:9
61:21 69:9 70:12
78:4
**pursue** 51:11
**pursued** 12:23
59:15
**pursuing** 30:23,23
30:24
**pushing** 37:8,9
**put** 12:2 13:16
16:16 37:23 40:4,4
40:19 47:5,5,6 58:6
58:22 59:22 61:14
65:8 66:8 67:19
70:16 77:8 84:8
85:15 88:13 89:16
**puts** 69:22
**putting** 51:16 94:20

**q**

**qualified** 60:5,11,21
**quality** 93:10
**quasi** 87:16
**queens** 26:12,24
40:16,16 41:7
**question** 8:22 10:16
11:12 15:12 18:4
52:19 59:18 66:19
68:13 79:8,21,22
**questions** 10:22
14:11 57:19 78:7
91:17 92:19 96:17
107:21
**quickly** 34:12 55:19
65:25 67:23 75:9
97:1
**quiet** 33:22
**quite** 53:6 58:21
86:16 101:1
**quotation** 77:8

**r**

**r** 1:21 3:1 6:1 109:1
**radical** 71:19
**raise** 33:14 64:20
105:12

**raised** 14:2 18:20
60:20 62:10 92:4,6
93:21
**ramping** 55:18
**ran** 57:3
**range** 73:19
**rata** 16:12 18:2,5
**ratable** 14:21 16:18
30:7
**rate** 32:12
**rationale** 98:19
**rattling** 58:20
**reach** 89:7,19 92:21
95:4
**reached** 68:21,22
**reaching** 92:19
**read** 76:6
**real** 26:1 57:5 58:6
**realized** 9:9
**really** 24:17 36:6
41:1 42:6,10 43:24
47:9,9 48:25 49:6
58:23 65:21 67:15
86:21 103:5 104:19
**realty** 8:5 26:13,13
26:15,23
**reason** 34:7 41:4
47:22 89:4 98:19
**reasons** 98:7
**received** 16:7 18:6,9
34:21 89:15,16
**recess** 92:11 93:7,14
99:16
**recognizing** 77:11
**reconvene** 92:11
93:12
**record** 39:17 43:7
44:6,9,11 49:13
52:2,12 65:12 73:13
73:15,22 74:11 75:2
84:21 91:14 109:4
**records** 15:25 16:1
22:6 33:1,2,2 43:6,8
43:10,12,17 44:23
52:18 53:5,11 60:12
60:13,14,22 61:13
89:15 100:22,24

101:2,2,8,12
**recover** 89:10
**recovered** 17:1,5
88:20
**recovering** 15:2
**recovery** 2:6 4:2
6:18 7:24 12:4
17:18 71:24,24
72:12
**redeem** 54:22
**refer** 75:14
**reference** 55:12
**referencing** 68:8
**reflects** 73:13
**regard** 20:13 80:24
**regulations** 52:23
100:7
**regulatory** 90:12
**reiterate** 93:3
**reiterated** 24:22
**related** 70:25
**relates** 10:21
**relationships** 106:8
**relatively** 88:9
**relevant** 75:23
**relied** 10:9
**relief** 10:15 49:23
52:3
**religion** 84:22
**rely** 75:18 76:17
80:20,21
**relying** 44:7 99:5
**remain** 49:16
**remaining** 59:15
**remains** 56:9
**remarkably** 84:9
**remind** 107:16
**repay** 20:8
**repeated** 74:6
**repeatedly** 81:16
**repentance** 19:24
**reply** 34:18
**report** 10:1 88:1
**reporting** 13:20,20
103:11
**reports** 9:25

**represent** 7:5,10,15
7:19 19:2 58:18
89:6
**represented** 9:12
22:3 28:14 50:22
**representing** 7:12
46:9,12 67:6 69:2
87:25
**represents** 9:6
22:19 37:5 39:13
**request** 35:16 39:19
39:20 43:3 104:2
**requests** 53:10
**required** 8:21 54:24
**requirements** 8:24
**requires** 54:21
**requiring** 76:22
**resolution** 44:14
89:20 101:24
102:14 105:16
**resolve** 12:9 88:5
101:16,21 102:12
106:13
**resolved** 75:9 104:2
**resources** 84:19
**respect** 8:21 10:24
11:8 12:1 17:7 18:1
18:20 19:14,15
35:17 39:10,14
42:24 62:2,8,10,24
63:1,13,18,21 68:8
68:10 70:16 74:15
76:15 79:5,13 80:19
80:22,23 81:1,3,16
81:25 84:25 88:7
91:10 93:21 94:8,10
94:11,12,13,16,19
94:23 95:1,5,10
96:3 97:7,16,22
98:8,14,22,23
102:16 103:12
105:13,20 106:2,25
**respectfully** 65:7
67:4
**respects** 77:20
**respond** 59:8

