Shalom Jacob
Allen C. Wasserman
Alan H. Katz
LOCKE LORD LLP
3 World Financial Center
New York, New York 10281
Telephone:    (212) 415-8600
Facsimile:    (212) 303-2754

Counsel to Barkany Asset Recovery and Management LLC

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>GERSHON BARKANY,<br><br>        Alleged Debtor. | Case No. 8-14-72941-las<br><br>Chapter 7 |

**OPPOSITION TO MOTION OF THE PETITIONING CREDITORS AND CONTINGENT BARKANY CREDITORS PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004, 9006, AND 9016 DIRECTING PRODUCTION OF DOCUMENTS BY BARKANY ASSET RECOVERY & MANAGEMENT LLC**

TO THE HONORABLE LOUIS A. SCARCELLA, UNITED STATES BANKRUPTCY JUDGE:

BARKANY ASSET RECOVERY AND MANAGEMENT LLC ("BARM") respectfully submits this memorandum of law in opposition to the *Motion of the Petitioning Creditors and Contingent Barkany Creditors Pursuant to Federal Rule of Bankruptcy Procedure 2004, 9006, and 9016 Directing Production of Documents by Barkany Asset Recovery & Management LLC* [Doc. 57] (the "Motion").

**PRELIMINARY STATEMENT**

1.	The parties left the Court on September 30 with clear instructions. Discovery was to proceed on the Borgata claim, and only the Borgata claim, and BARM was not to make any distributions until November 13.[1] Counsel for petitioner Joseph Rosenberg ("Rosenberg") had suggested at the hearing that the petitioners needed information about assets that BARM had collected, but the Court was clear: "The discovery that will take place or continue to take place will have to do with the Borgata claim." Transcript, 9/30/14, at p. 73. Although the validity of the involuntary petition depends on Rosenberg and petitioner Saul Kessler ("Kessler") each having bona fide claims, they would not have to respond to discovery[2] and, indeed, would not even have to provide definite claim amounts, notwithstanding that each of them received millions of dollars from Gershon Barkany and his legal entities even after the Ponzi scheme had been exposed, Rosenberg has admitted to destroying documents concerning his transactions with his son-in-law Barkany and Kessler claims that his records were destroyed by flooding from Superstorm Sandy.

2.	But just two days later, in disregard of the Court's instruction and perhaps emboldened because Rosenberg and Kessler appeared to be immune from discovery, petitioners through Rosenberg's counsel demanded that BARM provide extensive discovery concerning its efforts to recover losses suffered by Barkany's Ponzi scheme victims. BARM declined, and the Motion followed filed by the petitioners and a number of persons who have at most worthless

---

[1] Since September 30, BARM has been involved in: (i) discussions with Borgata, including the exchange, review and analysis of documents and information, in connection with the threshold issue of whether there is a bona fide dispute as to Borgata's claim; (ii) the process of assisting the Government in identifying potential victims of Mr. Barkany's fraud as well as collecting and submitting Affidavits of Loss.

[2] Although in 2013 Rosenberg provided some documentation to BARM, that documentation was heavily redacted and does not support that Rosenberg is owed anything at all.

contingent claims[3] but who, like petitioners, also want to stymie BARM's lawsuits against them.[4] The Motion should be denied.

3.  BARM further submits that should the Court not deny the Motion, the Court should make the ability to conduct discovery mutual and should allow BARM to take discovery of Rosenberg and Kessler, who together with Borgata instituted this bankruptcy case to stymie BARM's efforts to recover the millions of dollars of stolen money that they received. Even if they might somehow be able to demonstrate that they made some late in the scheme loans to Barkany which were not expressly repaid, in the Ponzi scheme context transactions should be netted to determine whether a bona fide claim exists. Rosenberg and Kessler are net winners and have only disputed claims against Barkany's estate.

### THE MOTION SHOULD BE DENIED BECAUSE THE COURT HAS DIRECTED THAT ONLY DISCOVERY ON THE BORGATA CLAIM WILL BE CONDUCTED.

