Shalom Jacob                    **Hearing Date and Time:  December 15, 2014 at 11:00 a.m. EST**
Allen C. Wasserman
Alan H. Katz
LOCKE LORD LLP
3 World Financial Center
New York, New York 10281
Telephone:    (212) 415-8618
Facsimile:    (212) 812-8370

Counsel to Barkany Asset Recovery and Management LLC

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re:<br><br>GERSHON BARKANY,<br><br>            Alleged Debtor. | Case No. 8-14-72941-las<br><br>Chapter 7 |

**BARKANY ASSET RECOVERY AND MANAGEMENT LLC'S**
**SUPPLEMENTAL MEMORANDUM DEMONSTRATING ITS**
**STANDING TO CHALLENGE THE INVOLUNTARY PETITION**

<u>TO THE HONORABLE LOUIS A. SCARCELLA, UNITED STATES BANKRUPTCY JUDGE</u>:

BARKANY ASSET RECOVERY AND MANAGEMENT LLC ("<u>BARM</u>") respectfully submits this supplemental memorandum of law concerning BARM's standing to oppose the involuntary petition filed by Joseph Rosenberg ("<u>Rosenberg</u>"), Marina District Development Company LLC ("<u>Borgata</u>") and Saul Kessler ("<u>Kessler</u>," and collectively "<u>Petitioners</u>").

## PRELIMINARY STATEMENT

BARM has contested the involuntary petition, moving for dismissal pursuant to Section 303(b)[1] of the Bankruptcy Code on the grounds that none of the Petitioners has a qualifying claim and that they filed the involuntary petition in bad faith. (Doc. No. 15). The alleged debtor, Gershon Barkany ("Barkany"), has also moved for dismissal, contending that Borgata does not have a qualifying claim (Doc. No. 13), and has joined and adopted BARM's arguments concerning Borgata's claim (Doc. No. 45). BARM's prior briefing and declarations submitted in support of its motion to dismiss set out the reasons why the Petitioners' claims fail to meet the requirements of Section 303(b). BARM respectfully submits this memorandum of law in response to the Court's request for supplemental briefing concerning BARM's standing to contest the involuntary petition.[2]

The issue of whether BARM has standing to contest the involuntary petition requires this Court to answer two questions. The first is whether the Court has the authority under the law and the facts and circumstances of this case to recognize that BARM has standing. The answer to this question is indisputably yes. While BARM fully appreciates that the Court may well have doubts about its authority in this respect, we respectfully submit that the relevant decisions provide ample authority for granting standing to BARM.

The second question this Court must answer is whether it will *exercise* its authority to recognize BARM's standing to contest the involuntary petition. As we demonstrate, equity requires that it do so. Indeed, BARM submits that the failure of this Court to recognize BARM's

---

[1] BARM has also moved for dismissal pursuant to Sections 105(a), 305(a) and 707(a). The Court has deferred consideration of these grounds for dismissal until after it determines whether to enter an order for relief pursuant to 303(b).

[2] BARM understood the Court's request to be for supplemental briefing concerning its standing to challenge Borgata's claim. BARM reserves the right to present additional argument concerning its standing to challenge Rosenberg's and Kessler's claims.

standing under the facts and circumstances of this case would run counter to every reported decision in which a bankruptcy court has opined on the issue.

## ARGUMENT

A.     **Any question as to BARM's standing is moot because Barkany has moved for dismissal and has joined and adopted BARM's motion to dismiss**.

1.     Any question as to BARM's standing is moot because Barkany has moved for dismissal and has also joined in and adopted BARM's arguments.

2.     In *In re Sun World Broadcasters, Inc.*, 5 B.R. 719 (Bankr. M.D. Fla. 1980), a receiver appointed by a state court moved to dismiss an involuntary petition. The alleged debtor joined in controverting the petition and adopted the receiver's arguments on its own behalf. The petitioning creditors, like the Petitioners here, asserted that under Section 303(d) of the Bankruptcy Code, only the debtor (or a general partner of a debtor that is a partnership) may answer an involuntary petition. The bankruptcy court held that any defect or lack of standing on the part of the receiver had been cured by the debtor's response and joinder:

> This Court is inclined to agree with the receiver but does not find it necessary to rule on the point because any defect or lack of standing has been cured by the debtor corporation's responding to the petition and joining in the receiver's arguments.

