1    UNITED STATES BANKRUPTCY COURT

2    EASTERN DISTRICT OF NEW YORK

3    Case No. 14-72941-LAS

4    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5    In the Matter of:

6

7    GERSHON BARKANY,

8

9            Debtor.

10

11    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

12

13                    U.S. Bankruptcy Court

14                    Alfonse M. D'Amato Federal Courthouse

15                    290 Federal Plaza

16                    Central Islip, New York 11722

17

18                    November 13, 2014

19                    10:54 AM

20

21    B E F O R E :

22    HON LOUIS A. SCARCELLA

23    U.S. BANKRUPTCY JUDGE

24

25

1   A status conference to determine the status of discovery,

2   schedule an evidentiary hearing, and any other matter that

3   may affect this proceeding. [51]

4

5   Motion for 2004 Examination / Motion of the Petitioning

6   Creditors and Contingent Barkany Creditors Pursuant to

7   Federal rule of Bankruptcy Procedure 2004, 9006 and 9016

8   Directing Production of Documents by Barkany Asset Recovery

9   and Management, LLC.  Filed by Lester M. Kirshenbaum on

10  behalf of Joseph Rosenberg (Entered: 10/08/2014) [57]

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Sherri L. Breach & Dawn South

```
 1      A P P E A R A N C E S :

 2      LAW OFFICE OF MICHAEL J. JANNUZZI

 3           Attorney for Debtor

 4           775 Park Avenue, #205

 5           Huntington, New York 11743

 6

 7      BY:  MICHAEL J. JANNUZZI, ESQ.

 8

 9      LOCKE LORD, LLP

10           Attorneys for Barkany Asset Recovery & Management, LLC

11           3 World Financial Center

12           New York, New York 10281

13

14      BY:  ALLEN C. WASSERMAN, ESQ.

15           SHALOM JACOB, ESQ.

16

17      KAYE SCHOLER, LLP

18           Attorneys for Joseph Rosenberg

19           425 Park Avenue

20           New York, New York 10022

21

22      BY:  LESTER M. KIRSHENBAUM, ESQ.

23           JONATHAN AGUDELO, ESQ.

24

25
```

1    GOLDBERG, RIMBERG & FRIEDLANDER

2         Attorneys for Canadian Northern Realty, LLC

3         115 Broadway, 3rd Floor

4         New York, New York 10006

5

6    BY:  JOEL SCHNECK, ESQ.

7

8    VOUTE, LOHRFINK, MAGRO & MCANDREW, LLP

9         Attorneys for Steven Kwestel

10        170 Hamilton Avenue

11        White Plains, New York 10601

12

13   BY:  EDWARD WARREN, ESQ.

14

15   AGOSTINO & ASSOCIATES, P.C.

16        Attorneys for Marina District Development Co., LLC

17        14 Washington Place

18        Hackensack, New Jersey 07601

19

20   BY:  JEREMY KLAUSNER, ESQ.

21

22

23

24

25

1    RUSKIN MOSCOU

2         Attorneys for Jonathan Leifer, Murray Leifer,

3         Sarah Leifer & Edward Lowy

4         1425 RXR Plaza

5         Uniondale, New York 11556

6

7    BY:  MARK MULHOLLAND, ESQ.

8

9    LAW OFFICE OF KRAMER & SHAPIRO, P.C.

10        Attorneys for Saul Kessler

11        80-02 Kew Gardens Road

12        Suite 302

13        Kew Gardens, New York 11415

14

15   BY:  LISA LEVINE-SHAPIRO, ESQ.

16

17   UNITED STATES ATTORNEY'S OFFICE

18        Attorneys for the United States

19        610 Federal Plaza

20        Central Islip, New York 11722

21

22   BY:  DIANE LEONARDO, ESQ.

23

24

25

1                    P R O C E E D I N G S

2              THE COURT:  All right.  The matter of Gershon

3     Barkany.  The first matter is a status conference.  Where is

4     Mr. Januzzi?

5              UNIDENTIFIED SPEAKER:  Your Honor, I was just

6     about to say I -- I don't think he's here.

7              THE COURT:  Well, why don't we give him a few

8     minutes to arrive?

9          (Recess taken at 11:06 a.m.; resume at 11:19 a.m.)

10             THE CLERK:  -- Scarcella presiding.

11             THE COURT:  Thank you.  Good morning.

12             MR. JANUZZI:  Good morning, sir.

13             THE COURT:  Please be seated.

14             All right.  May I have the appearances of counsel,

15    please?

16             MR. JANUZZI:  For Mr. Barkany, it's Michael

17    Januzzi, 775 Park Avenue, Huntington, New York.  Good

18    morning, sir.

19             MR. WASSERMAN:  For BARM, Allen Wasserman and

20    Shalom Jacob, Locke Lord.  Good morning.

21             MR. SCHNECK:  For the Canadian Northern Creditors,

22    Joel Schneck from Goldberg, Rimberg & Friedlander.

23             MR. KLAUSNER:  For petitioning creditors, Borgata

24    Marina District Development Company, LLC, Jeremy Klausner,

25    Agostino & Associates.

1              MS. LEVINE-SHAPIRO:  For petitioning creditors,

2     Saul Kessler, Lisa Levine-Shapiro, Law Office of Kramer &

3     Shapiro, P.C.

4              MR. KIRSHENBAUM:  Good morning, Your Honor.

5     Lester Kirshenbaum along with Jonathan Agudelo from Kaye

6     Scholer on behalf of petitioning creditors Joseph Rosenberg.

7              THE COURT:  Thank you.

8              The first --

9              MR. MULHOLLAND:  Judge, Mark -- Judge, Mark

10    Mulholland --

11             THE COURT:  I'm sorry.

12             MR. MULHOLLAND:  That's all right, Judge.  Mark

13    Mulholland of Ruskin Moscou on behalf of contingent

14    creditors Jonathan Leifer, Murray and Sarah Leifer, and Ed

15    Lowy.

16             MR. WARREN:  Edward Warren from Voute, Lohrfink,

17    Magro & McAndrew for contingent creditors Steven Kwestel &

18    (indiscernible).

19             THE COURT:  Thank you.

20             Anyone else?

21             All right.  I'm free to proceed.

22             The first matter is the status conference and

23    there are a couple of issues that I want to deal with with

24    respect to the status conference, including the supplemental

25    pleading that was filed yesterday or maybe the day before on

1    behalf of the Borgata in other opposition to the debtor's

2    motion to dismiss.

3            But before we get to that, maybe I can hear from

4    Mr. Januzzi as to where things stand with the Office of the

5    United States Attorney.  The last time we were gathered

6    here, we were talking about a mechanism or a procedure by

7    which we would try and capture the universe of claims.  And

8    there was going to be an exchange of information,

9    discussions with the U.S. Attorney's Office.

10            So, Mr. Januzzi, if you can address that.

11            MR. JANUZZI:  Thank you, Your Honor.  I --

12            THE COURT:  And if others obviously wish to

13    address that, I'm happy to hear that as well.  But I'm

14    curious as to where we stand with this whole concept of the

15    universe of claims.

16            MR. JANUZZI:  I believe the last time we were here

17    the U.S. Attorney's Office said that they would actually

18    undertake to provide that information, and I believe they're

19    here today to give that to Your Honor.

20            MS. LEONARDO:  If you would rather here from us on

21    it then, Your Honor, that's fine.

22            Diane Leonardo from the U.S. Attorney's Office.

23            Your Honor, we have gotten some affidavits of loss

24    from some of the potential victims.  We don't have

25    everything.  In some instances we've been provided

1    affidavits, but not backup paperwork, and that would be

2    something that we would need to see.

3            In addition, I have asked several of the counsel

4    to provide us with copies of the complaints that have been

5    filed in this -- in the State Court.  And that would be

6    helpful to see, also.

7            THE COURT:  All right, because the concept here is

8    to make the determination that all of the victims would be

9    accounted for.  And that would be -- we've got this fund

10   being set up and the concept being is that fund should be

11   set up, you know, to account for all of the victims and be

12   compensation for the victims.

13           No one has explained to me the -- here the issue

14   or the interplay between the forfeiture order and the

15   transfer of Mr. Barkany's assets, but if this was solely

16   pursuant to a forfeiture order, then obviously the United

17   States Attorney would -- United States Attorney's Office

18   would be concerned with respect to the universe of claims

19   and compensation to the victims of the fraud.

20           And so really that's what I'm interested in is

21   that have we captured or are we making the efforts to

22   capture the universe of claims and making sure that those

23   who are victims of the fraud receive, you know, whatever pro

24   rata distribution or compensation that they may get from the

25   assets that either were seized and/or transferred from Mr.

1    Barkany over to BARM.

2         MS. LEONARDO:  Right.  Your Honor, and at this

3    point, I mean, an affidavit really is insufficient.  We do

4    need the backup paperwork.  I don't know when counsel can

5    get that to us, but obviously sooner rather than later.

6         Just so Your Honor knows, with the forfeiture

7    process, what happens is if the money gets forfeited to the

8    United States, there has to be a remission process and

9    literally Washington has to approve it, and we would need

10    all this paperwork anyway in order to get that done.

11         THE COURT:  So I do know that there was a

12    forfeiture order entered and I am familiar with the

13    forfeiture process --

14         MS. LEONARDO:  Uh-huh.

15         THE COURT:  -- fortunately or unfortunately.

16         But thank you.

17         Does anyone else wish to be heard on this whole

18    aspect of the victims' claims?

19         Mr. Wasserman.

20         MR. WASSERMAN:  Very briefly, Your Honor.  My

21    understanding was that we were to submit the affidavits of

22    loss along with supporting documentation and that Your Honor

23    gave the parties six weeks to do that.  We've submitted

24    affidavits from all of our clients who intend to submit

25    them.  They total $50,602,946.  We supplied all of the

1    supporting documentation that we thought was necessary.  To

2    the extent that the government required additional

3    documents, we offered to provide them anything else that

4    they needed.

5            What we had thought we would get today was either

6    a list or something from the government in their report

7    explaining, particularly from the parties who are here

8    today, whether they submitted affidavits of loss and the

9    amounts so that we could at least determine the universe

10   among the people who are in this courtroom.

11           And I'm hoping that either Mr. Kirshenbaum on

12   behalf of his clients or the government can tell us at least

13   whether they received all of the documentation they require

14   from the petitioning creditors.

15           THE COURT:  Thank you.

16           MR. KIRSHENBAUM:  Your Honor, let me just make a

17   couple of points.

18           We did submit an affidavit on behalf of one of our

19   clients, Mr. Rosenberg, the petitioning creditor.  And, in

20   fact, the claim that we submitted on -- let me just say this

21   closer to the microphone.

22           The claim that we submitted on behalf of Mr.

23   Rosenberg was in the -- is in the amount of $479,000 and

24   change.  And that is the number that reflects Mr.

25   Rosenberg's loss up to the date of Mr. Barkany's arrest.

1     And the rational for cutting off the affidavit of the loss,

2     which is, of course, loss as a victim as of the date of the

3     arrest was that obviously subsequent to the date of the

4     arrest Mr. Rosenberg was aware of the arrest.

5              And so to the extent that Mr. Rosenberg continued

6     to extend credit to Mr. Barkany subsequent to the date of

7     the arrest to -- as an example, to lend him money to pay the

8     retainer fees for his lawyers and lending him additional

9     monies for living expenses, et cetera, subsequent to the

10    date of the arrest, that is not part of Mr. Rosenberg's

11    affidavit of loss because, as I said, you can't claim that

12    you're a victim because you didn't know what was going on

13    once you know that someone's been arrested.

14             We intend to file a proof of claim in this -- in

15    this court, in this case, within the next one or two

16    business days.  That will include the additional amounts

17    advanced by Mr. Rosenberg on Mr. Barkany's behalf for items

18    such as the ones I just mentioned to you up to the date of

19    the bankruptcy filing, which will add another couple of

20    hundred thousand dollars to the claim.

21             And so the claim that we intend to file on the

22    Bankruptcy Court in the next day or so will be in the amount

23    of roughly $682,000 and change.

24             Let me just -- now further, Your Honor, with

25    respect to the question of additional affidavits of loss we

1    will be filing an affidavits of loss, but -- of contingent

2    loss on behalf of two of our other clients, one Mr. Zelinger

3    (ph), Jonathan Zelinger, who is the brother of Mr. Barkany's

4    mother-in-law, and Mr. Zelinger invested in a number of

5    transactions involving Mr. Barkany.

6         Mr. Zelinger actually -- and this will be in his

7    affidavit of loss -- made a very small amount of money on

8    those investments.  I think in total roughly $100,000 or

9    maybe less.  But, of course, he has the contingent claim for

10   loss because he's being sued for 70 million, $80 million,

11   you know, by the BARM group.

12        And similarly, Your Honor, we're filing a proof of

13   claim, a contingent claim, on behalf of the company which is

14   headed up by Mr. Zelinger.  The name of the company is EPI,

15   Ethical Products, Inc.  Ethical Products actually was

16   involved in two of the transactions with Mr. Barkany.  It

17   didn't make any money.  It basically simply got back its

18   principal.  But Ethical Products is also being sued for

19   roughly 75, $80 million by BARM and also by Mr. Schnecksline

20   (ph), I should add as well.

21        So there is a -- there is a contingent loss claim

22   that's going to be filed on behalf of Ethical Products.

23        Finally, Your Honor, a name that has not come up

24   before within the framework of this proceeding because

25   there's been no need to, we represent one additional

1    creditor of Mr. Barkany.  His name is Jason Rosenthal (ph)

2    and I apologize, Your Honor.  I forget the name of his

3    company.  Mr. Rosenthal and his company are actually the

4    sub-lessor to Mr. Barkany when Mr. Barkany leased space in

5    Cedarhurst on -- I believe on Spruce Street.  And Mr.

6    Rosenthal actually is being sued by the Canadian Northern

7    Group.

8            But in addition, Your Honor, Mr. Rosenthal was an

9    investor and lender to Mr. Barkany, and I believe, Your

10   Honor, that Mr. Rosenthal actually lost money.  So Mr.

11   Rosenthal's still getting together his paperwork.  I

12   mentioned to Ms. Stedman (ph) we're going to need another

13   week or so just to -- I'm advised to get all of this

14   paperwork together so that we can file an accurate affidavit

15   of loss.  But as I understand it, it -- it's expected that

16   that will be an actual affidavit of loss plus an additional

17   contingent claim because he's being sued by the Canadian

18   Northern Group for large amounts of money.

19           So that, Your Honor, relates to the -- you know,

20   the status of the claims.  Ms. Stedman (sic) also pointed

21   out, and she's correct, we owe her paperwork with respect to

22   the backup with respect to Mr. Rosenberg's claim.  We have

23   all that.  I'm sure we'll be getting that to Ms. Stedman

24   (sic) if not tomorrow, the very beginning part of next week.

25           Just a couple of other points, Your Honor, with

1    respect to the process.

2         Unless I am mistaken, the government has no

3    mechanism or setup to publicize, if you will, anything like,

4    okay, you have six weeks to get in if you believe you're a

5    loser or you believe you have claims against Barkany, you

6    know, get in your claims.

7         So the -- I think the process up to this point

8    has, you know, by virtue of the limitations that we're

9    dealing with as we're, you know, before the Court today

10   really have been limited to the people that have been in

11   court.

12        Now, you know, I know for instance that Mr.

13   Mulholland, as an example, has some -- has -- there are

14   other codefendants in the case where Mr. Mulholland's

15   clients are defendants.  And I think Mr. Mulholland may have

16   tried to contact those other people who he does not

17   represent to say, by the way, you know, the government has

18   asked, you know, six weeks and so forth.

19        But, you know, it's kind of very much of an ad hoc

20   certainly less than formal way.  And so none of us, as far

21   as I know, have any way of really making it known publicly,

22   you know, that there is this forfeiture and so forth.

23        A couple of other points, Your Honor.  I am not an

24   -- I am not an expert in forfeiture law.  But as I

25   understand the government's position, the government is not

1    -- has not, at least up until this point in time as far as I

2    know, taken the position that the more than $20 million on

3    assets that are held by BARM are subject to the forfeiture

4    order.  So the government has done nothing as far as I

5    understand to approach BARM and tell BARM, look, you can't

6    do anything with that money because that ultimately may be

7    subject to the forfeiture order and so, therefore, that has

8    to be available for everyone.

9           I do not understand that the government has made

10   any sort of investigation in terms of the assets that BARM

11   is holding, how they got them, what they did with them,

12   monies that may have been used already from those assets.  I

13   just don't think it exists.

14          So that is, I think, part of the major problem,

15   you know, to --

16          THE COURT:  Well, that -- that goes to the

17   question or the point that I said earlier, and that is no

18   one has explained to the Court the interplay between the

19   forfeiture order that has been entered and the transfer by

20   Mr. Barkany of the assets to BARM.

21          MR. KIRSHENBAUM:  Right.  I --

22          THE COURT:  And how -- and what is the interplay

23   with respect to those and how do the victims of the fraud

24   get compensated.

25          MR. KIRSHENBAUM:  Right.  And I -- I -- you know,

1    maybe Ms. Stedman (sic) can shed some light on that.  Based

2    on -- you know, I don't understand that there's any -- that

3    that has been worked out at all and, frankly, it's been my

4    impression that the government -- the government's view of

5    this is that nothing is final until the final forfeiture

6    order is in place at the time of the sentencing.

7              And by the way, Your Honor, I think perhaps maybe

8    this is something that Mr. Januzzi or Ms. Stedman (sic) can

9    shed a little light on.  I believe, Your Honor, there was a

10   hearing in front of Judge Wexler earlier this week.  I have

11   heard third-hand, perhaps even fourth-hand that the

12   presentencing process has just begun and -- but I think,

13   Your Honor, that means that it's another six or nine months

14   before sentencing will occur, and perhaps even longer than

15   that.

16             And I think, Your Honor, the government's position

17   is that it's only at the time that there's a final

18   forfeiture order in place that they're going to try to

19   gather assets and see what they can come up with them and

20   distribute what they come up with then.

21             So I just -- it's subject to what Ms. Stedman

22   (sic) may say, I think that if BARM is -- gets away with

23   their intention of distributing assets to their creditor

24   group, it may well be, Your Honor, that those assets will

25   not be brought back by the government.  And by the way, Your

1    Honor, I mean, I think that -- I mean, I think we have to be

2    realistic about that as well.  Even assuming that it was

3    brought back to the extent that assets are distributed to

4    Ms. Jones and Ms. Jones goes ahead and, you know, passes

5    those assets on or uses them or whatnot and they're gone, so

6    they're gone.

7            So I think, Your Honor, even if it would be the

8    government's intention ultimately the government were to

9    come to the -- to Your Honor today and say, Your Honor,

10   anything that is subject -- that BARM is holding ultimately

11   we're going to grab it as part of the forfeiture order, and

12   if BARM gives it out we're going to go get it back.  Well, I

13   mean, if BARM gives it out it may not be in existence.  But

14   I think, Your Honor, you're not even going to get to that

15   step because I think the government will tell you they don't

16   know what they're going to do with respect to the BARM

17   assets because they don't know what the BARM assets really

18   are.  They haven't really done any work in that regard.

19   That's part of the real problem here.

20           So, Your Honor, I just think that that's a

21   critically important point, and obviously that goes to our

22   motion as well.

23           Thank you.

24           THE COURT:  Thank you.

25           I do want to hear from the U.S. Attorney's Office

1    and then, of course, I'll let you speak, Mr. Wasserman.

2              MR. WASSERMAN:  Thank you.

3              MS. LEONARDO:  Thank you, Your Honor.

4              Your Honor, I think this is why it's important

5    that we have the loss affidavits and any backup paperwork

6    from potential victims with regard to assets that BARM is

7    holding.  I'm sure Your Honor knows in forfeiture world

8    there's the Relation Back Doctrine.  If there are any assets

9    that were acquired from the beginning of the crime, the

10   government -- it's under the Relation Back Doctrine.  The

11   title invests in the government at the time of the crime.

12   And there are just a lot of unknowns that we have at this

13   point.

14             The FBI has been doing a financial analysis of the

15   records that we have to date.  I don't know if they're

16   complete records.  I'm going to say they're probably not

17   because we are getting additional victims.  As counsel just

18   said, there's another affidavit he's gathering also from

19   another potential victim.

20             So that's part of what the issue is, is I -- we

21   don't know what assets here are or if anyone has potential

22   interest in these assets.  I think as Your Honor knows it's

23   -- if these are general unsecured creditors, they don't have

24   an interest in any specific asset.  So that's another issue

25   we're dealing with.

1          Thank you.

2          THE COURT:  Thank you.

3          Mr. Wasserman.

4          MR. WASSERMAN:  I had thought all Your Honor was

5    asking for was a status report.  Instead you heard arguments

6    on the merits.  I'll refrain from responding with argument

7    on the merits and trust that I'll have the opportunity to do

8    that when you actually ask us for that.

9          THE COURT:  Yes, you will.

10          MR. WASSERMAN:  The one point I did want to make

11    is that in addition to the loss affidavits and the

12    supporting documentation which we provided, and the loss

13    affidavits do say that you are required to attach supporting

14    documentation to them.  They were sent to us.  We complied

15    with the instructions.  I'm not sure why other parties

16    didn't.  The government also asked us for a list of Mr.

17    Barkany's investors and other potential victims.  We

18    provided them with an extensive schedule of that to enable

19    the government to reach out to those people, if they were

20    inclined to do so, to identify any additional victims.

21          That's all I wanted to add, Judge.

22          THE COURT:  Thank you.

23          MR. JANUZZI:  Judge, may I just say one thing --

24          THE COURT:  Yes.

25          MR. JANUZZI:  -- very quickly?

1           As I indicated the first day, one of the reasons

2      the sentence has been put off is to allow my client the

3      opportunity to make restitution prior to sentencing.

4           Since the last time we've met, both his criminal

5      counsel and I have verified these investments and these

6      business opportunities that he's had and reported them back

7      to Mr. Caffaroni (ph), including going down to Abilene,

8      Texas and viewing some of the sites that are under

9      development there.

10          Pursuant to those efforts on the last court date

11     Mr. Barkany tendered $194,000 in additional funds towards

12     restitution which is being held in the escrow account of

13     Bruce Barkette (ph), his criminal attorney.

14          Also since the last time we've met here, myself

15     and the attorneys from Locke Lord have met on two occasions.

16     As I had indicated on the prior conference date, that since

17     our dispute that we had in June we have set aside those

18     differences and been working out.  To date, we have

19     identified and assigned values to the assets that have been

20     turned over to BARM.  We are not completely there yet,

21     Judge, and there is more that goes into this accounting.

22          But I'm comfortable in saying that setting aside

23     that $194,000, we're fairly into agreement on $19,886,000 of

24     value plus there's real estate that we're still looking at

25     which will add somewhere between, I'm going to say -- and

1    I'm not holding anybody to this -- somewhere between four

2    and $6 million into that pot.

3              In addition, there is $4 million worth of assets

4    in unrealized stock.  These were like new ventures and they

5    haven't been proven yet, and they may end up being valueless

6    or they may end up being worth $4 million.

7              So those things are still being looked at and

8    worked out.  But it's not as if there's no progress being

9    made on that.  Again, I think twice since we've met last

10   time I've sat down with these attorneys and gone through

11   this -- you know, these numbers and working out these

12   figures.

13             Okay.  Thank you.

14             THE COURT:  Thank you.

15             It seems to me that some additional work does

16   indeed have to be done to the extent that documents are

17   still needed by the Office of the United States Attorney

18   with respect to the affidavits of loss.  I would certainly

19   urge those on my right-side of the table here.  To the

20   extent that either any of the petitioning creditors or any

21   of these contingent creditors have yet to provide the

22   information that has been requested or that is needed by the

23   Office of the United States Attorney, then I would certainly

24   urge you to do so as promptly as possible.

25             It seems that counsel for Mr. Kessler would like

1    to be heard.

2              MS. LEVINE-SHAPIRO:  Yeah.  Just -- I just wanted

3    to let the Court and all other counsel know that Mr. Kessler

4    has filed an affidavit of loss with the U.S. Attorney the

5    first week of November.  And he is prepared to also file a

6    proof of claim in Bankruptcy Court.

7              And just in terms of figures, he's being sued by

8    BARM for over 3 million -- about $3,300,000, plus interest,

9    legal fees and costs.  But if you look at just his

10   transactions with Barkany on an individual basis, he

11   advanced funds to or on behalf of him.  He has a total loss

12   of $269,133.13.  And if you then figure in the business

13   transactions that he had with the Barkany various corporate

14   entities, he ends up with a -- still with a net loss of --

15   one second.  Sorry.  Oh, it's not specified there.  It's a

16   net loss of $68,924.53.  That's including the personal and

17   the business transactions combined.

18             THE COURT:  Thank you.

19             Again, I just urge everyone to cooperate with the

20   U.S. Attorney's Office and provide the requested information

21   as promptly as possible.  And we'll also at some point have

22   to deal with the concept of the forfeiture and the relation

23   back issue.  That goes towards the assets, whether it's

24   tangible or intangible assets that are being held by BARM

25   and how that's going to interplay with respect to the U.S.

1      Attorney's Office.  And as counsel correctly pointed out,

2      we've got issues with the Relation Back Doctrine.

3              So with that said, let me move to the second issue

4      that I wanted to address and that had to do with the filing

5      on November 11th of the supplemental affirmation by Borgata

6      in further opposition to the debtor's motion to dismiss.

7      That supplemental affirmation didn't assert that the Borgata

8      claim is fixed both as to liability and to amount.

9              And my question is, is that, I guess it's for Mr.

10     Januzzi in the first instance, what is the debtor's position

11     with respect to this?  Is the debtor now in essence saying

12     that based upon a review of the documentation the debtor

13     believes that he will withdraw its challenge to the Borgata

14     claim and that there is no longer a bona fide dispute as to

15     liability or amount, or is the debtor wishing to proceed on

16     the challenge of the Borgata claim?

17             MR. JANUZZI:  No.  That issue has not been

18     resolved, Judge.  From my understanding -- again, and this

19     was consistent with all that was going on at the last

20     conference -- the discovery that's being produced is being

21     turned over to BARM and to David Belski (ph) for their

22     review.  And Your Honor may recall that my client's

23     position, his opposition was that based on what we were told

24     by a forensic accountant there's an issue with respect to

25     liability and amount.  That still exists and has not been,

1    to my knowledge, resolved.

2        There are emails that are attached to that that

3    predate my client being informed of the fact that there was

4    this discrepancy in the accounting, and those emails, while

5    they reference that my client was acknowledging some form of

6    a debt, do not mention any specific amount and would predate

7    his knowledge of the fact that a forensic accountant, after

8    getting authorization from my client to review all records

9    was not given the records in total.  And the records that he

10   was given indicated to this forensic accountant that there

11   was a discrepancy of not only did my client not owe them

12   $240,000, but in fact they owed my client money.  That is

13   still our position today.

14       My understanding with respect to the discovery

15   that's been turned over, while somewhat lengthy, it has all

16   been summaries of materials that they have as opposed to the

17   actual materials themselves.  So that's like saying, I'm not

18   going to show you what I have.  I'm going to tell you what I

19   have and take my word for it, and that's not acceptable in

20   any court.  I'll let Mr. Wasserman address it specifically

21   because I believe he's been on the back and forth of this.

22       But that's my understanding of looking at the

23   emails and the exchanges that's gone on between counsel so

24   far.

25       THE COURT:  All right.  I just wanted to make sure

1    that we're still in a dispute here and we really need to

2    resolve this threshold issue.

3            MR. JANUZZI:  We are still in a dispute.

4            THE COURT:  And, you know, the threshold issue has

5    been hanging over us for quite some time.  So the Court is

6    inclined to set this down for an evidentiary hearing with

7    respect to the involuntary petition and the claim that's

8    being asserted by the Borgata and the opposition that's

9    asserted by the debtor that there is a bona fide dispute as

10   to liability or amount.

11           And looking at our calendar, we are --

12           MR. JANUZZI:  Judge, if I may for one second.

13           THE COURT:  Yes.

14           MR. JANUZZI:  Do you feel at this point you have

15   all the documents that are required for you to go forward

16   with an evidentiary -- well, for me to go forward with the

17   evidentiary hearing with Mr. Belski?

18           THE COURT:  Well --

19           MR. JANUZZI:  Because I think that's the problem

20   that we are faced with, Judge.  Mr. Wasserman is going to

21   say we haven't gotten the discovery to go forward with the

22   evidentiary hearing.  Am I wrong, sir?

23           MR. WASSERMAN:  May I be heard?

24           THE COURT:  And -- and I'm sure that counsel for

25   the Borgata is going to say, I gave you what you need and

1    I'm prepared to substantiate our claim both as to liability

2    and as to amount.  And so, to me, the issue has been joined

3    and we really need to get to this hearing.   We've sort of

4    been in limbo during this gap period, so we need to get to

5    the hearing.

6           MR. WASSERMAN:  I just have one question related

7    to that.  We agree with Your Honor.  I was prepared to

8    demonstrate that we don't have sufficient documentation and

9    I -- I also agree with Mr. Klausner that we could go on

10   forever this way and, ultimately, we do need to have an

11   evidentiary hearing.

12          What I think my client would like me to do is to

13   clarify what our role is, if any, in that proceeding.  If

14   you go back to the papers which we've submitted in

15   connection with our objection, one of the arguments we made

16   -- and I'm not going to reargue our position -- is that once

17   Mr. Barkany filed his objection to the Borgata claim, that

18   the issue of standing became moot and, therefore, we had a

19   right to participate in those proceedings and support the

20   objection.

21          There are other arguments in our papers as well.

22          It's unclear from, I think it was your amended

23   order, to me whether you anticipate Mr. Januzzi using Mr.

24   Belski as his witness, which is what Mr. Januzzi said he

25   would do and whether we would be allowed to participate in

1    that process.

2            So I thought clarification on that might be

3    helpful.

4            THE COURT:  With respect to the issue in the

5    challenge of the claim asserted by Borgata, it was Mr.

6    Barkany that challenged that out of the box on the first

7    instance.  And so it's going to be the burden on Mr. Barkany

8    and, of course, the Borgata with respect to that evidentiary

9    hearing as to whether or not the Borgata has a qualified

10   claim, whether or not there's no bona fide dispute as to

11   liability or amount.

12           And so with respect to that hearing, while Mr.

13   Belski is going to have to, I'm assuming, be the witness

14   because I can also assume that Mr. Barkany is not going to

15   be here to testify in any shape or form.  And so to the

16   extent that Mr. Barkany is now going to look to challenge

17   the claim filed by the Borgata, he is going to be looking

18   for documentary evidence and testimonial evidence and the

19   likely source of that is going to be Mr. Belski.

20           Now I'm not saying that no one can object on any

21   grounds with respect to the documents or with respect to the

22   oral testimony, but that's the role that I'm assuming being

23   played.

