Shalom Jacob
Allen C. Wasserman
Alan H. Katz
LOCKE LORD LLP
3 World Financial Center
New York, New York  10281
Telephone:  (212) 415-8600
Facsimile:   (212) 303-2754

Counsel to Barkany Asset Recovery and Management LLC

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>GERSHON BARKANY,<br><br>              Alleged Debtor. | Case No. 8-14-72941-las<br><br>Chapter 7 |

### MEMORANDUM OF LAW IN SUPPORT OF BARKANY ASSET RECOVERY AND MANAGEMENT LLC'S MOTION TO QUASH SUBOPENA

Barkany Asset Recovery and Management LLC ("BARM") by its attorneys, Locke Lord LLP, pursuant to Rule 45 of the Federal Rules of Civil Procedure, as incorporated in Rule 9016 of the Federal Rules of Bankruptcy Procedure ("Rule 45"), and pursuant to the practice of the United States Bankruptcy Court for the Eastern District of New York respectfully moves this Court to quash the Subpoena of the Petitioning Creditors and Barkany Contingent Creditors to Barkany Asset Recovery and Management LLC for the Production of Documents Pursuant to Bankruptcy Rule 2004 (the "Subpoena") issued pursuant to the Court's November 14, 2014 Order (Doc. No. 72; the "Rule 2004 Order").

## INTRODUCTION AND BACKGROUND

In light of the extensive motion practice, briefing and oral argument in this still young case, BARM assumes familiarity with the facts and procedural background of this case and therefore will not burden the Court with their repetition.

## ARGUMENT

### I.  THE SUBPOENA IMPOSES AN UNDUE BURDEN ON BARM.

#### A.  What is BARM?

In order to appreciate the full extent of the burden that the Subpoena imposes on BARM, it is important to understand why BARM was created and what BARM does.

Soon after discovery of Barkany's fraud, victims of his Ponzi scheme retained Locke Lord LLP ("Locke Lord") as legal counsel in connection with the fraud perpetrated by Barkany and the Barkany Entities. Locke Lord, in turn, retained S. David Belsky ("Belsky") to assist in the investigation of Barkany's fraud and financial transactions. Belsky is a Certified Public Accountant and a Certified Fraud Examiner who is certified in financial forensics.

In their investigation of Barkany, Locke Lord and Belsky reviewed and analyzed thousands of transactions, involving numerous bank statements and other financial records, the contents of the hard drive of Barkany's computer, thousands of pages of bank records of law firm escrow accounts, thousands of emails and other correspondence, statements from Barkany and from other individuals, court papers and deposition transcripts in various lawsuits relating to activities of Barkany and the Barkany Entities. Additionally, they conducted extensive interviews of Barkany and individuals who had financial transactions with Barkany and/or the Barkany Entities.

In order to provide a single vehicle for the prosecution of claims by victims of Barkany's fraud and a centralized depository for any assets recovered, in December 2010 Locke Lord organized BARM to assist in the recovery, collection and administration of assets stolen by Barkany. Belsky, as representative of the victims, serves as BARM's sole member and manager. Belsky, however, has no pecuniary interest in BARM.

Commencing in 2011, victims of Barkany's fraud represented by Locke Lord, and later BARM, began filing lawsuits to recover fraudulent transfers made by Barkany and the Barkany Entities and to assert independent liability of persons who aided and abetted his fraud. Lawsuits were brought against recipients of sham charitable donations, against investors who received payments ranging in some cases into millions of dollars, against Barkany's sister and brother-in-law to whom he gave at least $525,000.00 to help them acquire and renovate a residence in Israel, and against persons to whom Barkany or the Barkany Entities made loans, among others. In some instances, out-of-court recoveries were obtained from charitable donees, investors, relatives and borrowers. BARM and its beneficial members, Barkany's victims, have devoted substantial time and expense in pursuing recovery of creditor assets.

In the course of Locke Lord's and Belsky's investigation, it was determined that Petitioners Rosenberg, Borgata and Kessler had, collectively, received in excess of $10,000,000.00 from Barkany and the Barkany Entities. Based on the investigations conducted by Locke Lord and Belsky on behalf of BARM and its beneficiaries, BARM commenced the following lawsuits against the Petitioners (the "Petitioner Lawsuits"):

(i)    *BARM, et al v. Joseph Rosenberg, et al.*, Index No. 650714/2014, New York Supreme Court, County of New York. This action was filed on March 5, 2014 against petitioning creditor Rosenberg and others.

(ii)    *BARM v. Marina District Development Co., LLC a/k/a Borgata Hotel Casino & Spa*, No. 14-cv-2602, United States District Court, Eastern District of New York.  This action was filed on April 24, 2014 against petitioning creditor MDDC.

(iii)    *BARM v. Saul Kessler, et al.*, Index No. 154149/2014, New York Supreme Court, County of New York.  This action was filed on May 7, 2014 against petitioning creditor Kessler and a legal entity which he controls.

These lawsuits, in which each of the Petitioners is named as a defendant, seek to recover millions of dollars for fraudulent transfers, aiding and abetting Barkany's massive fraud against Locke Lord's clients and other improper conduct which continued for years even after Barkany publicly admitted to committing a Ponzi scheme.

## B.    <u>The Subpoena is Overly Broad</u>

When the Subpoena is considered in light of the purpose and business of BARM, the Document Requests can be read to call for the production of every piece of paper in BARM's files.  This is the result of the combination of:  (i) the Subpoena's use of the phrase "All Documents" or "All other Documents" in every one of the fifteen Document Requests; and (ii) the Subpoena's broad definitions of the terms "relating to" and "concerning."

By way of example, Document Request No. 12 seeks the production of "All Documents which relate to the intended recipients of BARM's intended distribution to BARM Members on or before December 31, 2014."  The "intended recipients" of BARM's intended distribution would be the BARM Members, who are Locke Lord's clients and victims of Barkany's fraud. The Subpoena defines "BARM Member" to include:

Cortland Realty; Abraham Grohman; Jordan Most; Seth Farbman; Gerald Pinsky; Mordechai Hellman; Moshe Schreiber; Shalom Maidenbaum; Charles Silberberg; and Deckel LLC, and any other past or current members of BARM.  For the avoidance of doubt, the "BARM Members" includes, among other persons, all of the plaintiffs in the Queens County Action.