**responded** 45:18
**responding** 25:1
34:19
**response** 25:22 74:6
76:19 79:22 98:10
**responsible** 90:17
**rest** 22:7
**restitution** 9:22
10:3,4 13:13,19,22
15:21 17:1,6,25
18:1,2 30:14 69:9
69:15 70:12 88:12
88:25
**result** 9:2 47:11
**retain** 15:21
**retained** 21:23
**return** 22:17,19
**returnable** 62:23
**revenue** 14:8
**review** 12:10 17:12
30:21 60:5,12 61:20
74:19 89:15
**reviewed** 10:8
59:25
**reviewing** 43:5
106:23
**ridiculous** 88:9
**right** 12:21 30:10
30:11 36:13 41:5
47:14 48:15 51:1
52:2 56:4 64:1 65:6
70:5 71:21 75:2
78:8 84:22 86:2
91:18 98:5,21
102:19 103:25
105:7,17,19 107:25
**rimberg** 5:1 8:4
**rise** 77:15
**risk** 29:13,16 80:23
**road** 4:11 46:12
109:20
**rock** 78:10,11,13
80:13,14
**role** 81:21
**room** 69:17 71:20
71:21 89:24

**rooting** 48:25
**rosenberg** 3:11 7:6
19:3 32:13,14,17,18
32:19,20,24,24,25
33:2,4,5 35:6 63:14
73:11,17,23 74:10
74:13 79:19 80:1,3
80:6,8,9,15,24
81:20,25 82:2,5,10
82:12,15,24 83:4
84:11 86:3,7,7,12
86:17,23 87:5 91:3
94:13,17,22 95:5
97:22,25 98:9,18,22
105:14 106:5,7,9,10
**rosenberg's** 74:5
91:12 94:19
**rosh** 19:21
**roughly** 71:3
**round** 42:22
**roundabout** 64:16
**rubric** 31:15
**rule** 39:11 70:18
76:18,24 91:9,10
103:10
**rules** 52:23 65:24
79:2 90:12 105:18
107:16
**run** 57:3,13 88:2
**ruskin** 3:18 7:18
**rxr** 3:22

**s**

**s** 3:1,25 5:7 6:1
12:11 15:21
**sabers** 58:21
**sale** 14:4,5
**sarah** 3:20 7:21
57:20
**satisfaction** 25:16
54:24 82:3
**satisfied** 25:18
79:13 101:14
**satisfy** 14:8 15:20
**saw** 55:21 56:6 57:8
**saying** 24:10 25:22
33:10,12 43:4,23
44:3 45:1,19,25

65:15 69:24 70:3
71:21 73:1 79:9
**says** 23:4 27:4 33:1
38:9 40:9 41:9 42:6
42:17,19 44:2,2
50:10,11 53:17,20
53:22 73:12,18,20
74:8 75:15,22
**scarcella** 1:22 51:9
**scared** 67:9
**schedule** 25:25
92:15 98:12,18
102:7 103:12 107:6
**schedules** 74:21
97:10
**scheduling** 95:10
96:18 97:2,6,6
99:17 100:1,16,19
103:6,24 107:13
**scheme** 9:3 20:5,8
27:12,15 32:21 35:2
35:3,4 38:10,11,12
38:18 44:19 57:3,10
58:21 82:4 84:1,6
88:10,19,19
**schemer** 85:24 88:8
**schneck** 5:7 8:3,4
50:22
**schneck's** 27:14
**scholer** 3:10 7:4
**schulman** 37:2
**scope** 104:5,5,7,10
104:12
**scrutinized** 57:12
**scrutinizing** 30:24
**scrutiny** 36:15
37:10,10,11,12,21
47:7,8 48:21 71:19
**seated** 6:2 93:16
**second** 10:20 20:20
32:8,9 68:23 69:10
77:4,6 96:20
**secondly** 8:20
**seconds** 72:22
**secrecy** 83:7
**secret** 81:11 84:14
84:16