4.  Although BARM wanted to take discovery concerning Rosenberg's and Kessler's claims, on September 16 the Court determined that discovery would be limited to Borgata's claim. The Court said that it wanted to determine the preliminary issue of whether the involuntary petition should be granted before considering other matters such as BARM's request for dismissal based on Sections 105(a), 305(a) and 707(a). Further, in deciding the preliminary issue, the Court would initially consider Barkany's challenge to Borgata's claim. The parties

---

[3] These and other contingent creditors lack standing. As persons who either profited from their dealings with Barkany or who actively assisted his enterprise, they are not entitled to any recovery from the estate until the losses of Barkany's victims have been fully restored. *In re Taubman*, 160 B.R. 964, 982 (Bankr. S.D. Ohio 1993). That will not occur. Thus, the contingent creditors have no interest that will be affected by these proceedings.

[4] Petitioners served the Motion after 5:00 p.m. on the eve of a two day Jewish holiday, noticing it for hearing only fifteen days later and thereby establishing the deadline for BARM's opposition on another Jewish holiday. This resulted in BARM's counsel having only 2.5 business days during which they would be able to prepare this objection, half of that generally provided. BARM requested a one week adjournment of the original hearing and response dates, to which petitioners should have agreed as required by the Standards of Civility, but petitioners refused to agree to any adjournment of the hearing unless BARM agreed to an equal extension of the "no distribution" period. Having little choice, BARM agreed to extend the "no distribution" period.

returned to Court on September 30, the case was discussed, and the Court again concluded: "The discovery that will take place or continue to take place will have to do with the Borgata claim." Transcript, 9/30/14, at p. 73. The Motion flies in the face of the Court's directive and should be denied.

### THE MOTION SHOULD BE DENIED BECAUSE THE REQUESTED DISCOVERY IS AT BEST PREMATURE.

5. Although petitioners express concern that BARM may distribute assets which formerly belonged to Barkany to the Ponzi scheme victims represented by undersigned counsel, even assuming that such a distribution would violate petitioners' rights, which BARM denies, the discovery sought by the Motion is premature. To obtain the injunctive relief which petitioners apparently desire, they first have to commence an adversary proceeding. Should petitioners file and serve a proper adversary proceeding stating a valid cause of action, discovery will proceed under the discovery provisions of Part VII of the Federal Rules of Bankruptcy Procedure. Until they have commenced such an adversary proceeding, discovery is premature, and petitioners should not be allowed to circumvent the rules of procedure applicable to obtaining injunctive relief by moving for examination pursuant to Rule 2004.

### IF PETITIONERS ARE ALLOWED TO TAKE DISCOVERY EVEN BEFORE PROVING THE MERITS OF THEIR INVOLUNTARY PETITION, THEN BARM SHOULD BE PERMITTED TO CHALLENGE THEIR CLAIMS AND TAKE DISCOVERY REGARDING THOSE CLAIMS.

6. Petitioners instituted this proceeding to stay the lawsuits that BARM had brought against them and to prevent BARM from taking discovery in those lawsuits. BARM had alleged that the petitioners had profited greatly from their relationships with Barkany, receiving millions of dollars of his stolen money. In the cases of Rosenberg and Kessler, BARM alleged, based on extensive investigation it had conducted, that they had received millions of dollars even after

Barkany's Ponzi scheme had been exposed in late 2010. Further, BARM alleged, Rosenberg had facilitated the Ponzi scheme.

7. Petitioners Rosenberg and Kessler have so far been able to accomplish this without even having to state definite amounts that they claim to be owed and without having to provide any evidence whatsoever supporting their claims. Yet BARM knows that they were net winners in the Ponzi scheme and, as such, should have to return their profits to the victims.