*Id.* at 721.

3.     Similarly, in *In re Kenval Marketing Corporation*, 38 B.R. 241 (Bankr. E.D. Pa. 1984), the bankruptcy court held that joinder by a debtor/assignor gave a creditor/assignee standing. In *Kenval*, the debtor had joined a motion to dismiss the involuntary petition filed by an assignee for the benefit of creditors. The court held:

> The first issue is whether the assignee has standing to object to the filing of the involuntary petition. Section § 303(d) and Bankruptcy Rule 1011(a) allow the debtor to challenge the involuntary petition although

neither of these provisions expressly allows an assignee to contest it. We find that we need not reach this issue because the debtor has joined in the assignee's motion to dismiss the petition and thus the assignee is deemed to have the debtor's standing.

*Id.* at 242-43 (footnotes omitted).  *See also In re Moore*, 2011 WL 5902615, at *3 (Bankr. E.D.N.C. 2011) (joinder by chapter 13 trustee would cure chapter 13 debtor's lack of standing to bring avoidance action); *In re Cabernet Holdings, LLC*, 2010 WL 2540116 (Bankr. M.D.N.C. 2010) (member's joinder in creditor's challenge to authority of limited liability company to file voluntary petition resolved any issue of creditor's standing); *In re Ludwig Honold Manuf. Co.*, 34 B.R. 645, 646 (Bankr. E.D. Pa. 1983) (issue of unsecured creditor's lack of standing to bring action for marshalling moot where trustee with standing was party to proceeding).

4.      The law is clear that any defects in standing are cured when a party that indisputably has standing joins in the motion.  That is precisely what has occurred in this case. On August 13, 2014, Barkany moved to dismiss the involuntary proceeding on the basis that "there is a bona fide dispute as to liability and the amount owed to Marina District Development Co., LLC."  (Doc. No. 13, Motion to Dismiss Bankruptcy Case, at ¶ 17.)  BARM subsequently moved to dismiss, raising questions about the claims of each of the Petitioners and whether they filed the involuntary petition in bad faith. (Doc. No. 15.)  On September 15, 2014, Barkany filed a *Reply in Further Support of Motion for Order Dismissing Case Pursuant to 11 U.S.C. §§ 105(a), 303(b), 305(a) and 707(a)*, in which he stated that he "joins in the arguments put before this Court by BARM with respect to [Borgata] and adopts the same as his own." (Doc. No. 45, at p. 2.)

5.      We have not found a single decision in which a bankruptcy court did not hold that joinder by the debtor cured all standing defects.  Accordingly, BARM submits that because Barkany moved for dismissal and joined in and adopted BARM's contentions as his own, any

defect in, or lack of, BARM's standing has been cured and, further, that BARM is deemed to have Barkany's standing. We respectfully submit that the logic of this argument and the cases that support it are compelling.

**B.      BARM has standing under the particular facts of this case.**

6.      As the Court correctly recognized at the last status conference, the cases are legion that have held that under Section 303(d) of the Bankruptcy Code only the alleged debtor may contest an involuntary petition. These cases, however, do not involve the unusual facts presented here and they do not strip this Court of its inherent equitable powers. Therefore, this general rule is not inflexible. *In re Westerleigh Development Corp.*, 141 B.R. 38 (Bankr. S.D.N.Y. 1992). Courts have recognized that their equitable powers give them the discretion to permit parties with no statutory right to contest an involuntary petition to do so. *In re Oakland Popcorn Supply, Inc.*, 213 F.Supp. 665 (N.D. Cal. 1963).

7.      In *Westerleigh*, the alleged debtor was unable to answer an involuntary petition because its two deadlocked shareholders were on opposite sides of the case. Judge Schwartzberg characterized the debtor as "paralyzed", unable to effectively protect its interests in responding to the involuntary petition. Exercising the bankruptcy court's equitable powers, the court found that in such circumstances either shareholder should be afforded standing to contest the involuntary petition.

8.      Barkany, of course, is not a deadlocked corporation. He is, however, every bit as paralyzed as was the debtor corporation in *Westerleigh*. Because of his concerns about self-incrimination, his lack of sufficient resources with which to pay counsel and his concern about losing Rosenberg's financial support, Barkany is unable to effectively challenge an involuntary petition that he obviously opposes and from which he will obtain no benefit. Yet, as in

*Westerleigh*, to ensure the integrity of the bankruptcy system, someone should be able to make these challenges.