24           With respect to Mr. Rosenberg's claim and Mr.

25   Kessler's claim, we still have the issue as to whether or

1    not the Court is revisiting the standing issue.  But let's

2    also not forget that you also have a motion to dismiss this

3    case in the event it is determined that the petitioning

4    creditors have qualified claims and an order for relief is

5    entered we would then immediately have to tee up a hearing

6    with respect to your motion to dismiss.

7              MR. WASSERMAN:  Well, I would suggest -- I'm still

8    not sure, Judge, have you ruled on our motion?  We argue

9    that we have standing to assert the objection on the same

10    grounds that Mr. Barkany did.  The authorities which were

11    cited contrary to that is that only the debtor has standing.

12    We cited to authority for the proposition that once the

13    debtor asserts an objection, then that opens the door to the

14    other parties to participate with respect to the grounds of

15    that objection.

16              Now I understand you're holding Mr. Rosenberg and

17    the other petitioners in abeyance to deal with this

18    threshold issue first.  I guess what I would ask, Judge, is

19    if we could get a ruling.  We believe we should be able to

20    participate to the same extent as Mr. Barkany.  It's

21    something we feel strongly about and we would like a ruling

22    or a decision so if we decided we wanted to appeal that, we

23    could.

24              But from a practical standpoint, I'm not concerned

25    about whether or not Mr. Barkany's counsel is the lead

1   counsel on it if we're able to participate fully and cross-

2   examine witnesses and make objections to documents.  We're

3   perfectly comfortable with that.  I'm not sure if that's

4   what you had in mind, though.

5          THE COURT:  Thank you.  I -- I don't know if Mr.

6   Kirshenbaum wishes to be heard.  This really wasn't on

7   today, so I'm not going to hold it against the parties for

8   maybe not being prepared to address the standing issue.  But

9   I'm happy -- well, I guess in the first instance I should

10  hear from counsel for the Borgata with respect to let's get

11  to this threshold issue.

12         You know, one of the reasons why I wanted to

13  address the threshold issue is so that we didn't get

14  embroiled in the standing concept here because there are a

15  legion of cases that say only the debtor can contest the

16  involuntary petition.  And I know, Mr. Wasserman -- I'm not

17  making any ruling and I know that you have raised certain

18  issues with respect to standing, you know, the paralysis

19  issue, you know, that Mr. Barkany wasn't able to, because of

20  familiar relationships, object to the claim that was

21  asserted or that the fact that the involuntary petition

22  included his father-in-law.  And I'm not unmindful of that

23  and I didn't forget that.

24         But you do, as I said, have a legion of cases that

25  talk about the debtor having standing and -- to object to

1      the petition and usually creditors do not.  And there are

2      issues, there are reasons for that.

3            If creditors were the recipient, for example, as I

4      think we may have mentioned once before, if a creditor is a

5      recipient of a preferential payment, you certainly wouldn't

6      want that creditor coming in to oppose the filing of an

7      involuntary petition because it's really in their own self-

8      economic interest that the bankruptcy goes forward.  Then

9      they have to disgorge funds to the extent that that

10     preference is then avoided during the course of the case.

11           So the concept is, with respect to the majority of

12     cases, is that the debtor would have standing to contest the

13     involuntary and creditors that were concerned about the

14     involuntary petition are not without a remedy.  They have a

15     remedy.  They can move to dismiss the case as BARM has done

16     under 305.

17           So I will hear from counsel for the Borgata, but I

18     -- I'm not going to hold the parties to addressing the

19     standing issue because I did not schedule any type of

20     hearing today and I don't want the parties to feel that any

21     of their rights were abridged to the extent that they wanted

22     to add any oral argument to the written submissions that

23     have already been placed with the Court.

24           But let me hear from counsel for the Borgata with

25     respect to the issue of the claim and the fact that there

1    may be additional documentation that's been requested on

2    behalf of BARM by -- you know, by Mr. Wasserman.

3            MR. KLAUSNER:  Judge, everything that has

4    transpired --

5            THE CLERK:  Sir, please state your name for the

6    record.

7            MR. KLAUSNER:  Oh, I'm sorry.  Jeremy Klausner,

8    Agostino & Associates for Borgata.

9            As Your Honor knows from my supplemental

10   submission the other day, the Borgata has supplied

11   voluntarily to BARM and to its forensic accountant the

12   entire account history for Mr. Barkany along with other

13   information, including wire transfers, cash transactions,

14   check transactions, chip transactions.  The only actual

15   physical information they need is the account history.

16           What they're asking for now is for us to go into

17   our storage facility and retrieve 60 boxes of documents, 6-0

18   and have several of our employees spend a couple of weeks,

19   two to three weeks sifting through so that they can get the

20   underlying document.  The information is all the same.

21   Every transaction that Mr. Barkany engaged in with Borgata

22   is in the information that was provided.

23           And now tellingly if you look at the letter that

24   BARM sent on November 5th, they say they need the additional

25   documentation not evaluate whether -- not to evaluate

1    whether there's a debt, but they're now -- they want to

2    evaluate the enforceability of the various markers which Mr.

3    Barkany apparently executed and the Borgata casino deposit.

4           The markers that are at issue have been provided.

5    Those have been provided, the ones that bounced.  Okay.

6    Those are the ones that are at issue.  Every other

7    transaction has been provided to them.  And at this point,

8    it is onerous because, as Your Honor said in the first day,

9    it's Mr. Barkany's objection.  And based on the evidentiary

10   standard that he has to meet, he can't meet it.  He has no

11   evidence.  He has the hearsay statement of someone who is

12   not an expert, has not been qualified as an expert and, by

13   the way, don't think could be qualified as an expert in this

14   case.

15          So even if Mr. Belski were to testify, the only

16   thing that I believe he could testify to is -- are facts,

17   and the facts are what's in the documents that Borgata

18   provided.  Those are the facts.  And the fact is that those

19   documents, the accountant (indiscernible) says, oh, I'm

20   sorry.  Mr. Barkany owes us $340,000.  Every transaction is

21   (indiscernible).  That's our position.  Mr. Barkany has not

22   asked for any documents, has not subpoenaed.  He has not

23   sent any document requests.

24          We have cooperated with BARM, and up until

25   November 5th when they asked for -- and I won't even go into

1    the additional information that they asked for that has

2    absolutely nothing to do with this case.  But we gave them

3    everything that they wanted and we answered all their

4    questions, and then this letter came on November 5th.

5            So that's -- that's where Borgata is at.  We are

6    more than happy to proceed to a hearing.  However, I submit

7    that given the evidence in this case, there's -- (a) there's

8    no need for a hearing, and for Mr. Barkany to maintain his

9    position based on this hearsay in the light of what has been

10   provided borders on frivolous.

11           I -- we're really getting to the point where we're

12   wasting time.  And if Mr. Barkany's not going to testify

13   himself that he doesn't owe Borgata money, how can he

14   maintain that claim.  I just don't understand that from an

15   evidentiary standpoint.

16           THE COURT:  Thank you.

17           MR. JANUZZI:  Clearly, he can have an accountant

18   who has been given the records and who has reviewed them

19   testify that there's a discrepancy as to the amount of money

20   that's being claimed owed if any at all.  And he is an

21   expert.  He's a forensic accountant who has testified in

22   dozens of cases.

23           So it's our position that there is a qualified

24   expert.  He will be testifying.  He'll be going through

25   those records and they have a burden to meet, and from the

1    records that I have seen I don't know that they're going to

2    be able to meet those -- meet those burdens because I don't

3    think their evidence is going to be sufficient.

4              So I'll -- I'm happy to go forward with the

5    hearing.

6              THE COURT:  Well, we need to select a date.  And

7    the Court was thinking of Monday, December 15th.

8              MR. JANUZZI:  That sounds fine to me, Judge.

9    Eleven o'clock?

10             UNIDENTIFIED SPEAKER:  (Indiscernible).

11             MR. JANUZZI:  Oh, I know.  I know. I'm saying it's

12   fine for me.

13             THE COURT:  I know that we have parties coming

14   from Jersey.  So I guess it's -- how about 10:30?  Would

15   10:30 work, or is that a much more difficult for you and you

16   would rather have the 11:00?

17             MR. KLAUSNER:  Well, it's not as difficult for me

18   as it is for the person who is coming from Atlantic City.

19             THE COURT:  So 11:00 would work better?

20             MR. JANUZZI:  Judge, is it possible to have it at

21   2:00?

22             THE COURT:  I think maybe we ought to start at 11

23   just in the event that this runs kind of late.  So that

24   would be December the 15th at 11, and it's --

25             MR. JANUZZI:  Judge, could we just have one minute

1    to call our witness?

2             THE COURT:  Yes, of course.  We'll take a short

3    recess.  Absolutely you can have time to --

4             MR. JANUZZI:  Thank you.

5         (Recess taken at 12:01 p.m.; resumed at 12:10 p.m.)

6             THE COURT:  Thank you.  Please be seated.

7             MR. JANUZZI:  Again, sir, thank you for that

8    opportunity.

9             THE COURT:  It's fine.

10            MR. JANUZZI:  Mr. Belski will be available on that

11   date.

12            THE COURT:  Okay.  Thank you.

13            MR. KLAUSNER:  Judge, if I may, perhaps the Court

14   can assist me in facilitating this.  I am going to subpoena

15   Mr. Barkany, and instead of subpoenaing him maybe Mr.

16   Januzzi can agree to bring Mr. Barkany.

17            MR. JANUZZI:  Well, unfortunately, no.  I'll be

18   making a motion to quash that subpoena.

19            MR. KLAUSNER:  All right.  Well, I'm going to

20   subpoena Mr. Barkany.

21            THE COURT:  And --

22            MR. JANUZZI:  So we'll have a motion to adjourn

23   till that date, too, then, Judge?

24            THE COURT:  I would suspect so.  And, you know,

25   we're now on for December 15th at 11, but I am going to ask

1    for supplemental papers to be filed based upon an

2    interesting concept that Mr. Wasserman raised and that is

3    sort of a different standing issue than the one that we were

4    talking about with respect to Mr. Rosenberg and Mr. Kessler,

5    and that is that once a debtor has opposed to file even an

6    involuntary, does that open up the flood gates and permit

7    creditors to join in and oppose and participate in that

8    hearing.

9         And so that, to me, is a little bit of a different

10   issue and I don't expect the parties to address it today

11   because it wasn't on for today's calendar, but it's an

12   interesting issue that's been raised by Mr. Wasserman.  And

13   so I would give the parties one week to submit a

14   supplemental pleading, both simultaneously.

15        In other words at the same time you submit a

16   supplemental pleading.  Mr. Wasserman, obviously, arguing

17   that indeed, you know, BARM will -- as a creditor is given

18   standing because the debtor has filed the opposition, and

19   the petitioning creditors certainly would be able to file

20   any pleadings that they wish to file saying that that

21   certainly isn't the case; that only the debtor has standing

22   to oppose the involuntary petition.

23        So that would be one week from today which is

24   November 20th.  And then we'll hold December the 15th at 11,

25   but that date may change depending on the supplemental

1    pleadings.  But the Court certainly would advise the parties

2    as promptly as possible.  The difficulty with not holding to

3    December 15th would mean, based upon scheduling, that we may

4    end up in January.

5            MR. KIRSHENBAUM:  Your Honor, anytime there is a

6    court hearing in this case, you know, I certainly intend to

7    be here.  So I am not pushing anything on all of my

8    wonderful colleagues that I wouldn't be at least, you know,

9    sharing the burden myself in terms of appearing in court.

10   Of course, I know we all feel it's a pleasure to be in front

11   of Your Honor anyhow.

12           THE COURT:  Well, thank you.

13           MR. KIRSHENBAUM:  But I think, Your Honor, if

14   there's going to be an issue with respect to Mr. Barkany's

15   appearance, so I think that, number one, it would be a shame

16   and I think it would be a travesty if Mr. -- we have to

17   waste time now, but Mr. Klausner arranging to subpoena Mr.

18   Barkany and then once that subpoena comes through, then Mr.

19   Januzzi files a motion to quash.  And that's presumably a

20   pretty critical part of any creditors' case in the debtor's

21   view.

22           And so I would respectfully ask Your Honor that

23   since we know that you certainly can direct Mr. Januzzi to

24   have Mr. Barkany appear at the hearing.  Mr. Klausner is --

25   has informed the Court that he would like to examine Mr.

1    Barkany at the hearing.  And you've heard Mr. Januzzi say

2    that they oppose.  I would respectfully request, Your Honor,

3    that Mr. Januzzi be directed also to file a motion to quash

4    that subpoena within the same time frame, within a week.

5            And I would also suggest Your Honor that it would

6    be very important to have whatever hearing, you know, would

7    be appropriate with respect to that motion to quash in

8    advance of the 15th because, to me, number one, you know, we

9    could end up on the 15th, you know, dealing with everything

10   other than evidentiary matters in an actual hearing and

11   then, as Your Honor indicated, we're into January, for all

12   intents and purposes.  And so that's -- that's one factor.

13           And then the second factor is, I mean, I think

14   it's critically important for Mr. Klausner to know whether

15   Mr. Barkany will be here or whether he won't.  And if -- and

16   by the way, Your Honor, we -- the truth is we could short

17   circuit this whole thing because if Mr. Januzzi is going to

18   -- if Mr. Januzzi can state on the record that Mr. Barkany

19   will take the fifth with respect to all of the questions

20   that Mr. Klausner is going to ask him, then he can do that

21   in his papers and then Mr. Klausner has the opportunity,

22   which I would -- if I was in Mr. Klausner's shoes I know I

23   would take -- certainly take full advantage of to basically

24   take the position before Your Honor that if Mr. Barkany's

25   taking the fifth with respect to all the questions relating

1    to whether he owes money to the casino, that's the end of

2    the case.

3         And I think, Your Honor, some of the case law that

4    we've already put in front of Your Honor in connection with

5    our opposition papers to the motion to dismiss that pointed

6    out that Mr. Barkany took the fifth throughout his

7    deposition goes to that issue.  So it's already been teed

8    up.  It can be teed up again and that can be dealt with in

9    advance of the 5th (sic).

10        I think, Your Honor, the case law is pretty clear

11   -- and it's not for today -- but I think that -- that's a

12   real issue that Your Honor will have to face.  That may make

13   the entire evidentiary hearing go away.  We may be moving on

14   to the next issue if that's going to be Mr. Barkany's

15   position that he can't testify with respect to his claim to

16   -- the Borgata's claim.

17        THE COURT:  Well, I'll certainly hear from Mr.

18   Januzzi, but I would suspect that Mr. Januzzi is going to

19   have to have a conversation with Mr. Barkany's criminal

20   defense counsel with respect to this issue.  But I'm happy

21   to hear from Mr. Januzzi.

22        MR. JANUZZI:  I would say that if my client

23   submitted an affidavit saying that based on his own

24   knowledge and from his own review he disputes something,

25   then clearly he would be opening himself up to an

1    examination.  That's not what he said, though, Judge.  So I

2    don't know what possible impact my client's testimony would

3    even have that they need to take it.

4            But that being said, I've had these conversations

5    already.  If they're going to serve a subpoena, I'm going to

6    be making a motion to quash and I -- when it's returnable,

7    if you want to make it on the 20th, that's fine with me,

8    too.  I mean, it's not like I don't know what the cases are

9    going to say.  So I'm prepared to go forward with that

10    motion.

11            I'm going to talk to Mr. Klausner because I don't

12    really understand why he's doing it.  It seems almost like

13    just a harassment.  But considering the limited issue we've

14    put before the Court in our motion papers, it seems like a

15    harassment.  But I'll speak to him before.  But if he's

16    serving that subpoena, I'm serving the motion.

17            THE COURT:  Thank you.

18            MR. JANUZZI:  Do you want it on --

19            THE COURT:  I --

20            MR. JANUZZI:  -- the 20th, Judge?

21            THE COURT:  Well, I appreciate your offering to

22    put it on for the 20th.  The difficulty is is that I'm in a

23    conference in Washington, D.C. all of next week.  So,

24    unfortunately, you know, I am not available next week.  We

25    have to start figuring out the dates as to when we would

1    hear the motion to quash because Mr. Kirshenbaum, you know,

2    does raise a point that let's not waste time on the 15th.

3    That that motion to quash would have to be determined, you

4    know, in advance of having a hearing on our threshold issue

5    of the Borgata claim.  So we'll have to revisit our calendar

6    and let the parties know a date because if we're going to --

7    if we're going to hear the motion to quash, it would have to

8    be well in advance of the 15th and --

9         (Pause)

10        THE COURT:  All right.  The Court will, after we

11    break here at some point, after we hear the 2004 issue, will

12    revisit the calendar and figure out the best dates to handle

13    all of this.  I'm assuming there's going to be a subpoena

14    issued.  There's going to be a motion to quash.  The issue

15    is what would be the return date of that motion to quash.

16        MR. JANUZZI:  Okay.

17        MR. KLAUSNER:  Judge, from an evidentiary

18    standpoint, I've got to be honest with you.  I don't

19    understand how they can proceed based on this -- the posture

20    of this case as it is.  The position that -- I don't owe --

21    I don't owe Borgata money because somebody told me I don't.

22    That's what -- that's hearsay, I mean, just from an

23    evidentiary standpoint, and we're going to proceed with a

24    full blown hearing based on that and they're going to move

25    to quash because that's okay because the debtor doesn't have

1    to say, I don't -- I don't owe Borgata any money.  Somebody

2    told me I did.  He's not even going to come in and say that

3    if he doesn't testify.

4            MR. JANUZZI:  Judge, if I may, if my client --

5            MR. KLAUSNER:  That makes no sense.

6            MR. JANUZZI:  -- was coming in to testify that

7    someone told him, that would be hearsay.  That's not what's

8    happening.  The declarant who is a forensic accountant is

9    coming in to testify.  That's a whole different scenario and

10   that is not hearsay, Judge.

11           MR. KLAUSNER:  Judge, he's --

12           THE COURT:  That would be the evidentiary issue,

13   one of the evidentiary issues.  I'm assuming --

14           MR. KLAUSNER:  Judge, we're -- but -- but he's --

15           THE COURT:  -- there's going to be more, but that

16   will be one of the evidentiary issues --

17           MR. KLAUSNER:  -- he's already --

18           THE COURT:  -- at the hearing.

19           MR. KLAUSNER:  Judge, he's already said it.  It's

20   hearsay.  He's already said it.  He put it in an affidavit,

21   somebody told me that I don't owe the Borgata money.  That's

22   hearsay.  Whether Mr. Belski comes in at the hearing or not

23   doesn't change that fact.  They can't meet the initial

24   burden to move forward.  I mean, I -- that's what the case

25   law says.  I don't -- so I don't understand how it's

1   possible for them to even call Mr. Belski without first

2   having Mr. Barkany testify.  I just don't understand it.

3           THE COURT:  You -- you were up.  You came down.

4           MR. WASSERMAN:  What I was going -- what I was

5   going to suggest, Your Honor, is this is probably Exhibit A

6   to the reason that BARM should be given standing with

7   respect to this hearing because they're arguing on the one

8   hand that Mr. Barkany owes us money, but Mr. Barkany can't

9   testify in connection with that and Mr. Belski can't testify

10  because of hearsay.

11          Mr. Barkany, because of the posture of his

12  criminal case, is impaired.  And we'll argue that in our

13  supplemental submission.

14          THE COURT:  All right.  That's fine.  So the

15  supplemental submission will be filed by both parties on the

16  20th of November, and the Court will look at its calendar

17  and make a determination with respect to the motion to quash

18  and when we would have the hearing with respect to the

19  Borgata claim and the involuntary petition.

20          MR. WASSERMAN:  I agree.

21          MR. JANUZZI:  To make it somewhat easier for

22  counsel, I would (indiscernible) statements on this.

23          THE COURT:  Counsel, you --

24          MR. JANUZZI:  So you don't have to serve that --

25          THE COURT:  -- heard that?

1          MR. JANUZZI:  -- on my client?  You can serve the

2     subpoena.

3          MR. KLAUSNER:  Thank you.

4          THE COURT:  Thank you, Mr. Januzzi.

5          MR. JANUZZI:  Certainly, sir.

6          THE COURT:  All right.  Why don't we move to the

7     -- let's move to the next item on the calendar, which is the

8     request by the petitioning creditors and contingent

9     creditors for a Bankruptcy Rule 2004 examination of BARM.

10          MR. KIRSHENBAUM:  Your Honor, you've, as always,

11     been very generous with your time.  And I don't believe,

12     Your Honor, that this is something that requires too much

13     more of your time.  I think that our case has been laid out

14     very, very well in the papers.  I think that actually what

15     you've heard this morning highlights some of the reasons

16     that we are, I think, absolutely abundantly entitled to the

17     discovery that we have requested.

18          The law is clear that 2004 applies to the gap

19     period.  We cited to you the only case that we found on the

20     subject.  Collier cites to Judge Garratty's (ph) opinion

21     going back approximately a dozen years where he criticized

22     one of the petitioning creditors who was concerned about

23     asset transfers for not utilizing the 2004 process in order

24     to take discovery before coming to court with an attempt to

25     deal with the problem that the creditor was concerned about

1    because without having taken the discovery, there could be

2    no record created upon which the court could proceed.

3              There is nothing to support the premise that the

4    2004 discovery that we're requesting is something that is --

5    that it does -- that is not appropriately looked into during

6    the gap period when Your Honor has been told by BARM that

7    they intend during the gap period to move assets and to take

8    proceeds of assets from Barkany that they've liquidated and

9    distributed among their members.  Up to this point in time,

10   Your Honor, the government has made no investigation of

11   those assets.

12             This morning Ms. Stedman (sic) and Your Honor and

13   others made the point that a forfeiture order can, it

14   doesn't have, to but depending on whatever the District

15   Court decides to do it can ultimately relate back.

16             However, Your Honor, it's clear that a forfeiture

17   order only covers property that represent proceeds of the

18   fraud or property that constitutes instruments used in

19   connection with perpetrating the fraud.  It does not include

20   property that would fall outside either of those two

21   categories.

22             Your Honor has heard much -- there has not been,

23   of course, much in the way of evidence.  It just hasn't --

24   we haven't been at that stage yet.  But Your Honor has heard

25   much of the fact that the -- it appears that Barkany, while

1    engaging in many fraudulent transactions, also engaged in

2    real transactions.  And we have no idea -- Your Honor heard

3    this morning that there are real -- that there are real

4    actual parcels of property that were transferred to BARM,

5    presumably parcels of property that were transferred to BARM

6    may have been the products of real transactions.

7            Your Honor has heard about security accounts that

8    have been transferred to BARM.  Those may have been the

9    products of real transactions.  They may not constitute

10   fruits of particular fraudulent transactions, and it may

11   very well be that they don't constitute instruments of the

12   fraud.

13           Moreover, Your Honor, there is nothing in the

14   record that Your Honor has which at all ties anything that

15   BARM is holding to any of the losses that BARM suffered.  In

16   fact, Your Honor, as we pointed out, not evidence because

17   there is no evidence so far, but, again, many of the BARM

18   creditors made substantial monies on all of the transactions

19   with Barkany until mid-2010.  And that's when apparently

20   Barkany, in his last little transactions with those people,

21   for lack of a better term did not repay what he took from

22   them in the last transactions.

23           But there's testimony in some of the depositions

24   taken by Mr. Warren on behalf of Zoock and Costell (ph) in

25   that State Court litigation where three different BARM

1    members, including -- I mean, apparently three of the --

2    certainly Mr. Groman (ph) is one of them.  Mr. Groman claims

3    he is owed $46 million.  Mr. Groman testified when he lost

4    his money.  Mr. Groman lost his money in that last six-month

5    period in the form of monies that he transferred that never

6    went further.

7              So there is real value that they are holding, and

8    you -- there is nothing upon which anyone could conclude

9    based on the record that they are proceeds of the fraud,

10   instruments of the fraud, or that the properties that they

11   were given all tie into their losses, the BARM category of

12   losses.

13             The government is not doing anything at this point

14   in time to prevent BARM from taking any actions that BARM

15   chooses to take.  So BARM has told the Court that it intends

16   to distribute assets.  It is the position of the petitioning

17   creditors and the other moving parties that that's -- it may

18   very well be a very unfair thing to do.  That is not

19   something, Your Honor, that tends to result in any equality

20   of distribution.

21             So if BARM intends to go forward, we certainly

22   want to be in a position to be able to deal with that if we

23   think that it should be dealt with, and we should be given

24   the opportunity, we should be given the information that we

25   need to try to prevent that from happening in the event that

1    BARM goes forward with its stated intentions.

2           And we can't do anything, Your Honor, without any

3    information.  We know nothing.  We know nothing.  We only

4    know -- until today we knew that Mr. Januzzi's co-counsel,

5    Mr. Barkette, had sent a piece of paper to the Court where

6    he claimed that the value of what was given to BARM may have

7    been up to $30 million.  BARM six months ago filed an

8    affidavit of partial payment in State Court where they

9    admitted that they had received $10 million of value. In the

10   more recent letters that BARM filed they admitted that it

11   was $20 million of value.

12          You heard Mr. Januzzi say this morning that he's

13   been dealing with BARM and they've now agreed that there's

14   $19.6 million in undisputed value.  I assume that means

15   maybe cash.  I assume, but I don't know.  And that there's

16   about $4 million in real estate, at least, maybe of a higher

17   value, and $5 million in -- perhaps $5 million in stock.

18          So that to me, Your Honor, doing quick math gets

19   up to $28.629 million.  He's talking to BARM.  BARM's

20   providing him with information.  I'm talking about Mr.

21   Januzzi.  Mr. Januzzi's client, Mr. Barkany, is not getting

22   any of that back, presumably.  But the other creditors in

23   the case may very well be entitled to that.

24          So, Your Honor, I think that it is abundantly

25   clear -- it's abundantly clear that we are entitled to take

1    2004 discovery, get the documents and start becoming

2    educated into what occurred four years ago when as Mr.

3    Januzzi very succinctly and appropriately in his letter to

4    Judge Wexler said, when Mr. Barkany, without being

5    represented by counsel, went into BARM, went into -- met

6    with BARM's lawyers and BARM's accountants and signed

7    agreements that we've never seen, and signed title documents

8    that we've never seen, and transferred properties that we've

9    never seen and no nothing about.

10              It's not fair, Your Honor, that BARM should be

11    entitled to go forward with its stated intention without

12    giving us the right under 2004 to take discovery.  What

13    could be more connected to part of the debtor's stated of

14    affairs, the debtor's assets and affairs, 2004.  Any party

15    in interest is entitled to take discovery of anything

16    relating to the debtor's affairs.  What could be more basic?

17              And, Your Honor, there is no trustee now.  The

18    suggestion that, well, only a trustee is -- as in their last

19    footnote -- only a trustee could bring an avoidance action

20    and, therefore, only a trustee would have a standing to 2004

21    discovery.  It doesn't work that way, Your Honor.  Any party

22    in interest in entitled to take discovery.  That's true even

23    if there is a trustee.  If there's a trustee in place, a

24    creditor is entitled to take discovery.

25              Now if there's a trustee in place, the trustee

1    could say, Your Honor, I don't think that this creditor, you

2    know, should be entitled to take discovery or, you know, the

3    creditors should be taking discovery together with me

4    because, you know, you can't double hit or triple hit.  But

5    the fact, even when there's a trustee in place, that doesn't

6    preclude creditors from taking their own 2004 discovery.

7         So if a trustee being present does not preclude

8    parties in interest from taking discovery that's germane to

9    them or germane to the estate, (indiscernible) we can't be

10   prevented from taking discovery when there is no trustee,

11   and the suggestion that only a trustee could bring the case,

12   an avoidance action and, therefore, since a trustee would be

13   the only one that would have standing to bring the avoidance

14   action, therefore, we can't take discovery.  I mean, that's

15   -- that's an outrageous statement.  It's an outrageous

16   statement.

17        I don't agree with it.  I don't agree with the

18   premise or the suggestion that this Court would be without

19   remedy to deal with that if that, in fact, became the case.

20   I mean, the code is very clear.  Even while a gap period is

21   pending, while the involuntary is pending before a decision

22   has been made, the Court could appoint a trustee to take

23   possession of the debtor's profit -- assets and properties

24   in order to preserve them.

25        So, again, right now there is no record upon which

1    we could do anything.  We -- if BARM gave notice in two

2    weeks, Judge, we're distributing.  Good luck to everyone.

3    He'll come into court.  What are we going to do?  We could

4    come into court and say, Judge, you've got to stop him, but

5    presumably Your Honor would say, well, what's your proof?

6    You have to make an evidentiary record.  You have to give me

7    some basis upon which to rule.  Right now I have no basis.

8    I have -- I know nothing.

9            So I think, Your Honor, it would be an absolute

10   travesty of justice to permit BARM, particularly with what

11   you do know, which as I said you do know that -- and BARM

12   does not dispute that Mr. Barkany turned over properties,

13   cash, real estate, stock in companies and we don't know the

14   particulars, but he turned this all over without

15   representation by counsel four years ago.  It's worth more

16   than $20 million and BARM wants to distribute it among its

17   clients.  It doesn't -- it can't -- it can't be right,

18   Judge.  You can't leave the creditors without remedy to deal

19   with that.

20           Now BARM, Your Honor, could make this very -- I --

21   in a sense simple and say, Judge, we will not deal with

22   this.  We will not -- notwithstanding whatever we said to

23   you before, we take it back and we commit that we are not

24   going to distribute anything or attempt to distribute

25   anything to our members until the -- this involuntary

1    proceeding has been determined in all of its respects and

2    assuming, if the case is to go forward in bankruptcy, until

3    given a certain period of time for a trustee to be appointed

4    and for a trustee, you know, to be able to get up to speed

5    and to figure out what they do so that it's a level playing

6    field.

7           BARM could make it very simple.  If they say that,

8    then I still may in theory may be entitled to the discovery,

9    but fine.  At least then we can say, okay, we'll wait.

10   We'll wait because why spend money needlessly, right?  But

11   as it stands right now, Your Honor, they cannot have their

12   cake and eat it.  I think it boils down to something that

13   simple.

14          So, Your Honor, we would want to go forward.  We

15   did not ask for depositions.  Our purpose here is not to

16   harass.  We want to start off getting the documents.  The

17   documents apparently exist.  The information exists.

18   They've been sharing it with Mr. Januzzi.  So we would like

19   to start off, take it piece by piece and see where we go, or

20   as I said there's an easy alternative; for Mr. Wasserman to

21   do what I asked him to do in a letter back in September

22   which started his whole thing, just please commit that you

23   won't distribute anything until all aspects of the

24   involuntary case have been determined.  One or the other.

25          Thank you, Your Honor.

1          THE COURT:  So let me just make sure I understand

2     the thrust of your 2004 examination.  We all understand

3     that, yes, the rules say that, you know, any party in

4     interest can request Rule 2004, you know, the affairs and

5     the administration of the estate.