(Subpoena, "Definitions", ¶ 5).  Accordingly, Request No. 12 calls for the production of every document in BARM's possession, custody or control relating to or concerning any of BARM's Members who might receive a distribution.  To be clear, Request No. 12 does not limit the documents it demands to those relevant to, or concerning, the transfer itself.  Rather, it was carefully worded to capture any and all documents of any kind that relate to any BARM Member, even if the document itself does not concern the distribution.  Given that BARM has been active since 2010, it is not difficult to grasp the all-encompassing scope of this request.

Document Request No. 13 is similarly overbroad and unduly burdensome.  In addition to demanding every document in BARM's possession, custody and control concerning the BARM Members, the Subpoena also demands production of "All other Documents which relate to cash and all other Assets that BARM intends to distribute to BARM Members and any other persons, including all non-privileged Communications."  If BARM intended to distribute all of the cash and other "Assets" it had recovered since Locke Lord began working with victims of Barkany's fraud in 2010, then the Subpoena would have to be read as demanding production of every piece of paper in BARM's possession, custody or control concerning all of its efforts to recover assets for its members.  Arguably, Document Request Nos. 12 and 13 can be read to call for nearly every, if not every, piece of paper in BARM's, Locke Lord's and Belsky's files related to Barkany and his fraud.  Notably, Document Request Nos. 12 and 13 do not even exclude privileged material.

When all 15 Document Requests are read together, it is clear that Petitioners and the Contingent Creditors have done nothing to tailor the Subpoena to meet their specific needs for information from BARM.  While the delineation of 15 separate requests is intended to create the

illusion of specificity and narrowly tailored requests, the plain truth is that the Subpoena seeks

every document (whether paper or electronic) in BARM's files.  For all practical purposes, the

Subpoena could have contained a single request for "All Documents in BARM's possession,

custody or control" and it would be identical in scope to the 15 Document Requests contained in

the Subpoena.  No citation to legal authority is required for the Court to appreciate that such a

broad and overreaching request is improper.  For this reason, the Subpoena should be quashed.

## II.  THE BURDEN TO BARM OUTWEIGHS THE PETITIONERS' AND CONTINGENT CREDITORS' PURPORTED NEED FOR THE DOCUMENTS REQUESTED.

Not only must the Subpoena be quashed because it is overly broad and unduly

burdensome, it must also be quashed because Petitioners and the Contingent Creditors have not

demonstrated, and cannot demonstrate, "good cause" as to why they require the documents they

have requested in the Subpoena (the "Document Requests").  *See, e.g., In re Wilcher*, 56 B.R.

428, 434 (Bankr. N.D. Ill. 1985) ("[O]nce a motion to quash a subpoena is made, the examiner

bears the burden of proving that good cause exists for taking the requested discovery."); *see also

In re Silverman*, 36 B.R. 254, 258 (Bankr. S.D.N.Y. 1984) (holding that the party seeking

discovery has the burden of proving need for that discovery in responding to a motion to quash).

The burden of showing good cause is an affirmative one that a proponent can meet only by

showing that the materials are "necessary to establish the movant's claim… or for the protection

of its legitimate interests" or "that denial of production would cause undue hardship or injustice."

*In re Youk-See*, 450 B.R. 312, 320 (Bankr. D. Mass 2011) (internal citations omitted). That

burden cannot be satisfied merely by demonstrating that the requested information is somehow

relevant. *See, e.g., In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. 702, 712 (Bankr.

S.D.N.Y. 1991) ("That documents meet the requirement of relevance does not alone demonstrate

that there is good cause for requiring their production."). Here, Petitioners and the Contingent Creditors cannot demonstrate that the requested information is necessary to establish any claim or that the denial of the production of the requested information would lead to undue hardship or injustice.

This Court has held that "[i]n determining whether a discovery request is burdensome the court must weigh the burden to the producing party against the need of the party seeking the information." *In re American Motor Club, Inc.*, 129 B.R. 981 (Bankr. E.D.N.Y. 1991) (quoting *Cook v. United States*, 109 F.R.D. 81, 85 (E.D.N.Y. 1985)).  The need of the party seeking the information is a critical factor in determining whether discovery should be allowed or restricted. As the Sixth Circuit held in *Serrano v. Cintas Corporation*, 699 F.3d 844 (6th Cir. 2012) (allowing deposition of high level executive), quoting Wright & Miller, FEDERAL PRACTICE AND PROCEDURE, "[t]o justify restricting discovery, the harassment or oppression should be unreasonable, but discovery has limits and these limits grow more formidable as the showing of need decreases." *Id.* at 901 (citations and internal quotation marks omitted).  The Court went on to observe that "even very slight inconvenience may be unreasonable if there is no occasion for the inquiry and it cannot benefit the party making it." *Id.  See also United Air Lines, Inc. v. United States*, 26 F.R.D. 213, 219 n.9 (D. Del. 1960) ("It is well established that discovery has limits and that these limits grow more formidable as the showing of need decreases."); *In re Express One International, Inc.*, 217 B.R. 215, 217 (Bankr. E.D. Tex. 1998) ("[I]f the cost and disruption to the examinee attendant to a requested examination outweigh the benefits to the examiner, the request should be denied."); *In re Texaco, Inc.*, 79 B.R. 551 (Bankr. S.D.N.Y. 1987) (examination should not be so broad as to be more disruptive and costly to examinee than beneficial to examiner).

BARM submits that Petitioners and the Contingent Creditors have no need for the documents that they have requested. Although they claim the documents are needed so that they may move, if appropriate, to prevent themselves from being harmed by any distribution that BARM may make of the funds it now holds, as we demonstrate, Petitioners and the Contingent Creditors will suffer no harm from any distribution. Accordingly, there is simply no need for the documents they have requested. Moreover, to the extent Petitioners and the Contingent Creditors can show any need for the information they seek, that need is far outweighed by the burden their unreasonably broad requests would impose on BARM.