**secreted** 45:16
**secretly** 84:3
**section** 10:9,25
**securities** 88:20
**security** 54:20
**see** 28:10 82:16
  86:6 101:12
**seeing** 19:18 23:16
  35:16 60:6
**seek** 96:4
**seen** 24:14 29:7
  60:4
**select** 92:12
**self** 56:20
**sell** 89:8,8
**send** 54:13 89:11
  102:9,20,22 104:24
  105:2
**sending** 43:22
  102:15
**sense** 96:25 98:15
  99:15 106:16,20
**sent** 24:9,20 25:23
  35:20 36:2 45:14
  53:7,18 89:17
**sentence** 9:5 74:6
**sentenced** 9:4 13:15
**sentencing** 10:4
  49:4
**separate** 11:14 39:3
**separately** 23:12
  39:9
**september** 1:18
  93:24 94:1 95:12,20
  99:8 107:4
**sequence** 105:12
**series** 10:9
**seriously** 84:18
**set** 9:20 30:20 63:8
  100:2 102:2 107:22
**settled** 77:2,5
**settlements** 89:18
**seven** 40:6 96:23
**seventy** 61:19
**shadows** 81:11 82:8
**shakes** 31:2

**shalom** 4:7 8:1
  45:25
**shapiro** 4:9,15 7:8,9
  7:9
**shareholders** 78:25
**shed** 91:12
**sheep's** 25:2 45:20
**shield** 66:13
**shifted** 79:14
**shifts** 68:16
**shine** 74:2
**shortly** 106:22
**shots** 67:17
**shouldn't** 33:17
**show** 71:5 87:9 99:5
  101:3,3
**showed** 71:5
**sic** 5:11,11 6:5,6 8:6
  14:21 18:11 23:13
  23:21 24:21 27:2,3
  28:23 29:24 33:8
  34:21,21,22 35:3
  40:3 44:14,15 45:19
  47:21 48:9 49:3,21
  49:23
**side** 19:9 71:20,21
  94:21
**sign** 33:15,21 54:19
**signed** 26:8,11,16
  28:3 34:25 40:6
  45:5,5 85:2
**significant** 60:22
  70:21,21
**silverburg** 20:21
**silverman** 56:10
**similar** 84:9
**simply** 32:2 35:8
  44:2 64:21 83:12
**single** 23:7 36:18,20
  55:22 62:19 102:25
  103:3,16 107:5
**sir** 69:21
**sister** 77:1 78:23
**sit** 54:10,14 65:10
  72:24 74:11,12 90:6
  91:17

**sits** 27:8 53:17,20
**sitting** 26:25 36:12
**situation** 31:22,23
  44:11 57:16 78:20
**six** 40:6 69:17
**sixth** 20:24
**skaw** 2:25 109:3
**skipping** 6:5,8
**sky** 13:23
**slightest** 51:15
**small** 44:18 88:9
**smaller** 38:19
**smart** 58:23
**smells** 39:4,5 85:19
**snap** 67:10,10
**soap** 91:1
**solely** 105:25 106:2
**solicited** 21:24
**solid** 65:22
**somebody** 53:5
  54:18 60:21
**someday** 89:8
**someone's** 105:21
**somewhat** 87:15,15
**son** 94:20
**sophisticated** 35:18
**sorry** 6:7 13:5 42:6
  43:23 91:19 92:2
  98:17 104:9
**sort** 6:20 8:10 14:25
  15:1 18:23 62:7
**sought** 26:21
**sounds** 103:25
**source** 73:24
**southern** 78:22
**spa** 11:24
**speak** 15:15 36:22
  43:9 71:4 82:10,11
  96:19
**speaker** 6:5,8,14,19
  52:13 66:6 96:19
  101:18 105:6
**speaking** 19:4 67:21
  100:20
**speaks** 76:2
**specific** 76:2 79:5
  96:5