8. BARM submits that if Rosenberg and Kessler, who are not entitled to any recovery from Barkany's estate, at least not until all victims have been fully compensated, are allowed to take discovery of the efforts of the victims to obtain restitution of their losses, then those victims ought to be able to take discovery concerning Rosenberg's and Kessler's transactions with Barkany. To allow the discovery requested in the Motion while denying the subjects of that discovery the right to learn about those who are propounding the discovery would be unfair and unjust. If there is to be discovery, especially at this state when an order for relief has not even been entered, the discovery should be mutual.

### THE MOTION SHOULD BE DENIED BECAUSE THE REQUESTED DISCOVERY IS NOT RELEVANT TO ANY ISSUES BEFORE THE COURT.

9. The mere filing of an involuntary petition does not open the doors to unlimited discovery pursuant to Rule 2004 of every issue that might arise in the course of a case. Although Rule 2004 gives the Court discretion to order the examination of any entity, the scope of permissible discovery is not without limit. *In re Duratech Industries, Inc.*, 241 B.R. 283 (E.D.N.Y. 1999) (discovery denied where sufficient publicly available information existed and timing and existence of non-bankruptcy court litigation raised doubts as to sincerity of mover's motives); *In re Enron Corp.*, 281 B.R. 836 (Bankr. S.D.N.Y. 2002) (denied discovery not connected to mover's role in bankruptcy case even though relevant to non-bankruptcy litigation).

A Rule 2004 examination must be both relevant and reasonable. *Snyder v. Society Bank*, 181 B.R. 40, 41-42 (S.D. Tex. 1994) (use of Rule 2004 to further mover's state court case constitutes abuse of Rule 2004), *aff'd* 52 F.3d 1067 (5th Cir. 1995); *Keene Corp. v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 42 B.R. 362 (S.D.N.Y. 1984) (order compelling third party to produce information not relevant to debtor's affairs vacated). "Despite the breadth of Bankruptcy Rule 2004, 'it must *first* be determined that the examination is proper.'" *Enron*, 281 B.R. at 842 (quoting *In re GHR Energy Corp*., 35 B.R. 534, 538 (Bankr. D. Mass. 1983) (emphasis in the original)). Rule 2004 inquiries should not stray into matters not relevant to the basic inquiry before the court. *In re Table Talk, Inc*., 51 B.R. 143, 145 (Bankr. D. Mass. 1985). Furthermore, "[r]ule 2004 examinations may not be used to annoy, embarrass or oppress the party being examined." *In re Coffee Cupboard, Inc.*, 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991) (citing *In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1991)).[5]

10.     Additionally, this Court has said: "Bankruptcy courts have held that [Rule 2004] motions are to be decided by balancing the competing interests of the parties, weighing the relevance of and necessity for the information sought by the examiner against the extent of inconvenience and intrusion to the witness." *In re Kreiss*, 46 B.R. 164, 165 (bankr. E.D.N.Y. 1985).

11.     Although the Motion cites cases demonstrating the breadth of discovery that has been allowed under Rule 2004, it fails to cite a single case addressing the application of Rule 2004 during the gap period existing in an involuntary case prior to entry of an order for relief. Furthermore, in the only case cited in the Motion involving application of Rule 2004 at any stage

---

[5] Furthermore, the purpose of Rule 2004 is to assist the trustee in revealing the nature and extent of the estate and to discover assets of the debtor which may have been intentionally or unintentionally concealed. *In re Drexel Burnham Lambert Group, Inc., supra*.

of an involuntary proceeding, *Pereira v. Allboro Building Maint., Inc. (In re Allboro Waterproofing Corp.)*, 224 B.R. 286 (Bankr. E.D.N.Y. 1998), the Rule 2004 examination (i) occurred after the order for relief was entered and (ii) was only mentioned in the court's review of the main case's history and was not germane to the adversary proceeding before the court.