9.    *Westerleigh* is not an outlier.   In several cases bearing striking resemblances to this case, courts have allowed parties other than the debtor to challenge an involuntary petition. In *In re A & B Liquidating, Inc.*, 18 B.R. 922 (Bankr. E.D. Va. 1982), the court held that an assignee for the benefit of creditors had standing to answer an involuntary petition, stating:

> Congress' failure in 11 U.S.C. § 303(d) to provide for the filing of an answer by an entity other than the debtor or a general partner in a partnership debtor that did not join in the petition should not be construed to automatically prohibit an assignee for the benefit of creditors from filing an answer. When Congress enacted the Bankruptcy Act of 1938 and removed from this section's predecessor the language "or any creditor" it sought to prevent one creditor from obtaining an undue advantage at the expense of other creditors. H.R. Rep. No. 1409, 75th Cong., 1st Sess. 17 (1937). An assignee for the benefit of creditors is not a creditor; rather, he holds the same position as the debtor and represents the debtor's interests. He has no personal interest which he may want to promote at the expense of other creditors. See Plitt, 162 A. 2d at 765. In the instant case, Smith is the only real party in interest now that the debtor has divested itself of its assets.

18 B.R. at 923-25. There, as here, not only had the debtor transferred its assets to the person seeking standing, but the petitioning creditor had filed the involuntary petition to protect himself against a million dollar state law avoidance claim.  *Id.* at 925.

10.    *In re Sun World Broadcasters, Inc.* (discussed above with regard to joinder), although the court did not rule on the receiver's contention that he had standing because it dismissed the involuntary petition on other grounds, the court made a point to state that it was: "inclined to agree with the receiver."  5 B.R. at 721.  In dismissing the case, the court noted the following similarity to this case:  "It is obvious from the record that the true basis of this petition is the [unfavorable] treatment of the principal petitioning creditor … in the state court [receivership] proceeding."  *Id.* at 722.  These cases demonstrate the flexibility that this Court's

equitable powers give it in determining whether someone other than the debtor has standing to oppose an involuntary petition and that, in cases such as this, courts exercise their authority to allow persons with real interests to oppose involuntary petitions.

11.    Moreover, these cases are consistent with a long line of bankruptcy cases that have recognized the courts discretion to bestow standing where not expressly provided by statute.  *See, e.g., Official Committee of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548 (3rd Cir. 2003) (authority to bestow derivative standing arises from Bankruptcy Code, historical precedent and inherent equitable powers of bankruptcy courts); *Commodore International, Ltd. v. Gould (In re Commodore International, Ltd.)*, 262 F.3d 96 (2d Cir. 2001) (creditors' committee could sue where necessary and beneficial to the fair and efficient resolution of bankruptcy proceedings); *Unsecured Creditors Committee of Debtor STN Enterprises v. Noyes (In re STN Enterprises)*, 779 F.2d 901 (2d Cir. 1985) (most courts have found implied but qualified right for creditors' committees to initiate adversary proceedings), *Campana v. Pilavis (In re Pilavis)*, 233 B.R. 1 (Bankr. D. Mass. 1999) (creditor permitted to pursue claim belonging to debtor's estate where trustee lacked funds to bring suit).

12.    Barkany identified the victims of his Ponzi scheme and proceeded to assign assets for the benefit of his victims.  As Petitioners acknowledge, "Barkany … met with Locke Lord and an accountant named S. David Belsky … and turned over all of his properties and records to them."[3]  (Doc. No. 57, at ¶ 7.)  Barkany has little interest in this proceeding,[4] other than that for personal reasons he would prefer not to be adjudicated a bankrupt.[5]  BARM is the real party in interest.  BARM, not Barkany, is being harmed by this proceeding, which was initiated solely to

---

[3] Petitioners have said the same in open court.

[4] Indeed, Petitioners have not sought to compel Barkany  to produce any documents, only BARM.