6          You're requesting this discovery in order to

7     "intelligently respond, if needed, should BARM notify the

8     Court that it intends to make a distribution to its

9     members."  So, in essence, you feel that you need this

10    information to the extent that BARM decides to make this

11    distribution and you decide that you need to somehow, some

12    way seek to enjoin the distribution of those --

13         MR. KIRSHENBAUM:  Correct.

14         THE COURT:  -- assets.

15         MR. KIRSHENBAUM:  Correct.  And I have to show,

16    Your Honor, that there -- if I commence an action I would

17    like it not to be this case.  As an advocate you would

18    always like, you know, to have as many, you know, weapons in

19    your holster as you possibly can have.  I would love to be

20    able to come into court -- if I have -- if we -- and it's

21    not just me alone, but me together with all the other

22    movants if we -- if we're informed that BARM -- BARM gives

23    this Court notice that it intends to distribute and we feel

24    we're going to come into court to attempt to enjoin it and

25    again, presumably, because of the nature of the way an

1    adversary proceeding moves forward, even on an expedited

2    basis, I'm assuming, Your Honor, that we would certainly

3    want to come into court and ask for some type of interim

4    relief.

5            And, Your Honor, I and my colleagues are very

6    cognizant that the burden will be on us to establish the

7    likelihood of success on the merit in connection with any

8    interim relief that we request and any -- and any

9    restraining -- temporary restraining order, any preliminary

10   injunction which, of course, is always within the power to

11   -- of the Court to grant it, but only upon the establishment

12   of the standards that -- and the standards that we need to

13   meet.

14           How can I -- if I came into court, Your Honor,

15   they give you notice tomorrow that they're distributing and

16   we say, well, we have to try to stop that and we file a

17   complaint.  Judge, please enter a temporary restraining

18   order.  We -- we're going to be irreparably harmed.  Well,

19   how can we -- how can you prove to me you're irreparably

20   harmed.  You don't know anything.

21           So it's just -- it's just not a situation -- it's

22   just not a situation which right now leaves us in a position

23   to do anything effectively.  If they were to be given the --

24   the way things were to work out that they were to be given

25   the latitude, the opening to move forward and distribute

1    before we had an opportunity to have the information and to

2    utilize information in connection with (indiscernible)

3    before the Court.  I think, Your Honor, to me this one is

4    just so clear.  I don't understand how it's open to,

5    frankly, a legitimate dispute.

6              And as -- and in particular, again, when you go

7    back I would -- frankly, I would be probably coming in and I

8    would be asking for 2004 discovery even if Mr. Barkany had

9    done -- had been represented by counsel and, you know,

10   everything was documented and everything seemed to have been

11   -- you know, all the I's dotted and all the T's crossed.  I

12   probably would still be asking for this, Your Honor.

13             But when you add on top of just the fact that

14   creditors that have an interest are entitled to information

15   generally, when you add on top of it the way this all came

16   about --

17             THE COURT:  Well, why wasn't that interest raised

18   on the very first day?  Why weren't the creditors concerned

19   -- you knew that BARM held all these assets on day one.

20             MR. KIRSHENBAUM:  Right.

21             THE COURT:  Why weren't the creditors concerned

22   that at some point those assets were going to be

23   distributed, maybe we should move for the appointment of a

24   trustee?

25             MR. KIRSHENBAUM:  Your Honor, I -- if I -- first

1    of all, Your Honor, I must tell you, I must tell you that

2    when we filed the bankruptcy, the involuntary bankruptcy

3    petition it was our view, it was our view that between the

4    filing of the bankruptcy petition and the fact that there is

5    a criminal proceeding pending and there is an interim

6    forfeiture order pending, it -- you know, I -- you know, I'm

7    no smarter than anyone else and maybe not -- nowhere near a

8    lot of other people, of course, but it never dawned upon me,

9    it never dawned upon me under the circumstances of an

10   involuntary filing which does act as an -- as an automatic

11   stay.  The automatic stay does come into play when an

12   involuntary is filed and during the entire gap period.

13          And between a bankruptcy filing and an automatic

14   stay, a criminal proceeding, an interim forfeiture order

15   followed by a final forfeiture order, the debtors -- the

16   debtor/defendant's counsel saying, you know, there are all

17   sorts of issues concerning values and so forth, it never

18   dawned upon me, Your Honor, that this -- that BARM would

19   even think about distributing assets to its members until

20   mid-September when I heard in -- again, third-hand, that one

21   of the BARM members had said, we're getting a distribution.

22          Frankly, Your Honor, when I heard that, I was

23   absolutely floored.  And that's why (indiscernible), but

24   that's why I sent a letter to Mr. Wasserman because I was

25   hoping, Your Honor -- I mean, frankly, expecting that once I

1    made that inquiry that the response would be, we're not --

2    we're not distributing anything, but quite the contrary.  I

3    was surprised.

4              So as soon as we learned that, Your Honor, we came

5    in -- we came into court.  I never, ever expected that it

6    would come to this.

7              But, Your Honor, I don't know that today is any

8    different than if we had anticipated it on day one I'm sure

9    we would -- that we would have been here.  But whether it

10   was a request on day one, had we known that it would have

11   been an appropriate request on day one.  And we know -- we

12   knew about it at the end of September and that's why we

13   requested this at the end of September from them.

14             So, Your Honor, if -- you know, there is any, you

15   know, blame to be apportioned here for not moving sooner,

16   I'll, you know, take the -- I'll take the blame for that.

17   But I -- candidly, Your Honor, I never would have -- I never

18   would have thought that they would attempt to distribute

19   assets.

20             And, again, I don't know that there's any

21   prejudice.  They've been holding this out -- they've been

22   holdings these assets for four years.  Why all a sudden the

23   rush?  They've been holding them for four years.

24             THE COURT:  Thank you.  I'll hear from Mr.

25   Wasserman, but I'll just pick up on something that Mr.

1    Kirshenbaum said.  I am looking forward to the moment where

2    we do have some admissible evidence to present to the Court.

3    Not that I haven't enjoyed the arguments of counsel, but I'm

4    looking forward to that moment.

5              In any event, Mr. Wasserman.

6              MR. WASSERMAN:  Where do I begin?

7              Each time counsel appears before Your Honor, he

8    makes a point of noting that Mr. Barkany entered into

9    agreements and turned over money without representation by

10   counsel.

11             One, during the period of time where monies were

12   turned over he was represented by counsel, not during the

13   entire period, but during portions of that period.

14             Secondly, for quite some time now Mr. Barkany has

15   been represented by very able counsel.  They have never

16   stated that objection or that concern.

17             Moreover, they didn't make the argument in the

18   criminal court that the monies were turned over or the

19   confession of judgment was made under duress.  They didn't

20   challenge it because Mr. Barkany was not represented by

21   counsel.  And the government filed a criminal complaint and

22   ultimately obtained a guilty plea based on all of the things

23   that Mr. Kirshenbaum, perhaps, if he were representing Mr.

24   Barkany would have challenged.  But his attorneys haven't.

25   The government relied on it.  You heard Mr. Caffaroni speak

1    last time we were here.  I would like not to hear that

2    again, if at all possible.  It's irrelevant.

3            And even -- even Mr. Kirshenbaum noted, he would

4    still be here making the argument even if Mr. Barkany had

5    been represented by counsel.

6            There's a lot that counsel claims they don't know.

7    But they're being modest, to be polite.  If you read their

8    papers that they submitted, let's look at their moving

9    brief.  This is what they know.  And by the way, in their

10   reply papers, I'm not a regular in this court, Your Honor.

11   They served the papers late.  We would ask that the Court

12   reject their reply papers.  And if the Court doesn't do so,

13   at least give us an opportunity to submit a supplemental

14   declaration or whatever people call it.

15           I've looked at the local rules.  I've counted

16   every which way I can.  The papers are late.  Mr.

17   Kirshenbaum and his colleagues are experienced enough to

18   know you need to get papers in on time.

19           So here's what they say in their brief, which is

20   all relevant and material to the issue before you:  "BARM

21   has exercised complete, unfettered and unsupervised dominion

22   and control over the transferred Barkany properties since

23   its receipt of said properties."  They say that at pages 2

24   and 3 of their brief.  That's absolutely true.  We don't

25   dispute it.  It's an important fact.

1              At page 2 they say, "Petitioners acknowledge that

2    Mr. Barkany turned over all of his properties to BARM some

3    months after November 2010."  Also, absolutely true.  It's a

4    correct factual statement.  It's another thing they know.

5              At page 3 of their memorandum, "The petitioners

6    filed this involuntary bankruptcy petition on June 25th,

7    2014."  Absolutely true.  What's also true is that they

8    filed years after the petitioners claimed that Mr. Barkany

9    transferred the assets to BARM.

10             At page 5, petitioners have correctly noted that I

11   fully disclosed to counsel and to this court that it is

12   BARM's expectation that before year-end they will make a

13   partial distribution.   Absolutely true.

14             At page 5 -- I'm not going through their entire

15   brief, Your Honor.

16             At page 5 petitioners correctly state that "BARM's

17   position is that it has a legal right to distribute the

18   assets to its members without obtaining the advance approval

19   of this Court."  I've made that clear.  That's always been

20   our position.

21             Again, I'm not -- I'm not a bankruptcy attorney,

22   so hopefully I'll get these phrases correct.

23             THE COURT:  Soon you'll be a regular here.

24        (Laughter)

25             MR. WASSERMAN:  I would like to think we could

1    resolve it before I become a regular.  But -- and there's

2    still --

3            THE COURT:  The Court hopes that would be the

4    case.

5            MR. WASSERMAN:  -- there's still hope for that.

6            My understanding is that the funds and the

7    property that Mr. Barkany transferred to BARM are not the

8    property of the estate.  If you look at the chronology of

9    events that are known to Mr. Kirshenbaum and the other

10   petitioners, all of those transfers occurred well outside of

11   the 90 day preference period.  They were beyond the one-year

12   period.  Looking at the various rules which might allow for

13   a challenge to those transfers, I don't see that any of them

14   apply.

15           Now I will say that there is perhaps $10,000 which

16   might apply and we've readily agreed to turn that over.  But

17   any property held by BARM was transferred to BARM long

18   before the commencement of this case.  And, again,

19   petitioners do not dispute this.

20           We don't believe that BARM has any material

21   preference exposure under Section 548.  BARM is not an

22   insider.  Nobody has suggested that we are.  Any funds that

23   BARM received during the 90-day preference period were

24   received pursuant to assignments made long before the 90-day

25   period.

1            Furthermore, to the extent BARM did receive funds

2    -- and we're talking something in the neighborhood of

3    $10,000 or so during the 90-day preference period, that was

4    pursuant to assignments which occurred prior to the 90-day

5    period.  So in both of these situations, what BARM obtained

6    during the 90-day period was not the property of Mr.

7    Barkany.

8            Now the amounts that could --

9            THE COURT:  I think -- I didn't mean -- mean to

10    interrupt you, but I think maybe what Mr. Kirshenbaum -- I'm

11    interrupting you for the purposes of maybe you'll address

12    this.  Mr. Kirshenbaum may also be thinking of transfers

13    that were well outside the 90-day period looking back six

14    years with respect to any potential fraudulent conveyance or

15    fraudulent transfer by Mr. Barkany.

16            So I don't know if, you know, you wanted to

17    address that, but that might be one of the points that Mr.

18    Kirshenbaum would be looking at, not so much an avoidance

19    action.  And I don't mean to belittle any avoidance action

20    in the 90-day period.  But not so much an avoidance action

21    as a preference in the 90-day period, or to the extent it's

22    an insider, one year, but a look back period either under

23    the Bankruptcy Code, which would be two years under 548, or

24    looking back six years by utilizing Section 544 of the

25    Bankruptcy Code and then the New York State Debtor/Creditor

1    law.

2            So he -- he may be interested in looking at a

3    series of transfers or the transfer that occurred during

4    that, you know, six-year look back period.  And I think his

5    concern was that there may have been transfers of Mr.

6    Barkany's assets or property that were unrelated to the

7    fraud, were unrelated to the scheme to defraud.

8            And that the concern that he has, at least my

9    understanding, is that those assets may not be part of the

10   government's overall forfeiture issue and because these

11   aren't assets that would have been purchased or gleaned as a

12   result of the proceeds of the fraudulent scheme.  And I

13   think he's looking for a look back period greater than the

14   90 days.

15           MR. WASSERMAN:  Well, I don't think if you look a

16   the information that he's requesting that he has zeroed in

17   on that.  His requests seem to be far broader than that.

18           THE COURT:  Well, I -- I should tell you -- and

19   maybe this might help you a little bit with respect to the

20   information that is requested.  It's the policy of this

21   court that when a party moves for a Rule 2004 examination or

22   a production of documents, we don't just simply say, go

23   ahead.  You've got a laundry list of documents.  Enter an

24   order directing the other side in accordance with Bankruptcy

25   Rule 2004 to produce all of those documents.

1          What this Court does is we just authorize the

2    issuance of a subpoena so that it does not abridge the

3    rights of the responding party to look at that subpoena,

4    make a determination as to whether or not a protective order

5    is -- should be in place or whether or not a motion to quash

6    the subpoena should be in place.

7          So to the extent that a Rule 2004 order would be

8    issued by this Court it is not going to abridge the rights

9    of BARM or whatever responding party is going to be the

10   subject of a 2004 to move for a protective order or to

11   quash.  It's not an automatic right.  Parties are given the

12   opportunity.

13         MR. WASSERMAN:  Well, that's reassuring, Your

14   Honor.

15         Before I forget, the one case that counsel cites

16   to, In re: DeLorenzo (ph), that involved an involuntary

17   Chapter 7 case where one of the petitioning creditors was

18   concerned that the alleged debtor, the alleged debtor --

19   we're not the alleged debtor -- would transfer estate assets

20   to family members.

21         And counsel goes on to say, "Thus, the DeLorenzo

22   case squarely states that if there is a fear that an alleged

23   debtor will transfer property during the gap period, then

24   Rule 2004 discovery on that subject is not only permissible,

25   but it should be taken."

1          We're not the alleged debtor.  He's not seeking

2     discovery from Mr. Barkany.  He's seeking discovery from

3     BARM.  We're a creditor.  We're a victim.  So I don't see

4     that that case is applicable.

5          It seems to me that I would be -- I would be

6     stunned.  Counsel expressed great shock at what we would not

7     agree to.  I would be stunned if in his briefcase or

8     somewhere back in the office counsel did not already have

9     the motion for injunctive relief or whatever motion he

10     intends to file so that this Court will direct BARM not to

11     make a distribution.

12          To the extent that he might require additional

13     information, at best that's window dressing.  And,

14     certainly, to the extent that he requires that information,

15     his motion can indicate that they requested discovery in the

16     context of the motion.  It seems to me that we're putting

17     the cart before the horse here.

18          He wants everything.  He wants to know everything

19     with respect to property which I will submit, Your Honor,

20     when we're -- all is said and done you will realize it is

21     not property of the estate, has never been and can never be.

22     So if he wants to make a motion for an injunction, let him

23     make that motion.

24          And in response to that, we will come forward with

25     the informational documentation that we're required to,

1    which might well provide the information he's seeking.  If

2    it's insufficient or he feels there's information he needs,

3    at that time let him request the additional discovery, the

4    2004 examination.  And you will then be able to put in far

5    better context and focus more sharply on given the motion

6    and given what we've said in response to the motion and what

7    we've come forward with, what precisely do you, Your Honor,

8    need to be able to decide whether or not to issue the

9    injunction or the temporary restraint.

10          Right -- yes.  2004 is a fishing expedition and

11    it's a license to go after most anything.  I'm shocked and I

12    would be surprised if counsel would not want the Court to be

13    able to do what Your Honor has just suggested; that if you

14    give -- were to give them permission to go forward and serve

15    the subpoena, that's not a license to request anything that

16    they want and we would certainly have the right to object.

17          What I'm suggesting, Judge, is you're able to do

18    your job better with respect to what they want done here if

19    they are required to make whatever motion they deem is

20    appropriate with respect to the assets.  If they want an

21    injunction, so be it.  We will respond.  You will clearly

22    see the issues and how they have been framed.

23          And to the extent that they're concerned about

24    what the judge said in the DeLorenzo case, and I'll quote,

25    "The lack of evidence is particularly glaring because

1    Chadbourne has not even attempted to obtain discovery on

2    these matters from DeLorenzo."  Well, that statement will

3    not apply.  You will not be able to, in a decision when you

4    deny their request for injunctive relief, you'll not be able

5    to say that your -- it's a glaring omission that they didn't

6    even try to get to discovery because they have tried.  And

7    you in your considered opinion and discretion will have

8    simply deferred their attempt to get the discovery until a

9    proper motion was before you for the relief they are really

10   seeking so you could put that discovery in context.

11           I will -- and perhaps it's presumptuous of me to

12   suggest what would be helpful to you and what you should be

13   doing.  But the money that we have was recovered pursuant to

14   a judgment that was entered in the State Court and that

15   judgment has been relied on by the U.S. government.

16           The suggestion that somehow that money was being

17   collected for the benefit of all who might someday come

18   along having sat on their rights is to me shocking.  What

19   kind of message is being sent to victims of a fraud?  We

20   were victims.  We approached the person who victimized us

21   after he had confessed and after it was known that he had

22   perpetrated a massive Ponzi scheme, and we worked with him,

23   which is what the government encourages.  They encourage

24   victims to seek and obtain relief without the involvement of

25   the government if at all possible.  And we did that.  And we

1    obtained the judgment and we recovered money pursuant to

2    that judgment.

3            Now we're being told, but we knew that BARM

4    existed and we knew for years that BARM was collecting

5    money, but we sat back and we waited and we waited.  But now

6    that you've collected $20 plus million, now we want our

7    piece of the pie.

8            And lest the Court forget at I think it was our

9    last hearing, and it's not evidence, but if required to we

10   would demonstrate that Mr. Rosenberg gave approximately

11   $500,000 to Locke Lord for BARM.  He knew about it.

12           Mr. Kirshenbaum, before he came to this court, he

13   was in Religious (sic) Court on behalf of certain of his

14   clients.  He didn't think Bankruptcy Court was the first

15   place to go.  He went to Religious Court first.  They sat

16   and they let BARM do the work.  Everything BARM has done has

17   been to the letter of the law.  They now want to reap the

18   benefits of BARM's work and now suggest that somehow BARM

19   has behaved in an unseemly fashion.

20           Yes.  There's information that they may well need,

21   but they haven't demonstrated that, Your Honor.  Let them

22   make whatever motion they deem appropriate.  And by the way,

23   if they sought an injunction you would not grant it.  I'm

24   confident of that.  They do not meet the standard.

25           The last thing I will note is -- and Mr.

1    Kirshenbaum noted this.  There's no prejudice to BARM, he

2    says, because BARM has had the money for four years.  I

3    think the four years weighs against the relief that he's

4    seeking.

5             Moreover, it speaks to the credibility and

6    integrity of BARM.  The day that he commenced the --

7    actually, the day that he commenced the action in Religious

8    Court we could have distributed the monies.  We could have

9    done it any time during those four years.  We haven't been

10   running.  We haven't been hiding.  But we've never shied

11   away from our belief and our conviction that he money is

12   ours and we can distribute that money.

13            Now what -- among the things that Mr. Kirshenbaum

14   did not suggest BARM could do to make everything easier, but

15   it is something that I will suggest and I suggested it the

16   last time I was here, and we've also raised this with the

17   government.  We believe since there's approximately 22

18   million or whatever the amount is in assets and there's an

19   additional amount that is illiquid which we're working on

20   valuing, when we were here last, Judge, we -- you talked

21   about putting everything on hold for six weeks.  And I spoke

22   perhaps out of turn and I said, I really don't want to be

23   here six weeks from now and here the parties haven't done

24   what you've directed them to do.

25            And that's precisely where we are.  We provided

1    the government with all of the information they requested,

2    with the loss affidavits, the supporting documentation.  The

3    petitioning creditors have not managed to do that in six

4    weeks.  They're here to delay and delay and delay, to wear

5    us down until at some point we throw up our arms and we give

6    up on the actions that we commenced against them in State

7    Court where they do have exposure.  And at that point this

8    will all come to an end.

9              One final thought is with respect to an

10   injunction, we don't believe they would be entitled to it.

11             With respect to any type of adversary proceeding,

12   I don't understand why Mr. Kirshenbaum is shocked that

13   that's what we think would be required.

14             That's all I have, Your Honor.

15             THE COURT:  So you're saying that the 2004 request

16   is premature because even though you have a stated intention

17   -- and I'm going to ask you about that stated intention in a

18   moment -- to have BARM make a distribution, no determination

19   with respect to that distribution has yet to be made.  And

20   you're saying that certainly Mr. Kirshenbaum and his clients

21   would not be prejudiced because they would have the

22   opportunity to seek whatever appropriate remedy or relief,

23   whether it's in this Court or in the District Court, with

24   respect to any distribution of those assets.

25             So you're saying that the 2004, the discovery is

1    premature?

2            MR. WASSERMAN:  Yes, Your Honor.

3            THE COURT:  Okay.  Thank you.

4            MR. KIRSHENBAUM:  Your Honor, a few points that I

5    think just are important to complete the record.

6            First of all, Your Honor, in our initial motion

7    papers we included various exhibits to our initial motion

8    that were included in -- together with the affidavit of my

9    colleague, Mr. Agudelo, and Exhibit 5 is the letter that we

10   sent to -- or the email that I sent to Mr. Wasserman and to

11   Mr. Jacob on the evening of October 2nd.

12           And in that letter, Your Honor, I delineated seven

13   categories -- I'm sorry -- eight categories of document

14   information that we were requesting with respect to this

15   issue, very tailored, very specific in terms of what we were

16   asking for.  And, again, we made it part of our initial

17   motion so that Your Honor would see that we didn't simply

18   come running into court for 2004 relief, although we could

19   have.  But we tried to get this matter resolved, but they

20   just ignored our request for information.

21           Your Honor, in addition I want to point out that

22   in the hearing on September 30th, the last time we were in

23   front of the Court, Mr. Caffaroni agreed with our position

24   that there should be no distribution at the present time.

25   In fact, he said, and I'm quoting from page 57 of the

1    transcript of the September 30 hearing, and this is -- he's

2    talking to -- he's addressing the Court about the general

3    process and the general forfeiture process and the process

4    of trying to locate victims and so forth.

5           And he says, Your Honor, beginning at line 18 on

6    page 57, "I would also suggest that to the extent Your Honor

7    has the authority that it would seem to make sense that no

8    distribution, if Your Honor can order them or direct them

9    not to make distributions while we compile that list to

10   ensure that everyone is -- gets an opportunity to be heard,

11   that would seem to make sense so that we don't have to worry

12   about one victim getting excluded.  And so that would be a

13   suggestion of mine.

14          Now then he went on to say that he was -- he was

15   suggesting a four to six-week period to get in the proofs of

16   loss, the affidavits of loss and so forth.  But I think,

17   Your Honor, that statement of Mr. Caffaroni is quite clear

18   that he is in agreement that to the extent that this Court

19   has the authority, the appropriate result would be for the

20   Court to enjoin any distribution.

21          Now whether the Court, Your Honor, has that

22   authority and under what provisions of the code that

23   authority may exist, that's not before the Court today.

24   That's not before the Court today.  And, Your Honor, I can

25   stand up here and say all sorts of -- make all sorts of

1    claims and accusations against BARM and that wouldn't be

2    evidence.  Your Honor really couldn't take any of that into

3    account.

4            And similarly, Your Honor, BARM can stand up in

5    front of the Court and say, we're not an insider.  The

6    insider rules don't exist.  There's no basis for equitable

7    subordination.  That doesn't exist.  We received valid

8    assignments.  It's very nice that Mr. Wasserman stands up

9    and tells the Court -- this -- he's making your job easier.

10   Judge, you don't have to look into what we've done.  I'm

11   telling Your Honor that we have valid assignments and

12   everything that we got is -- we got it.  We're entitled to

13   it.  They don't have a claim to it.

14           That's not his job.  That's your job.  That's your

15   job.

16           In the DeLorenzo case, the debtor was still

17   holding the assets.  The debtor was proposing to distribute

18   the assets.  The law firm, one of the petitioning creditors

19   was concerned about that.  Obviously, Judge Garretty said,

20   since it's the creditor that you're worried about -- since

21   it's the debtor that you're worried about in terms of an

22   inappropriate distribution, you should be taking -- you

23   should have taken discovery of the debtor.

24           Well, obviously, there since it was the debtor

25   that was holding it, that -- the debtor was the appropriate

1    target, if you will, for lack of a better term or subject is

2    a better term of a Rule 2004 examination.

3            Here, we're not concerned about Mr. Barkany making

4    a distribution or we would be taking a 2004 examination or

5    seeking the 2004 examination of Mr. Barkany.  Here, he

6    turned over everything, lock, stock and barrel to BARM, to

7    their lawyers, to their accountants pursuant to agreements

8    that we haven't seen.  Maybe.  Maybe there aren't even any

9    agreements.  Maybe there are no assignments.  I don't know

10   what there may be.  Your Honor doesn't know what there may

11   be.  But Mr. Wasserman tells you, Judge, don't worry because

12   if they were to ask for an injunction you wouldn't give it

13   to them.

14           I mean, Your Honor, I -- with no disrespect that

15   is not a valid argument.  He's telling you, you don't have

16   to worry.  He's telling me, you have nothing to look at

17   because everything's good.  Everything's fine.  I've got

18   everything and I got everything pursuant to agreements that

19   are absolutely bullet proof.  They are rock solid, and we

20   did everything correctly.  And so, therefore, you have no

21   basis to hold us as an insider and you have no basis to

22   equitably subordinate.  I don't have a clue as to any of

23   that, Your Honor.  The Court doesn't have any idea, has no

24   information and --

25           THE COURT:  Well, it's as I said.  There's no

1    admissible evidence.  While Mr. Wasserman, as expected,

2    makes a cogent argument --

3              MR. KIRSHENBAUM:  Right.

4              THE COURT:  -- I can only assume that at some

5    point, to the extent we have to litigate these issues, he is

6    going to have evidence in admissible form to convince us

7    that his argument is correct.

8              MR. KIRSHENBAUM:  That's correct, Your Honor.

9              THE COURT:  And I'm assuming that you'll have --

10             MR. KIRSHENBAUM:  But we -- what we need --

11             THE COURT:  -- you'll have --

12             MR. KIRSHENBAUM:  -- what we need --

13             THE COURT:  -- similar evidence.

14             MR. KIRSHENBAUM:  -- is status quo.  That's -- we

15   need a status quo and I can't -- I -- if Mr. Wasserman wants

16   to agree that if we -- if he goes forward with his stated

17   intention and we file an adversary proceeding to block him,

18   that he goes on the record today on behalf of BARM saying,

19   Judge, if they file an adversary proceeding we will not

20   distribute until the adversary proceeding is concluded, then

21   I'll wait six weeks.  We're kind of just -- we're spinning

22   our wheels, Judge.  I mean, what are we gaining?

23             But I'll wait.  I'll wait till he sends the Court

24   -- he sends Your Honor the written notice.  We'll file our

25   complaint, and if he agrees he won't distribute so long as

1    the complaint is filed, fine.  We'll wait the six weeks.

2    Maybe he'll change his mind.  Maybe he'll wake up tomorrow

3    and say, you know what, I'll wait till after the bankruptcy

4    is over.

5           But how can he possibly suggest -- I -- it's

6    almost an insult.  He suggests that he'll -- we'll file our

7    complaint and then we'll -- then we'll start to get what we

8    need.  But in the meantime he distributes because Your Honor

9    won't be able to enter any type of restraint because we

10   can't make out any type of a case.

11          Your Honor, I think that this record is abundantly

12   clear that we're entitled to everything we're asking.  And,

13   again, I certainly agree with the Court.  We would serve a

14   subpoena.  We'll serve a subpoena.  We will delineate

15   exactly what categories that we want.  We're prepared to do

16   it very quickly.  I would certainly, Your Honor, endeavor to

17   get that subpoena to Mr. Wasserman Monday at the latest.

18   And give him a few days to object.  We'll try to work it

19   out.  And then we'll deal with it.

20          But I need to deal with it within the time frame

21   that I can get the documents in time to be able to utilize

22   them to come into court and make a cogent case and not

23   insult the Court, just speaking things without proof, but

24   making a case to this court that I believe Your Honor will

25   stand.  And right now I can't do that and there's no way we

1    can do that and that's exactly what 2004 is there for.

2    That's exactly what it's there for.

3            So, Your Honor, I suggest, Your Honor, that the

4    record is clear and I would urge the Court to enter the

5    order so that we don't -- we don't lose any more time.  We

6    don't lose any more time, Your Honor, and I don't want to

7    get into things about late filings or anything.  You know,

8    the bottom line is, Your Honor, they had -- they had many

9    weeks to respond.  We were very generous in the time we gave

10   them to respond.  Yes, they said, we served the initial

11   motion on the eve of a holiday.  Yes, we did, because that

12   was as quickly as we could get the papers out.

13           And we gave them, Your Honor, ultimately weeks to

14   respond.  And I gave them, Your Honor -- we didn't have to

15   do this.  I gave them till last Thursday to file their

16   opposition papers.  They had weeks.  But I was very

17   specific, Your Honor, that the papers had to be filed by

18   5:00 on Thursday.  There was a reason for that, Your Honor,

19   because 5:00 that would still give us Thursday night to

20   start working on the reply papers.  They served the reply

21   papers, they filed the reply papers 11:59.  Now these are

22   not such complicated reply papers, Your Honor.  So basically

23   we were not -- we lost Thursday night.

24           Your Honor is aware that basically I'm a Sabbath

25   observer.  The days are very short.  We basically had to

1     start working on those papers, Your Honor, on Sunday and

2     Monday.  We didn't get those papers in till Tuesday.  Those

3     papers, again, are very simple.  They say let -- they have

4     no right -- they would have had no right to reply, a

5     surreply if he filed it on Monday.  They should have no

6     right for a surreply on Tuesday.

7               Mr. Wasserman has said nothing which rebuts our

8     entitlement to take this 2004 examination, and I would urge

9     the Court, Your Honor, to enter the order today so that we

10    can start moving forward and getting some progress.  I don't

11    know what they're afraid of.  You know, the more they yell

12    and scream, we don't want to give them the documents, we

13    don't want to give them the documents, it makes you wonder

14    why they don't want to give us the documents.  What are they

15    afraid of?  They've got documents.  They've got properties.

16    Let us see it.  What are they afraid of?  If I got document

17    -- if I was going to move forward, I wouldn't be afraid if

18    they're okay.  Take them.  Look at them.  Look them upside

19    down, inside out, anyway you want.

20              If there's something wrong, Your Honor, then we're

21    -- we are entitled to bring it to the Court.  If after

22    reviewing the papers we think, you know what, they have an

23    entitlement to move forward, I guess we'll have to swallow

24    it.  But we're certainly entitled to understand that and to

25    examine that.