      **A.**      **The Petitioners' and the Contingent Creditors' purported need for <u>the documents they have requested</u>.**

The Petitioners and Contingent Creditors have previously described their purported need for documents from BARM as follows:

> The Movants bring this Motion in anticipation that at some point in the near future BARM will attempt to make distribution of the Transferred Barkany Properties. In such instance, the Movants will require the information and documents being sought in this Motion in order to have a fair opportunity to oppose BARM's attempts to disburse the monies to its members.

(Movants' Rule 2004 Motion, ¶ 26) (Doc. 57). According to Petitioners and the Contingent Creditors, their sole need for BARM's documents is to oppose any future attempt by BARM to disburse the money it is holding for its members. Presumably, Petitioners and the Contingent Creditors will argue that they will be prejudiced by a distribution that would deplete the funds available to satisfy their claims against Barkany in this Court. However, as we previously explained in this Court and further demonstrate here, Petitioners and the Contingent Creditors

will suffer no prejudice if BARM distributes funds to its members. Accordingly, they have no need for the documents they have requested.[1]

> **B.  Petitioners cannot demonstrate any**
> **legitimate need for the documents requested.**

Petitioners Rosenberg, Borgata and Kessler, however, will suffer no harm from a distribution because BARM has expressly offered "to hold[] back an amount of money that would be sufficient to cover . . . the claims of the petitioning creditors." (the "BARM Holdback") (Transcript of Nov. 13, 2014 Hearing, Doc. No. 82, at p. 82.) Rosenberg, Borgata and Kessler have filed proofs of claim totaling $1,192,092.03.[2] To cover these claims, BARM is willing to hold back $1,200,000.00 from any distribution.[3] Accordingly, there is no risk of depletion of funds available to satisfy Petitioners' claim against Barkany. Petitioners will suffer no harm of any kind from a partial distribution by BARM to its members, victims of Barkany's Ponzi scheme. Whatever need Petitioners might have had for information concerning the assets being held by BARM evaporated with BARM's agreement to withhold from distribution sufficient funds to fully satisfy all of their claims.

---

[1]  BARM assumes solely for purposes of this motion, and without waiver or otherwise conceding the point, that a chapter 7 trustee, should one be appointed, would be able to recover some or all of the funds held by BARM.

[2]  Although BARM includes the Borgata claim in calculating the amount it is willing to hold back from distribution, it is clear that the Borgata claim is likely subject to discharge. The facts underlying the Borgata's claim are remarkably similar to those in five recent decisions involving claims by casinos holding markers from a debtor. In every one of these cases the court declined to find nondischargeability of the debt evidenced by the marker. *See Marina District Development Co. v. Chong Park (In re Park)*, 492 B.R. 668 (Bankr. S.D.N.Y. 2013) (Gerber, J.); *Adamar of New Jersey, Inc. v. Innerbichler (In re Innerbichler)*, 487 B.R. 599 (B.A.P. 10th Cir. 2013); *Marina District Development Co. v. Ridge (In re Ridge)*, 2010 Bankr. LEXIS 3015, 2010 WL 3447669 (Bankr. E.D. Va. 2010) (Mitchell, J.); *Boardwalk Regency Corp. v. Ridge (In re Ridge)*, 2010 Bankr. LEXIS 3166, 2010 WL 3632818 (Bankr. E.D. Va. 2010) (Mitchell, J.); *Adamar of New Jersey, Inc. v. August (In re August)*, 448 B.R. 331 (Bankr. E.D. Pa. 2011) (Fox, J.). As the Borgata was a plaintiff in two of these actions, it knows from its own prior litigation experience that the claim it has filed in this action is worthless.

[3]  BARM's offer to hold back amounts sufficient to cover Rosenberg's, Borgata's and Kessler's claims is without prejudice to BARM's right to dispute the validity and amounts of those claims.

Nor do Petitioners require documents from BARM to meet the threshold requirements for this case to go forward in this Court, or to ultimately establish their claims. Even a cursory review of the Document Requests reveals that *none* of the documents requested are even necessary, let alone relevant, to Petitioners proving the amount of their purported losses. In any event, even if Petitioners are able to prove their losses and the Court so orders, their claims will be satisfied from the funds that BARM has agreed to hold back, should it be determined that BARM is liable to turn over such funds to the estate.

### C.     The Contingent Creditors cannot demonstrate that they have any legitimate need for the documents requested.

As for the so-called "Contingent Creditors," they have no need for the documents requested because they cannot be prejudiced by any distribution by BARM. Quite simply, their claims, should they arise at all, will be equitably subordinated to the claims of BARM and possibly the Petitioners as well.[4]

The claims of the "Contingent Creditors" will only ripen if at some point in the future: (i) if a Court finds that they received net profits from Barkany (that they were "Net Winners"),[5] the Court enters a judgment requiring them to return their profits *and* the Contingent Creditors actually return their net profits; or (ii) the Court finds the Contingent Creditors liable to victims of Barkany's Ponzi scheme by virtue of their having aided and abetted the scheme or having breached a duty to them, *and* if the Contingent Creditors actually discharge that liability *and* are

---

[4]  Unlike the Petitioners, BARM holds a judgment against Barkany.

[5]  The Rule 2004 Motion and Subpoena were served on behalf of the following alleged Net Winners: Whitefish Group, LLC, Sara Leifer, Murray Leifer, Jonathan Leifer, Edward Leifer and Alfred Schonberger.

determined to be entitled to indemnity or contribution from Barkany (the "Tort Indemnity/ Contribution Claimants"). [6]

### D. The Claims of the Contingent Creditors are subject to equitable subordination.

Even if the purported claims of the Net Winners or the Tort Indemnity/Contribution Claimants do ripen so that they are no longer contingent, these claims will be equitably subordinated under Section 510(c), which provides, in part, that "the court may … under principles of equitable subordination, subordinate for the purposes of distribution all or part of an allowed claim to all or part of another allowed claim."