**specifically** 12:2
  30:20 75:14,15,15
**specify** 76:11
**speed** 82:21
**spend** 65:4 105:20
**spending** 105:21
**spilled** 22:5
**spoke** 16:21 71:3
  72:21,22 89:25
**spoken** 51:23
**sponsoring** 96:2,6
**spring** 39:19
**sprinkling** 86:9
**staff** 107:19
**stage** 104:3
**stand** 60:18,19
  65:10 74:12 76:8
**standing** 58:10
  61:22 66:5 76:16
  77:7,12,16 78:3
  79:2 81:5 91:1,10
**standpoint** 60:23
**start** 28:7 31:25
  34:10 50:3 68:1
  86:8 102:15
**started** 22:14 28:1
  28:17 49:18 56:9
  69:19 81:18 93:1
**starting** 45:1
**starts** 14:5
**state** 12:21,25 58:4
  73:7
**stated** 60:9
**statement** 40:13
  44:12 47:6 75:18
  83:13 97:8
**statements** 16:1
  71:10
**states** 1:1 10:1,5
  29:9
**statute** 65:23,24
**stay** 51:10
**staying** 51:19
**step** 39:15,15
**stepped** 88:11
**steven** 5:11 7:17
  58:18

sticks 64:23
stock 15:19
stocks 26:2
stop 37:24 38:1,1
  49:3 76:12
stopped 21:21 73:5
story 57:14,22
  66:23,25
stranger 79:23
strategy 72:7,9
strongly 49:19,22
  50:5
stuck 26:19,19
stuff 26:3 27:6
  51:24
subject 11:3,6 24:6
  39:17 47:7,7 56:24
  64:18 67:21 79:10
  82:4 90:25 91:5,6
submission 62:13
submitted 44:18
  73:16
subpoena 59:7
subpoenas 17:14
  59:9
subsequent 12:10
substance 18:25
substantial 20:19
  21:4,4,12,17 23:23
  45:23 89:10
substantially 15:25
substitute 31:9
success 47:25
successful 89:1
  94:11 95:2
sudden 26:22 29:15
  29:19 45:25 46:11
suddenly 84:21
sue 33:10 35:23
  37:19 39:2
sued 27:15 29:5,5
  32:25 33:4 35:10
  36:24 42:5 58:19
  87:1
suggest 29:18 31:18
  48:11 71:8 73:3
  91:8 102:7

suggested 80:21
suggesting 67:13
  76:25
suggestion 35:15
  46:18 84:13,15
  99:14
suggests 78:12
suing 33:3,5,5
suite 3:5 4:12 5:4
  109:21
suited 15:12 72:10
suits 69:4 87:3
sum 12:12
summary 62:22
summer 40:17 42:3
  42:3 43:22 66:22
sun 74:2
sunlight 85:7
sunshine 74:16
supervised 17:2
supervising 44:24
supervision 29:5
  30:9 31:16
supplied 32:3 45:25
supply 102:4
support 74:22
  82:17 87:7
supposed 42:23
  84:23
supposedly 20:7
  22:15 26:1 35:11
supreme 25:16
  26:12,24 40:17
sure 8:17 54:17
  58:15 61:8,9 69:17
  69:20 70:8 77:8
  89:3
survive 80:7,12
suspect 49:19,22
  50:5
suspicious 85:15
  86:8
sustain 68:17 79:15
swing 60:24,25
sword 66:14
sworn 71:8

system 30:12,13
  90:6

**t**

t 109:1,1
table 28:11 53:17
  53:20 54:11 74:2
tables 85:13
take 6:23 10:17
  34:24 47:14 53:12
  53:25 58:2 62:13,15
  62:15,16 65:25 69:7
  71:1 78:8 83:8 84:7
  90:4,18 91:2,7
  92:10 95:9 96:7
  97:4,4,12 98:6,11
  99:1,6,11,12 100:17
  100:24 101:10,20
  103:14,23 104:15
  104:17 105:3
  106:21
taken 21:2,19 23:17
  56:20 57:22 58:7
  84:18 98:7,14
  103:18 104:22
takes 26:25 39:15
  39:15 59:5
talk 8:11,13 53:1,7
  55:24 59:4 73:25
  78:6 85:25 95:6
  101:19
talked 21:6 27:20
  64:4
talking 20:9 21:14
  22:11,21 90:8 97:15
  102:13 105:13
talks 76:10 86:8
tapes 28:23
target 69:8
targeted 56:19 57:9
tell 10:7 32:10
  33:22 38:12 42:19
  44:20 50:5 51:25
  68:9 81:19 87:19
telling 29:12
tells 90:7
ten 76:6 92:25