12.     In *In re Immudyne, Inc.*, 218 B.R. 860 (Bankr. S.D. Tex. 1998), however, the court directly addressed the scope of discovery during the gap period. (It is not clear whether discovery was sought under Rule 2004 or under other provisions of the Federal Rules of Bankruptcy Procedure.)  The court limited discovery during the gap period to the issues that went to its subject matter jurisdiction and the merits of the involuntary petition.  As a result, discovery was allowed concerning the petitioners' standing and whether the alleged debtor was paying its debts as they became and denied with regard to the petitioner's alleged bad faith in filing the involuntary petition ("the issue of bad faith … does not go to the court's subject matter jurisdiction or the merits of the involuntary petition").  Addressing when discovery on the issue of bad faith should occur, the court explained that it "would be better addressed on a motion to dismiss the case pursuant to 11 U.S.C. § 707(a)" and concluded that "no discovery need be had on an expedited basis prior to trial on the involuntary petition with respect to Immudyne's proof as to bad faith." 218 B.R. at 862.

13.     Here, as in *Immudyne*, whether the Court has subject matter jurisdiction and the merits of the involuntary petition are the only issues now before the Court.  The determination of those issues depends on the merits of Rosenberg's, Kessler's and Borgata's claims, not on BARM's recoveries from Barkany and its plans for distributing those recoveries.  The discovery requested by the Motion does not go to the issues before the Court.  Thus, as in *Immudyne*,

because the requested discovery does not go to the merits of the involuntary petition, it is not necessary at this time, and the Motion should be denied.[6]

### THE MOTION SHOULD BE DENIED BECAUSE IT SEEKS DISCOVERY FOR USE IN PROCEEDINGS PENDING IN OTHER COURTS.

14.     Rosenberg and contingent creditor Jonathan Zelinger filed counterclaims in the lawsuit which BARM brought against them, alleging that BARM received fraudulent transfers. We expect that Petitioners Kessler and Borgata as well as other contingent creditors will file copycat counterclaims in the lawsuit BARM filed against them when they have the opportunity to do so.  Because the information sought by the Motion is not needed by the movers at this time, it is evident that the Motion is an attempt to take discovery for use in connection with the lawsuits filed by BARM.  These movers should not be allowed to take discovery in this court for use in other actions.  *See In re Duratech Industries, Inc., supra* (court denied discovery desired for pending district court litigation); *In re Enron Corp.*, *supra* (court denied discovery desired for pending securities litigation against third parties).  The discovery sought in the Motion should at a minimum be deferred until an order for relief has been entered and a chapter 7 trustee has been appointed, after which any such discovery should be conducted by that trustee.

### SEVEN DAYS MAY NOT BE SUFFICIENT TIME FOR RESPONDING TO THIS DISCOVERY

15.     The Motion asks the Court to shorten to seven days the time within which BARM must respond to the discovery requests.  Should the Court grant the Motion, seven days may not

---

[6] BARM further submits that the petitioners and contingent creditors lack standing to seek an injunction barring BARM from transferring assets.  An injunction could issue, if at all, only as an adjunct to an avoidance action or turnover action.  Under the Bankruptcy Code, the right to prosecute those actions lies with a chapter 7 trustee appointed or elected pursuant to Bankruptcy Code sections 701 through 703. And as they lack standing to bring the action, they lack standing to compel discovery concerning it.

enough time within which to respond.  BARM should be allowed a reasonable time to respond to this discovery on this non-threshold, non-critical issue.

## CONCLUSION

BARM submits that the discovery sought by the Motion is unwarranted.  It is not relevant to the issues before the Court, it is not necessary for the purposes claimed by petitioners, it is sought for use in other proceedings, Rule 2004 is not the appropriate procedural vehicle and responding within seven days is unduly burdensome, harassing and unnecessary.  BARM respectfully submits that the Motion should be denied.

Dated: November 6, 2014                                  Respectfully submitted,

/s/ Alan H. Katz
  Shalom Jacob
  sjacob@lockelord.com
  Allen C. Wasserman
  awasserman@lockelord.com
  Alan H. Katz
  akatz@lockelord.com
  LOCKE LORD LLP
  3 World Financial Center
  New York, New York 10281
  Telephone:  (212) 415-8600
  Facsimile:   (212) 303-2754
  Counsel to Barkany Asset Recovery and Management LLC