[5] Barkany has expressed concern that this proceeding will interfere with his ability to raise new funds and thus will diminish his ability to make restitution to his victims.

stay litigation that BARM has brought.  The dangers which Congress sought to avoid, that creditors would seek dismissal to protect preferences or to obtain unfair advantages, are not present here.  BARM and its attorneys have functioned in the open in seeking recovery for Barkany's victims.  In September 2011 Locke Lord began filing lawsuits, which shortly after filing became discoverable on the Internet, alleging that Barkany had defrauded its clients through a Ponzi scheme.  In 2011, Rosenberg transferred $560,000.00 to Locke Lord; he knew by then that Locke Lord was collecting assets for Barkany's creditors.  In December 2011, Kessler was served with a subpoena duces tecum, issued in one of the Locke Lord lawsuits, requesting information about Kessler's financial relationship with Barkany.  BARM is not seeking an unfair advantage.  Indeed, should this case be dismissed BARM will have to defend a fraudulent transfer action which Rosenberg and Jonathan Zelinger have brought against it. BARM seeks only to be able to continue pursuing recoveries for Barkany's victims.

13.    Rather, this case is about Petitioners (who took no action to collect their alleged claims for years) lack of good faith in filing an involuntary petition solely to interfere with litigation that had just been commenced against them.  Petitioners, not BARM, seek an unfair advantage by using this court's jurisdiction for an improper, non-bankruptcy purpose. Petitioners, one of whom has been supporting Barkany and his family since his arrest,[6] knew when they filed their petition that Barkany had no assets, that he had entered into a plea agreement and that he would likely be going to prison.  They knew that they were unlikely to secure any material financial recovery through the bankruptcy process and that unless their claims were excepted from discharge, they would lose any possibility of recovery outside of

---

[6] At the status conference held by the Court on November 13, 2014, counsel for Rosenberg stated that, since Barkany's March 2013 arrest, Rosenberg has loaned Barkany more than $250,000.00.

bankruptcy.[7]  But they commenced this case despite that knowledge because their goal is not recovery.  Their goal is to thwart the lawsuits that BARM and other victims of Barkany's crimes have filed against them.  As BARM has briefed in its previous memoranda, this is an improper, bad faith use of the bankruptcy court and justifies dismissal under Section 303 as well as under other provisions of the Bankruptcy Code.   Petitioners should not be allowed this unfair advantage.

14.     In coming to this Court, Petitioners count on the fact that Barkany, the only party with a statutory right to challenge them, is not in a position to do so effectively because of his pending criminal prosecution, because he might lose Rosenberg's financial support and because Barkany cannot pay the costs of mounting a vigorous challenge.[8]  Not only are Petitioners taking advantage of Barkany's disability in filing the involuntary petition, they are attempting to use his invocation of his Fifth Amendment privilege to deny him an opportunity to pursue his challenge to Borgata's claim.[9]

---

[7] As there has been no discovery in this bankruptcy action concerning Rosenberg's and Kessler's claims, nothing can be said about their expectations concerning whether their claims would be excepted from discharge.  A review of cases concerning discharge of debts owed to casinos, however, demonstrates that in all likelihood Borgata's claim will not be excepted from discharge.

[8] Barkany's initial counsel, Edward E. Neiger, withdrew after filing Barkany's motion to dismiss because counsel had not received the $10,000.00 retainer Barkany had promised and is owed $22,609.60.  (Proof of Claim No. 1.)

[9] That Barkany chooses to exercise his Fifth Amendment privilege does not mean that his motion should be denied. Indeed, if anything it provides additional reason to grant BARM standing (or to allow it to intervene) to avoid harm or prejudice resulting from his exercise of his right.

> [B]ecause *all* parties—those who invoke the Fifth Amendment and those who oppose them—should be afforded every reasonable opportunity to litigate a civil case fully and because exercise of Fifth Amendment rights should not be made unnecessarily costly, courts, upon an appropriate motion, should seek out those ways that further the goal of permitting as much testimony as possible to be presented in the civil litigation, despite the assertion of the privilege. Thus, if there is a timely request made to the court, the court should explore all possible measures in order to select that means which strikes a fair balance and accommodates both parties. In doing this, it should give due consideration to the nature of the proceeding, how and when the privilege was invoked, and the potential for harm or prejudice to opposing parties.