1           THE COURT:  Thank you.  I would like -- also, I'll

2     give you the opportunity and that will be it -- the

3     opportunity for Mr. Wasserman to respond.  But one of the

4     things, do indeed address the issue of the stated intention

5     to possibly make a distribution of those assets.  And, also,

6     I did recall -- that's what I was looking at as well -- what

7     Mr. Caffaroni, if I'm pronouncing his name correctly, had

8     said at the last hearing about how it would be better to

9     wait on the distribution until we sort of know the universe.

10    And I'm assuming that Mr. Wasserman would say, well, you

11    know, we complied with the request of the U.S. Attorney and

12    got our information there.  And so why should someone be

13    rewarded for delaying in getting their information.

14           So you don't have to make that argument.  But I do

15    want to know the issue of the potential distribution and how

16    it sort of reconciles with the thrust of what the U.S.

17    Attorney's Office is also trying to have done here with

18    respect to the universe of the victims.

19           MR. WASSERMAN:  Very good.

20           I actually got sidetracked.  Mr. Januzzi was

21    clicking is pen and I lost my train of thought earlier.

22       (Laughter)

23           MR. WASSERMAN:  I was talking about -- sorry.

24           THE COURT:  Don't break his concentration.

25           MR. WASSERMAN:  I was talking about what we would

1    offer to break through the log jam and what I would think

2    would be acceptable to the court, to the government and

3    ultimately to the petitioning creditors.

4           I would begin with the fact that, one, the Borgata

5    is not a victim of the Ponzi scheme.  The amount they seek

6    is roughly $240,000.  And that obligation will be discharged

7    in this court.  I've looked at an abundant number of cases

8    and that's a dischargeable debt and I expect it would be, or

9    it will be so far at the end of the line that they will

10   never see a penny.

11          With regard to Mr. Rosenberg, I think what we

12   heard today is that his claim is approximately $479,000 with

13   some change up to the date of Mr. Barkany's arrest.

14          With regard to Mr. Kessler, we've been told the

15   net loss is $68,924.53.

16          And then I think this is with respect to Mr.

17   Rosenberg, post-arrest amounts, money that he's given to

18   support Mr. Barkany and his family, if you total that with

19   the $479,000 I believe the number was approximately $682,000

20   and change.  So if you take the 682,000 and change, you take

21   the $68,900, you're well under a million dollars.

22          What we were speaking to the government about, and

23   in the past I've spoken to other parties involved in this

24   litigation and if Mr. Caffaroni were here he would verify

25   this and perhaps he will the next time we're here.  And this

1    is something that I had proposed to the Court.  We have no

2    objection to holding back an amount of money that would be

3    sufficient to cover and then some the claims of the

4    petitioning creditors.  We would even go so far as to double

5    that amount so that we would also cover the claims of any

6    people in the universe of potential creditors.  Although I

7    will say with the information that we provided to the

8    government, we don't believe that that amount would even

9    approach a half a million dollars.

10           Ultimately, we believe we have the right to make

11   the distribution.  For tax reasons we will need to do that

12   before year end.  And we have no objection to holding back

13   amounts that would be sufficient to satisfy the claims of

14   the petitioning creditors.

15           I would be happy to put a more formal proposal in

16   writing.  I intend to raise this proposal with numbers.  I

17   told Mr. Caffaroni when we last met that I would try to put

18   pen to paper.  What I couldn't do is because I didn't have

19   the information is how much the petitioning creditors were

20   actually claiming.  If you believe -- if you remember, their

21   petitions say not less than or something like that.  We now

22   have the amounts.  We're willing to make sure that we cover

23   those amounts and then some.

24           So our intention is ultimately to put the Court

25   and to put the petitioning creditors in a position where, in

1    essence, it's like posting a bond.  We will make sure that

2    whatever money is necessary to satisfy their claims, no

3    matter what the result in these bankruptcy proceedings, that

4    money will be set aside.  The balance we do intend to

5    distribute.  We believe we have the right to do so and we

6    don't believe there's -- there is a proper motion before

7    this Court that would prevent us from doing so.

8                Did I address your question?

9                THE COURT:  You certainly addressed the issue of

10   the distribution and I'm assuming that Mr. Kirshenbaum now

11   has to make a determination whether or not he wants to move,

12   as I said whether it's in this court or in the District

13   Court, for whatever relief he believes he needs to prevent

14   that distribution, but also take that into account that the

15   proposal -- and obviously it's not in writing.  It hasn't

16   been submitted to you and I'm assuming that that would

17   happen.  There's the proposal to set aside a reserve to

18   cover the potential claims of Mr. Rosenberg and I guess it

19   was Mr. Kessler, but not for the Borgata, but that's

20   something that --

21               MR. WASSERMAN:  We would --

22               THE COURT:  -- the parties can discuss if this

23   ever proves to fruition with respect to reserving funds.

24               MR. WASSERMAN:  We would even include funds

25   sufficient to cover the Borgata's claim.  I will go even

1    further, Judge, what -- this is a -- this is a complicated

2    case.  It has become very complicated.  There are a lot of

3    moving parts.

4           But what we were -- what we were hopeful of doing

5    is if we could put aside sufficient funds to cover the

6    claims of the petitioning creditors, I would also say with

7    regard to the Northern Canada victims, the victims of the

8    second fraud, we've already discussed with them and we've

9    shared this with the government as well, there are certain

10   amounts that we received which they claim clearly came from

11   their clients.  And we will, subject to the government and

12   the Court's approval, we will either return those monies to

13   them or include them in some sort of escrow arrangement.

14   They think the amount is higher than the amount that we've

15   identified.  We are working with them on that.

16           I will also work with Mr. Kirshenbaum or any of

17   the counsel for the petitioners towards coming to an

18   agreement on concrete numbers.  I think we can address the

19   actual dollar amounts and then some that the petitioning

20   creditors are seeking.

21           Where it becomes difficult, and I'm not sure I

22   know the answer to this yet, but we're working on it is it's

23   always been our position that the reason we're in this court

24   is because we commenced lawsuits against the petitioners and

25   to stop those lawsuits to have the stay go into effect they

1    commenced this action.  So, ultimately, setting aside the

2    amounts that would cover their direct losses that they claim

3    doesn't address the larger issue of what happens to those

4    lawsuits and what happens to those claims.

5           We do believe, though, that if we're able to set

6    aside money to address their direct claims to make a

7    distribution to our clients, that will relieve a lot of the

8    pressure and tension and simplify what we have to deal with

9    going forward because, ultimately, what you will then have

10   is a limited number of lawsuits.  And I think all of the

11   parties now have a clear sense of just how much they're

12   willing to spend to go to war over this, and perhaps with

13   that information it will inform all of our judgments as to

14   whether claims are worth pursuing, whether they should be

15   compromised and help us get there.

16          So what I'm suggesting is that -- I believe we are

17   making progress and there's a path towards the resolution of

18   this.  And with respect to the Borgata issue,

19   notwithstanding the disagreements about the claim, we are

20   prepared to put money aside to make sure that that claim is

21   satisfied if they ever do end up with an enforceable claim

22   in this court.

23          But we do need to make a distribution, and I think

24   what I've outlined -- and, again, we're happy to present a

25   concrete proposal -- is more than sufficient to satisfy any

1    standard that would be necessary to protect the petitioners

2    and their claims here.

3              THE COURT:  And the timing of that potential

4    distribution?

5              MR. WASSERMAN:  I think the distribution is tied

6    somewhat to the accountants completing their work.  They

7    need to file tax returns.  The delay to some extent has been

8    -- and this is -- we'll elaborate somewhat on something

9    we've said in the past.  Contrary to Mr. Kirshenbaum's

10   assertions, and I'm sure Mr. Caffaroni would support this

11   now that he has our documentation, our clients simply didn't

12   total up the money they invested and say, those are our

13   losses.  Mr. Belski has been working for some time in trying

14   to determine precisely how much we're -- was received in

15   profits by each of our clients and how much they lost to

16   come up with a correct number.  We've been working at that

17   for quite some time.

18             So until we had that number for each of our

19   clients we were unable to file the tax returns.  There are

20   also issues related to valuation of property.  It's far more

21   complicated than I can understand.  The accounts appear to.

22   But we do see that there is a need to do something before

23   year-end.

24             THE COURT:  Okay.  Thank you.

25             Mr. Kirshenbaum, let's take a step back and deal

1    with this potential distribution which really now has been

2    more than a stated intention.  They certainly expect that

3    they're going to try and make a distribution before year-

4    end.

5            So we take a step back and let's look at this from

6    just a practical standpoint.  Let's be pragmatic.  If the

7    Court were to grant 2004, that would be the authority for

8    you to issue the subpoena, which then would give BARM the

9    opportunity to move to quash the subpoena or to move for a

10   protective order.

11           But in the meantime I'm sure you're going to be

12   concerned by Mr. Wasserman's statement that they intend to

13   make this distribution.  So then you would have to then, as

14   I said, either move in this court or move before the

15   District Court somehow, someway seeking a remedy to prevent

16   the distribution of those funds.  And to the extent you're

17   going to take discovery, that discovery is going to be

18   controlled by the Federal Rules of Civil Procedure.  It's

19   not going to be controlled by the Bankruptcy Rule 2004.

20           So I'm trying to understand, are we just going to

21   engage in an exercise in futility.

22           MR. KIRSHENBAUM:  I -- I don't see --

23           THE COURT:  You're --

24           MR. KIRSHENBAUM:  Judge --

25           THE COURT:  Well, you're going to -- if I were to

1    grant the request --

2              MR. KIRSHENBAUM:  Right.

3              THE COURT:  -- for the 2004, you're going to issue

4    the subpoena.  I'm assuming, since they've already said that

5    the documents that you're requesting they believe are

6    overbroad and are burdensome.  And as I said they certainly

7    have the right to move to quash the subpoena or move for

8    protective order.  But in the meantime, you still have this

9    issue of their potential distribution of these assets.

10             MR. KIRSHENBAUM:  Your Honor, I can only do the

11   best I can do.  There are litigations.  Your Honor, when you

12   were practicing you were party to many of them where

13   discovery is done on a very, very expedited basis.

14             THE COURT:  Understand that's --

15             MR. KIRSHENBAUM:  These --

16             THE COURT:  -- my point.

17             MR. KIRSHENBAUM:  Right.

18             THE COURT:  My point is, is that --

19             MR. KIRSHENBAUM:  I'm prepared --

20             THE COURT:  I mean, at some point you're going to

21   take a step back after today's hearing and realize that,

22   well, they may be moving to distribute these funds and now

23   you have to either say to yourself, okay, the proposal by

24   Mr. Wasserman is a fair proposal.  He's going to reserve

25   sufficient funds to take care of or -- I am not making a

1    finding on this or a ruling.  He is proposing to reserve

2    sufficient funds, actually more than sufficient funds to

3    capture the claims that Mr. Rosenberg, Mr. Kessler and even

4    the Borgata, you know, have here when he makes the

5    distribution.

6            You have to say yourself, well, are we satisfied

7    with that or should we seek some type of relief from the

8    Court, injunctive or otherwise -- I leave that up to you --

9    to prevent the distribution.  And you may have to do that,

10   yes, on an expedited time table and ask for discovery on an

11   expedited time table, making the argument that we want to

12   enjoin the distribution, but we certainly need discovery in

13   order to make our case as to why we're entitled to the

14   injunctive relief or whatever other remedy you're going to

15   seek.

16           And what I'm trying to do is sort of minimize the

17   process here or the efforts and the costs.  Are we going to

18   go through an exercise in futility of entering a 2004,

19   giving them the opportunity to oppose the document requests

20   under the 2004, and then suddenly be faced with a summons

21   and complaint and a motion seeking injunctive relief or some

22   other relief of which now you're going to ask for discovery

23   and partake in discovery under the Federal Rules of Civil

24   Procedure.

25           So then again, all of that may be -- maybe

1    ameliorated by your agreeing that the proposal that Mr.

2    Wasserman will submit in writing to both you and I guess to

3    the U.S. Attorney's Office about holding monies in reserve,

4    maybe that's acceptable to you.

5             MR. KIRSHENBAUM:  I -- I'm not sure I'm

6    understanding Your Honor's question.  I can only respond the

7    following, Your Honor.

8             I -- as I said, with all due respect I believe

9    that we are absolutely entitled to this discovery.

10            Given what BARM has stated in terms of their

11   intention, I would ask the Court right now to work out a

12   schedule.  As I said, I'll commit to serve our subpoena no

13   later than Monday, I would ask -- they can put in their

14   objection to that -- it's going to list nine or ten

15   different categories of documents.  No reason that they

16   can't put their objection to that Tuesday or Wednesday.  If

17   they're going to -- they know right now they're going to

18   object, they don't want to give us anything.

19            THE COURT:  They're going to have a period of

20   time.  If the Court is inclined to issue the Bankruptcy Rule

21   2004 --

22            MR. KIRSHENBAUM:  Right.

23            THE COURT:  -- the order will be issued giving you

24   the authority to issue the subpoena --

25            MR. KIRSHENBAUM:  Right.

1              THE COURT:  -- and they are have a period of time,

2     14 days at least, within which to move to quash or move for

3     protective order.  I'm got going to abridge their rights to

4     address the subpoena, just like by granting a 2004 I'm not

5     abridging your rights to seek the discovery.  But it's not

6     going to be an issue where, you know, they're going to have

7     24 hours in a turnaround because we have to really look

8     again and they have to focus in on the laundry list of

9     documents.

10             And that's why my point was I don't want to have

11     the parties engage in an exercise in futility if within the

12     next four or five days you now seek to file some type of

13     pleading -- again, whether it's here in the District Court

14     -- file some type of pleading to enjoin the distribution of

15     those funds and then start discovery under the Federal Rules

16     of Civil Procedure.

17             MR. KIRSHENBAUM:  Your Honor, they cannot -- based

18     on the agreement that we have they cannot seek to give the

19     notice to -- of an intention to distribute for another

20     couple of weeks, and then of course they have to give the

21     Court notice, presumably the Court has to give everyone else

22     notice.

23             And the fact that they say that they have to do

24     this because of tax concerns, that's always a tax

25     considerations, it's a great buzz word, okay?  They -- they

1    are taking the position that telling Your Honor it's ours,

2    these are our assets, we own them, in fact we own them and

3    we're already talking to the Canadian northern people about

4    divvying them up, there are certain underlying assumptions

5    here that they're making that may be totally invalid.

6             And with no disrespect, Your Honor, they -- there

7    is sufficient time, even between now and the end of the

8    year, for them to deliver documents, agreements they can

9    certainly give, they've been already sharing information

10   with Mr. Jannuzzi, they can certainly hand over -- for

11   starters everything they've given to Mr. Jannuzzi.

12            There is no question that Your Honor has the

13   authority and it would be in my -- from my perspective, Your

14   Honor, completely appropriate for -- if -- for you to

15   establish a very, very tight timetable.  If Your Honor is

16   starting off by saying that Your Honor would not require

17   them to respond to a subpoena for at least ten days, well, I

18   think then a timetable may be set up that may create an

19   impossibility.  I don't know.

20            But I do know, Your Honor, that in appropriate

21   circumstances documents -- certainly now we're simply

22   talking about objecting to a subpoena so that Your Honor can

23   deal with any objections to the document production request,

24   and why they would possibly need ten days to file an

25   objection to a subpoena under these circumstances when they

1    are saying they need -- they are compelled to do the

2    distribution before the end of the year.  If they wand to do

3    that, if it's so compelling then they have the burden of

4    giving the other side what's necessary so that there'll be a

5    fair fight.  It's just -- it's --

6              THE COURT:  When I throw out the days,

7    Mr. Kirshenbaum, I was just telling you it's the general

8    policy --

9              MR. KIRSHENBAUM:  Right.

10             THE COURT:  -- of the Court with respect to the

11   2004 to provide the responding party with 14 days within

12   which to move to quash or file a protective order.  I

13   certainly can tell you that that timetable has been -- has

14   been abridged in certain instances, so the Court would look

15   at that well.

16             My whole point that I guess started this

17   discussion was that I was concerned about parallel tracks

18   and parties wasting time.  But if it's not the inclination

19   to immediately move for some type of injunctive or other

20   relief to present -- prevent BARM from distributing these

21   assets, and I saw that Mr. Wasserman sort of shook his head

22   when you said that they have several weeks left before they

23   can fulfill that stated intention to distribute the funds.

24             So, I don't know if you want to speak to that

25   particular point, because you did say that there's

```
1    additional time before BARM can give notice to say they're
2    going to distribute any of those assets.
3              MR. WASSERMAN:  We have a disagreement as to the
4    timing.  Your Honor, I'd prefer not to get into it at this
5    point.
6              I think I've made a proposal and a commitment to
7    this Court with regard to reserving money, which should
8    address every concern that Mr. Kirshenbaum has with respect
9    to the 2004 exam information that he needs or claims to need
10   at this time.  He's concerned that we're going to make a
11   distribution that will prejudice his clients.  We will put
12   aside the money to make sure that that doesn't happen.  That
13   should resolve it.
14             To the extent that his real goal is that there
15   never be a distribution, which clearly is the goal, then the
16   2004 examination is totally unnecessary and redundant,
17   because he will move for an injunction, whether in this
18   court or the District Court, and he'll take whatever
19   discovery he's entitled to there.
20             MR. KIRSHENBAUM:  Your Honor, the goal is, as we
21   said out front, that there not be a distribution here until
22   the involuntary proceeding is determined.
23             If this case, Your Honor, continues in bankruptcy
24   I think it would be hard to conjure a scenario where the
25   Court would not be in agreement that it would be completely
```

1    inappropriate for BARM to distribute the assets before all

2    these issues in terms of insider whether it's proper,

3    whether BARM really does own these assets, whether BARM did

4    engage in proper conduct or in inappropriate conduct, in

5    wrongful conduct.  Well these are all very basic issues, and

6    if they're basic issues, if the case is in bankruptcy they

7    can't be any less basic during the involuntary period.  They

8    can't.  So it's not -- it's not necessarily Mr. Kirshenbaum,

9    there -- I don't know what other creditors there may be out

10   there.

11        Again, you've heard there has been no widespread

12   trumpeting, there having no banners, there have been no

13   headlines you have six weeks to establish your loss.

14   There's been no judicial finding in terms of what BARM's

15   real claims are.  Mr. Belski determined the real amount is

16   $50 million.  I mean these are all things that ultimately if

17   the case stays in bankruptcy the Court decides, not them.

18        So yes, Your Honor, we are, if they're going move

19   forward, we will certainly seriously look into and try to

20   enjoin it if we think it's proper, but all that we're saying

21   now, Your Honor, and all that we've said since September --

22   since October 2nd when we sent them a detailed letter,

23   please give us the following categories of documents.  The

24   fact that they just ignored it, they ignored it.  They

25   totally ignored the request thereby forcing us to move for

1    2004 relief.

2              If there's -- it's so critical to them to have --

3    to distribute this year why did they ignore it?  Why aren't

4    they giving us the documents?

5              MR. WASSERMAN:  He's asked a question I'd like to

6    answer that question while it's fresh.

7              We were in this courtroom, Your Honor said there

8    will only be discovery with respect to Borgata, no

9    further --

10             MR. KIRSHENBAUM:  That is completely -- that is

11   complete --

12             MR. WASSERMAN:  -- or other discovery --

13             MR. KIRSHENBAUM:  That's completely wrong, Your

14   Honor.

15             MR. WASSERMAN:  -- in this case will go forward.

16             MR. KIRSHENBAUM:  That's completely wrong.  That's

17   completely incorrect.

18             MR. WASSERMAN:  Well whatever the transcript says

19   it says.

20             MR. KIRSHENBAUM:  That's correct.

21             MR. WASSERMAN:  Two days later Mr. Kirshenbaum

22   woke up and decided I need some discovery from you.

23             MR. KIRSHENBAUM:  The --

24             MR. WASSERMAN:  He didn't ask Your Honor when we

25   were all here, he didn't make a motion, he said, I need

1    discovery from you, so he sought discovery from us, that was

2    two days -- I believe it was two days after we were here.

3              So it's not that I ignored the letter, Your Honor

4    had made a determination, we construed it as meaning that

5    you had decided what discovery would go forward and what

6    wouldn't, and quite frankly, I can't respond to every

7    thought that Mr. Kirshenbaum has that occurs to him.

8              THE COURT:  I think the context of that is that

9    that was in the context of obtaining discovery against

10    Rosenberg, Kessler, and Borgata, and we were just trying to

11    limit the parties resources and the expense necessary.  We

12    thought we would address the Borgata claim and that might

13    moot the discovery that would be had with respect to Kessler

14    and Rosenberg.

15              MR. WASSERMAN:  But we were in this courtroom and

16    I pledged not to make a distribution for six weeks, and at

17    that point we were all focused on that issue.  It was at

18    that time -- maybe I misunderstood the scope of Your Honor's

19    ruling -- but it seemed to me at that time what occurred to

20    Mr. Kirshenbaum two days later should have been readily

21    apparent when we were all here, which is Judge, by the way,

22    we appreciate the fact that Mr. Wasserman is pledging not to

23    make the distribution and has given his word, there's

24    discovery we need in connection with that.

25              MR. KIRSHENBAUM:  And we filed the motion on an

1    expedited basis, Your Honor, two days later -- two days

2    later and they asked for more time, they asked for three

3    weeks.  And so we're nice enough to give him the three

4    weeks.  Okay, he didn't say anything we must distribute

5    before year's end, he said nothing about any tax imperatives

6    to distribute before year's end.  That, Your Honor, is

7    keeping something under his hat.  Because if he had said on

8    September 30, Judge, we are absolutely going to distribute

9    before year's end, we're going to -- I would not have given

10    him three weeks.  I was in here two days later on an

11    expedited basis.  I got an expedited date.  They asked for

12    three weeks and I gave them the three weeks, and, Your

13    Honor, I gave them to three weeks on the agreement that they

14    would not even be given notice for an additional three weeks

15    after that, and they're silent on that, and basically

16    they're saying, Kirshenbaum, you're a sucker, and that's

17    exactly what they're saying.

18         You're a nice guy, you filed the motion on --

19    whatever day in October it was, they would have been in

20    here, Your Honor, four weeks ago, five weeks ago, and I

21    could have pressed this four or five weeks ago.  They asked

22    for more time, I gave them more time.  They said nothing

23    about an imperative -- to distribute before year's end for

24    tax reasons, which generally speaking, Your Honor, is a lot

25    of nonsense.

1          THE COURT:  Well suffice it to say that they did

2    say that they had a stated intention of distributing before

3    year-end.

4          MR. KIRSHENBAUM:  Okay.

5          THE COURT:  Whether it's for tax purposes or for

6    whatever purposes Mr. Wasserman has stated that BARM intends

7    to make a distribution before year-end and he stated that he

8    would submit a proposal with respect to setting up a reserve

9    to assure that the distribution doesn't have an economic

10   effect -- this is based on his proposal and what his stated

11   intention is -- would not have an economic effect on

12   Mr. Rosenberg, Mr. Kessler, and the Borgata.

13         And as I said, this colloquy started because I

14   raised the issue, I didn't want this to be a futile exercise

15   if you were going to be moving immediately for injunctive

16   relief or such other relief to bar the distribution by BARM

17   and then suddenly we're thrust into having discovery under

18   the Federal Rules of Civil Procedure.

19         MR. KIRSHENBAUM:  Again, Your Honor, I don't know.

20   If I get my 2004 discovery, okay, and if they make a motion

21   to -- if they give notice to distribute I have my -- I've

22   had my 2004 discovery, I don't need then to start going

23   under the Federal Rules of Civil Procedure.  I have the

24   information and I either have the information sufficient to

25   come to this court or the District Court to get an

1    injunction while the action is pending or I don't.

2          They will also have an opportunity then, Your

3    Honor, in connection with that, which -- and of course

4    whenever you're talking about a temporary restraining order

5    or preliminary injunction there's also -- you know, I have

6    an issue of burden and then there's a balancing of the

7    equities, rather than simply the buzz word "tax

8    considerations."  They'll be able to come to the Court and

9    they will be able to make their case as to why it may really

10   be imperative to distribute before year's end or whether

11   there's really nothing to that at all.  And then the Court

12   will make a determination balancing the equities.

13          If I had my 2004 examination, if I have the

14   documents myself and -- I and my colleagues we can make a

15   determination as to whether we want to try to block and we

16   will -- and if we decide to do that, Your Honor, we will

17   then use the documentation presumably that we obtain during

18   2004 in order to do that.  And we'll either make the case or

19   we won't.

20          And if it comes to this, Your Honor, if

21   Mr. Wasserman wants to take the position that they did not

22   make a commitment and the extension was not given on the

23   basis that they would not give the notice to the Court for

24   at least a three-week period then we'll come -- we'll have a

25   hearing on that too.  Because I think you will see, Your

1    Honor, that this is one sided hand after another, and this

2    is very, very unfair.  It's very unfair.  What we're trying

3    to do is simply level the playing field.

4            Again, I would never -- I can't imagine what must

5    be in these documents that they would not have given me

6    these documents on October 2nd.  If they knew -- if they

7    knew they wanted to distribute why would they do this?  Why

8    would they do this?  They wanted to have tax consideration?

9    On October 2nd I asked them, I delineated eight categories

10   of documents, give them to me on the 3rd.

11           To refuse to give them to me, to ignore it and now

12   say too late, that's just not the way things happen.  Not in

13   this court, Your Honor, not in any court, and it's totally

14   unfair.  It would be totally unfair.  It would be -- it

15   would be a potential tremendous abridgment of everyone

16   else's rights, and we don't know the universe of creditors,

17   we don't know.  The fact that he says there are no other

18   creditors, the fact that he says I'm speaking to Canadian

19   northern and they say some of this stuff is theirs, I mean

20   it's like they're simply taking the pie and they're deciding

21   how to divide it up.

22           We're in the Bankruptcy Court, we're in front of

23   the United States bankruptcy judge, Mr. United States

24   bankruptcy judge you don't have to bother yourself with any

25   of this stuff.  The creditors who are concerned about this

1    we'll just throw in enough money for them.  That's not the

2    way the process works.  That's just not the way the process

3    works.

4            Your Honor, I with utmost respect I would urge the

5    Court to enter an order giving us to right to take the 2004

6    discovery, I will -- I will endeavor to get that stuff and

7    work very quickly, I am not looking for delay.  None of us

8    are looking for delay, but we are looking for fairness, and

9    we are looking for the opportunity to understand the record.

10    And if they're not hiding anything, Your Honor, they should

11    be -- they should be at my doorstep or inviting me to their

12    doorstep later today with all the documents.  Here, come in,

13    look, we have nothing to hide.  Look 'til your hearts

14    content because you'll find nothing.

15            THE COURT:  I thank --

16            MR. KIRSHENBAUM:  I don't want to waste my client

17    -- I'm not looking to waste my client's money, but I am

18    looking, Your Honor, for fairness, I am looking for due

19    process.

20            THE COURT:  Thank you.

21            MR. WASSERMAN:  Your Honor --

22            THE COURT:  I saw that Mr. Wasserman jumped up and

23    so I will give you one last opportunity before I rule on the

24    2004's.  Is there something you need to say?

25            MR. WASSERMAN:  I think at some point all argument

1    must come to an end, so I have nothing further.

2              THE COURT:  Thank you.  I appreciate that.

3              Mr. Jacob?

4              MR. JACOB:  Your Honor, I sit here and I've

5    listened to all of this and if you'll indulge me for only

6    five minutes or less, but sometimes I hear things and I feel

7    I have to put them back in context.

8              We're all representing clients, I've been doing

9    this for almost 30 years, I have some gray hair, you do too,

10   we've seen a lot of things.

11             Mr. Kirshenbaum, whatever his understanding was of

12   what happened before at the last hearing, he was here two

13   days later and he served us with his discovery motion one

14   hour before the Jewish holiday, okay?  We were not able to

15   do anything Wednesday night, Thursday, Friday, Saturday.  We

16   would have had to work Sunday and the answer was due again,

17   I believe either Tuesday or Wednesday, those days were also

18   holidays, I was not working.  Mr. Katz who works in it also

19   was observing.  And the following Wednesday night is that

20   same holiday over again.

21             We asked him for time because he violated this

22   Court's rules of civility, okay?

23             MR. KIRSHENBAUM:  Your Honor, I really --

24             THE COURT:  Mr. Kirshenbaum, please.

25             MR. JACOB:  Okay?  We would never have done that.

1        THE COURT:  Let him finish.

2        MR. KIRSHENBAUM:  That's just --

3        THE COURT:  Let him finish.

4        MR. JACOB:  We would never have done that to

5    Mr. Kirshenbaum.

6        Mr. Kirshenbaum comes here and he makes half

7    statements, he makes representations.

8        You've heard today we put in our affidavits, we've

9    documented that net of everything our clients have lost more

10   than $50 million, and that doesn't include money that we had

11   to add to stabilize some of these assets out of our clients'

12   pockets, which is another reason that some of our clients

13   want money back.

14       Mr. Kirshenbaum gets up and says things.  I don't

15   know whether he knows that they're untrue or whether he just

16   doesn't know, but when he talks about Mr. Groman bringing in

17   $46 million, and just to give you an example, and that maybe

18   some of that money was made earlier on legitimate

19   investments because he didn't lose it until the end, he

20   knows that Mr. Groman came in at the very end, only in 2010,

21   and therefore, the reason that his losses occurred at the

22   end is because he didn't invest before then.  I assume

23   Mr. Kirshenbaum knows that because his client is one of the

24   people who introduced Mr. Barkany to my client, Mr. Groman.

25   So he knows about all this.  He gets up and makes these

1    statements to the Court.

2            And I don't take him up on 1 out of even 20 of

3    these statements, but ever so often I get up and say, I'm

4    not saying that he's lying, but he doesn't know what he's

5    talking about, and not everyone who doesn't know what he's

6    talking about is entitled to a 2004 order.

7            So, we'll leave it up to you.  We propose the

8    reasonable proposal, we're ready to protect

9    Mr. Kirshenbaum's clients, the petitioners.

10           Mr. Kirshenbaum has yet to level with this Court.

11   We heard today about another client.  He has yet other

12   clients.  He had not yet told this Court about all the

13   clients he represents, and maybe we'll bring that issue

14   before the Court, but we've made a proposal to protect him.

15           He keeps on coming here and asking to protect

16   people.  We don't know whether he does represent them,

17   whether he doesn't represent them, we've made a proposal

18   that's reasonable to protect his clients.  We made a

19   proposal that would allow them to get percentage wise more

20   money than we're proposing to pay our own clients.  Somehow

21   it's not enough that his clients are protected, because as

22   my partner, Mr. Wasserman, said, he is out to stop a

23   distribution.

24           We made a reasonable proposal and we would urge

25   Your Honor to deny this motion.

1              Thank you very much.

2              THE COURT:  Thank you.

3              All right.  With respect to the Rule 2004

4     examination requested by the petitioning creditors, based

5     upon the arguments advanced by both parties in their written

6     submissions and applicable case law and the record today,

7     the Court will grant the 2004 motion to the extent of

8     permitting the subpoena to be issued and providing the

9     opportunity of BARM to file a motion to quash that subpoena,

10    if they have grounds to do so, or to move for a protective

11    order, if they have grounds to do so, but I would urge that

12    the parties at least confer in good faith with respect to

13    any dispute over the production of the requested documents.