"Equitable subordination is a long-standing doctrine which enables a bankruptcy court, as a court of equity, to subordinate the claim of one creditor to those of other creditors in circumstances where the creditor sued has engaged in some type of inequitable conduct which has  secured for it an unfair advantage or which has resulted in injury to other creditors of the debtor." *Stratton v. Equitable Bank, N.A.*, 104 B.R. 713, 729-30 (D. Md. 1989).  Any conduct, "even if technically lawful, which violates rules of fair play or good conscience can be deemed inequitable." *Id.* at 730.  [For example, in *In re Bowman Hardware & Elec. Co.*, 67 F.2d 792 (7th Cir. 1934), where a loan to the debtor was kept secret at the lender's request, a creditor who furnished merchandise relying on the debtor's financial statement which did not disclose the loan was held entitled to payment of its claim from the lender's share of bankrupt's estate.]  "[M]ost courts which have considered claim allowance and distributions in Ponzi scheme bankruptcy cases, have noted the significance of the unusual circumstances involved in a Ponzi scheme and

---

[6] The Rule 2004 Motion and Subpoena were served on behalf of the following Tort Indemnity/Contribution Claimants:  Zucker & Kwestel LLP and Steven Kwestel.

have specifically applied equitable principles to resolve claims distribution issues." *In re Taubman*, 160 B.R. 964 (Bankr. S.D. Ohio 1993).

### (1)    The Tort Indemnity/Contribution Claimants

The Tort Indemnity/Contribution Claimants are alleged to have breached fiduciary duties owed to Barkany's victims in connection with their dealings with Barkany and to have aided and abetted Barkany.  Their actions are alleged to have resulted in and/or contributed to the harm caused to Barkany's victims.   Any contingent claims that the Tort Indemnity/Contribution Claimants may have against Barkany would only ripen if a Court first found that they had breached a duty to Barkany's victims or had aided and abetted the fraud.  Accordingly, their contribution or indemnity claims, if any, would be equitably subordinated to the claims of Barkany's real victims.

### (2)    The "Net Winners"

Turning to the contingent claims of the Net Winners, the jurisprudence concerning priority of distribution in Ponzi scheme cases holds that they too should not have any recovery on their lost profits claims until the fraud victims have been fully compensated.  In *Donell v. Kowell*, 533 F.3d 762 (9th Cir. 2008), the Ninth Circuit held:

> The policy justification is ratable distribution of remaining assets among all the defrauded investors. The "winners" in the Ponzi scheme, even if innocent of any fraud themselves, should not be permitted to "enjoy an advantage over later investors sucked into the Ponzi scheme who were not so lucky."
>
> …
>
> [C]ourts have long held that is more equitable to attempt to distribute all recoverable assets among the defrauded investors who did not recover their initial investments rather than to allow the losses to rest where they fell.

*Id.* at 770, 776 (quoting *In re United Energy Corp.*, 944 F.2d 589, 596 (9th Cir. 1991)).

In *Scholes v. Lehmann*, 56 F.3d 750 (7th Cir. 1995) (Posner, J.), the Seventh Circuit responded as follows to a net winner's argument that equity required that he not have to return his winnings:

> What then is Phillips's moral claim to keep his profit? None, even if the intent in paying him his profit was not fraudulent. Or less than none. For he argues (seemingly without realizing the implications of the argument) that by continuing to invest in Douglas's corporations he kept them going longer. Yes, and the longer a Ponzi scheme is kept going the greater the losses to the investors. Phillips was not only lucky; he was an unwitting accomplice of Douglas.

*Id*. at 757. And in *In re* Taubman, *supra*, the court held that net losers' and net winners' claims were to be split into two groups, with the net losers paid first:

> [T]o allow any investor to recover promised returns in excess of the original amount invested would be to further the Debtor's fraudulent scheme at the expense of other investors, particularly newer investors.…
>
> Based upon the express equitable powers entrusted to the bankruptcy court, see 11 U.S.C. §§ 105, 502(b)(1), 502(j), and 510(c)(1), and, based upon the foregoing applicable case law, the court concludes that equity dictates that the proofs of claim be split into an "A" portion and a "B" portion. The "A" claim represents on a cash-in/cash-out basis the difference, if any, between what an investor actually invested, lent, or gave to the Debtor, minus the total he or she received back at any time. The "B" portion consists of all profit, interest, return of principal, punitive damages, multiple damages, or any amount in excess of actual pecuniary loss. The "B" claims shall receive distribution only after all "A" claims have been paid in full.

160 B.R. at 981-82.

Because the fraud victims are entitled to be paid in priority to the Contingent Creditors, they are entitled to any distributions planned by BARM in preference to the Contingent Creditors. As no one contends that Barkany's victims will receive full restitution of their losses, there will be no distributions to the purported Contingent Creditors. Thus, they cannot be harmed by any distribution which BARM may make.

Because the Petitioners and the Contingent Creditors cannot be harmed by BARM's distributions, they have no need for any of the documents requested by the Subpoena. Paraphrasing the holding of the Sixth Circuit quoted above, it would be unreasonable to compel production even if producing the requested documents caused BARM only very slight inconvenience, because there is no occasion for the inquiry and it cannot benefit the parties making it. *See Serrano v. Cintas Corporation*, 699 F.3d at 901. Here, though, as detailed elsewhere in this memorandum, the Petitioners and Contingent Creditors seek to impose much, much more than a slight inconvenience on BARM. BARM submits that because BARM has offered to protect them from any harm that could result from its distributions to Barkany's victims, their Subpoena should be quashed.

## III. DISCOVERY RELATING TO PENDING LITIGATIONS SHOULD BE DENIED.

Petitioners instituted this bankruptcy proceeding to stay the lawsuits that BARM had brought against them and to prevent BARM from taking discovery in those lawsuits (the "Litigations"). BARM had alleged that Petitioners had profited greatly from their relationships with Barkany, receiving millions of dollars of his stolen money. In the cases of Rosenberg and Kessler, BARM alleged, based on extensive investigation it had conducted, that they had received millions of dollars even after Barkany's Ponzi scheme had been exposed in late 2010.[7] Further, BARM alleged, Rosenberg had facilitated the Ponzi scheme.