tend 100:13
tens 35:10 45:24
term 54:9
terms 28:11 29:6,22
  34:10 37:14,15 39:8
  44:14 49:10 64:24
  67:20 98:2 105:12
terrible 35:22
test 74:3
testified 21:11
testify 74:9 80:2,3
  80:19
testifying 71:8 87:8
testimony 62:15,16
  79:16 80:5 86:6
text 24:21
thank 6:2 7:7,22,25
  8:7 11:25 13:2
  15:13 18:12 19:1
  52:3,5,13 55:4,5
  58:12 59:23,24 68:6
  71:1,2 77:11 81:7
  91:18 92:7,10 93:13
  93:15 107:24
that's 10:22 11:6,16
  11:17,19 12:16
  14:16,24 15:1 16:21
  18:3,6,9,20 20:13
  22:10 24:24 28:16
  28:24 29:2,19 30:12
  30:12 31:3,16 32:3
  33:7,8 34:21,22
  35:3 36:10 37:8,25
  38:3,4,17,20 39:7
  42:20,22 43:5,18
  45:2,7 46:7 47:19
  48:1 49:9 50:6
there'll 30:2
there's 11:11 14:4
  18:8 23:12 25:20
  26:16 29:5,6 30:6
  38:12 42:17 43:4,5
  47:19 48:21
they'll 37:20
they're 9:16 29:5
  33:4,5 37:20 41:20
  46:1,9,12 48:19,24

**48:24**
**they've** 28:18 33:8
  35:7 46:15
**thing** 37:23 38:12
  58:22 59:22 74:15
  85:25 89:11 90:1,12
  100:4 106:3,19
**things** 16:2,23 29:8
  31:20 45:21 46:20
  47:23 53:13 70:10
  72:1 83:10,22 90:10
**think** 11:15 14:13
  15:11 18:16 19:3,18
  19:19 25:10 31:20
  32:5 34:5,7,12,17
  43:3 48:20,23 50:10
  52:12 56:19,23
  57:18 60:2 62:11,20
  65:21 67:3,13,14
  68:9,10 72:15 73:10
  75:4 83:24 87:1
  93:7 98:15 99:15,20
  99:22,25 100:13
  101:11,15 102:5,11
  102:12,23 103:8,13
  104:12,20 106:1,16
  106:18,19
**thinks** 61:4
**third** 59:1
**thorough** 16:6
**thought** 56:13
  73:14 93:23 95:11
**thousands** 67:1
**three** 8:21,25 9:13
  12:19,23 14:2 18:9
  19:4 33:25 36:10
  46:12 49:18 52:1
  62:10 63:10,16
  64:10 70:23 75:3
  82:1,21 86:25 90:21
**threshold** 8:12,14
  8:24 18:18,22 58:23
  61:14,23 62:7,18
  63:1,9,15,18,19
  64:11 69:20 70:25
  72:17

**throw** 98:12
**thursday** 93:25
  95:13,19,24 96:12
  105:2,5,6,9 107:3
**time** 10:19 13:17
  18:13 19:11,12
  21:16 22:1,1 24:1,2
  25:13,24 28:1,2
  34:15 38:7 40:1,14
  45:10,23 51:23 54:5
  58:21 59:11,12,17
  59:23 65:4 68:24
  73:5,5 85:5,5,5,5
  86:16 90:15 92:6
  93:4 99:10 103:14
  103:19 104:17,22
  105:3,4,20,21
  106:20
**times** 73:13 74:7
  76:7
**timing** 97:7,11,11
  103:5 104:15
**today** 9:12 12:12
  19:12,13,24 28:10
  30:1 37:3 49:23,24
  52:3 56:8,14,15
  59:11,12,22 60:18
  61:21 65:10 69:16
  74:11 78:5 83:6
  91:24 99:18 100:8
**told** 20:5 22:17
  60:10 70:14,19
  78:15 90:10,13
**tomorrow** 30:3
  49:25 99:19 103:9
  105:1
**ton** 33:9
**tort** 51:2
**total** 17:25 57:23
**touch** 55:17
**tough** 50:8
**tower** 3:21
**transaction** 20:25
  36:19,20 54:6
**transactions** 20:6
  20:18,23 21:3,12,16
  23:22 43:6 54:3,7,8