15.     In light of all of the foregoing, Barkany is effectively as paralyzed as the debtor in *Westerleigh*.  Notwithstanding the legion of cases that vest standing in the debtor to contest an involuntary bankruptcy, *Westerleigh*, *A & B Liquidating, Inc.* and *Sun World Broadcasters, Inc.* recognize that in relatively unusual situations such as this, the courts can and must exercise their broad equitable powers to ensure the integrity of the bankruptcy system.

16.     Here, BARM is the party being injured by the involuntary petition and is the only party who will zealously pursue the colorable defenses that exist.  BARM submits that the Court should exercise its discretion and equitable powers, recognize that BARM has derivative standing and allow it to raise all available defenses to the involuntary petition.

**C.     Recognizing that BARM has standing would not violate<br>constitutional and/or prudential standing limitations.**

17.     Allowing BARM standing to challenge the Petitioner's action would be consistent with general standing principles.  Standing involves both constitutional limitations on federal court jurisdiction and prudential limitations on its exercise.  *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197 (1975).  The constitutional dimension asks whether a party "has alleged such a personal stake in the outcome of the controversy as to warrant invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf."  422 U.S. at 498-99, 95 S.Ct. at 2205.  A federal court's jurisdiction therefore "can be invoked only when the plaintiff himself has suffered some threatened or actual injury resulting from the putatively illegal action."  422 U.S. at 499, 95 S.Ct. at 2205 (internal quotation marks omitted).  To have standing, one must be a "person aggrieved," someone whose pecuniary interests are directly and

---

*United States v. 4003-4005 5th Ave.*, 55 F.3d 78, 83-84 (2d Cir. 1995) (italics in original; citations, footnote, internal quotation marks and ellipses omitted).  It would be inequitable for Barkany, BARM and other creditors who oppose this proceeding to be prejudiced simply because Barkany asserts his Fifth Amendment rights.

adversely affected.  *Spelinhauer v. O'Donnell*, 262 F.3d 113, 117-18 (1st Cir. 2009).  A party's pecuniary interests are affected if the challenged order would diminish the party's property, increase its burdens, or detrimentally affect its rights.  *Kehoe v. Schindler (In re Kehoe)*, 221 B.R. 285, 287 (1st Cir. BAP 1998).  The prudential standing requirement is grounded on the premise that a movant "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.  *Id.*

18.     The involuntary petition detrimentally affects BARM's rights because it imposes a stay on BARM's lawsuits against the Petitioners and numerous other parties.  As a result of the stay, the lawsuits have been stopped, and the delay has already had a detrimental impact on BARM.  Indeed, even the claims owned by BARM which are not subject to the stay because they involve independent causes of action have been brought to a halt as the defendants seek to take advantage of the bankruptcy.  This delay has, and will continue to, cost BARM time and money, while affording defendants additional time to structure their affairs and place assets out of reach.  BARM submits that the involuntary petition's direct and adverse impact upon it is sufficient to allow it, on both constitutional and prudential standing grounds, to invoke the Court's jurisdiction.

19.     Even if the Court determines that BARM does not satisfy the prudential standing requirement, the Court can depart from the prudential standing requirement if it finds that: (i) BARM will suffer an injury-in-fact; (ii) the relationship between BARM and Barkany is such that BARM is "nearly as effective" a proponent of Barkany's right as Barkany himself; and (iii) there is some obstacle to Barkany asserting the right.  *Region 8 Forest Service Timber Purchasers Council v. Alcock*, 993 F.2d 800, 809 (11th Cir. 1993).

20.    BARM clearly meets this test.  Petitioners do not deny that they filed this petition to defeat BARM's lawsuits.  BARM is suffering injury-in-fact.  With regard to the argument that Petitioners' claims are subject to bona fide dispute as to liability and amount, BARM would be a more effective proponent than Barkany even if he was free to mount his best challenge.  And, Barkany's pending criminal prosecution, his reluctance to challenge his father-in-law and his lack of financial resources pose substantial obstacles to his fully asserting his right to challenge the involuntary petition.  On the other hand, there is no statutory bar to BARM having standing.  Section 303(d), the provision on which the general rule is based, says that "the debtor … may file an answer to a petition," not that only the debtor may file an answer to a petition. The general rule, allowing only debtors to challenge an involuntary petition, is not ironclad.  It is flexible.  BARM satisfies general standing requirements and the equities of this case require its participation.  BARM submits that it should be allowed to challenge the involuntary petition, and for the reasons stated in its opening memorandum of law submits that its challenge should be sustained.