14    But the granting of the 2004 order does not in any way

15    abridge any rights of BARM to move as against that subpoena.

16             With respect to the submissions that would be

17    coming in on the 20th, right?  The 20th, the Court will

18    review that, and then we may have to adjust our timing and

19    our schedule with respect to hearing the issues on the

20    Borgata claim, but the Court will promptly let you know

21    whether or not we're going to keep the December 15th date.

22             To the extent that the parties are unable to

23    resolve any issues with respect to the subpoena the Court

24    then would have to hold a hearing on that -- on that

25    particular dispute.

1          MR. JANNUZZI:  Would I -- I would be filing a

2     motion to quash in any event.  The return date would be

3     fixed by the Court at a later date; is that correct?

4          THE COURT:  Your motion to quash the subpoena with

5     Mr. Barkany, we'll have to select a date for that.  We have

6     to look at our calendar.  It may be that the 15th becomes a

7     day to deal with motions to quash and we have to move the

8     hearing with respect to the challenge of the Borgata claim

9     to a date off of the 15th.  I'm a little reluctant to do

10    that, and we'll look at our schedule, only because that

11    means we're going to end up being pushed into January.  But

12    we'll look at our schedule and do the best we can, not only

13    for ourselves, but also to accommodate the parties as well.

14          So with that said -- and I also want to return to

15    the point that we will hold the hearing on the Borgata claim

16    and the involuntary, and to the extent -- I just want to

17    make sure that everybody understands and continues to plan

18    their schedules -- to the extent that the Court enters an

19    order for relief in this bankruptcy case we are going to set

20    on a rather expedited timetable a hearing date on the motion

21    that was brought by BARM to dismiss the case.

22          So, I just want everyone to realize that as you're

23    projecting out with respect to schedules, to the extent that

24    the order for relief is entered by the Court after we go

25    through the issues on the Borgata claim and address certain

1    issues with respect to Rosenberg and Kessler, as I said,

2    should the order for relief be entered we want to address as

3    expeditiously as possible the motion to dismiss, because of

4    course that has a tremendous impact on this case, because a

5    trustee will be appointed once the order for relief is

6    entered, and we need to address that motion to dismiss as

7    promptly as possible.

8            MR. KIRSHENBAUM:  Your Honor, may I just ask if --

9    and I will represent to the Court that we will file our --

10   we will serve our subpoena on BARM at the latest Monday, I

11   actually will try to do it tomorrow.

12           THE COURT:  Well certainly you have to wait for us

13   to enter the order, but --

14           MR. KIRSHENBAUM:  Oh, okay.

15           THE COURT:  -- once we enter the order then you

16   would have to authority to issue the subpoena.  But as I

17   said --

18           MR. KIRSHENBAUM:  Right.

19           THE COURT:  -- they're going to have an

20   opportunity to address that subpoena.

21           MR. KIRSHENBAUM:  Will the order -- Your Honor, if

22   I may -- if I may inquire, will the order actually set, you

23   know, timing in terms of giving them a certain period of

24   time to -- okay, thanks.

25           THE COURT:  Yes.

1           MR. KIRSHENBAUM:  Okay.

2           THE COURT:  The order will specify the time period

3     for BARM.

4           MR. KIRSHENBAUM:  Okay.  And then I guess

5     presumably also set up a further -- if we need further -- a

6     hearing on it, so that'll all be within the framework of the

7     order?

8           THE COURT:  Well it won't be in the framework of

9     the order, we'll set up a timetable for BARM and it'll be a

10    reasonable period of time for them to address the laundry

11    list of documents that has been requested, we'll set up a

12    reasonable period of time for them to address the subpoena.

13    To the extent the parties can't agree then we would have a

14    hearing to determine any motion to quash or motion for

15    protective order that BARM would bring.  But that hearing

16    date won't be built into the 2004 order that's issued, that

17    hearing date would be subsequent when BARM, should they file

18    a motion to quash or a motion for a protective order or

19    whatever other relief they would seek, they would contact

20    the Court and we would give them the hearing date.

21          MS. LEVINE-SHAPIRO:  Your Honor, I know we've been

22    here for a really long time, I just want to clarify one

23    thing very quickly.

24          You mentioned just a few minutes -- a few seconds

25    ago even, that you're revisiting the issues with regard to

1    Rosenberg and Kessler.  My understanding is that there were

2    no issues regarding Mr. Kessler's petition.

3                THE COURT:  There was no issue with respect to an

4    objection --

5                MS. LEVINE-SHAPIRO:  Yes.

6                THE COURT:  -- to the -- there was no challenge to

7    the claim of Mr. Kessler, but there was also the issue as to

8    whether or not BARM had standing with respect to Rosenberg,

9    and also we have that issue that we're briefing for next

10   week.

11               But yes, there was not a challenge to the claim

12   that was asserted by Mr. Kessler in the involuntary

13   petition.  I'm correct on -- my memory is correct, right?

14   Was there a challenge to Mr. Kessler's claim?  I know you

15   were seeking --

16               MR. JACOB:  Absolutely -- we do not believe --  we

17   believe that not only is there not a bona fide dispute, we

18   believe that Mr. Kessler is not owed money, that he owes us

19   money.

20               MS. LEVINE-SHAPIRO:  But you wish to ignore --

21               MR. JACOB:  And we believe that Mr. Kessler's

22   instrument by which he understands he is asserting a claim

23   that is the basis for the petition is an insufficient basis

24   for being the petitioner.

25               THE COURT:  Right.  So -- I'm sorry, to interrupt

1    you.

2              So in your objection, when you filed the objection

3    to the involuntary you filed an objection to both

4    Rosenberg's -- Mr. Rosenberg's claim and Mr. Kessler's

5    claim.

6              MR. JACOB:  Correct.

7              THE COURT:  All right.  Thank you.

8              MR. WASSERMAN:  My recollection is, and someone

9    will correct me if I'm wrong.  We filed with respect -- you

10   know what, I'll sit down.

11             Thank you, Your Honor.

12             THE COURT:  That's great.

13             MR. KIRSHENBAUM:  Your Honor, I just wanted to --

14             MR. WASSERMAN:  No.

15             MR. KIRSHENBAUM:  I just wanted to note, I think

16   what happened was that Your Honor -- Your Honor opined at

17   the end of the -- two hearings ago that, you know, that an

18   issue had been raised in terms of Barkany's ability to deal

19   with the father-in-law's claims --

20             THE COURT:  Yes, the whole standing.

21             MR. KIRSHENBAUM:  -- but not Kessler.

22             THE COURT:  Right.  The whole standing issue.

23   Mr. Barkany, you know, objected obviously to the Borgata

24   claim, the argument was made that for familiar relationship

25   -- familial relationships he did not object to the claim of

1    Mr. Rosenthal, but Mr. Barkany himself did not object to --

2                    MR. KIRSHENBAUM:  Correct.

3                    THE COURT:  -- the claim or challenge the claim --

4                    MR. KIRSHENBAUM:  Right.

5                    THE COURT:  -- of Mr. Kessler.  That challenge was

6    made by BARM.

7                    MR. KIRSHENBAUM:  Right, you differentiated

8    between the potentially Rosenberg as the father-in-law and

9    maybe there's some -- as a practical matter, practical

10   impediment which would allow them to argue as opposed to

11   Kessler where there was no -- if the debtor felt there was a

12   basis to challenge, you know, the debtor would challenge.

13   And so Your Honor did not -- Your Honor basically ruled that

14   there was no reason to deviate from the general rule that

15   only the debtor would have the right to challenge the

16   Kessler claim.

17                   THE COURT:  Right, but I will say that I did -- I

18   did find it curious that Mr. Barkany would object to the

19   Borgata claim based on information that he got from Belski

20   -- from Mr. Belski, but would not object to the claim or

21   challenge the claim of Kessler despite similar information

22   that he presumably got from Mr. Belski saying you don't owe

23   him any money.  So it's just something that I took note of

24   and I was just curious about that, but that's something for

25   another day.

1           So is that it?

2           MR. JACOB:  Yes, Your Honor.

3           THE COURT:  Well thank you very much for your

4    patience, you have been here quite some time.  And the Court

5    will let you know the timing of going forward with respect

6    to a hearing on the challenge of the Borgata claim and also

7    to the extent that there's going to be a return date on

8    motions to quash, the motion to quash the subpoena with

9    respect to Mr. Barkany, and a motion to quash or protective

10   order should BARM determine that's the path they wish to

11   take, we'll have to determine what those hearing dates are.

12           MR. JACOB:  Thank you.

13           THE COURT:  Mr. Kirshenbaum?

14           MR. KIRSHENBAUM:  Yes, sir.

15           THE COURT:  Since your motion has been granted you

16   can submit an order, but I will tell you that by in large

17   the Court issues its own form of 2004 order.

18           MR. KIRSHENBAUM:  No, Your Honor, I -- I mean I'd

19   be happy to do that, I think we actually attached an order,

20   but I --

21           THE COURT:  You did.

22           MR. KIRSHENBAUM:  Your Honor --

23           THE COURT:  As I mention --

24           MR. KIRSHENBAUM:  Yeah.

25           THE COURT:  -- as I mention, you know, it's our

1    policy not to have the 2004 order direct that these

2    documents be produced so then when the documents aren't

3    produced then there's a motion saying you violated the court

4    order.  We find the better practice is party issue the

5    subpoena, let the other side have an opportunity to address

6    the subpoena.  So we'll issue the 2004 order.

7              MR. KIRSHENBAUM:  Thank you very much, Your Honor.

8              THE COURT:  All right.  Thank you.

9         (Whereupon these proceedings were concluded at 2:00

10   P.M.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                        I N D E X

2

3                        RULINGS

4                                        Page        Line

5    Motion for 2004 Examination / Motion of the

6    Petitioning Creditors and Contingent

7    Barkany Creditors Pursuant to Federal rule

8    of Bankruptcy Procedure 2004, 9006 and 9016

9    Directing Production of Documents by Barkany

10   Asset Recovery and Management, LLC.  Filed

11   by Lester M. Kirshenbaum on behalf of

12   Joseph Rosenberg (Entered: 10/08/2014) [57]   106        5

13

14

15

16

17

18

19

20

21

22

23

24

25

1            C E R T I F I C A T I O N

2

3      We, Sherri L. Breach and Dawn South, certified that the

4      foregoing transcript is a true and accurate record of the

5      proceedings.

6

7      Sherri Breach    Digitally signed by Sherri Breach
                         DN: cn=Sherri Breach, o=Veritext,
                         ou, email=digital@veritext.com,
                         c=US
8      _____    Date: 2014.11.24 17:15:08 -05'00'

9      Sherri L. Breach

10     AAERT Certified Electronic Transcriber CERT*D-397

11

12     Dawn South      Digitally signed by Dawn South
                        DN: cn=Dawn South, o=Veritext,
13                      ou, email=digital@veritext.com,
                        c=US
14     _____    Date: 2014.11.24 17:15:31 -05'00'

15     Dawn South

16     AAERT Certified Electronic Transcriber CET**D-408

17     Date: November 24, 2014

18

19

20

21     Veritext

22     330 Old Country Road

23     Suite 300

24     Mineola, NY 11501

25

| & |
|---|
| **&**  2:25 3:10 4:1,8 |
| 4:15 5:3,9 6:22,25 |
| 7:2,17,17 32:8 |

| 0 |
|---|
| **07601**  4:18 |

| 1 |
|---|
| **1**  105:2 |
| **10**  49:9 |
| **10,000**  62:15 63:3 |
| **10/08/2014**  2:10 |
| 115:12 |
| **100,000**  13:8 |
| **10006**  4:4 |
| **10022**  3:20 |
| **10281**  3:12 |
| **106**  115:12 |
| **10601**  4:11 |
| **10:30**  35:14,15 |
| **10:54**  1:19 |
| **11**  35:22,24 36:25 |
| 37:24 |
| **11415**  5:13 |
| **115**  4:3 |
| **11501**  116:24 |
| **11556**  5:5 |
| **11722**  1:16 5:20 |
| **11743**  3:5 |
| **11:00**  35:16,19 |
| **11:06**  6:9 |
| **11:19**  6:9 |
| **11:59**  78:21 |
| **11th**  24:5 |
| **12:01**  36:5 |
| **12:10**  36:5 |
| **13**  1:18 |
| **14**  4:17 91:2 93:11 |
| **14-72941**  1:3 |
| **1425**  5:4 |
| **15th**  35:7,24 36:25 |
| 37:24 38:3 39:8,9 |
| 42:2,8 106:21 107:6 |
| 107:9 |
| **170**  4:10 |
| **18**  73:5 |

| 2 |
|---|
| **19,886,000**  21:23 |
| **19.6**  49:14 |
| **194,000**  21:11,23 |

| 2 |
|---|
| **2**  60:23 61:1 |
| **20**  16:2 49:11 52:16 |
| 69:6 105:2 |
| **2004**  2:5,7 42:11 |
| 45:9,18,23 46:4 |
| 50:1,12,14,20 51:6 |
| 54:2,4 56:8 64:21 |
| 64:25 65:7,10,24 |
| 67:4,10 71:15,25 |
| 72:18 75:2,4,5 78:1 |
| 79:8 87:7,19 88:3 |
| 89:18,20 90:21 91:4 |
| 93:11 94:9,16 96:1 |
| 99:20,22 100:13,18 |
| 102:5 105:6 106:3,7 |
| 106:14 109:16 |
| 113:17 114:1,6 |
| 115:5,8 |
| **2004's**  102:24 |
| **2010**  47:19 61:3 |
| 104:20 |
| **2014**  1:18 61:7 |
| 116:17 |
| **205**  3:4 |
| **20th**  37:24 41:7,20 |
| 41:22 44:16 106:17 |
| 106:17 |
| **22**  70:17 |
| **24**  91:7 116:17 |
| **240,000**  25:12 81:6 |
| **25th**  61:6 |
| **269,133.13.**  23:12 |
| **28.629**  49:19 |
| **290**  1:15 |
| **2nd**  72:11 95:22 |
| 101:6,9 |

| 3 |
|---|
| **3**  3:11 23:8 60:24 |
| 61:5 |
| **3,300,000**  23:8 |
| **30**  49:7 73:1 98:8 |
| 103:9 |

| 300 |
|---|
| **300**  116:23 |
| **302**  5:12 |
| **305**  31:16 |
| **30th**  72:22 |
| **330**  116:22 |
| **340,000**  33:20 |
| **397**  116:10 |
| **3rd**  4:3 101:10 |

| 4 |
|---|
| **4**  22:3,6 49:16 |
| **408**  116:16 |
| **425**  3:19 |
| **46**  48:3 104:17 |
| **479,000**  11:23 81:12 |
| 81:19 |

| 5 |
|---|
| **5**  49:17,17 61:10,14 |
| 61:16 72:9 115:12 |
| **50**  95:16 104:10 |
| **50,602,946**  10:25 |
| **500,000**  69:11 |
| **51**  2:3 |
| **544**  63:24 |
| **548**  62:21 63:23 |
| **57**  2:10 72:25 73:6 |
| 115:12 |
| **5:00**  78:18,19 |
| **5th**  32:24 33:25 |
| 34:4 40:9 |

| 6 |
|---|
| **6**  22:2 |
| **6-0**  32:17 |
| **60**  32:17 |
| **610**  5:19 |
| **68,900**  81:21 |
| **68,924.53.**  23:16 |
| 81:15 |
| **682,000**  12:23 81:19 |
| 81:20 |

| 7 |
|---|
| **7**  65:17 |
| **70**  13:10 |
| **75**  13:19 |
| **775**  3:4 6:17 |

| 8 |
|---|
| **80**  13:10,19 |
| **80-02**  5:11 |

| 9 |
|---|
| **90**  62:11,23,24 63:3 |
| 63:4,6,13,20,21 |
| 64:14 |
| **9006**  2:7 115:8 |
| **9016**  2:7 115:8 |

| a |
|---|
| **a.m.**  6:9,9 |
| **aaert**  116:10,16 |
| **abeyance**  29:17 |
| **abilene**  21:7 |
| **ability**  111:18 |
| **able**  29:19 30:1,19 |
| 35:2 37:19 48:22 |
| 53:4 54:20 59:15 |
| 67:4,8,13,17 68:3,4 |
| 77:9,21 85:5 100:8 |
| 100:9 103:14 |
| **abridge**  65:2,8 91:3 |
| 106:15 |
| **abridged**  31:21 |
| 93:14 |
| **abridging**  91:5 |
| **abridgment**  101:15 |
| **absolute**  52:9 |
| **absolutely**  34:2 |
| 36:3 45:16 57:23 |
| 60:24 61:3,7,13 |
| 75:19 90:9 98:8 |
| 110:16 |
| **abundant**  81:7 |
| **abundantly**  45:16 |
| 49:24,25 77:11 |
| **acceptable**  25:19 |
| 81:2 90:4 |
| **accommodate** |
| 107:13 |
| **account**  9:11 21:12 |
| 32:12,15 74:3 83:14 |
| **accountant**  24:24 |
| 25:7,10 32:11 33:19 |
| 34:17,21 43:8 |

**accountants** 50:6
75:7 86:6
**accounted** 9:9
**accounting** 21:21
25:4
**accounts** 47:7 86:21
**accurate** 14:14
116:4
**accusations** 74:1
**acknowledge** 61:1
**acknowledging**
25:5
**acquired** 19:9
**act** 57:10
**action** 50:19 51:12
51:14 54:16 63:19
63:19,20 70:7 85:1
100:1
**actions** 48:14 71:6
**actual** 14:16 25:17
32:14 39:10 47:4
84:19
**ad** 15:19
**add** 12:19 13:20
20:21 21:25 31:22
56:13,15 104:11
**addition** 9:3 14:8
20:11 22:3 72:21
**additional** 11:2
12:8,16,25 13:25
14:16 19:17 20:20
21:11 22:15 32:1,24
34:1 66:12 67:3
70:19 94:1 98:14
**address** 8:10,13
24:4 25:20 30:8,13
37:10 63:11,17 80:4
83:8 84:18 85:3,6
91:4 94:8 97:12
107:25 108:2,6,20
109:10,12 114:5
**addressed** 83:9
**addressing** 31:18
73:2
**adjourn** 36:22
**adjust** 106:18

**administration**
54:5
**admissible** 59:2
76:1,6
**admitted** 49:9,10
**advance** 39:8 40:9
42:4,8 61:18
**advanced** 12:17
23:11 106:5
**advantage** 39:23
**adversary** 55:1
71:11 76:17,19,20
**advise** 38:1
**advised** 14:13
**advocate** 54:17
**affairs** 50:14,14,16
54:4
**affect** 2:3
**affidavit** 10:3 11:18
12:1,11 13:7 14:14
14:16 19:18 23:4
40:23 43:20 49:8
72:8
**affidavits** 8:23 9:1
10:21,24 11:8 12:25
13:1 19:5 20:11,13
22:18 71:2 73:16
104:8
**affirmation** 24:5,7
**afraid** 79:11,15,16
79:17
**ago** 49:7 50:2 52:15
98:20,20,21 109:25
111:17
**agostino** 4:15 6:25
32:8
**agree** 27:7,9 36:16
44:20 51:17,17 66:7
76:16 77:13 109:13
**agreed** 49:13 62:16
72:23
**agreeing** 90:1
**agreement** 21:23
73:18 84:18 91:18
94:25 98:13
**agreements** 50:7
59:9 75:7,9,18 92:8

**agrees** 76:25
**agudelo** 3:23 7:5
72:9
**ahead** 18:4 64:23
**alfonse** 1:14
**alleged** 65:18,18,19
65:22 66:1
**allen** 3:14 6:19
**allow** 21:2 62:12
105:19 112:10
**allowed** 27:25
**alternative** 53:20
**ameliorated** 90:1
**amended** 27:22
**amount** 11:23 12:22
13:7 24:8,15,25
25:6 26:10 27:2
28:11 34:19 70:18
70:19 81:5 82:2,5,8
84:14,14 95:15
**amounts** 11:9 12:16
14:18 63:8 81:17
82:13,22,23 84:10
84:19 85:2
**analysis** 19:14
**answer** 84:22 96:6
103:16
**answered** 34:3
**anticipate** 27:23
**anticipated** 58:8
**anybody** 22:1
**anytime** 38:5
**anyway** 10:10 79:19
**apologize** 14:2
**apparent** 97:21
**apparently** 33:3
47:19 48:1 53:17
**appeal** 29:22
**appear** 38:24 86:21
**appearance** 38:15
**appearances** 6:14
**appearing** 38:9
**appears** 46:25 59:7
**applicable** 66:4
106:6
**applies** 45:18

**apply** 62:14,16 68:3
**appoint** 51:22
**appointed** 53:3
108:5
**appointment** 56:23
**apportioned** 58:15
**appreciate** 41:21
97:22 103:2
**approach** 16:5 82:9
**approached** 68:20
**appropriate** 39:7
58:11 67:20 69:22
71:22 73:19 74:25
92:14,20
**appropriately** 46:5
50:3
**approval** 61:18
84:12
**approve** 10:9
**approximately**
45:21 69:10 70:17
81:12,19
**argue** 29:8 44:12
112:10
**arguing** 37:16 44:7
**argument** 20:6
31:22 59:17 60:4
75:15 76:2,7 80:14
89:11 102:25
111:24
**arguments** 20:5
27:15,21 59:3 106:5
**arms** 71:5
**arrangement** 84:13
**arranging** 38:17
**arrest** 11:25 12:3,4
12:4,7,10 81:13,17
**arrested** 12:13
**arrive** 6:8
**aside** 21:17,22 83:4
83:17 84:5 85:1,6
85:20 94:12
**asked** 9:3 15:18
20:16 33:22,25 34:1
53:21 96:5 98:2,2
98:11,21 101:9
103:21

**asking** 20:5 32:16
  56:8,12 72:16 77:12
  105:15
**aspect** 10:18
**aspects** 53:23
**assert** 24:7 29:9
**asserted** 26:8,9 28:5
  30:21 110:12
**asserting** 110:22
**assertions** 86:10
**asserts** 29:13
**asset** 2:8 3:10 19:24
  45:23 115:10
**assets** 9:15,25 16:3
  16:10,12,20 17:19
  17:23,24 18:3,5,17
  18:17 19:6,8,21,22
  21:19 22:3 23:23,24
  46:7,8,11 48:16
  50:14 51:23 54:14
  56:19,22 57:19
  58:19,22 61:9,18
  64:6,9,11 65:19
  67:20 70:18 71:24
  74:17,18 80:5 88:9
  92:2 93:21 94:2
  95:1,3 104:11
**assigned** 21:19
**assignments** 62:24
  63:4 74:8,11 75:9
**assist** 36:14
**associates** 4:15 6:25
  32:8
**assume** 28:14 49:14
  49:15 76:4 104:22
**assuming** 18:2
  28:13,22 42:13
  43:13 53:2 55:2
  76:9 80:10 83:10,16
  88:4
**assumptions** 92:4
**assure** 99:9
**atlantic** 35:18
**attach** 20:13
**attached** 25:2
  113:19

**attempt** 45:24
  52:24 54:24 58:18
  68:8
**attempted** 68:1
**attorney** 3:3 8:5
  9:17 21:13 22:17,23
  23:4 61:21 80:11
**attorney's** 5:17 8:9
  8:17,22 9:17 18:25
  23:20 24:1 80:17
  90:3
**attorneys** 3:10,18
  4:2,9,16 5:2,10,18
  21:15 22:10 59:24
**authorities** 29:10
**authority** 29:12
  73:7,19,22,23 87:7
  90:24 92:13 108:16
**authorization** 25:8
**authorize** 65:1
**automatic** 57:10,11
  57:13 65:11
**available** 16:8
  36:10 41:24
**avenue** 3:4,19 4:10
  6:17
**avoidance** 50:19
  51:12,13 63:18,19
  63:20
**avoided** 31:10
**aware** 12:4 78:24

**b**

**b** 1:21
**back** 13:17 17:25
  18:3,12 19:8,10
  21:6 23:23 24:2
  25:21 27:14 45:21
  46:15 49:22 52:24
  53:21 56:7 63:13,22
  63:24 64:4,13 66:8
  69:5 82:2,12 86:25
  87:5 88:21 103:7
  104:13
**backup** 9:1 10:4
  14:22 19:5
**balance** 83:4

**balancing** 100:6,12
**bankruptcy** 1:1,13
  1:23 2:7 12:19,22
  23:6 31:8 45:9 53:2
  57:2,2,4,13 61:6,21
  63:23,25 64:24
  69:14 77:3 83:3
  87:19 90:20 94:23
  95:6,17 101:22,23
  101:24 107:19
  115:8
**banners** 95:12
**bar** 99:16
**barkany** 1:7 2:6,8
  3:10 6:3,16 10:1
  12:6 13:5,16 14:1,4
  14:4,9 15:5 16:20
  21:11 23:10,13
  27:17 28:6,7,14,16
  29:10,20 30:19
  32:12,21 33:3,20,21
  34:8 36:15,16,20
  38:18,24 39:1,15,18
  40:6 44:2,8,8,11
  46:8,25 47:19,20
  49:21 50:4 52:12
  56:8 59:8,14,20,24
  60:4,22 61:2,8 62:7
  63:7,15 66:2 75:3,5
  81:18 104:24 107:5
  111:23 112:1,18
  113:9 115:7,9
**barkany's** 9:15
  11:25 12:17 13:3
  20:17 29:25 33:9
  34:12 38:14 39:24
  40:14,19 64:6 81:13
  111:18
**barkette** 21:13 49:5
**barm** 6:19 10:1
  13:11,19 16:3,5,5
  16:10,20 17:22
  18:10,12,13,16,17
  19:6 21:20 23:8,24
  24:21 31:15 32:2,11
  32:24 33:24 37:17
  44:6 45:9 46:6 47:4

47:5,8,15,15,17,25
  48:11,14,14,15,21
  49:1,6,7,10,13,19
  50:5,10 52:1,10,11
  52:16,20 53:7 54:7
  54:10,22,22 56:19
  57:18,21 60:20 61:2
  61:9 62:7,17,17,20
  62:21,23 63:1,5
  65:9 66:3,10 69:3,4
  69:11,16,16,18 70:1
  70:2,6,14 71:18
  74:1,4 75:6 76:18
  87:8 90:10 93:20
  94:1 95:1,3,3 99:6
  99:16 106:9,15
  107:21 108:10
  109:3,9,15,17 110:8
  112:6 113:10
**barm's** 49:19 50:6,6
  61:12,16 69:18
  95:14
**barrel** 75:6
**based** 17:1 24:12,23
  33:9 34:9 37:1 38:3
  40:23 42:19,24 48:9
  59:22 91:17 99:10
  106:4 112:19
**basic** 50:16 95:5,6,7
**basically** 13:17
  39:23 78:22,24,25
  98:15 112:13
**basis** 23:10 52:7,7
  55:2 74:6 75:21,21
  88:13 98:1,11
  100:23 110:23,23
  112:12
**becoming** 50:1
**beginning** 14:24
  19:9 73:5
**begun** 17:12
**behalf** 2:10 7:6,13
  8:1 11:12,18,22
  12:17 13:2,13,22
  23:11 32:2 47:24
  69:13 76:18 115:11

**behaved** 69:19
**belief** 70:11
**believe** 8:16,18 14:5
14:9 15:4,5 17:9
25:21 29:19 33:16
45:11 62:20 70:17
71:10 77:24 81:19
82:8,10,20 83:5,6
85:5,16 88:5 90:8
97:2 103:17 110:16
110:17,18,21
**believes** 24:13
83:13
**belittle** 63:19
**belski** 24:21 26:17
27:24 28:13,19
33:15 36:10 43:22
44:1,9 86:13 95:15
112:19,20,22
**benefit** 68:17
**benefits** 69:18
**best** 42:12 66:13
88:11 107:12
**better** 35:19 47:21
67:5,18 75:1,2 80:8
114:4
**beyond** 62:11
**bit** 37:9 64:19
**blame** 58:15,16
**block** 76:17 100:15
**blown** 42:24
**boils** 53:12
**bona** 24:14 26:9
28:10 110:17
**bond** 83:1
**borders** 34:10
**borgata** 6:23 8:1
24:5,7,13,16 26:8
26:25 27:17 28:5,8
28:9,17 30:10 31:17
31:24 32:8,10,21
33:3,17 34:5,13
42:5,21 43:1,21
44:19 81:4 83:19
85:18 89:4 96:8
97:10,12 99:12
106:20 107:8,15,25

**borgata's** 40:16
83:25
**bother** 101:24
**bottom** 78:8
**bounced** 33:5
**box** 28:6
**boxes** 32:17
**breach** 2:25 116:3,9
**break** 42:11 80:24
81:1
**brief** 60:9,19,24
61:15
**briefcase** 66:7
**briefing** 110:9
**briefly** 10:20
**bring** 36:16 50:19
51:11,13 79:21
105:13 109:15
**bringing** 104:16
**broader** 64:17
**broadway** 4:3
**brother** 13:3
**brought** 17:25 18:3
107:21
**bruce** 21:13
**built** 109:16
**bullet** 75:19
**burden** 28:7 34:25
38:9 43:24 55:6
93:3 100:6
**burdens** 35:2
**burdensome** 88:6
**business** 12:16 21:6
23:12,17
**buzz** 91:25 100:7

**c**

**c** 3:1,14 6:1 116:1,1
**caffaroni** 21:7
59:25 72:23 73:17
80:7 81:24 82:17
86:10
**cake** 53:12
**calendar** 26:11
37:11 42:5,12 44:16
45:7 107:6

**call** 36:1 44:1 60:14
**canada** 84:7
**canadian** 4:2 6:21
14:6,17 92:3 101:18
**candidly** 58:17
**capture** 8:7 9:22
89:3
**captured** 9:21
**care** 88:25
**cart** 66:17
**case** 1:3 12:15
15:14 29:3 31:10,15
33:14 34:2,7 37:21
38:6,20 40:2,3,10
42:20 43:24 44:12
45:13,19 49:23
51:11,19 53:2,24
54:17 62:4,18 65:15
65:17,22 66:4 67:24
74:16 77:10,22,24
84:2 89:13 94:23
95:6,17 96:15 100:9
100:18 106:6
107:19,21 108:4
**cases** 30:15,24
31:12 34:22 41:8
81:7
**cash** 32:13 49:15
52:13
**casino** 33:3 40:1
**categories** 46:21
72:13,13 77:15
90:15 95:23 101:9
**category** 48:11
**cedarhurst** 14:5
**center** 3:11
**central** 1:16 5:20
**cert** 116:10
**certain** 30:17 53:3
69:13 84:9 92:4
93:14 107:25
108:23
**certainly** 15:20
22:18,23 31:5 37:19
37:21 38:1,6,23
39:23 40:17 45:5
48:2,21 55:2 66:14