In response, Petitioner Rosenberg and Contingent Creditor Jonathan Zelinger filed counterclaims in the lawsuits which BARM brought against them, alleging that BARM received

---

[7] BARM has subsequently discovered that Borgata, too, received millions of dollars subsequent to exposure of the Ponzi scheme.

fraudulent transfers. We expect that Petitioners Kessler and Borgata as well as other contingent creditors will file copycat counterclaims in the lawsuit BARM filed against them when they have the opportunity to do so. Because the information sought by the Subpoena is not needed by Petitioners or the Contingent Creditors at this time, it is evident that the Subpoena is an attempt to take discovery for use in connection with the Litigations filed by BARM and the counterclaims filed therein.[8] The Petitioners and Contingent Creditors should not be allowed to take discovery in this Court for use in other actions. See *In re Duratech Industries, Inc., supra* (court denied discovery desired for pending district court litigation); *In re Enron Corp., supra* (court denied discovery desired for pending securities litigation against third parties). The discovery sought by the Subpoena should at a minimum be deferred until an order for relief has been entered and a chapter 7 trustee has been appointed, after which any such discovery should be conducted by that trustee.[9]

The state and federal district courts in which BARM's actions against Petitioners and the Contingent Creditors are pending are the proper forums for conducting discovery for use in those actions. The New York Civil Practice Law and Rules ("CPLR Rules") and the Federal Rules of Civil Procedure ("Federal Rules") contain extensive discovery provisions. The CPLR Rules and the Federal Rules are the proper discovery vehicles for Rosenberg, Kessler, Borgata and the Contingent Creditors to obtain the requested discovery — not Rule 2004.

---

[8] Indeed, prior to commencement of this case contingent creditors Steven Kwestel and Zucker and Kwestel, LLP had initiated efforts to take discovery from BARM, a non-party to the action pending against them.

[9] If they believe that the estate may be suffering loss, Petitioners and Contingent Creditors have the option, if they have standing, to move the Court under Section 303(g) to appoint an interim trustee to take possession of the property of the estate.

As a matter of law, Rule 2004 discovery is not available — and cannot be used to circumvent the applicable provisions of the Federal Rules — when discovery is available through related, pending litigation. *See In re Bennett Funding Group, Inc.,* 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996); *see also In re Washington Mutual,* No. 08-12229 (MFW), 2009 WL 1851120 (Bankr. D. Del. June 24, 2009).[10]

Admittedly, Rule 2004 is the "basic discovery device" available in a bankruptcy case. *See In re Bennett Funding Group, Inc.,* 203 B.R. at 28. However, its application is not without boundaries. *Id.* Rule 2004 discovery is particularly inappropriate when, as here, discovery is sought from "parties to" or those "affected by" the related litigation. *Id* at 29. The Petitioners, the Contingent Creditors and BARM are such parties.  All are affected by the Litigations.

It is well recognized that once an adversary proceeding or contested matter has been commenced, discovery is conducted pursuant to the Federal Rules, rather than by Rule 2004.[11] *See Washington Mutual,* 2009 WL 1851120 at * 5; *In re Bennett Funding Group, Inc.,* 203 B.R. at 28. *See* also *In re Enron Corp.,* 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002); *In re 2435 Plainfield Ave., Inc.,* 223 B.R. 440, 455-56 (Bankr. D.N.J. 1998) (collecting cases); *Intercontinental Enters., Inc. v. Keller (In re Blinder, Robinson Co., Inc.),* 127 B.R. 267, 274 (D. Colo. 1991) (quoting *In re Valley Forge Plaza Assoc.,* 109 B.R. 669, 674-75 (Bankr. E.D. Pa.

---

[10] Although the cases cited hereinabove concern the interplay between Rule 2004 and the Federal Rules, analogous arguments exist with regard to the interplay between Rule 2004 and the CPLR Rules.

[11] The limitations placed on Rule 2004 discovery are imposed, in part, because a party subject to a Rule 2004 examination—which is a "free and easy practice"—does not enjoy the same rights and privileges as a party subject to discovery under the Federal Rules. *See, e.g., In re Enron Corp.*, 281 B.R. at 841 (citations omitted) (noting the restricted ability to object to relevance and the broad scope of inquiry under a Rule 2004 examination); *In re Dinublio*, 177 B.R. 932, 939-40 & n.12 (E.D. Cal. 1993) (explaining that, in certain circumstances, a Rule 2004 "witness has no right to be represented by counsel except at the [court's discretion] . . . . ; there is only a limited right to object to immaterial or improper questions; there is no general right to cross-examine witnesses; and no right to have issues defined beforehand.").

1990)). Rule 2004 discovery cannot be used in lieu of the "compulsory process procedures" of discovery available under the Federal Rules for use in related litigations. *See In re Continental Airlines, Inc.,* 125 B.R. 415, 417 (Bankr. Del. 1991); *see also In re Enron Corp.,* 281 B.R. at 844 (refusing effort to use Rule 2004 to overcome stay imposed by the Private Securities Litigation Reform Act).[12]

Indeed, courts have uniformly found that the use of Rule 2004 to seek discovery is inappropriate and an "abuse" when—as here—the Rule 2004 discovery relates to and is available in the pending non-bankruptcy proceeding. *Snyder v. Soc'y Bank,* 181 B.R. 40, 41 (S.D. Tex. 1994) (use of Rule 2004 was "abuse" where litigation was pending in state court); *In re Petition of the Bd. of Dirs. of Hopewell Int'l Ins. Ltd.,* 258 B.R. 580, 587 (Bankr. S.D.N.Y. 2001) (denying Rule 2004 request because discovery could be sought in "separate proceeding [that was] an arbitration pending in a foreign country").