65:5
**transcribed** 2:25
**transcript** 80:4
  109:4
**transcripts** 23:16
**transfer** 53:14 54:2
**transferred** 35:14
  82:2 101:5
**transfers** 82:15
**transparency** 68:2
  74:1,16,25 81:23
**treat** 107:17
**treated** 57:9 74:17
**trial** 97:8 103:11
  107:11
**tried** 41:19
**true** 32:3 42:21,23
  47:10 49:5,8,8,9
  67:12,12,13 68:25
  76:4,4,6,8 80:25
  109:4
**trust** 51:3 53:16
**trusted** 82:14
**trustee** 30:3,5,8
  34:6 36:17,18,25
  47:18,24 50:2,6
  51:7 69:7 78:18
**trustee's** 69:7
**truth** 65:7
**try** 39:3 87:19 88:4
  88:5 97:10 104:25
  105:1
**trying** 11:1 37:12
  42:10 71:14,25 74:1
  79:17 84:9 93:18
**tuition** 80:10
**turf** 31:6
**turn** 9:22 10:1
  13:20 14:8 16:3
  30:2,4 33:10,12
  35:23 43:12,15 50:2
  69:12 75:3 80:8
  83:7 107:12
**turned** 15:24 22:5
  24:4 25:9,15,21
  26:1 44:23,23 60:18

**turning** 30:7 31:20
  36:8 82:14
**twice** 52:12
**two** 9:1,11 14:3
  26:21 27:9 31:25
  32:11 42:6 46:11
  63:22 66:25 69:19
  78:25 79:12 86:24
  98:16
**type** 48:14 51:1
  91:8 99:23 103:13
**types** 27:15 46:23

**u**

**u.s.** 1:13,23 13:20
  49:2
**uh** 68:11
**ukraine** 24:16 36:4
**ultimately** 31:1
  34:14 49:10 61:13
  80:20 89:2
**umbrella** 55:22
**unbeknownst** 22:7
**unbelievable** 13:24
**uncomfortable**
  87:16
**underlying** 57:4
  76:17,18,23
**underscore** 55:12
  57:10
**understand** 10:18
  11:10 14:25 22:2
  51:20 58:8,9 62:23
  75:10 79:17 91:22
  106:1,17
**understandable**
  67:16,16
**understanding** 12:2
  12:19 61:6 71:15,15
  71:25 92:25
**understands** 30:19
**understood** 55:20
  81:21 82:23 86:11
**undertaking** 74:19
**undisputed** 44:15
  44:16,20,21,25 45:2
  45:3,7,8,10,11,12
  45:17,22 46:3

**unfair** 51:18,20
76:21
**unfortunately** 54:5
**unidentified** 6:5,8
6:14,19 52:13 66:6
**unified** 55:22 56:12
**uniondale** 3:23
**unique** 38:22 88:7
91:4
**unison** 93:13
107:24
**united** 1:1 9:25 10:5
29:9
**universally** 77:4
**unjust** 51:4
**unknown** 96:19
101:18 105:6
**unnecessary** 14:10
**unpaid** 101:6
**unrebutted** 49:13
49:13,14
**unsupervised** 24:3
**untruth** 73:3 83:16
**upside** 31:20
**urge** 49:2 51:22,23
65:21
**urging** 88:3
**use** 66:13 95:22
**useless** 78:20
**utilities** 80:10
**utter** 84:15

**v**

**vagaries** 56:24
**valid** 9:15 16:17
79:6
**valuation** 89:9
**value** 9:9,9 18:7
25:14
**various** 15:3 28:22
32:23 35:15 89:19
98:7
**veritext** 109:19
**versed** 81:20
**victim** 38:9 40:10
**victimized** 55:25
**victims** 17:10,15
88:10,19,25 89:6

**view** 39:10 65:19
67:22 81:10,10
94:22 105:25
**violence** 91:9
**virtually** 23:9
**visited** 57:8
**voluntarily** 30:2
47:15
**voluntary** 27:24
**vouch** 93:10
**voute** 5:9 7:15
58:17