**D.    This Court should allow BARM standing so as to
      <u>prevent a fraud from being perpetrated upon the Court.</u>**

21.    Although BARM respectfully submits that the concerns posed by Barkany's inability to oppose the involuntary petition fully and BARM's position as a creditor (and not as a debtor) should be addressed as discussed above, should the Court determine otherwise, BARM asks that the Court recognize BARM has having standing so that the Court can address and decide the issue of whether Petitioners are perpetrating a fraud upon the Court.  As BARM has alleged in detailed complaints filed against the Petitioners, each of them received millions of dollars from Barkany and legal entities controlled by him, and Rosenberg's financial support in particular aided and assisted Barkany's fraudulent activity.

22.      The Supreme Court stated in *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-44, 111

S.Ct. 2123, 2132 (1991):

> It has long been understood that certain implied powers must necessarily
> result to our Courts of justice from the nature of their institution, powers
> which cannot be dispensed with in a Court, because they are necessary to
> the exercise of all others. For this reason, Courts of justice are
> universally acknowledged to be vested, by their very creation, with
> power to impose silence, respect, and decorum, in their presence, and
> submission to their lawful mandates.  These powers are governed not by
> rule or statute but by the control necessarily vested in courts to manage
> their own affairs so as to achieve the orderly and expeditious disposition
> of cases.
>
> …
>
> [A] court has the power to conduct an independent investigation to
> determine whether it has been the victim of fraud.

(citations and internal quotation marks deleted).  Bankruptcy judges may exercise those same

inherent powers by virtue of 11 U.S.C. § 105.  *In re Courtesy Inns, Ltd., Inc.*, 40 F.3d 1084, 1089

(10th Cir. 1994) ("We believe, and hold, that § 105 intended to imbue the bankruptcy courts with

the inherent power recognized by the Supreme Court in Chambers.").  Where bad faith conduct

in the course of litigation can be adequately sanctioned under applicable rules, the court

ordinarily should rely on the rules rather than inherent power.  "But if in the informed discretion

of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its

inherent power."  *Chambers*, 501 U.S. at 50, 111 S.Ct. at 2136.  Where fraud is alleged by one

without standing, "to end the inquiry at that procedural rule would leave a court powerless to

correct the most manifest of injustices, a court judgment procured by fraudulent means."  *In re

Healthtrio, Inc.*, 2013 WL 6500478, *9 (Bankr. D. Colo. 2013).  If a bankruptcy court

determines that an order for relief was procured as a result of fraud perpetrated on the court, it

may rely on its inherent power as a federal court to craft the appropriate remedy.  *Id.*

23.     As Mr. Belsky, the forensic accountant who has spent thousands of hours reviewing tens of thousands of pages of documents has demonstrated in his Declaration, both Rosenberg and Kessler engaged in numerous financial transactions with Barkany and "profited" in amounts greatly in excess of both the amounts they now claim and all the amounts they paid to Barkany.   Notwithstanding BARM's persistent efforts to obtain substantiation of their claims from Rosenberg and Kessler, the information provided by Rosenberg was heavily redacted, selective and incomplete, and Kessler provided nothing whatsoever.  This refusal to substantiate their claims continues with their involuntary petition, which does not even state firm amounts for them, and by their failure to provide any substantiation in response to the motions to dismiss.

24.     The conduct of Rosenberg and Kessler indicates that they know that their claims are subject to bona fide dispute as to liability and amount.  But their desire to avoid having to return fraudulent conveyances or being cast in judgment for damages caused by aiding and abetting Barkany is so great that they are willing to assert claims in this Court that they know cannot withstand scrutiny with the hope that neither Barkany nor BARM will be allowed to challenge them.  They are, BARM submits, practicing a fraud on the Court.