67:16 71:20 77:13
77:16 79:24 83:9
87:2 88:6 89:12
92:9,10,21 93:13
95:19 108:12
**certified** 116:3,10
116:16
**cet** 116:16
**cetera** 12:9
**chadbourne** 68:1
**challenge** 24:13,16
28:5,16 59:20 62:13
107:8 110:6,11,14
112:3,5,12,12,15,21
113:6
**challenged** 28:6
59:24
**change** 11:24 12:23
37:25 43:23 77:2
81:13,20,20
**chapter** 65:17
**check** 32:14
**chip** 32:14
**chooses** 48:15
**chronology** 62:8
**circuit** 39:17
**circumstances** 57:9
92:21,25
**cited** 29:11,12
45:19
**cites** 45:20 65:15
**city** 35:18
**civil** 87:18 89:23
91:16 99:18,23
**civility** 103:22
**claim** 11:20,22
12:11,14,20,21 13:9
13:13,21,21 14:17
14:22 23:6 24:8,14
24:16 26:7 27:1,17
28:5,10,17,24,25
30:20 31:25 34:14
40:15,16 42:5 44:19
74:13 81:12 83:25
84:10 85:2,19,20,21
97:12 106:20 107:8
107:15,25 110:7,11

110:14,22 111:4,5
111:24,25 112:3,3
112:16,19,20,21
113:6
**claimed** 34:20 49:6
61:8
**claiming** 82:20
**claims** 8:7,15 9:18
9:22 10:18 14:20
15:5,6 29:4 48:2
60:6 74:1 82:3,5,13
83:2,18 84:6 85:4,6
85:14 86:2 89:3
94:9 95:15 111:19
**clarification** 28:2
**clarify** 27:13 109:22
**clear** 40:10 45:18
46:16 49:25,25
51:20 56:4 61:19
73:17 77:12 78:4
85:11
**clearly** 34:17 40:25
67:21 84:10 94:15
**clerk** 6:10 32:5
**clicking** 80:21
**client** 21:2 25:3,5,8
25:11,12 27:12
40:22 43:4 45:1
49:21 102:16
104:23,24 105:11
**client's** 24:22 41:2
102:17
**clients** 10:24 11:12
11:19 13:2 15:15
52:17 69:14 71:20
84:11 85:7 86:11,15
86:19 94:11 103:8
104:9,11,12 105:9
105:12,13,18,20,21
**closer** 11:21
**clue** 75:22
**code** 51:20 63:23,25
73:22
**codefendants** 15:14
**cogent** 76:2 77:22
**cognizant** 55:6

**colleague** 72:9
**colleagues** 38:8
55:5 60:17 100:14
**collected** 68:17 69:6
**collecting** 69:4
**collier** 45:20
**colloquy** 99:13
**combined** 23:17
**come** 13:23 17:19
17:20 18:9 43:2
52:3,4 54:20,24
55:3 57:11 58:6
66:24 67:7 68:17
71:8 72:18 77:22
86:16 99:25 100:8
100:24 102:12
103:1
**comes** 38:18 43:22
100:20 104:6
**comfortable** 21:22
30:3
**coming** 31:6 35:13
35:18 43:6,9 45:24
56:7 84:17 105:15
106:17
**commence** 54:16
**commenced** 70:6,7
71:6 84:24 85:1
**commencement**
62:18
**commit** 52:23 53:22
90:12
**commitment** 94:6
100:22
**companies** 52:13
**company** 6:24
13:13,14 14:3,3
**compelled** 93:1
**compelling** 93:3
**compensated** 16:24
**compensation** 9:12
9:19,24
**compile** 73:9
**complaint** 55:17
59:21 76:25 77:1,7
89:21

**complaints** 9:4
**complete** 19:16
60:21 72:5 96:11
**completely** 21:20
92:14 94:25 96:10
96:13,16,17
**completing** 86:6
**complicated** 78:22
84:1,2 86:21
**complied** 20:14
80:11
**compromised** 85:15
**concentration**
80:24
**concept** 8:14 9:7,10
23:22 30:14 31:11
37:2
**concern** 59:16 64:5
64:8 94:8
**concerned** 9:18
29:24 31:13 45:22
45:25 56:18,21
65:18 67:23 74:19
75:3 87:12 93:17
94:10 101:25
**concerning** 57:17
**concerns** 91:24
**conclude** 48:8
**concluded** 76:20
114:9
**concrete** 84:18
85:25
**conduct** 95:4,4,5
**confer** 106:12
**conference** 2:1 6:3
7:22,24 21:16 24:20
41:23
**confessed** 68:21
**confession** 59:19
**confident** 69:24
**conjure** 94:24
**connected** 50:13
**connection** 27:15
40:4 44:9 46:19
55:7 56:2 97:24
100:3

**consideration** 101:8
**considerations**
91:25 100:8
**considered** 68:7
**considering** 41:13
**consistent** 24:19
**constitute** 47:9,11
**constitutes** 46:18
**construed** 97:4
**contact** 15:16
109:19
**content** 102:14
**contest** 30:15 31:12
**context** 66:16 67:5
68:10 97:8,9 103:7
**contingent** 2:6 7:13
7:17 13:1,9,13,21
14:17 22:21 45:8
115:6
**continued** 12:5
**continues** 94:23
107:17
**contrary** 29:11 58:2
86:9
**control** 60:22
**controlled** 87:18,19
**conversation** 40:19
**conversations** 41:4
**conveyance** 63:14
**conviction** 70:11
**convince** 76:6
**cooperate** 23:19
**cooperated** 33:24
**copies** 9:4
**corporate** 23:13
**correct** 14:21 54:13
54:15 61:4,22 76:7
76:8 86:16 96:20
107:3 110:13,13
111:6,9 112:2
**correctly** 24:1
61:10,16 75:20 80:7
**costell** 47:24
**costs** 23:9 89:17
**couldn't** 82:18
**counsel** 6:14 9:3
10:4 19:17 21:5

22:25 23:3 24:1
25:23 26:24 29:25
30:1,10 31:17,24
40:20 44:22,23 49:4
50:5 52:15 56:9
57:16 59:3,7,10,12
59:15,21 60:5,6
61:11 65:15,21 66:6
66:8 67:12 84:17
**counted** 60:15
**country** 116:22
**couple** 7:23 11:17
12:19 14:25 15:23
32:18 91:20
**course** 12:2 13:9
19:1 28:8 31:10
36:2 38:10 46:23
55:10 57:8 91:20
100:3 108:4
**court** 1:1,13 6:2,7
6:11,13 7:7,11,19
8:12 9:5,7 10:11,15
11:15 16:16,18,22
18:24 20:2,9,22,24
21:10 22:14 23:3,6
23:18 25:20,25 26:4
26:5,13,18,24 28:4
29:1 30:5 31:23
34:16 35:6,7,13,19
35:22 36:2,6,9,12
36:13,21,24 38:1,6
38:9,12,25 40:17
41:14,17,19,21
42:10,10 43:12,15
43:18 44:3,14,16,23
44:25 45:4,6,24
46:2,15 47:25 48:15
49:5,8 51:18,22
52:3,4 54:1,8,14,20
54:23,24 55:3,11,14
56:3,17,21 58:5,24
59:2,18 60:10,11,12
61:11,19,23 62:3,3
63:9 64:18,21 65:1
65:8 66:10 67:12
68:14 69:8,12,13,14

69:15 70:8 71:7,15
71:23,23 72:3,18,23
73:2,18,20,21,23,24
74:5,9 75:23,25
76:4,9,11,13,23
77:13,22,23,24 78:4
79:9,21 80:1,24
81:2,7 82:1,24 83:7
83:9,12,13,22 84:23
85:22 86:3,24 87:7
87:14,15,23,25 88:3
88:14,16,18,20 89:8
90:11,19,20,23 91:1
91:13,21,21 93:6,10
93:10,14 94:7,18,18
94:25 95:17 97:8
99:1,5,25,25 100:8
100:11,23 101:13
101:13,22 102:5,15
102:20,22 103:2,24
104:1,3 105:1,10,12
105:14 106:2,7,17
106:20,23 107:3,4
107:18,24 108:9,12
108:15,19,25 109:2
109:8,20 110:3,6,25
111:7,12,20,22
112:3,5,17 113:3,4
113:13,15,17,21,23
113:25 114:3,8
**court's** 84:12
103:22
**courthouse** 1:14
**courtroom** 11:10
96:7 97:15
**cover** 82:3,5,22
83:18,25 84:5 85:2
**covers** 46:17
**create** 92:18
**created** 46:2
**credibility** 70:5
**credit** 12:6
**creditor** 11:19 14:1
17:23 31:4,6 37:17
45:25 50:24 51:1
63:25 66:3 74:20

**creditors** 2:6,6 6:21
6:23 7:1,6,14,17
11:14 19:23 22:20
22:21 29:4 31:1,3
31:13 37:7,19 38:20
45:8,9,22 47:18
48:17 49:22 51:3,6
52:18 56:14,18,21
65:17 71:3 74:18
81:3 82:4,6,14,19
82:25 84:6,20 95:9
101:16,18,25 106:4
115:6,7
**crime** 19:9,11
**criminal** 21:4,13
40:19 44:12 57:5,14
59:18,21
**critical** 38:20 96:2
**critically** 18:21
39:14
**criticized** 45:21
**cross** 30:1
**crossed** 56:11
**curious** 8:14 112:18
112:24
**cutting** 12:1

**d**

**d** 6:1 115:1 116:10
116:16
**d'amato** 1:14
**d.c.** 41:23
**date** 11:25 12:2,3,6
12:10,18 19:15
21:10,16,18 35:6
36:11,23 37:25 42:6
42:15 81:13 98:11
106:21 107:2,3,5,9
107:20 109:16,17
109:20 113:7
116:17
**dates** 41:25 42:12
113:11
**david** 24:21
**dawn** 2:25 116:3,15
**dawned** 57:8,9,18
**day** 7:25 12:22 21:1
32:10 33:8 56:18,19

58:8,10,11 62:11,23
62:24 63:3,4,6,13
63:20,21 70:6,7
98:19 107:7 112:25
**days** 12:16 64:14
77:18 78:25 91:2,12
92:17,24 93:6,11
96:21 97:2,2,20
98:1,1,10 103:13,17
**deal** 7:23 23:22
29:17 45:25 48:22
51:19 52:18,21
77:19,20 85:8 86:25
92:23 107:7 111:18
**dealing** 15:9 19:25
39:9 49:13
**dealt** 40:8 48:23
**debt** 25:6 33:1 81:8
**debtor** 1:9 3:3
24:11,12,15 26:9
29:11,13 30:15,25
31:12 37:5,18,21
42:25 57:16 63:25
65:18,18,19,23 66:1
74:16,17,21,23,24
74:25 112:11,12,15
**debtor's** 8:1 24:6,10
38:20 50:13,14,16
51:23
**debtors** 57:15
**december** 35:7,24
36:25 37:24 38:3
106:21
**decide** 54:11 67:8
100:16
**decided** 29:22 96:22
97:5
**decides** 46:15 54:10
95:17
**deciding** 101:20
**decision** 29:22
51:21 68:3
**declarant** 43:8
**declaration** 60:14
**deem** 67:19 69:22
**defendant's** 57:16

**defendants** 15:15
**defense** 40:20
**deferred** 68:8
**defraud** 64:7
**delay** 71:4,4,4 86:7
  102:7,8
**delaying** 80:13
**delineate** 77:14
**delineated** 72:12
  101:9
**deliver** 92:8
**delorenzo** 65:16,21
  67:24 68:2 74:16
**demonstrate** 27:8
  69:10
**demonstrated**
  69:21
**deny** 68:4 105:25
**depending** 37:25
  46:14
**deposit** 33:3
**deposition** 40:7
**depositions** 47:23
  53:15
**despite** 112:21
**detailed** 95:22
**determination** 9:8
  44:17 65:4 71:18
  83:11 97:4 100:12
  100:15
**determine** 2:1 11:9
  86:14 109:14
  113:10,11
**determined** 29:3
  42:3 53:1,24 94:22
  95:15
**development** 4:16
  6:24 21:9
**deviate** 112:14
**diane** 5:22 8:22
**didn't** 13:17 30:13
  79:2 82:18
**differences** 21:18
**different** 37:3,9
  43:9 47:25 58:8
  90:15

**differentiated**
  112:7
**difficult** 35:15,17
  84:21
**difficulty** 38:2
  41:22
**direct** 38:23 66:10
  73:8 85:2,6 114:1
**directed** 39:3 70:24
**directing** 2:8 64:24
  115:9
**disagreement** 94:3
**disagreements**
  85:19
**dischargeable** 81:8
**discharged** 81:6
**disclosed** 61:11
**discovery** 2:1 24:20
  25:14 26:21 45:17
  45:24 46:1,4 50:1
  50:12,15,21,22,24
  51:2,3,6,8,10,14
  53:8 54:6 56:8
  65:24 66:2,2,15
  67:3 68:1,6,8,10
  71:25 74:23 87:17
  87:17 88:13 89:10
  89:12,22,23 90:9
  91:5,15 94:19 96:8
  96:12,22 97:1,1,5,9
  97:13,24 99:17,20
  99:22 102:6 103:13
**discrepancy** 25:4
  25:11 34:19
**discretion** 68:7
**discuss** 83:22
**discussed** 84:8
**discussion** 93:17
**discussions** 8:9
**disgorge** 31:9
**dismiss** 8:2 24:6
  29:2,6 31:15 40:5
  107:21 108:3,6
**dispute** 21:17 24:14
  26:1,3,9 28:10
  52:12 56:5 60:25
  62:19 106:13,25

  110:17
**disputes** 40:24
**disrespect** 75:14
  92:6
**distribute** 17:20
  48:16 52:16,24,24
  53:23 54:23 55:25
  58:18 61:17 70:12
  74:17 76:20,25 83:5
  88:22 91:19 93:23
  94:2 95:1 96:3 98:4
  98:6,8,23 99:21
  100:10 101:7
**distributed** 18:3
  46:9 56:23 70:8
**distributes** 77:8
**distributing** 17:23
  52:2 55:15 57:19
  58:2 93:20 99:2
**distribution** 9:24
  48:20 54:8,11,12
  57:21 61:13 66:11
  71:18,19,24 72:24
  73:8,20 74:22 75:4
  80:5,9,15 82:11
  83:10,14 85:7,23
  86:4,5 87:1,3,13,16
  88:9 89:5,9,12
  91:14 93:2 94:11,15
  94:21 97:16,23 99:7
  99:9,16 105:23
**distributions** 73:9
**district** 1:2 4:16
  6:24 46:14 71:23
  83:12 87:15 91:13
  94:18 99:25
**divide** 101:21
**divvying** 92:4
**doctrine** 19:8,10
  24:2
**document** 32:20
  33:23 72:13 79:16
  89:19 92:23
**documentary** 28:18
**documentation**
  10:22 11:1,13 20:12
  20:14 24:12 27:8

  32:1,25 66:25 71:2
  86:11 100:17
**documented** 56:10
  104:9
**documents** 2:8 11:3
  22:16 26:15 28:21
  30:2 32:17 33:17,19
  33:22 50:1,7 53:16
  53:17 64:22,23,25
  77:21 79:12,13,14
  79:15 88:5 90:15
  91:9 92:8,21 95:23
  96:4 100:14 101:5,6
  101:10 102:12
  106:13 109:11
  114:2,2 115:9
**doesn't** 50:21
**doing** 19:14 41:12
  48:13 49:18 68:13
  83:7 84:4 103:8
**dollar** 84:19
**dollars** 12:20 81:21
  82:9
**dominion** 60:21
**don't** 33:13 43:21
  51:17 78:5,6 79:12
  79:13 87:22
**door** 29:13
**doorstep** 102:11,12
**dotted** 56:11
**double** 51:4 82:4
**dozen** 45:21
**dozens** 34:22
**dressing** 66:13
**due** 90:8 102:18
  103:16
**duress** 59:19

**e**

**e** 1:21,21 3:1,1 6:1,1
  115:1 116:1
**earlier** 16:17 17:10
  80:21 104:18
**easier** 44:21 70:14
  74:9
**eastern** 1:2
**easy** 53:20

**eat** 53:12
**economic** 31:8 99:9
  99:11
**ed** 7:14
**educated** 50:2
**edward** 4:13 5:3
  7:16
**effect** 84:25 99:10
  99:11
**effectively** 55:23
**efforts** 9:21 21:10
  89:17
**eight** 72:13 101:9
**either** 9:25 11:5,11
  22:20 46:20 63:22
  84:12 87:14 88:23
  99:24 100:18
  103:17
**elaborate** 86:8
**electronic** 116:10
  116:16
**eleven** 35:9
**else's** 101:16
**email** 72:10
**emails** 25:2,4,23
**embroiled** 30:14
**employees** 32:18
**enable** 20:18
**encourage** 68:23
**encourages** 68:23
**endeavor** 77:16
  102:6
**ends** 23:14
**enforceability** 33:2
**enforceable** 85:21
**engage** 87:21 91:11
  95:4
**engaged** 32:21 47:1
**engaging** 47:1
**enjoin** 54:12,24
  73:20 89:12 91:14
  95:20
**enjoyed** 59:3
**ensure** 73:10
**enter** 55:17 64:23
  77:9 78:4 79:9
  102:5 108:13,15

**entered** 2:10 10:12
  16:19 29:5 59:8
  68:14 107:24 108:2
  108:6 115:12
**entering** 89:18
**enters** 107:18
**entire** 32:12 40:13
  57:12 59:13 61:14
**entities** 23:14
**entitled** 45:16 49:23
  49:25 50:11,15,22
  50:24 51:2 53:8
  56:14 71:10 74:12
  77:12 79:21,24
  89:13 90:9 94:19
  105:6
**entitlement** 79:8,23
**epi** 13:14
**equality** 48:19
**equitable** 74:6
**equitably** 75:22
**equities** 100:7,12
**escrow** 21:12 84:13
**esq** 3:7,14,15,22,23
  4:6,13,20 5:7,15,22
**essence** 24:11 54:9
  83:1
**establish** 55:6 92:15
  95:13
**establishment**
  55:11
**estate** 21:24 49:16
  51:9 52:13 54:5
  62:8 65:19 66:21
**et** 12:9
**ethical** 13:15,15,18
  13:22
**evaluate** 32:25,25
  33:2
**eve** 78:11
**evening** 72:11
**event** 29:3 35:23
  48:25 59:5 107:2
**events** 62:9
**everybody** 107:17
**everything's** 75:17
  75:17

**evidence** 28:18,18
  33:11 34:7 35:3
  46:23 47:16,17 59:2
  67:25 69:9 74:2
  76:1,6,13
**evidentiary** 2:2
  26:6,16,17,22 27:11
  28:8 33:9 34:15
  39:10 40:13 42:17
  42:23 43:12,13,16
  52:6
**exactly** 77:15 78:1,2
  98:17
**exam** 94:9
**examination** 2:5
  41:1 45:9 54:2
  64:21 67:4 75:2,4,5
  79:8 94:16 100:13
  106:4 115:5
**examine** 30:2 38:25
  79:25
**example** 12:7 15:13
  31:3 104:17
**exchange** 8:8
**exchanges** 25:23
**excluded** 73:12
**executed** 33:3
**exercise** 87:21
  89:18 91:11 99:14
**exercised** 60:21
**exhibit** 44:5 72:9
**exhibits** 72:7
**exist** 53:17 73:23
  74:6,7
**existed** 69:4
**existence** 18:13
**exists** 16:13 24:25
  53:17
**expect** 37:10 81:8
  87:2
**expectation** 61:12
**expected** 14:15 58:5
  76:1
**expecting** 57:25
**expedited** 55:1
  88:13 89:10,11 98:1
  98:11,11 107:20

**expedition** 67:10
**expeditiously** 108:3
**expense** 97:11
**expenses** 12:9
**experienced** 60:17
**expert** 15:24 33:12
  33:12,13 34:21,24
**explained** 9:13
  16:18
**explaining** 11:7
**exposure** 62:21
  71:7
**expressed** 66:6
**extend** 12:6
**extension** 100:22
**extensive** 20:18
**extent** 11:2 12:5
  18:3 22:16,20 28:16
  29:20 31:9,21 54:10
  63:1,21 65:7 66:12
  66:14 67:23 73:6,18
  76:5 86:7 87:16
  94:14 106:7,22
  107:16,18,23
  109:13 113:7

**f**

**f** 1:21 116:1
**face** 40:12
**faced** 26:20 89:20
**facilitating** 36:14
**facility** 32:17
**fact** 11:20 25:3,7,12
  30:21 31:25 33:18
  43:23 46:25 47:16
  51:5,19 56:13 57:4
  60:25 72:25 81:4
  91:23 92:2 95:24
  97:22 101:17,18
**factor** 39:12,13
**facts** 33:16,17,18
**factual** 61:4
**fair** 50:10 88:24
  93:5
**fairly** 21:23
**fairness** 102:8,18
**faith** 106:12

fall 46:20
familial 111:25
familiar 10:12
  30:20 111:24
family 65:20 81:18
far 15:20 16:1,4
  25:24 47:17 64:17
  67:4 81:9 82:4
  86:20
fashion 69:19
father 30:22 111:19
  112:8
fbi 19:14
fear 65:22
federal 1:14,15 2:7
  5:19 87:18 89:23
  91:15 99:18,23
  115:7
feel 26:14 29:21
  31:20 38:10 54:9,23
  103:6
feels 67:2
fees 12:8 23:9
felt 112:11
fide 24:14 26:9
  28:10 110:17
field 53:6 101:3
fifth 39:19,25 40:6
fight 93:5
figure 23:12 42:12
  53:5
figures 22:12 23:7
figuring 41:25
file 12:14,21 14:14
  23:5 37:5,19,20
  39:3 55:16 66:10
  76:17,19,24 77:6
  78:15 86:7,19 91:12
  91:14 92:24 93:12
  106:9 108:9 109:17
filed 2:9 7:25 9:5
  13:22 23:4 27:17
  28:17 37:1,18 44:15
  49:7,10 57:2,12
  59:21 61:6,8 77:1
  78:17,21 79:5 97:25
  98:18 111:2,3,9

115:10
files 38:19
filing 12:19 13:1,12
  24:4 31:6 57:4,10
  57:13 107:1
filings 78:7
final 17:5,5,17
  57:15 71:9
finally 13:23
financial 3:11 19:14
find 102:14 112:18
  114:4
finding 89:1 95:14
fine 8:21 35:8,12
  36:9 41:7 44:14
  53:9 75:17 77:1
finish 104:1,3
firm 74:18
first 6:3 7:8,22 21:1
  23:5 24:10 28:6
  29:18 30:9 33:8
  44:1 56:18,25 69:14
  69:15 72:6
fishing 67:10
five 91:12 98:20,21
  103:6
fixed 24:8 107:3
flood 37:6
floor 4:3
floored 57:23
focus 67:5 91:8
focused 97:17
followed 57:15
following 90:7
  95:23 103:19
footnote 50:19
forcing 95:25
foregoing 116:4
forensic 24:24 25:7
  25:10 32:11 34:21
  43:8
forever 27:10
forfeited 10:7
forfeiture 9:14,16
  10:6,12,13 15:22,24
  16:3,7,19 17:5,18
  18:11 19:7 23:22

46:13,16 57:6,14,15
  64:10 73:3
forget 14:2 29:2
  30:23 65:15 69:8
form 25:5 28:15
  48:5 76:6 113:17
formal 15:20 82:15
forth 15:18,22
  25:21 57:17 73:4,16
fortunately 10:15
forward 26:15,16
  26:21 31:8 35:4
  41:9 43:24 48:21
  49:1 50:11 53:2,14
  55:1,25 59:1,4
  66:24 67:7,14 76:16
  79:10,17,23 85:9
  95:19 96:15 97:5
  113:5
found 45:19
four 22:1 50:2
  52:15 58:22,23 70:2
  70:3,9 73:15 91:12
  98:20,21
fourth 17:11
frame 39:4 77:20
framed 67:22
framework 13:24
  109:6,8
frankly 17:3 56:5,7
  57:22,25 97:6
fraud 9:19,23 16:23
  46:18,19 47:12 48:9
  48:10 64:7 68:19
  84:8
fraudulent 47:1,10
  63:14,15 64:12
free 7:21
fresh 96:6
friday 103:15
friedlander 4:1
  6:22
frivolous 34:10
front 17:10 38:10
  40:4 72:23 74:5
  94:21 101:22

fruition 83:23
fruits 47:10
fulfill 93:23
full 39:23 42:24
fully 30:1 61:11
fund 9:9,10
funds 21:11 23:11
  31:9 62:6,22 63:1
  83:23,24 84:5 87:16
  88:22,25 89:2,2
  91:15 93:23
further 12:24 24:6
  48:6 84:1 96:9
  103:1 109:5,5
furthermore 63:1
futile 99:14
futility 87:21 89:18
  91:11

**g**

g 6:1
gaining 76:22
gap 27:4 45:18 46:6
  46:7 51:20 57:12
  65:23
gardens 5:11,13
garratty's 45:20
garretty 74:19
gates 37:6
gather 17:19
gathered 8:5
gathering 19:18
general 19:23 73:2
  73:3 93:7 112:14
generally 56:15
  98:24
generous 45:11
  78:9
germane 51:8,9
gershon 1:7 6:2
getting 14:11,23
  19:17 25:8 34:11
  49:21 53:16 57:21
  73:12 79:10 80:13
give 6:7 8:19 37:13
  52:6 55:15 60:13
  67:14,14 71:5 75:12
  77:18 78:19 79:12

79:13,14 80:2 87:8
90:18 91:18,20,21
92:9 94:1 95:23
98:3 99:21 100:23
101:10,11 102:23
104:17 109:20
**given** 25:9,10 34:7
34:18 37:17 44:6
48:11,23,24 49:6
53:3 55:23,24 65:11
67:5,6 81:17 90:10
92:11 97:23 98:9,14
100:22 101:5
**gives** 18:12,13
54:22
**giving** 50:12 89:19
90:23 93:4 96:4
102:5 108:23
**glaring** 67:25 68:5
**gleaned** 64:11
**go** 18:12 26:15,16
26:21 27:9,14 32:16
33:25 35:4 40:13
41:9 48:21 50:11
53:2,14,19 56:6
64:22 67:11,14
69:15 82:4 83:25
84:25 85:12 89:18
96:15 97:5 107:24
**goal** 94:14,15,20
**goes** 16:16 18:4,21
21:21 23:23 31:8
40:7 49:1 65:21
76:16,18
**going** 8:8 12:12
13:22 14:12 17:18
18:11,12,14,16
19:16 21:7,25 23:25
24:19 25:18,18
26:20,25 27:16 28:7
28:13,14,16,17,19
30:7 31:18 34:12,24
35:1,3 36:14,19,25
38:14 39:17,20
40:14,18 41:5,5,9
41:11 42:6,7,13,14
42:23,24 43:2,15

44:4,5 45:21 52:3
52:24 54:24 55:18
56:22 61:14 65:8,9
71:17 76:6 79:17
85:9 87:3,11,17,17
87:19,20,25 88:3,20
88:24 89:14,17,22
90:14,17,17,19 91:3
91:6,6 94:2,10
95:18 98:8,9 99:15
99:22 106:21
107:11,19 108:19
113:5,7
**goldberg** 4:1 6:22
**good** 6:11,12,17,20
7:4 52:2 75:17
80:19 106:12
**gotten** 8:23 26:21
**government** 11:2,6
11:12 15:2,17,25
16:4,9 17:4,25 18:8
18:15 19:10,11
20:16,19 46:10
48:13 59:21,25
68:15,23,25 70:17
71:1 81:2,22 82:8
84:9,11
**government's** 15:25
17:4,16 18:8 64:10
**grab** 18:11
**grant** 55:11 69:23
87:7 88:1 106:7
**granted** 113:15
**granting** 91:4
106:14
**gray** 103:9
**great** 66:6 91:25
111:12
**greater** 64:13
**groman** 48:2,2,3,4
104:16,20,24
**grounds** 28:21
29:10,14 106:10,11
**group** 13:11 14:7
14:18 17:24
**guess** 24:9 29:18
30:9 35:14 79:23

83:18 90:2 93:16
109:4
**guilty** 59:22
**guy** 98:18

## h

**hackensack** 4:18
**hair** 103:9
**half** 82:9 104:6
**hamilton** 4:10
**hand** 17:11,11 44:8
57:20 92:10 101:1
**handle** 42:12
**hanging** 26:5
**happen** 83:17 94:12
101:12
**happened** 103:12
111:16
**happening** 43:8
48:25
**happens** 10:7 85:3
85:4
**happy** 8:13 30:9
34:6 35:4 40:20
82:15 85:24 113:19
**harass** 53:16
**harassment** 41:13
41:15
**hard** 94:24
**harmed** 55:18,20
**hat** 98:7
**he'll** 34:24 52:3
77:2,2,6 94:18
**head** 93:21
**headed** 13:14
**headlines** 95:13
**hear** 8:3,13 18:25
30:10 31:17,24
40:17,21 42:1,7,11
58:24 60:1 103:6
**heard** 10:17 17:11
20:5 23:1 26:23
30:6 39:1 44:25
45:15 46:22,24 47:2
47:7 49:12 57:20,22
59:25 73:10 81:12
95:11 104:8 105:11

**hearing** 2:2 17:10
26:6,17,22 27:3,5
27:11 28:9,12 29:5
31:20 34:6,8 35:5
37:8 38:6,24 39:1,6
39:10 40:13 42:4,24
43:18,22 44:7,18
69:9 72:22 73:1
80:8 88:21 100:25
103:12 106:19,24
107:8,15,20 109:6
109:14,15,17,20
113:6,11
**hearings** 111:17
**hearsay** 33:11 34:9
42:22 43:7,10,20,22
44:10
**hearts** 102:13
**held** 16:3 21:12
23:24 56:19 62:17
**help** 64:19 85:15
**helpful** 9:6 28:3
68:12
**hide** 102:13
**hiding** 70:10 102:10
**higher** 49:16 84:14
**highlights** 45:15
**history** 32:12,15
**hit** 51:4,4
**hoc** 15:19
**hold** 30:7 31:18
37:24 70:21 75:21
106:24 107:15
**holding** 16:11 18:10
19:7 22:1 29:16
38:2 47:15 48:7
58:21,23 74:17,25
82:2,12 90:3
**holdings** 58:22
**holiday** 78:11
103:14,20
**holidays** 103:18
**holster** 54:19
**hon** 1:22
**honest** 42:18
**honor** 6:5 7:4 8:11
8:19,21,23 10:2,6