Recently, Judge Walrath held that "[w]here a party requests a Rule 2004 examination and . . . litigation in another forum is pending between the parties, the relevant inquiry is whether the Rule 2004 examination will lead to discovery of evidence related to the pending proceeding or whether the requested examination seeks to discover evidence unrelated to the pending proceeding." *Washington Mutual,* 2009 WL 1851120, at * 5. Thus, the question before the Court here is whether the Subpoena's document requests will lead to the discovery of evidence related to the Litigations or whether they will lead to the discovery of evidence unrelated to the Litigations.

---

[12] The fact that the Litigations are stayed does not change the fact that discovery will be available to Petitioners and Contingent Creditors in the non-bankruptcy court at the appropriate time in and accordance with the protections of the CPLR Rules and the Federal Rules.

In *Bennett,* the court denied a Rule 2004 motion because the requested examination would "involve issues and parties within the scope of a pending adversary proceeding." *Bennett Funding Group, Inc.,* 203 B.R. at 30. The trustee alleged in an adversary proceeding that the defendants had diverted certain assets from the debtor for construction of a hotel and racetrack. *Id.* at 26. The Rule 2004 motion sought, among other things, information generally related to the same defendants' bank accounts, ownership of property, and transfers of funds from the debtor that were involved in the pending adversary litigation. *Id.* at 29. Despite the trustee's assertion that it sought examination only of matters necessary to fully ascertain the extent of the debtor's estate, the court denied the motion after noting the "likelihood" that the examination would "delv[e] into issues" covered by the adversary proceeding and held that it was likely that "information elicited will relate directly to issues and parties already named in the adversary proceeding." *Id.* at 29-30.

Here, as in *Bennett Funding*, the Subpoena's document requests are designed by persons already party to the pending Litigations to elicit information that will relate specifically and directly to issues and parties in those Litigations. Therefore, the Subpoena should be quashed.

No doubt, in their reply, the Petitioners and the Contingent Creditors will be able to point to a sliver of information here or there that they will argue does not relate directly to the Litigations.  However, the discovery should still be denied because, as found in *Bennett Funding*:

> [I]t is difficult at this point, if not impossible, to determine whether and to what extent information gleaned from a Fed. R. Bankr. P. 2004 examination of [the examinee] will not be related to the parties and subject matter covered by the [other proceeding;] in fact, it appears highly unlikely that even a carefully crafted examination of [the examinee] could not avoid delving into issues regarding the other defendants and subject matter covered in the [other proceeding], and thus examination of the issues requested

> would not be "in addition to or beyond the scope" of the [parties']
> pending adversary proceeding.

*Bennett Funding,* 203 B.R. at 29-30.

In sum, Petitioners and Contingent Creditors seek discovery that directly relates to the pending Litigations. The courts in which the Litigations are pending have discovery procedures that are or will be available to them.  Rule 2004 should not be used to circumvent those discovery procedures.

## IV.    IN THE ALTERNATIVE, THE SCOPE OF THE SUBPOENA SHOULD BE SUBSTANTIALLY NARROWED

While BARM maintains that the Subpoena should be quashed outright, in the event it survives this Motion to Quash and, in the alternative, BARM makes the following objections to the individual document requests (the "Requests") that Petitioners and the Contingent Creditors demand in the Subpoena.

### A.    General Objections to the Requests for Documents.

1.    Taken as a whole, the Requests are vague, overly broad, and unduly burdensome.  Specifically, every request calling for the production of "All Documents" related to a particular subject is inherently overly broad and objectionable.

2.    The Requests are objectionable to the extent they seek proprietary business information, trade secrets and/or other confidential information.

3.    The Requests are objectionable to the extent they seek documents not within BARM's possession, custody or control.

4.    The Requests are objectionable to the extent they purport to require BARM to search for and produce electronically stored information from sources that are not reasonably

accessible because of undue burden or cost, as set forth in Rule 7026(b)(2)(B) of the Federal

Rules of Bankruptcy Procedure.

**B.      Specific Objections to the Requests
        For Production Of Documents.**

**DOCUMENT REQUEST NO. 1**:

All Documents turned over by Barkany or by one or more of the Barkany Entities
to BARM, to or one or more of the BARM Members, or to one or more of the
BARM Professionals by Barkany or by any of the Barkany Entities concerning
the Transferred Barkany Properties, including all Communications from Barkany
to one or more of the BARM Professionals or from Barkany to one or more of the
BARM Members.

**OBJECTION TO DOCUMENT REQUEST NO. 1:**

In light of the BARM Holdback, Document Request No. 1 is not relevant to a contested

issue in this case nor is it reasonably calculated to lead to the discovery of admissible evidence.

Document Request No. 1 is overly broad and unduly burdensome.  Specifically, the demand for

"All documents" is overly broad and calls for unnecessary production.

**DOCUMENT REQUEST NO. 2:**

All Documents which relate to the identification and description of all of the
Transferred Barkany Properties, including all non-privileged Communications.

**OBJECTION TO DOCUMENT REQUEST NO. 2:**

In light of the BARM Holdback, Document Request No. 2 is not relevant to a contested

issue in this case nor is it reasonably calculated to lead to the discovery of admissible evidence.

Document Request No. 2 is overly broad and unduly burdensome, and calls for confidential

information and information protected by the attorney-client and/or work product privileges.

Specifically, the demand for "All Documents" is overly broad and calls for unnecessary

production.  Even if the Court finds that Petitioners and the Contingent Creditors are entitled to

information concerning the "Transferred Barkany Properties," they would require no more than documents sufficient to provide the identification and description of the properties.  By way of example, a single document that provides the address of a property should be more than sufficient to enable Petitioners and the Contingent Creditors to identify the property.  There is no reason for BARM to have to search its records to locate every piece of paper or electronic document that "relate" to the identification of the property.

### DOCUMENT REQUEST NO. 3:

All Documents which relate to the dates of the transfer of one or more of the Transferred Barkany Properties, including all non-privileged Communications.