**w**

**wait** 68:6
**waiting** 71:7
**walk** 39:2
**wall** 55:21 56:6
**want** 10:6,17 13:11
28:7 33:20 36:15,24
37:6,10,11,13,15,16
37:18,21 38:4,25
39:1,8 41:15 46:17
51:18,20 54:11,12
54:12 57:14,22 58:7
58:13 67:20 72:14
74:2,2,15,16,16
81:13 83:25 90:9
93:2,8,20 95:14,19
96:4,9,11 97:4,12
99:1,6,11,17 102:17
104:24 105:1,11
107:15
**wanted** 34:8,10,11
41:6 52:20 56:4
87:4 89:21 97:1,4
**wanting** 51:25
**wants** 40:8 47:4
48:13,14 50:8 66:9
72:3,4,5 91:11 92:9
101:10
**warranted** 79:1
**warren** 5:16 7:14
7:15 58:13,16,17
**washington** 4:19
**wasn't** 28:14 33:18
**wasserman** 4:6 7:23
7:23 15:15,16 16:20

29:25 30:11 50:15
58:1 63:12 67:7
71:3 72:20 77:12
79:21 81:8 96:22
99:13,14 100:21,23
101:19 102:1,25
103:25 105:4,10
106:6
**wasserman's** 66:3
**wax** 45:13 89:13,13
**wax's** 66:3
**wax's** 46:8
**way** 18:21 22:20
23:6 30:6,12,13
31:16 34:1 35:13
38:17,18 46:13,14
47:12 48:8 54:4
62:11 64:16 71:13
80:14 81:9 87:14,23
90:3,6 103:3
**ways** 16:20 62:10
**we've** 51:9 58:20
70:14,19,20 75:4
98:6 102:8
**wealthy** 35:19
**week** 33:13
**welcome** 17:17
57:11
**went** 16:7 21:24
28:7 101:13
**west** 5:11 7:17
**westerly** 78:21
**wexler** 10:2 13:21
24:9,10 25:1,24
29:12 45:14,25 46:9
**we'll** 8:13 18:21
39:11
**we're** 6:22 18:3
22:21 24:17 42:4,5
49:2
**we've** 19:12 38:4
46:22
**whatsoever** 71:13
72:15 92:20
**what's** 18:7 27:23
28:11 36:9

**white** 5:14
**whitefish** 3:20 7:21
**who's** 35:18
**wife** 80:5
**willing** 101:22
**window** 25:10
**winner** 28:19
**wire** 35:14
**wish** 52:7 96:9
107:12
**wit** 68:7
**withdrawal** 53:18
**witness** 68:20 71:9
96:3,5,6,15
**witnesses** 67:24
70:8 95:25 96:1,2
97:7
**wolves** 45:20
**word** 84:5
**words** 14:18,24
24:24 54:23 87:14
98:16
**work** 9:23,24 22:18
42:10 46:13,16,24
71:23 88:17,23
**worked** 46:14 47:24
89:19
**working** 18:6 43:14
48:17 49:1 82:8
88:18 89:10
**works** 27:6 30:12
30:13 38:20 72:13
90:6 99:17
**world** 4:3 22:7
29:17 35:23 81:13
83:25 85:17,18,19
90:3
**worse** 26:10 29:22
**worth** 25:12,22,23
26:3,4,5 41:16
45:24 46:1,2 55:1
**wouldn't** 27:18
**write** 41:11,12,14
**writes** 42:2,6
**writing** 55:21 56:6
**written** 23:2 43:2
65:14

| | |
|---|---|
| **wrong** 23:21 35:11 | |
| 47:19 49:20,20 | |
| 70:24 85:20 | |
| **wrote** 28:13 43:3 | |
| 64:25 66:20,22 | |

**x**

**x** 1:4,11 103:19
**xt** 64:24

**y**

**yawn** 2:25 109:3,10
**year** 24:8 25:11
45:13 55:24 86:17
86:17,24
**years** 9:5 27:9
30:18 31:25 33:25
36:11 37:16 39:7
46:11,12,15 49:18
52:1 57:7 59:12
65:6,6 67:8,14,17
81:17,17,18 82:1,21
83:18 84:21 86:24
86:25
**yesterday** 34:19
**yom** 19:21
**york** 1:2,16 3:13 4:4
5:5 26:12 78:22
**you're** 15:1,2,2
16:15 21:14 31:21
31:22 33:22
**you've** 10:7 19:6,7
19:11 33:1 44:11
46:16 50:2

**z**

**zero** 40:4,5,9,13
**ziffman** 20:14,19
23:17
**zucker** 58:18