25.     Borgata's claim is equally troubling. Much of the funds received by it were paid by a corporate entity using stolen funds.  Borgata's records show that it knew that funds were coming in from accounts in the names of persons other than Barkany.[10] Yet, Borgata had no

---

[10] Since commencement of this case, Borgata has disclosed that during 2012 and 2013 it received wires for Barkany's account totaling at least $2,016,500.00, of which $1,437,500.00 was wired from an account in the name of Sarah Rosenberg, Barkany's wife and Rosenberg's daughter and $579,000.00 was wired from an account in the name of attorney Alan Gerson.  At the time, Sarah Rosenberg worked as a teacher's assistant in an elementary school, earning approximately $10,000.00 per year.  The funds from the Sarah Rosenberg account may have come from Rosenberg and may demonstrate that his claim is without merit.  The funds from the Gerson account may have come from Kessler and may demonstrate that his claim is without merit.  The BARM submits that this is yet another reason why it should be allowed standing.  (The $2,016,500.00 referenced in this footnote is in addition to the approximately $2,500,000 which BARM previously alleged that Borgata received from or on behalf of Barkany.)

problem taking those funds, even though it was obvious that the funds were not coming from Barkany.

26.    BARM submits that the Court should recognize standing in BARM to prevent a possible fraud from being practiced upon the Court.

**E.    In the exercise of its equitable power, the Court should grant BARM intervention to oppose the involuntary petition.**

27.    As BARM has demonstrated, this Court has the authority, and should exercise that authority, to recognize that BARM has standing to oppose the pending involuntary petition. Regardless of whether the Court recognizes that BARM has standing, however, BARM submits that the Court should allow it to intervene in opposition to the involuntary petition.[11]

28.    In *A & B Liquidating, Inc., supra*, after concluding that the assignee had standing, the court continued, "[e]ven if Smith had no standing to file an answer in this matter, this Court in the exercise of its equitable powers could grant Smith intervention to file an answer."  18 B.R. at 925.  Quoting *In re Hewitt Grocery Co.*, 33 F.Supp. 493, 495 (D. Conn. 1940), the *A & B Liquidating* court stated that a receiver's right to be heard stems "not from express statutory authorization but rather from the inherent equitable power of the bankruptcy court to grant intervention in a proper exercise of discretion."  18 B.R. at 925 (internal quotation marks omitted).  *Hewitt Grocery* had further recognized that the receiver's participation "constitutes an aid to the bankruptcy court against an inadvertent and unwarranted assumption of jurisdiction." 33 F.Supp. at 495.

29.    Continuing its analysis, the *A & B Liquidating* court noted two principal reasons to permit the *A & B Liquidating* assignee to intervene.  First, the debtor had divested itself of any

---

[11] BARM's intervention is allowed pursuant to Fed. R. Bankr. Pro. 7024, made applicable to this proceeding by Fed. R. Bankr. Pro. 1018 and incorporating Fed. R. Civ. Pro. 24.  Rule 24 allows the court to permit anyone to intervene who has a claim or defense that shares with the main action a common question of law or fact.

interest it had in its assets and therefore had little interest in answering the involuntary petition. Second, the petitioning creditor had filed the involuntary petition to protect itself from having to return a preferential transfer to the assignee pursuant to state law.    Rebuffing the petitioning creditor's arguments that intervention should not be allowed, the court said:    "[I]t is clear that even absent an absolute right to answer, a court should allow an assignee to intervene when it would serve any good purpose.    As we have demonstrated, such good purpose clearly exists in the instant case."    18 B.R. at 925.

30.    BARM respectfully submits that it should be allowed to intervene in this proceeding.    Its presence would aid the Court against an inadvertent and unwarranted assumption of jurisdiction, Barkany has transferred to BARM all or substantially all of his assets and has little interest in answering the involuntary proceeding and Petitioners filed the involuntary petition to protect themselves against non-bankruptcy litigation seeking the return of fraudulent transfers.    BARM's intervention would serve a good purpose.

## <u>CONCLUSION</u>

For the foregoing reasons, BARM respectfully submits that the Court should recognize it as having standing and authority to oppose the involuntary petition and, in the alternative, that the Court should permit it to intervene in opposition to the involuntary petition.

Dated: November 20, 2014

Respectfully submitted,

/s/ Shalom Jacob
   Shalom Jacob
   sjacob@lockelord.com
   Allen C. Wasserman
   awasserman@lockelord.com
   Alan H. Katz
   akatz@lockelord.com
   LOCKE LORD LLP
   3 World Financial Center
   New York, New York 10281
   Telephone:  (212) 415-8600
   Facsimile:   (212) 812-8370
   Counsel to Barkany Asset Recovery and
   Management LLC