10:20,22 11:16
12:24 13:12,23 14:2
14:8,10,19,25 15:23
17:7,9,13,16,24
18:1,7,9,9,14,20
19:3,4,7,22 20:4
24:22 27:7 32:9
33:8 38:5,11,13,22
39:2,5,11,16,24
40:3,4,10,12 44:5
45:10,12 46:6,10,12
46:16,22,24 47:2,7
47:13,14,16 48:19
49:2,18,24 50:10,17
50:21 51:1 52:5,9
52:20 53:11,14,25
54:16 55:2,5,14
56:3,12,25 57:1,18
57:22,25 58:4,7,14
58:17 59:7 60:10
61:15 65:14 66:19
67:7,13 69:21 71:14
72:2,4,6,12,17,21
73:5,6,8,17,21,24
74:2,4,11 75:10,14
75:23 76:8,24 77:8
77:11,16,24 78:3,3
78:6,8,13,14,17,18
78:22,24 79:1,9,20
88:10,11 90:7 91:17
92:1,6,12,14,15,16
92:20,22 94:4,20,23
95:18,21 96:7,14,24
97:3 98:1,6,13,20
98:24 99:19 100:3
100:16,20 101:1,13
102:4,10,18,21
103:4,23 105:25
108:8,21 109:21
111:11,13,16,16
112:13,13 113:2,18
113:22 114:7
**honor's** 90:6 97:18
**hope** 62:5
**hopeful** 84:4
**hopefully** 61:22

**hopes** 62:3
**hoping** 11:11 57:25
**horse** 66:17
**hour** 103:14
**hours** 91:7
**huh** 10:14
**hundred** 12:20
**huntington** 3:5 6:17

**i**

**idea** 47:2 75:23
**identified** 21:19
84:15
**identify** 20:20
**ignore** 96:3 101:11
110:20
**ignored** 72:20 95:24
95:24,25 97:3
**illiquid** 70:19
**imagine** 101:4
**immediately** 29:5
93:19 99:15
**impact** 41:2 108:4
**impaired** 44:12
**impediment** 112:10
**imperative** 98:23
100:10
**imperatives** 98:5
**important** 18:21
19:4 39:6,14 60:25
72:5
**impossibility** 92:19
**impression** 17:4
**inappropriate**
74:22 95:1,4
**inclination** 93:18
**inclined** 20:20 26:6
90:20
**include** 12:16 46:19
83:24 84:13 104:10
**included** 30:22 72:7
72:8
**including** 7:24 21:7
23:16 32:13 48:1
**incorrect** 96:17
**indicate** 66:15
**indicated** 21:1,16
25:10 39:11

**indiscernible** 7:18
33:19,21 35:10
44:22 51:9 56:2
57:23
**individual** 23:10
**indulge** 103:5
**inform** 85:13
**information** 8:8,18
22:22 23:20 32:13
32:15,20,22 34:1
48:24 49:3,20 53:17
54:10 56:1,2,14
64:16,20 66:13,14
67:1,2 69:20 71:1
72:14,20 75:24
80:12,13 82:7,19
85:13 92:9 94:9
99:24,24 112:19,21
**informational**
66:25
**informed** 25:3
38:25 54:22
**initial** 43:23 72:6,7
72:16 78:10
**injunction** 55:10
66:22 67:9,21 69:23
71:10 75:12 94:17
100:1,5
**injunctive** 66:9 68:4
89:8,14,21 93:19
99:15
**inquire** 108:22
**inquiry** 58:1
**inside** 79:19
**insider** 62:22 63:22
74:5,6 75:21 95:2
**instance** 15:12
24:10 28:7 30:9
**instances** 8:25
93:14
**instructions** 20:15
**instrument** 110:22
**instruments** 46:18
47:11 48:10
**insufficient** 10:3
67:2 110:23

**insult** 77:6,23
**intangible** 23:24
**integrity** 70:6
**intelligently** 54:7
**intend** 10:24 12:14
12:21 38:6 46:7
82:16 83:4 87:12
**intends** 48:15,21
54:8,23 66:10 99:6
**intention** 17:23
18:8 50:11 71:16,17
76:17 80:4 82:24
87:2 90:11 91:19
93:23 99:2,11
**intentions** 49:1
**intents** 39:12
**interest** 19:22,24
23:8 31:8 50:15,22
51:8 54:4 56:14,17
**interested** 9:20 64:2
**interesting** 37:2,12
**interim** 55:3,8 57:5
57:14
**interplay** 9:14
16:18,22 23:25
**interrupt** 63:10
110:25
**interrupting** 63:11
**introduced** 104:24
**invalid** 92:5
**invest** 104:22
**invested** 13:4 86:12
**investigation** 16:10
46:10
**investments** 13:8
21:5 104:19
**investor** 14:9
**investors** 20:17
**invests** 19:11
**inviting** 102:11
**involuntary** 26:7
30:16,21 31:7,13,14
37:6,22 44:19 51:21
52:25 53:24 57:2,10
57:12 61:6 65:16
94:22 95:7 107:16
110:12 111:3

involved 13:16
65:16 81:23
involvement 68:24
involving 13:5
irrelevant 60:2
irreparably 55:18
55:19
islip 1:16 5:20
issuance 65:2
issue 9:13 19:20,24
23:23 24:3,17,24
26:2,4 27:2,18 28:4
28:25 29:1,18 30:8
30:11,13,19 31:19
31:25 33:4,6 37:3
37:10,12 38:14 40:7
40:12,14,20 41:13
42:4,11,14 43:12
60:20 64:10 67:8
72:15 80:4,15 83:9
85:3,18 87:8 88:3,9
90:20,24 91:6 97:17
99:14 100:6 105:13
108:16 110:3,7,9
111:18,22 114:4,6
issued 42:14 65:8
90:23 106:8 109:16
issues 7:23 24:2
30:18 31:2 43:13,16
57:17 67:22 76:5
86:20 95:2,5,6
106:19,23 107:25
108:1 109:25 110:2
113:17
it'll 109:9
item 45:7
items 12:17
i'm 9:20 21:25 41:5

**j**

j 3:2,7
jacob 3:15 6:20
72:11 103:3,4,25
104:4 110:16,21
111:6 113:2,12
jam 81:1
jannuzzi 3:2,7
92:10,11 107:1

january 38:4 39:11
107:11
januzzi 6:4,12,16
6:17 8:4,10,11,16
17:8 20:23,25 24:10
24:17 26:3,12,14,19
27:23,24 34:17 35:8
35:11,20,25 36:4,7
36:10,16,17,22
38:19,23 39:1,3,17
39:18 40:18,18,21
40:22 41:18,20
42:16 43:4,6 44:21
44:24 45:1,4,5
49:12,21 50:3 53:18
80:20
januzzi's 49:4,21
jason 14:1
jeremy 4:20 6:24
32:7
jersey 4:18 35:14
jewish 103:14
job 67:18 74:9,14
74:14,15
joel 4:6 6:22
join 37:7
joined 27:2
jonathan 3:23 5:2
7:5,14 13:3
jones 18:4,4
joseph 2:10 3:18
7:6 115:12
judge 1:23 7:9,9,12
17:10 20:21,23
21:21 24:18 26:12
26:20 29:8,18 32:3
35:8,20,25 36:13,23
41:1,20 42:17 43:4
43:10,11,14,19
45:20 50:4 52:2,4
52:18,21 55:17
67:17,24 70:20
74:10,19 75:11
76:19,22 84:1 87:24
97:21 98:8 101:23
101:24

judgment 59:19
68:14,15 69:1,2
judgments 85:13
judicial 95:14
jumped 102:22
june 21:17 61:6
justice 52:10

**k**

katz 103:18
kaye 3:17 7:5
keep 106:21
keeping 98:7
keeps 105:15
kessler 5:10 7:2
22:25 23:3 37:4
81:14 83:19 89:3
97:10,13 99:12
108:1 110:1,7,12,18
111:21 112:5,11,16
112:21
kessler's 28:25
110:2,14,21 111:4
kew 5:11,13
kind 15:19 35:23
68:19 76:21
kirshenbaum 2:9
3:22 7:4,5 11:11,16
16:21,25 30:6 38:5
38:13 42:1 45:10
54:13,15 56:20,25
59:1,23 60:3,17
62:9 63:10,12,18
69:12 70:1,13 71:12
71:20 72:4 76:3,8
76:10,12,14 83:10
84:16 86:25 87:22
87:24 88:2,10,15,17
88:19 90:5,22,25
91:17 93:7,9 94:8
94:20 95:8 96:10,13
96:16,20,21,23 97:7
97:20,25 98:16 99:4
99:19 102:16
103:11,23,24 104:2
104:5,6,14,23
105:10 108:8,14,18
108:21 109:1,4

111:13,15,21 112:2
112:4,7 113:13,14
113:18,22,24 114:7
115:11
kirshenbaum's
86:9 105:9
klausner 4:20 6:23
6:24 27:9 32:3,7,7
35:17 36:13,19
38:17,24 39:14,20
39:21 41:11 42:17
43:5,11,14,17,19
45:3
klausner's 39:22
knew 49:4 56:19
58:12 69:3,4,11
101:6,7
know 9:11,23 10:4
10:11 12:12,13
13:11 14:19 15:6,8
15:9,12,12,17,18,19
15:21,22 16:2,15,25
17:2 18:4,16,17
19:15,21 22:11 23:3
26:4 30:5,12,16,17
30:18,19 32:2 35:1
35:11,11,13 36:24
37:17 38:6,8,10,23
39:6,8,9,14,22 41:2
41:8,24 42:1,4,6
49:3,3,4,15 51:2,2,4
52:8,11,11,13 53:4
54:3,4,18,18 55:20
56:9,11 57:6,6,16
58:7,11,14,15,16,20
60:6,9,18 61:4
63:16,16 64:4 66:18
75:9,10 77:3 78:7
79:11,11,22 80:9,11
80:15 84:22 89:4
90:17 91:6 92:19,20
93:24 95:9 99:19
100:5 101:16,17
104:15,16 105:4,5
105:16 106:20
108:23 109:17
110:14 111:10,17

111:23 112:12
113:5,25
**knowledge** 25:1,7
40:24
**known** 15:21 58:10
62:9 68:21
**knows** 10:6 19:7,22
32:9 104:15,20,23
104:25
**kramer** 5:9 7:2
**kwestel** 4:9 7:17

**l**

**l** 2:25 116:3,9
**lack** 47:21 67:25
75:1
**laid** 45:13
**large** 14:18 113:16
**larger** 85:3
**las** 1:3
**late** 35:23 60:11,16
78:7 101:12
**latest** 77:17 108:10
**latitude** 55:25
**laughter** 61:24
80:22
**laundry** 64:23 91:8
109:10
**law** 3:2 5:9 7:2 13:4
15:24 30:22 40:3,10
43:25 45:18 64:1
69:17 74:18 106:6
112:8
**law's** 111:19
**lawsuits** 84:24,25
85:4,10
**lawyers** 12:8 50:6
75:7
**lead** 29:25
**learned** 58:4
**leased** 14:4
**leave** 52:18 89:8
105:7
**leaves** 55:22
**left** 93:22
**legal** 23:9 61:17
**legion** 30:15,24

**legitimate** 56:5
104:18
**leifer** 5:2,2,3 7:14
7:14
**lend** 12:7
**lender** 14:9
**lending** 12:8
**lengthy** 25:15
**leonardo** 5:22 8:20
8:22 10:2,14 19:3
**lessor** 14:4
**lest** 69:8
**lester** 2:9 3:22 7:5
115:11
**letter** 32:23 34:4
50:3 53:21 57:24
69:17 72:9,12 95:22
97:3
**letters** 49:10
**level** 53:5 101:3
105:10
**levine** 5:15 7:1,2
23:2 109:21 110:5
110:20
**liability** 24:8,15,25
26:10 27:1 28:11
**license** 67:11,15
**light** 17:1,9 34:9
**likelihood** 55:7
**limbo** 27:4
**limit** 97:11
**limitations** 15:8
**limited** 15:10 41:13
85:10
**line** 73:5 78:8 81:9
115:4
**liquidated** 46:8
**lisa** 5:15 7:2
**list** 11:6 20:16
64:23 73:9 90:14
91:8 109:11
**listened** 103:5
**literally** 10:9
**litigate** 76:5
**litigation** 47:25
81:24

**litigations** 88:11
**little** 17:9 37:9
47:20 64:19 107:9
**living** 12:9
**llc** 2:9 3:10 4:2,16
6:24 115:10
**llp** 3:9,17 4:8
**local** 60:15
**locate** 73:4
**lock** 75:6
**locke** 3:9 6:20 21:15
69:11
**log** 81:1
**lohrfink** 4:8 7:16
**long** 62:17,24 76:25
109:22
**longer** 17:14 24:14
**look** 16:5 23:9
28:16 32:23 44:16
60:8 62:8 63:22
64:4,13,15 65:3
74:10 75:16 79:18
79:18 87:5 91:7
93:14 95:19 102:13
102:13 107:6,10,12
**looked** 22:7 46:5
60:15 81:7
**looking** 21:24 25:22
26:11 28:17 59:1,4
62:12 63:13,18,24
64:2,13 80:6 102:7
102:8,8,9,17,18,18
**lord** 3:9 6:20 21:15
69:11
**lose** 78:5,6 104:19
**loser** 15:5
**loss** 8:23 10:22 11:8
11:25 12:1,2,11,25
13:1,2,7,10,21
14:15,16 19:5 20:11
20:12 22:18 23:4,11
23:14,16 71:2 73:16
73:16 81:15 95:13
**losses** 47:15 48:11
48:12 85:2 86:13
104:21

**lost** 14:10 48:3,4
78:23 80:21 86:15
104:9
**lot** 19:12 57:8 60:6
84:2 85:7 98:24
103:10
**louis** 1:22
**love** 54:19
**lowy** 5:3 7:15
**luck** 52:2
**lying** 105:4

**m**

**m** 1:14 2:9 3:22
115:11
**magro** 4:8 7:17
**maintain** 34:8,14
**major** 16:14
**majority** 31:11
**making** 9:21,22
15:21 30:17 36:18
41:6 60:4 74:9 75:3
77:24 85:17 88:25
89:11 92:5
**managed** 71:3
**management** 2:9
3:10 115:10
**marina** 4:16 6:24
**mark** 5:7 7:9,9,12
**markers** 33:2,4
**massive** 68:22
**material** 60:20
62:20
**materials** 25:16,17
**math** 49:18
**matter** 1:5 2:2 6:2,3
7:22 72:19 83:3
112:9
**matters** 39:10 68:2
**mcandrew** 4:8 7:17
**mean** 10:3 18:1,1
18:13 38:3 39:13
41:8 42:22 43:24
48:1 51:14,20 57:25
63:9,9,19 75:14
76:22 88:20 95:16
101:19 113:18

**meaning**  97:4
**means**  17:13 49:14
  107:11
**mechanism**  8:6
  15:3
**meet**  33:10,10 34:25
  35:2,2 43:23 55:13
  69:24
**members**  46:9 48:1
  52:25 54:9 57:19,21
  61:18 65:20
**memorandum**  61:5
**memory**  110:13
**mention**  25:6
  113:23,25
**mentioned**  12:18
  14:12 31:4 109:24
**merit**  55:7
**merits**  20:6,7
**message**  68:19
**met**  21:4,14,15 22:9
  50:5 82:17
**michael**  3:2,7 6:16
**microphone**  11:21
**mid**  47:19 57:20
**million**  13:10,10,19
  16:2 22:2,3,6 23:8
  48:3 49:7,9,11,14
  49:16,17,17,19
  52:16 69:6 70:18
  81:21 82:9 95:16
  104:10,17
**mind**  30:4 77:2
**mine**  73:13
**mineola**  116:24
**minimize**  89:16
**minute**  35:25
**minutes**  6:8 103:6
  109:24
**mistaken**  15:2
**misunderstood**
  97:18
**modest**  60:7
**moment**  59:1,4
  71:18
**monday**  35:7 77:17
  79:2,5 90:13 108:10

**money**  10:7 12:7
  13:7,17 14:10,18
  16:6 25:12 34:13,19
  40:1 42:21 43:1,21
  44:8 48:4,4 53:10
  59:9 68:13,16 69:1
  69:5 70:2,11,12
  81:17 82:2 83:2,4
  85:6,20 86:12 94:7
  94:12 102:1,17
  104:10,13,18
  105:20 110:18,19
  112:23
**monies**  12:9 16:12
  47:18 48:5 59:11,18
  70:8 84:12 90:3
**month**  48:4
**months**  17:13 49:7
  61:3
**moot**  27:18 97:13
**morning**  6:11,12,18
  6:20 7:4 45:15
  46:12 47:3 49:12
**moscou**  5:1 7:13
**mother**  13:4
**motion**  2:5,5 8:2
  18:22 24:6 29:2,6,8
  36:18,22 38:19 39:3
  39:7 40:5 41:6,10
  41:14,16 42:1,3,7
  42:14,15 44:17 65:5
  66:9,9,15,16,22,23
  67:5,6,19 68:9
  69:22 72:6,7,17
  78:11 83:6 89:21
  96:25 97:25 98:18
  99:20 103:13
  105:25 106:7,9
  107:2,4,20 108:3,6
  109:14,14,18,18
  113:8,9,15 114:3
  115:5,5
**motions**  107:7
  113:8
**movants**  54:22
**move**  24:3 31:15
  42:24 43:24 45:6,7

46:7 55:25 56:23
  65:10 79:17,23
  83:11 87:9,9,14,14
  88:7,7 91:2,2 93:12
  93:19 94:17 95:18
  95:25 106:10,15
  107:7
**moves**  55:1 64:21
**moving**  40:13 48:17
  58:15 60:8 79:10
  84:3 88:22 99:15
**mulholland**  5:7 7:9
  7:10,12,13 15:13,15
**mulholland's**  15:14
**murray**  5:2 7:14

**n**

**n**  3:1 6:1 115:1
  116:1
**name**  13:14,23 14:1
  14:2 32:5 80:7
**nature**  54:25
**near**  57:7
**necessarily**  95:8
**necessary**  11:1 83:2
  86:1 93:4 97:11
**need**  9:2 10:4,9
  13:25 14:12 26:1,25
  27:3,4,10 32:15,24
  34:8 35:6 41:3
  48:25 54:9,11 55:12
  60:18 67:8 69:20
  76:10,12,15 77:8,20
  82:11 85:23 86:7,22
  89:12 92:24 93:1
  94:9 96:22,25 97:24
  99:22 102:24 108:6
  109:5
**needed**  11:4 22:17
  22:22 54:7
**needlessly**  53:10
**needs**  67:2 83:13
  94:9
**neighborhood**  63:2
**net**  23:14,16 81:15
  104:9
**never**  48:5 50:7,8,9
  57:8,9,17 58:5,17

58:17 59:15 66:21
  66:21 70:10 81:10
  94:15 101:4 103:25
  104:4
**new**  1:2,16 3:5,12
  3:12,20,20 4:4,4,11
  4:18 5:5,13,20 6:17
  22:4 63:25
**nice**  74:8 98:3,18
**night**  78:19,23
  103:15,19
**nine**  17:13 90:14
**nonsense**  98:25
**northern**  4:2 6:21
  14:6,18 84:7 92:3
  101:19
**note**  69:25 111:15
  112:23
**noted**  60:3 61:10
  70:1
**notice**  52:1 54:23
  55:15 76:24 91:19
  91:21,22 94:1 98:14
  99:21 100:23
**notify**  54:7
**noting**  59:8
**notwithstanding**
  52:22 85:19
**november**  1:18 23:5
  24:5 32:24 33:25
  34:4 37:24 44:16
  61:3 116:17
**number**  11:24 13:4
  38:15 39:8 81:7,19
  85:10 86:16,18
**numbers**  22:11
  82:16 84:18
**ny**  116:24

**o**

**o**  1:21 6:1 116:1
**o'clock**  35:9
**object**  28:20 30:20
  30:25 67:16 77:18
  90:18 111:25 112:1
  112:18,20
**objected**  111:23

**objecting** 92:22
**objection** 27:15,17
  27:20 29:9,13,15
  33:9 59:16 82:2,12
  90:14,16 92:25
  110:4 111:2,2,3
**objections** 30:2
  92:23
**obligation** 81:6
**observer** 78:25
**observing** 103:19
**obtain** 68:1,24
  100:17
**obtained** 59:22 63:5
  69:1
**obtaining** 61:18
  97:9
**obviously** 8:12 9:16
  10:5 12:3 18:21
  37:16 74:19,24
  83:15 111:23
**occasions** 21:15
**occur** 17:14
**occurred** 50:2
  62:10 63:4 64:3
  97:19 104:21
**occurs** 97:7
**october** 72:11 95:22
  98:19 101:6,9
**offer** 81:1
**offered** 11:3
**offering** 41:21
**office** 3:2 5:9,17 7:2
  8:4,9,17,22 9:17
  18:25 22:17,23
  23:20 24:1 66:8
  80:17 90:3
**oh** 23:15 32:7 33:19
  35:11 108:14
**okay** 15:4 22:13
  33:5 36:12 42:16,25
  53:9 72:3 79:18
  86:24 88:23 91:25
  98:4 99:4,20 103:14
  103:22,25 108:14
  108:24 109:1,4

**old** 116:22
**omission** 68:5
**once** 12:13 27:16
  29:12 31:4 37:5
  38:18 57:25 108:5
  108:15
**onerous** 33:8
**ones** 12:18 33:5,6
**open** 37:6 56:4
**opening** 40:25
  55:25
**opens** 29:13
**opined** 111:16
**opinion** 45:20 68:7
**opportunities** 21:6
**opportunity** 20:7
  21:3 36:8 39:21
  48:24 56:1 60:13
  65:12 71:22 73:10
  80:2,3 87:9 89:19
  100:2 102:9,23
  106:9 108:20 114:5
**oppose** 31:6 37:7,22
  39:2 89:19
**opposed** 25:16 37:5
  112:10
**opposition** 8:1 24:6
  24:23 26:8 37:18
  40:5 78:16
**oral** 28:22 31:22
**order** 9:14,16 10:10
  10:12 16:4,7,19
  17:6,18 18:11 27:23
  29:4 45:23 46:13,17
  51:24 54:6 55:9,18
  57:6,14,15 64:24
  65:4,7,10 73:8 78:5
  79:9 87:10 88:8
  89:13 90:23 91:3
  93:12 100:4,18
  102:5 105:6 106:11
  106:14 107:19,24
  108:2,5,13,15,21,22
  109:2,7,9,15,16,18
  113:10,16,17,19
  114:1,4,6

**ought** 35:22
**outlined** 85:24
**outrageous** 51:15
  51:15
**outside** 46:20 62:10
  63:13
**overall** 64:10
**overbroad** 88:6
**owe** 14:21 25:11
  34:13 42:20,21 43:1
  43:21 112:22
**owed** 25:12 34:20
  48:3 110:18
**owes** 33:20 40:1
  44:8 110:18

**p**

**p** 3:1,1 6:1
**p.c.** 4:15 5:9 7:3
**p.m.** 36:5,5 114:10
**page** 61:1,5,10,14
  61:16 72:25 73:6
  115:4
**pages** 60:23
**paper** 49:5 82:18
**papers** 27:14,21
  37:1 39:21 40:5
  41:14 45:14 60:8,10
  60:11,12,16,18 72:7
  78:12,16,17,20,21
  78:21,22 79:1,2,3
  79:22
**paperwork** 9:1 10:4
  10:10 14:11,14,21
  19:5
**parallel** 93:17
**paralysis** 30:18
**parcels** 47:4,5
**park** 3:4,19 6:17
**part** 12:10 14:24
  16:14 18:11,19
  19:20 38:20 50:13
  64:9 72:16
**partake** 89:23
**partial** 49:8 61:13
**participate** 27:19
  27:25 29:14,20 30:1
  37:7

**particular** 47:10
  56:6 93:25 106:25
**particularly** 11:7
  52:10 67:25
**particulars** 52:14
**parties** 10:23 11:7
  20:15 29:14 30:7
  31:18,20 35:13
  37:10,13 38:1 42:6
  44:15 48:17 51:8
  65:11 70:23 81:23
  83:22 85:11 91:11
  93:18 97:11 106:5
  106:12,22 107:13
  109:13
**partner** 105:22
**parts** 84:3
**party** 50:14,21 54:3
  64:21 65:3,9 88:12
  93:11 114:4
**passes** 18:4
**path** 85:17 113:10
**patience** 113:4
**pause** 42:9
**pay** 12:7 105:20
**payment** 31:5 49:8
**pen** 80:21 82:18
**pending** 51:21,21
  57:5,6 100:1
**penny** 81:10
**people** 11:10 15:10
  15:16 20:19 47:20
  57:8 60:14 82:6
  92:3 104:24 105:16
**percentage** 105:19
**perfectly** 30:3
**period** 27:4 45:19
  46:6,7 48:5 51:20
  53:3 57:12 59:11,13
  59:13 62:11,12,23
  62:25 63:3,5,6,13
  63:20,21,22 64:4,13
  65:23 73:15 90:19
  91:1 95:7 100:24
  108:23 109:2,10,12
**permissible** 65:24

**permission** 67:14
**permit** 37:6 52:10
**permitting** 106:8
**perpetrated** 68:22
**perpetrating** 46:19
**person** 35:18 68:20
**personal** 23:16
**perspective** 92:13
**petition** 26:7 30:16
  30:21 31:1,7,14
  37:22 44:19 57:3,4
  61:6 110:2,13,23
**petitioner** 110:24
**petitioners** 29:17
  61:1,5,8,10,16
  62:10,19 84:17,24
  86:1 105:9
**petitioning** 2:5 6:23
  7:1,6 11:14,19
  22:20 29:3 37:19
  45:8,22 48:16 65:17
  71:3 74:18 81:3
  82:4,14,19,25 84:6
  84:19 106:4 115:6
**petitions** 82:21
**ph** 13:3,20 14:1,12
  21:7,13 24:21 45:20
  47:24 48:2 65:16
**phrases** 61:22
**physical** 32:15
**pick** 58:25
**pie** 69:7 101:20
**piece** 49:5 53:19,19
  69:7
**place** 4:17 17:6,18
  50:23,25 51:5 65:5
  65:6 69:15
**placed** 31:23
**plains** 4:11
**plan** 107:17
**play** 57:11
**played** 28:23
**playing** 53:5 101:3
**plaza** 1:15 5:4,19
**plea** 59:22
**pleading** 7:25 37:14
  37:16 91:13,14

**pleadings** 37:20
  38:1
**please** 6:13,15 32:5
  36:6 53:22 55:17
  95:23 103:24
**pleasure** 38:10
**pledged** 97:16
**pledging** 97:22
**plus** 14:16 21:24
  23:8 69:6
**pockets** 104:12
**point** 10:3 15:7 16:1
  16:17 18:21 19:13
  20:10 23:21 26:14
  33:7 34:11 42:2,11
  46:9,13 48:13 56:22
  59:8 71:5,7 72:21
  76:5 88:16,18,20
  91:10 93:16,25 94:5
  97:17 102:25
  107:15
**pointed** 14:20 24:1
  40:5 47:16
**points** 11:17 14:25
  15:23 63:17 72:4
**policy** 64:20 93:8
  114:1
**polite** 60:7
**ponzi** 68:22 81:5
**portions** 59:13
**position** 15:25 16:2
  17:16 24:10,23
  25:13 27:16 33:21
  34:9,23 39:24 40:15
  42:20 48:16,22
  55:22 61:17,20
  72:23 82:25 84:23
  92:1 100:21
**possession** 51:23
**possible** 22:24
  23:21 35:20 38:2
  41:2 44:1 60:2
  68:25 108:3,7
**possibly** 54:19 77:5
  80:5 92:24
**post** 81:17

**posting** 83:1
**posture** 42:19 44:11
**pot** 22:2
**potential** 8:24 19:6
  19:19,21 20:17
  63:14 80:15 82:6
  83:18 86:3 87:1
  88:9 101:15
**potentially** 112:8
**power** 55:10
**practical** 29:24 87:6
  112:9,9
**practice** 114:4
**practicing** 88:12
**pragmatic** 87:6
**precisely** 67:7 70:25
  86:14
**preclude** 51:6,7
**predate** 25:3,6
**prefer** 94:4
**preference** 31:10
  62:11,21,23 63:3,21
**preferential** 31:5
**prejudice** 58:21
  70:1 94:11
**prejudiced** 71:21
**preliminary** 55:9
  100:5
**premature** 71:16
  72:1
**premise** 46:3 51:18
**prepared** 23:5 27:1
  27:7 30:8 41:9
  77:15 85:20 88:19
**present** 51:7 59:2
  72:24 85:24 93:20
**presentencing**
  17:12
**preserve** 51:24
**presiding** 6:10
**pressed** 98:21
**pressure** 85:8
**presumably** 38:19
  47:5 49:22 52:5
  54:25 91:21 100:17
  109:5 112:22

**presumptuous**
  68:11
**pretty** 38:20 40:10
**prevent** 48:14,25
  83:7,13 87:15 89:9
  93:20
**prevented** 51:10
**principal** 13:18
**prior** 21:3,16 63:4
**pro** 9:23
**probably** 19:16
  44:5 56:7,12
**problem** 16:14
  18:19 26:19 45:25
**procedure** 2:7 8:6
  87:18 89:24 91:16
  99:18,23 115:8
**proceed** 7:21 24:15
  34:6 42:19,23 46:2
**proceeding** 2:3
  13:24 27:13 53:1
  55:1 57:5,14 71:11
  76:17,19,20 94:22
**proceedings** 27:19
  83:3 114:9 116:5
**proceeds** 46:8,17
  48:9 64:12
**process** 10:7,8,13
  15:1,7 17:12 28:1
  45:23 73:3,3,3
  89:17 102:2,2,19
**produce** 64:25
**produced** 24:20
  114:2,3
**production** 2:8
  64:22 92:23 106:13
  115:9
**products** 13:15,15
  13:18,22 47:6,9
**profit** 51:23
**profits** 86:15
**progress** 22:8 79:10
  85:17
**projecting** 107:23
**promptly** 22:24
  23:21 38:2 106:20
  108:7

**pronouncing** 80:7
**proof** 12:14 13:12
  23:6 52:5 75:19
  77:23
**proofs** 73:15
**proper** 68:9 83:6
  95:2,4,20
**properties** 48:10
  50:8 51:23 52:12
  60:22,23 61:2 79:15
**property** 46:17,18
  46:20 47:4,5 62:7,8
  62:17 63:6 64:6
  65:23 66:19,21
  86:20
**proposal** 82:15,16
  83:15,17 85:25
  88:23,24 90:1 94:6
  99:8,10 105:8,14,17
  105:19,24
**propose** 105:7
**proposed** 82:1
**proposing** 74:17
  89:1 105:20
**proposition** 29:12
**protect** 86:1 105:8
  105:14,15,18
**protected** 105:21
**protective** 65:4,10
  87:10 88:8 91:3
  93:12 106:10
  109:15,18 113:9
**prove** 55:19
**proven** 22:5
**proves** 83:23
**provide** 8:18 9:4
  11:3 22:21 23:20
  67:1 93:11
**provided** 8:25
  20:12,18 32:22 33:4
  33:5,7,18 34:10
  70:25 82:7
**providing** 49:20
  106:8
**provisions** 73:22
**publicize** 15:3