### OBJECTION TO DOCUMENT REQUEST NO. 3:

In light of the BARM Holdback, Document Request No. 3 is not relevant to a contested issue in this case nor is it reasonably calculated to lead to the discovery of admissible evidence. Document Request No. 3 is overly broad and unduly burdensome, and calls for confidential information and information protected by the attorney-client and/or work product privileges. Specifically, the demand for "All Documents" is overly broad and calls for unnecessary production.  Even if this Court should find that Petitioners and the Contingent Creditors are entitled to the dates of transfers of the Transferred Barkany Properties, the production of documents sufficient to provide the dates of the transfers should be more than sufficient, and BARM should not be required to produce every piece of paper or electronic record that merely contains the same information.

### DOCUMENT REQUEST NO. 4:

All Documents concerning all agreements between Barkany and BARM or between Barkany and any BARM Member concerning one or more of the Transferred Barkany Properties, including but not limited to all documents executed by Barkany and/or BARM (or on BARM's behalf by any BARM

Professional or any BARM Member), including all non-privileged Communications.

### OBJECTION TO DOCUMENT REQUEST NO. 4:

In light of the BARM Holdback, Document Request No. 4 is not relevant to a contested issue in this case nor is it reasonably calculated to lead to the discovery of admissible evidence. Document Request No. 4 is overly broad and unduly burdensome, and calls for confidential information and information protected by the attorney-client and/or work product privileges. Specifically, the demand for "All Documents" is overly broad and calls for unnecessary production. Even if this Court should find that Petitioners and the Contingent Creditors are entitled to all agreements with Barkany, they would require no more than the agreements themselves at this time. There is no need for BARM to have to search its records to locate every piece of paper or electronic document that "relate" to the agreements.

### DOCUMENT REQUEST NO. 5:

All Documents concerning all agreements between any Barkany Entity and BARM or between any Barkany Entity and any BARM Member concerning one or more of the Transferred Barkany Properties, including but not limited to all documents executed by any Barkany Entity and/or BARM (or on BARM's behalf by any BARM Professional or any BARM Member), including all non-privileged Communications.

### OBJECTION TO DOCUMENT REQUEST NO. 5:

In light of the Barm Holdback, Document Request No. 5 is not relevant to a contested issue in this case nor is it reasonably calculated to lead to the discovery of admissible evidence. Document Request No. 5 is overly broad and unduly burdensome, and calls for confidential information and information protected by the attorney-client and/or work product privileges. Specifically, the demand for "All Documents" is overly broad and calls for unnecessary production. Even if this Court should find that Petitioners and the Contingent Creditors are

entitled to all agreements with any Barkany Entity, they would require no more than the agreements themselves at this time. There is no need for BARM to have to search its records to locate every piece of paper or electronic document that "relate" to the agreements.

**DOCUMENT REQUEST NO. 6:**

All Documents concerning any tolling agreements, settlement agreements, releases or payment schedules, entered into by BARM, any BARM Member or any BARM Professional relating to or concerning any Transferred Barkany Properties or Assets of Barkany or any Barkany Entity, including all non-privileged Communications.

**OBJECTION TO DOCUMENT REQUEST NO. 6:**

In light of the Barm Holdback, Document Request No. 6 is not relevant to a contested issue in this case nor is it reasonably calculated to lead to the discovery of admissible evidence. Document Request No. 6 is overly broad and unduly burdensome, and calls for confidential information and information protected by the attorney-client and/or work product privileges. Specifically, the demand for "All Documents" is overly broad and calls for unnecessary production. Even if this Court should find that Petitioners and the Contingent Creditors are entitled to all tolling agreements, settlement agreements, releases or payment schedules, they would require no more than these documents themselves. There is no need for BARM to have to search its records to locate every piece of paper or electronic document that "relate" to these documents.

**DOCUMENT REQUEST NO. 7:**

All Documents which relate to the valuation of any of the Transferred Barkany Properties, including all non-privileged Communications.

**OBJECTION TO DOCUMENT REQUEST NO. 7:**

In light of the Barm Holdback, Document Request No. 7 is not relevant to a contested issue in this case nor is it reasonably calculated to lead to the discovery of admissible evidence.

Document Request No. 7 is overly broad and unduly burdensome, and calls for confidential information and information protected by the attorney-client and/or work product privileges. Specifically, the demand for "All Documents" is overly broad and calls for unnecessary production. Even if this Court should find that Petitioners and the Contingent Creditors are entitled to the valuations, they would require no more than the valuation documents. There is no need for BARM to have to search its records to locate every piece of paper or electronic document that "relate" to the valuations.

### DOCUMENT REQUEST NO. 8:

All Documents which relate to all monies expended or advanced by BARM or by any BARM Member or by any BARM Professional to create, preserve and/or enhance the values of the Transferred Barkany Properties, and the sources of all such monies, including all non-privileged Communications.

### OBJECTION TO DOCUMENT REQUEST NO. 8:

In light of the Barm Holdback, Document Request No. 8 is not relevant to a contested issue in this case nor is it reasonably calculated to lead to the discovery of admissible evidence. Document Request No. 8 is overly broad and unduly burdensome, and calls for confidential information and information protected by the attorney-client and/or work product privileges. Specifically, the demand for "All Documents" is overly broad and calls for unnecessary production. Even if this Court should find that Petitioners and the Contingent Creditors are entitled to documents that establish the expenditures requested, they would require no more than documents sufficient to establish the amount of the expenditures. There is no need for BARM to have to search its records to locate every piece of paper or electronic document that "relate" to such expenditures.

### DOCUMENT REQUEST NO. 9:

All Documents which relate to the dates and amounts of all cash or other Assets generated by BARM, any BARM Professional, and/or by any BARM Member through the liquidation of one or more of the Transferred Barkany Properties, including all non-privileged Communications.