**publicly** 15:21
**purchased** 64:11
**purpose** 53:15
**purposes** 39:12
  63:11 99:5,6
**pursuant** 2:6 9:16
  21:10 62:24 63:4
  68:13 69:1 75:7,18
  115:7
**pursuing** 85:14
**pushed** 107:11
**pushing** 38:7
**put** 21:2 40:4 41:14
  41:22 43:20 67:4
  68:10 82:15,17,24
  82:25 84:5 85:20
  90:13,16 94:11
  103:7 104:8
**putting** 66:16 70:21

**q**

**qualified** 28:9 29:4
  33:12,13 34:23
**quash** 36:18 38:19
  39:3,7 41:6 42:1,3,7
  42:14,15,25 44:17
  65:5,11 87:9 88:7
  91:2 93:12 106:9
  107:2,4,7 109:14,18
  113:8,8,9
**question** 12:25
  16:17 24:9 27:6
  83:8 90:6 92:12
  96:5,6
**questions** 34:4
  39:19,25
**quick** 49:18
**quickly** 20:25 77:16
  78:12 102:7 109:23
**quite** 26:5 58:2
  59:14 73:17 86:17
  97:6 113:4
**quo** 76:14,15
**quote** 67:24
**quoting** 72:25

**r**

**r** 1:21 3:1 6:1 116:1
**raise** 42:2 82:16
**raised** 30:17 37:2
  37:12 56:17 70:16
  99:14 111:18
**rata** 9:24
**rational** 12:1
**reach** 20:19
**read** 60:7
**readily** 62:16 97:20
**ready** 105:8
**real** 18:19 21:24
  40:12 47:2,3,3,6,9
  48:7 49:16 52:13
  94:14 95:15,15
**realistic** 18:2
**realize** 66:20 88:21
  107:22
**really** 9:20 10:3
  15:10,21 18:17,18
  26:1 27:3 30:6 31:7
  34:11 41:12 68:9
  70:22 74:2 87:1
  91:7 95:3 100:9,11
  103:23 109:22
**realty** 4:2
**reap** 69:17
**reargue** 27:16
**reason** 44:6 78:18
  84:23 90:15 104:12
  104:21 112:14
**reasonable** 105:8
  105:18,24 109:10
  109:12
**reasons** 21:1 30:12
  31:2 45:15 82:11
  98:24
**reassuring** 65:13
**rebuts** 79:7
**recall** 22:22 80:6
**receipt** 60:23
**receive** 9:23 63:1
**received** 11:13 49:9
  62:23,24 74:7 84:10
  86:14

**recess** 6:9 36:3,5
**recipient** 31:3,5
**recollection** 111:8
**reconciles** 80:16
**record** 32:6 39:18
  46:2 47:14 48:9
  51:25 52:6 72:5
  76:18 77:11 78:4
  102:9 106:6 116:4
**records** 19:15,16
  25:8,9,9 34:18,25
  35:1
**recovered** 68:13
  69:1
**recovery** 2:8 3:10
  115:10
**redundant** 94:16
**reference** 25:5
**reflects** 11:24
**refrain** 20:6
**refuse** 101:11
**regard** 18:18 19:6
  81:11,14 84:7 94:7
  109:25
**regarding** 110:2
**regular** 60:10 61:23
  62:1
**reject** 60:12
**relate** 46:15
**related** 27:6 86:20
**relates** 14:19
**relating** 39:25
  50:16
**relation** 19:8,10
  23:22 24:2
**relationship** 111:24
**relationships** 30:20
  111:25
**relevant** 60:20
**relied** 59:25 68:15
**relief** 29:4 55:4,8
  66:9 68:4,9,24 70:3
  71:22 72:18 83:13
  89:7,14,21,22 93:20
  96:1 99:16,16
  107:19,24 108:2,5
  109:19

**relieve** 85:7
**religious** 69:13,15
  70:7
**reluctant** 107:9
**remedy** 31:14,15
  51:19 52:18 71:22
  87:15 89:14
**remember** 82:20
**remission** 10:8
**repay** 47:21
**reply** 60:10,12
  78:20,20,21,22 79:4
**report** 11:6 20:5
**reported** 21:6
**represent** 13:25
  15:17 46:17 105:16
  105:17 108:9
**representation**
  52:15 59:9
**representations**
  104:7
**represented** 50:5
  56:9 59:12,15,20
  60:5
**representing** 59:23
  103:8
**represents** 105:13
**request** 39:2 45:8
  54:4 55:8 58:10,11
  67:3,15 68:4 71:15
  72:20 80:11 88:1
  92:23 95:25
**requested** 22:22
  23:20 32:1 45:17
  58:13 64:20 66:15
  71:1 106:4,13
  109:11
**requesting** 46:4
  54:6 64:16 72:14
  88:5
**requests** 33:23
  64:17 89:19
**require** 11:13 66:12
  92:16
**required** 11:2 20:13
  26:15 66:25 67:19
  69:9 71:13

**requires** 45:12
  66:14
**reserve** 83:17 88:24
  89:1 90:3 99:8
**reserving** 83:23
  94:7
**resolution** 85:17
**resolve** 26:2 62:1
  94:13 106:23
**resolved** 24:18 25:1
  72:19
**resources** 97:11
**respect** 7:24 9:18
  12:25 14:21,22 15:1
  16:23 18:16 22:18
  23:25 24:11,24
  25:14 26:7 28:4,8
  28:12,21,21,24 29:6
  29:14 30:10,18
  31:11,25 37:4 38:14
  39:7,19,25 40:15,20
  44:7,17,18 63:14
  64:19 66:19 67:18
  67:20 71:9,11,19,24
  72:14 80:18 81:16
  83:23 85:18 90:8
  93:10 94:8 96:8
  97:13 99:8 102:4
  106:3,12,16,19,23
  107:8,23 108:1
  110:3,8 111:9 113:5
  113:9
**respectfully** 38:22
  39:2
**respects** 53:1
**respond** 54:7 67:21
  78:9,10,14 80:3
  90:6 92:17 97:6
**responding** 20:6
  65:3,9 93:11
**response** 58:1 66:24
  67:6
**restitution** 21:3,12
**restraining** 55:9,9
  55:17 100:4
**restraint** 67:9 77:9

**result** 48:19 64:12
  73:19 83:3
**resume** 6:9
**resumed** 36:5
**retainer** 12:8
**retrieve** 32:17
**return** 42:15 84:12
  107:2,14 113:7
**returnable** 41:6
**returns** 86:7,19
**review** 24:12,22
  25:8 40:24 106:18
**reviewed** 34:18
**reviewing** 79:22
**revisit** 42:5,12
**revisiting** 29:1
  109:25
**rewarded** 80:13
**right** 6:2,14 7:12,21
  9:7 10:2 16:21,25
  22:19 25:25 27:19
  36:19 42:10 44:14
  45:6 50:12 51:25
  52:7,17 53:10,11
  55:22 56:20 61:17
  65:11 67:10,16 76:3
  77:25 79:4,4,6
  82:10 83:5 88:2,7
  88:17 90:11,17,22
  90:25 93:9 102:5
  106:3,17 108:18
  110:13,25 111:7,22
  112:4,7,15,17 114:8
**rights** 31:21 65:3,8
  68:18 91:3,5 101:16
  106:15
**rimberg** 4:1 6:22
**road** 5:11 116:22
**rock** 75:19
**role** 27:13 28:22
**rosenberg** 2:10 3:18
  7:6 11:19,23 12:4,5
  12:17 29:16 37:4
  69:10 81:11,17
  83:18 89:3 97:10,14
  99:12 108:1 110:1,8
  112:8 115:12

**rosenberg's** 11:25
  12:10 14:22 28:24
  111:4,4
**rosenthal** 14:1,3,6,8
  14:10 112:1
**rosenthal's** 14:11
**roughly** 12:23 13:8
  13:19 81:6
**rule** 2:7 45:9 52:7
  54:4 64:21,25 65:7
  65:24 75:2 87:19
  90:20 102:23 106:3
  112:14 115:7
**ruled** 29:8 112:13
**rules** 54:3 60:15
  62:12 74:6 87:18
  89:23 91:15 99:18
  99:23 103:22
**ruling** 29:19,21
  30:17 89:1 97:19
**rulings** 115:3
**running** 70:10
  72:18
**runs** 35:23
**rush** 58:23
**ruskin** 5:1 7:13
**rxr** 5:4

**s**

**s** 3:1 6:1
**sabbath** 78:24
**sarah** 5:3 7:14
**sat** 22:10 68:18 69:5
  69:15
**satisfied** 85:21 89:6
**satisfy** 82:13 83:2
  85:25
**saturday** 103:15
**saul** 5:10 7:2
**saw** 93:21 102:22
**saying** 21:22 24:11
  25:17 28:20 35:11
  37:20 40:23 57:16
  71:15,20,25 76:18
  92:16 93:1 95:20
  98:16,17 105:4
  112:22 114:3

**says** 33:19 43:25
  70:2 73:5 96:18,19
  101:17,18 104:14
**scarcella** 1:22 6:10
**scenario** 43:9 94:24
**schedule** 2:2 20:18
  31:19 90:12 106:19
  107:10,12
**schedules** 107:18,23
**scheduling** 38:3
**scheme** 64:7,12
  68:22 81:5
**schneck** 4:6 6:21,22
**schnecksline** 13:19
**scholer** 3:17 7:6
**scope** 97:18
**scream** 79:12
**seated** 6:13 36:6
**second** 23:15 24:3
  26:12 39:13 84:8
**secondly** 59:14
**seconds** 109:24
**section** 62:21 63:24
**security** 47:7
**see** 9:2,6 17:19
  53:19 62:13 66:3
  67:22 72:17 79:16
  81:10 86:22 87:22
  100:25
**seek** 54:12 68:24
  71:22 81:5 89:7,15
  91:5,12,18 109:19
**seeking** 66:1,2 67:1
  68:10 70:4 75:5
  84:20 87:15 89:21
  110:15
**seen** 35:1 50:7,8,9
  75:8 103:10
**seized** 9:25
**select** 35:6 107:5
**self** 31:7
**sends** 76:23,24
**sense** 43:5 52:21
  73:7,11 85:11
**sent** 20:14 32:24
  33:23 49:5 57:24
  68:19 72:10,10

95:22
**sentence** 21:2
**sentencing** 17:6,14
  21:3
**september** 53:21
  57:20 58:12,13
  72:22 73:1 95:21
  98:8
**series** 64:3
**seriously** 95:19
**serve** 41:5 44:24
  45:1 67:14 77:13,14
  90:12 108:10
**served** 60:11 78:10
  78:20 103:13
**serving** 41:16,16
**set** 9:10,11 21:17
  26:6 83:4,17 85:5
  92:18 107:19
  108:22 109:5,9,11
**setting** 21:22 85:1
  99:8
**setup** 15:3
**seven** 72:12
**shalom** 3:15 6:20
**shame** 38:15
**shape** 28:15
**shapiro** 5:9,15 7:1,2
  7:3 23:2 109:21
  110:5,20
**shared** 84:9
**sharing** 38:9 53:18
  92:9
**sharply** 67:5
**shed** 17:1,9
**sherri** 2:25 116:3,9
**shied** 70:10
**shock** 66:6
**shocked** 67:11
  71:12
**shocking** 68:18
**shoes** 39:22
**shook** 93:21
**short** 36:2 39:16
  78:25
**show** 25:18 54:15

**sic** 14:20,24 17:1,8
  17:22 40:9 46:12
  69:13
**side** 22:19 64:24
  93:4 114:5
**sided** 101:1
**sidetracked** 80:20
**sifting** 32:19
**signed** 50:6,7
**silent** 98:15
**similar** 76:13
  112:21
**similarly** 13:12 74:4
**simple** 52:21 53:7
  53:13 79:3
**simplify** 85:8
**simply** 13:17 64:22
  68:8 72:17 86:11
  92:21 100:7 101:3
  101:20
**simultaneously**
  37:14
**sir** 6:12,18 26:22
  32:5 36:7 45:5
  113:14
**sit** 103:4 111:10
**sites** 21:8
**situation** 55:21,22
**situations** 63:5
**six** 10:23 15:4,18
  17:13 48:4 49:7
  63:13,24 64:4 70:21
  70:23 71:3 73:15
  76:21 77:1 95:13
  97:16
**small** 13:7
**smarter** 57:7
**solely** 9:15
**solid** 75:19
**somebody** 42:21
  43:1,21
**someday** 68:17
**someone's** 12:13
**someway** 87:15
**somewhat** 25:15
  44:21 86:6,8

**soon** 58:4 61:23
**sooner** 10:5 58:15
**sorry** 7:11 23:15
  32:7 33:20 72:13
  80:23 110:25
**sort** 16:10 27:3 37:3
  80:9,16 84:13 89:16
  93:21
**sorts** 57:17 73:25
  73:25
**sought** 69:23 97:1
**sounds** 35:8
**source** 28:19
**south** 2:25 116:3,15
**space** 14:4
**speak** 19:1 41:15
  59:25 93:24
**speaker** 6:5 35:10
**speaking** 77:23
  81:22 98:24 101:18
**speaks** 70:5
**specific** 19:24 25:6
  72:15 78:17
**specifically** 25:20
**specified** 23:15
**specify** 109:2
**speed** 53:4
**spend** 32:18 53:10
  85:12
**spinning** 76:21
**spoke** 70:21
**spoken** 81:23
**spruce** 14:5
**squarely** 65:22
**stabilize** 104:11
**stage** 46:24
**stand** 8:4,14 73:25
  74:4 77:25
**standard** 33:10
  69:24 86:1
**standards** 55:12,12
**standing** 27:18 29:1
  29:9,11 30:8,14,18
  30:25 31:12,19 37:3
  37:18,21 44:6 50:20
  51:13 110:8 111:20
  111:22

**standpoint** 29:24
34:15 42:18,23 87:6
**stands** 53:11 74:8
**start** 35:22 41:25
50:1 53:16,19 77:7
78:20 79:1,10 91:15
99:22
**started** 53:22 93:16
99:13
**starters** 92:11
**starting** 92:16
**state** 9:5 32:5 39:18
47:25 49:8 61:16
63:25 68:14 71:6
**stated** 49:1 50:11
50:13 59:16 71:16
71:17 76:16 80:4
87:2 90:10 93:23
99:2,6,7,10
**statement** 33:11
51:15,16 61:4 68:2
73:17 87:12
**statements** 44:22
104:7 105:1,3
**states** 1:1 5:17,18
8:5 9:17,17 10:8
22:17,23 65:22
101:23,23
**status** 2:1,1 6:3 7:22
7:24 14:20 20:5
76:14,15
**stay** 57:11,11,14
84:25
**stays** 95:17
**stedman** 14:12,20
14:23 17:1,8,21
46:12
**step** 18:15 86:25
87:5 88:21
**steven** 4:9 7:17
**stock** 22:4 49:17
52:13 75:6
**stop** 52:4 55:16
84:25 105:22
**storage** 32:17
**street** 14:5

**strongly** 29:21
**stuff** 101:19,25
102:6
**stunned** 66:6,7
**sub** 14:4
**subject** 16:3,7
17:21 18:10 45:20
65:10,24 75:1 84:11
**submission** 32:10
44:13,15
**submissions** 31:22
106:6,16
**submit** 10:21,24
11:18 34:6 37:13,15
60:13 66:19 90:2
99:8 113:16
**submitted** 10:23
11:8,20,22 27:14
40:23 60:8 83:16
**subordinate** 75:22
**subordination** 74:7
**subpoena** 36:14,18
36:20 38:17,18 39:4
41:5,16 42:13 45:2
65:2,3,6 67:15
77:14,14,17 87:8,9
88:4,7 90:12,24
91:4 92:17,22,25
106:8,9,15,23 107:4
108:10,16,20
109:12 113:8 114:5
114:6
**subpoenaed** 33:22
**subpoenaing** 36:15
**subsequent** 12:3,6,9
109:17
**substantial** 47:18
**substantiate** 27:1
**success** 55:7
**succinctly** 50:3
**sucker** 98:16
**sudden** 58:22
**suddenly** 89:20
99:17
**sued** 13:10,18 14:6
14:17 23:7

**suffered** 47:15
**suffice** 99:1
**sufficient** 27:8 35:3
82:3,13 83:25 84:5
85:25 88:25 89:2,2
92:7 99:24
**suggest** 29:7 39:5
44:5 68:12 69:18
70:14,15 73:6 77:5
78:3
**suggested** 62:22
67:13 70:15
**suggesting** 67:17
73:15 85:16
**suggestion** 50:18
51:11,18 68:16
73:13
**suggests** 77:6
**suite** 5:12 116:23
**summaries** 25:16
**summons** 89:20
**sunday** 79:1 103:16
**supplemental** 7:24
24:5,7 32:9 37:1,14
37:16,25 44:13,15
60:13
**supplied** 10:25
32:10
**support** 27:19 46:3
81:18 86:10
**supporting** 10:22
11:1 20:12,13 71:2
**sure** 9:22 14:23
19:7 20:15 25:25
26:24 29:8 30:3
54:1 58:8 82:22
83:1 84:21 85:20
86:10 87:11 90:5
94:12 107:17
**surprised** 58:3
67:12
**surreply** 79:5,6
**suspect** 36:24 40:18
**swallow** 79:23

|  | t |  |
| --- | --- | --- |

**t** 116:1,1
**t's** 56:11
**table** 22:19 89:10
89:11
**tailored** 72:15
**take** 25:19 36:2
39:19,23,23,24 41:3
45:24 46:7 48:15
49:25 50:12,15,22
50:24 51:2,14,22
52:23 53:19 58:16
58:16 74:2 79:8,18
81:20,20 83:14
86:25 87:5,17 88:21
88:25 94:18 100:21
102:5 105:2 113:11
**taken** 6:9 16:2 36:5
46:1 47:24 65:25
74:23
**talk** 30:25 41:11
**talked** 70:20
**talking** 8:6 37:4
49:19,20 63:2 73:2
80:23,25 92:3,22
100:4 105:5,6
**talks** 104:16
**tangible** 23:24
**target** 75:1
**tax** 82:11 86:7,19
91:24,24 98:5,24
99:5 100:7 101:8
**tee** 29:5
**teed** 40:7,8
**tell** 11:12 16:5
18:15 25:18 57:1,1
64:18 93:13 113:16
**telling** 74:11 75:15
75:16 92:1 93:7
**tellingly** 32:23
**tells** 74:9 75:11
**temporary** 55:9,17
67:9 100:4
**ten** 90:14 92:17,24
**tendered** 21:11
**tends** 48:19

**tension** 85:8
**term** 47:21 75:1,2
**terms** 16:10 23:7
  38:9 72:15 74:21
  90:10 95:2,14
  108:23 111:18
**testified** 34:21 48:3
**testify** 28:15 33:15
  33:16 34:12,19
  40:15 43:3,6,9 44:2
  44:9,9
**testifying** 34:24
**testimonial** 28:18
**testimony** 28:22
  41:2 47:23
**texas** 21:8
**thank** 6:11 7:7,19
  8:11 10:16 11:15
  18:23,24 19:2,3
  20:1,2,22 22:13,14
  23:18 30:5 34:16
  36:4,6,7,12 38:12
  41:17 45:3,4 53:25
  58:24 72:3 80:1
  86:24 102:15,20
  103:2 106:1,2 111:7
  111:11 113:3,12
  114:7,8
**thanks** 108:24
**theirs** 101:19
**theory** 53:8
**thing** 20:23 33:16
  39:17 48:18 53:22
  61:4 69:25 109:23
**things** 8:4 22:7
  55:24 59:22 70:13
  77:23 78:7 80:4
  95:16 101:12 103:6
  103:10 104:14
**think** 6:6 13:8 15:7
  15:15 16:13,14 17:7
  17:12,16,22 18:1,1
  18:7,14,15,20 19:4
  19:22 22:9 26:19
  27:12,22 31:4 33:13
  35:3,22 38:13,15,16
  39:13 40:3,10,11

45:13,14,16 48:23
  49:24 51:1 52:9
  53:12 56:3 57:19
  61:25 63:9,10 64:4
  64:13,15 69:8,14
  70:3 71:13 72:5
  73:16 77:11 79:22
  81:1,11,16 84:14,18
  85:10,23 86:5 92:18
  94:6,24 95:20 97:8
  100:25 102:25
  111:15 113:19
**thinking** 35:7 63:12
**third** 17:11 57:20
**thought** 11:1,5 20:4
  28:2 58:18 71:9
  80:21 97:7,12
**thousand** 12:20
**three** 32:19 47:25
  48:1 98:2,3,10,12
  98:12,13,14 100:24
**threshold** 26:2,4
  29:18 30:11,13 42:4
**throw** 71:5 93:6
  102:1
**thrust** 54:2 80:16
  99:17
**thursday** 78:15,18
  78:19,23 103:15
**tie** 48:11
**tied** 86:5
**ties** 47:14
**tight** 92:15
**till** 36:23 76:23 77:3
  78:15 79:2
**time** 8:5,16 16:1
  17:6,17 19:11 21:4
  21:14 22:10 26:5
  34:12 36:3 37:15
  38:17 39:4 42:2
  45:11,13 46:9 48:14
  53:3 59:7,11,14
  60:1,18 67:3 70:9
  70:16 72:22,24
  77:20,21 78:5,6,9
  81:25 86:13,17
  89:10,11 90:20 91:1

92:7 93:18 94:1,10
  97:18,19 98:2,22,22
  103:21 108:24
  109:2,10,12,22
  113:4
**timetable** 92:15,18
  93:13 107:20 109:9
**timing** 86:3 94:4
  106:18 108:23
  113:5
**title** 19:11 50:7
**today** 8:19 11:5,8
  15:9 18:9 25:13
  30:7 31:20 37:10,23
  40:11 49:4 58:7
  73:23,24 76:18 79:9
  81:12 102:12 104:8
  105:11 106:6
**today's** 37:11 88:21
**told** 24:23 42:21
  43:2,7,21 46:6
  48:15 69:3 81:14
  82:17 105:12
**tomorrow** 14:24
  55:15 77:2 108:11
**top** 56:13,15
**total** 10:25 13:8
  23:11 25:9 81:18
  86:12
**totally** 92:5 94:16
  95:25 101:13,14
**tracks** 93:17
**train** 80:21
**transaction** 32:21
  33:7,20
**transactions** 13:5
  13:16 23:10,13,17
  32:13,14,14 47:1,2
  47:6,9,10,18,20,22
**transcribed** 2:25
**transcriber** 116:10
  116:16
**transcript** 73:1
  96:18 116:4
**transfer** 9:15 16:19
  63:15 64:3 65:19,23

**transferred** 9:25
  47:4,5,8 48:5 50:8
  60:22 61:9 62:7,17
**transfers** 32:13
  45:23 62:10,13
  63:12 64:3,5
**transpired** 32:4
**transmony** 28:22 *(see)*
**travesty** 38:16
  52:10
**tremendous** 101:15
  108:4
**tried** 15:16 68:6
  72:19
**triple** 51:4
**true** 50:22 60:24
  61:3,7,7,13 116:4
**trumpeting** 95:12
**trust** 20:7
**trustee** 50:17,18,19
  50:20,23,23,25,25
  51:5,7,10,11,12,22
  53:3,4 56:24 108:5
**truth** 39:16
**try** 8:7 17:18 48:25
  55:16 68:6 77:18
  82:17 87:3 95:19
  100:15 108:11
**trying** 73:4 80:17
  86:13 87:20 89:16
  97:10 101:2
**tuesday** 79:2,6
  90:16 103:17
**turn** 62:16 70:22
**turnaround** 91:7
**turned** 21:20 24:21
  25:15 52:12,14 59:9
  59:12,18 61:2 75:6
**twice** 22:9
**two** 12:15 13:2,16
  21:15 32:19 46:20
  52:1 63:23 96:21
  97:2,2,20 98:1,1,10
  103:12 111:17
**type** 31:19 55:3
  71:11 77:9,10 89:7
  91:12,14 93:19

| u | | | |
| --- | --- | --- | --- |

**u**

**u.s.** 1:13,23 8:9,17
8:22 18:25 23:4,20
23:25 68:15 80:11
80:16 90:3
**uh** 10:14
**ultimately** 16:6
18:8,10 27:10 46:15
59:22 78:13 81:3
82:10,24 85:1,9
95:16
**unable** 86:19
106:22
**unclear** 27:22
**underlying** 32:20
92:4
**understand** 14:15
15:25 16:5,9 17:2
29:16 34:14 41:12
42:19 43:25 44:2
54:1,2 56:4 71:12
79:24 86:21 87:20
88:14 102:9
**understanding**
10:21 24:18 25:14
25:22 62:6 64:9
90:6 103:11 110:1
**understands** 107:17
110:22
**undertake** 8:18
**undisputed** 49:14
**unfair** 48:18 101:2
101:2,14,14
**unfettered** 60:21
**unfortunately**
10:15 36:17 41:24
**unidentified** 6:5
35:10
**uniondale** 5:5
**united** 1:1 5:17,18
8:5 9:16,17 10:8
22:17,23 101:23,23
**universe** 8:7,15
9:18,22 11:9 80:9
80:18 82:6 101:16
**unknowns** 19:12

**unmindful** 30:22
**unnecessary** 94:16
**unrealized** 22:4
**unrelated** 64:6,7
**unsecured** 19:23
**unseemly** 69:19
**unsupervised** 60:21
**untrue** 104:15
**upside** 79:18
**urge** 22:19,24 23:19
78:4 79:8 102:4
105:24 106:11
**use** 100:17
**uses** 18:5
**usually** 31:1
**utilize** 56:2 77:21
**utilizing** 45:23
63:24
**utmost** 102:4

| v | | | |
| --- | --- | --- | --- |

**v**

**valid** 74:7,11 75:15
**valuation** 86:20
**value** 21:24 48:7
49:6,9,11,14,17
**valueless** 22:5
**values** 21:19 57:17
**valuing** 70:20
**various** 23:13 33:2
62:12 72:7
**ventures** 22:4
**verified** 21:5
**verify** 81:24
**veritext** 116:21
**victim** 12:2,12
19:19 66:3 73:12
81:5
**victimized** 68:20
**victims** 8:24 9:8,11
9:12,19,23 10:18
16:23 19:6,17 20:17
20:20 68:19,20,24
73:4 80:18 84:7,7
**view** 17:4 38:21
57:3,3
**viewing** 21:8
**violated** 103:21
114:3

**virtue** 15:8
**voluntarily** 32:11
**voute** 4:8 7:16

| w | | | |
| --- | --- | --- | --- |

**w**

**wait** 53:9,10 76:21
76:23,23 77:1,3
80:9 108:12
**waited** 69:5,5
**wake** 77:2
**wand** 93:2
**want** 7:23 18:25
20:10 31:6,20 33:1
41:7,18 48:22 53:14
53:16 55:3 67:12,16
67:18,20 69:6,17
70:22 72:21 77:15
78:6 79:12,13,14,19
80:15 89:11 90:18
91:10 93:24 99:14
100:15 102:16
104:13 107:14,16
107:22 108:2
109:22
**wanted** 20:21 23:2
24:4 25:25 29:22
30:12 31:21 34:3
63:16 101:7,8
111:13,15
**wants** 52:16 66:18
66:18,22 76:15
83:11 100:21
**war** 85:12
**warren** 4:13 7:16
7:16 47:24
**washington** 4:17
10:9 41:23
**wasserman** 3:14
6:19,19 10:19,20
19:1,2 20:3,4,10
25:20 26:20,23 27:6
29:7 30:16 32:2
37:2,12,16 44:4,20
53:20 57:24 58:25
59:5,6 61:25 62:5
64:15 65:13 72:2,10
74:8 75:11 76:1,15
77:17 79:7 80:3,10

80:19,23,25 83:21
83:24 86:5 88:24
90:2 93:21 94:3
96:5,12,15,18,21,24
97:15,22 99:6
100:21 102:21,22
102:25 105:22
111:8,14
**wasserman's** 87:12
**waste** 38:17 42:2
102:16,17
**wasting** 34:12 93:18
**way** 15:17,20,21
17:7,25 27:10 33:13
39:16 46:23 50:21
54:12,25 55:24
56:15 60:9,16 69:22
77:25 97:21 101:12
102:2,2 106:14
**we've** 8:25 9:9
10:23 21:4,14 22:9
24:2 27:3,14 40:4
41:13 50:7,8,8
62:16 67:6,7 70:10
70:16 74:10 81:14
84:8,8,14 86:9,16
95:21 103:10 104:8
105:14,17 109:21
**weapons** 54:18
**wear** 71:4
**wednesday** 90:16
103:15,17,19
**week** 14:13,24
17:10 23:5 37:13,23
39:4 41:23,24 73:15
100:24 110:10
**weeks** 10:23 15:4
15:18 32:18,19 52:2
70:21,23 71:4 76:21
77:1 78:9,13,16
91:20 93:22 95:13
97:16 98:3,4,10,12
98:12,13,14,20,20
98:21
**weighs** 70:3
**went** 48:6 50:5,5
69:15 73:14

**wexler** 17:10 50:4
**whatnot** 18:5
**wheels** 76:22
**white** 4:11
**widespread** 95:11
**willing** 82:22 85:12
**window** 66:13
**wire** 32:13
**wise** 105:19
**wish** 8:12 10:17
  37:20 110:20
  113:10
**wishes** 30:6
**wishing** 24:15
**withdraw** 24:13
**witness** 27:24 28:13
  36:1
**witnesses** 30:2
**woke** 96:22
**wonder** 79:13
**wonderful** 38:8
**word** 25:19 91:25
  97:23 100:7
**words** 37:15
**work** 18:18 22:15
  35:15,19 50:21
  55:24 69:16,18
  77:18 84:16 86:6
  90:11 102:7 103:16
**worked** 17:3 22:8
  68:22
**working** 21:18
  22:11 70:19 78:20
  79:1 84:15,22 86:13
  86:16 103:18
**works** 102:2,3
  103:18
**world** 3:11 19:7
**worried** 74:20,21
**worry** 73:11 75:11
  75:16
**worth** 22:3,6 52:15
  85:14
**writing** 82:16 83:15
  90:2
**written** 31:22 76:24
  106:5

**wrong** 26:22 79:20
  96:13,16 111:9
**wrongful** 95:5

**x**

**x** 1:4,11 115:1

**y**

**yeah** 23:2 113:24
**year** 61:12 62:11
  63:22 64:4 82:12
  86:23 87:3 92:8
  93:2 96:3 99:3,7
**year's** 98:5,6,9,23
  100:10
**years** 45:21 50:2
  52:15 58:22,23 61:8
  63:14,23,24 69:4
  70:2,3,9 103:9
**yell** 79:11
**yesterday** 7:25
**york** 1:2,16 3:5,12
  3:12,20,20 4:4,4,11
  5:5,13,20 6:17
  63:25

**z**

**zelinger** 13:2,3,4,6
  13:14
**zeroed** 64:16
**zoock** 47:24