### OBJECTION TO DOCUMENT REQUEST NO. 9:

In light of the BARM Holdback, Document Request No. 9 is not relevant to a contested issue in this case nor is it reasonably calculated to lead to the discovery of admissible evidence. Document Request No. 9 is overly broad and unduly burdensome, and calls for confidential information and information protected by the attorney-client and/or work product privileges. Specifically, the demand for "All Documents" is overly broad and calls for unnecessary production. Even if this Court should find that Petitioners and the Contingent Creditors are entitled to the dates and amounts requested, they would require no more than documents sufficient to show the dates and amounts. There is no need for BARM to have to search its records to locate every piece of paper or electronic document that "relate" to the dates of the liquidations or the amounts obtained.

### DOCUMENT REQUEST NO. 10:

All Documents which relate to cash and all other Assets representing or relating to, any Transferred Barkany Properties or the liquidation of such properties that has been transferred by BARM to any BARM Member, to any BARM Professional or to any other person, including all non-privileged Communications.

### OBJECTION TO DOCUMENT REQUEST NO. 10:

In light of the BARM Holdback, Document Request No. 10 is not relevant to a contested issue in this case nor is it reasonably calculated to lead to the discovery of admissible evidence. Document Request No. 10 is overly broad and unduly burdensome, and calls for confidential information and information protected by the attorney-client and/or work product privileges.

Specifically, the demand for "All Documents" is overly broad and calls for unnecessary production. Even if this Court should find that Petitioners and the Contingent Creditors are entitled to the dates and amounts of such transfers, they would require no more than documents sufficient to show that information. There is no need for BARM to have to search its records to locate every piece of paper or electronic document that "relate" to the information.

### DOCUMENT REQUEST NO. 11:

All other Documents prepared by any BARM Professional and/or any BARM Member related to the Transferred Barkany Properties, including but not limited to all Documents filed for or on behalf of BARM or any of BARM's Members with any governmental unit or agency with respect to one or more of the Transferred Barkany Properties, including all non-privileged Communications.

### OBJECTION TO DOCUMENT REQUEST NO. 11:

In light of the BARM Holdback, Document Request No. 11 is not relevant to a contested issue in this case nor is it reasonably calculated to lead to the discovery of admissible evidence. Document Request No. 11 is overly broad and unduly burdensome, and calls for confidential information and information protected by the attorney-client and/or work product privileges. Specifically, the demand for "All Documents" is overly broad and calls for unnecessary production. Petitioners and Contingent Creditors are not entitled to all documents prepared by BARM Professionals that were never filed or otherwise used in a transaction. Even if this Court should find that Petitioners and the Contingent Creditors are entitled to those documents that were actually used or filed, they would require no more than the documents themselves. There is no need for BARM to have to search its records to locate every piece of paper or electronic document that "relate" to such documents.

### DOCUMENT REQUEST NO. 12:

All Documents which relate to the intended recipients of BARM's intended distribution to BARM Members on or before December 31, 2014.

## OBJECTION TO DOCUMENT REQUEST NO. 12:

In light of the BARM Holdback, Document Request No. 12 is not relevant to a contested issue in this case nor is it reasonably calculated to lead to the discovery of admissible evidence. As explained more fully above in Point I, Document Request No. 12 is overly broad and unduly burdensome, and calls for confidential information and information protected by the attorney-client and/or work product privileges.  Specifically, the demand for "All Documents" is overly broad and calls for unnecessary production.

## DOCUMENT REQUEST NO. 13:

All other Documents which relate to cash and all other Assets that BARM intends to distribute to BARM Members and any other persons, including all non-privileged Communications.

## OBJECTION TO DOCUMENT REQUEST NO. 13:

In light of the BARM Holdback, Document Request No. 13 is not relevant to a contested issue in this case nor is it reasonably calculated to lead to the discovery of admissible evidence. As explained more fully above in Point I, Document Request No. 13 is overly broad and unduly burdensome, and calls for confidential information and information protected by the attorney-client and/or work product privileges.  Specifically, the demand for "All Documents" is overly broad and calls for unnecessary production.

## DOCUMENT REQUEST NO. 14:

All Documents which relate to the values or the valuations of the Transferred Barkany Properties which were used by BARM and by the BARM Professionals in connection with the filing of the Partial Satisfaction of Judgment, including all non-privileged Communications.

## OBJECTION TO DOCUMENT REQUEST NO. 14:

In light of the BARM Holdback, Document Request No. 14 is not relevant to a contested issue in this case nor is it reasonably calculated to lead to the discovery of admissible evidence. Document Request No. 14 is overly broad and unduly burdensome, and calls for confidential information and information protected by the attorney-client and/or work product privileges. Specifically, the demand for "All Documents" is overly broad and calls for unnecessary production. Even if this Court should find that Petitioners and the Contingent Creditors are entitled to the valuations, they would require no more than the valuations themselves. There is no need for BARM to have to search its records to locate every piece of paper or electronic document that "relate" to the valuations.

## DOCUMENT REQUEST NO. 15:

All Documents which relate to any connection which exists between any of the Transferred Barkany Properties and any losses suffered by one or more of BARM's Members, including all non-privileged Communications.

## OBJECTION TO DOCUMENT REQUEST NO. 15:

In light of the BARM Holdback, Document Request No. 15 is not relevant to a contested issue in this case nor is it reasonably calculated to lead to the discovery of admissible evidence. Document Request No. 15 is overly broad and unduly burdensome, and calls for confidential information and information protected by the attorney-client and/or work product privileges. Specifically, the demand for "All Documents" is overly broad and calls for unnecessary production.

**<u>CONCLUSION</u>**

WHEREFORE, BARM requests this Court quash the November 17, 2014 Subpoena and for such other relief as is just and proper.

Dated:  December 2, 2014                     Respectfully Submitted,
            New York, New York

                                             *<u>/s/ Allen C. Wasserman</u>*
                                    Shalom Jacob
                                    Alan H. Katz
                                    Allen C. Wasserman
                                    LOCKE LORD LLP
                                    3 World Financial Center
                                    New York, New York 10281-2101
                                    Phone: (212) 415-8306
                                    Fax: (212) 812-8366

                                    Counsel for Barkany Asset Recovery and
                                    Management LLC

NY 778705v.1