Shalom Jacob
Allen C. Wasserman
Alan H. Katz
LOCKE LORD LLP
3 World Financial Center
New York, New York 10281
Telephone: (212) 415-8600
Facsimile: (212) 303-2754

Counsel to Barkany Asset Recovery and Management
LLC, Cortland Realty Investments LLC, Marshal
Eisenberg, Seth Farbman, Rachell Gober, Shalom
Maidenbaum, Jordan Most, Mr. San, LLC, Janet Pinsky,
Chaim Silberberg, Debra Eisenberg Wilder and The Boss's
Daughter, LLC

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>GERSHON BARKANY,<br><br>　　　　　Alleged Debtor. | Case No. 8-14-72941-las<br><br>Chapter 7 |

**OBJECTION TO EX PARTE MOTION OF JOSEPH ROSENBERG, JONATHAN ZELINGER, ETHICAL PRODUCTS, INC. AND PETEX INTERNATIONAL PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004 AND 9006 FOR TESTIMONY AND DIRECTING <u>PRODUCTION OF DOCUMENTS BY THE RESPONDENTS</u>**

Barkany Asset Recovery and Management LLC ("BARM"), Cortland Realty Investments LLC, Marshal Eisenberg, Seth Farbman, Rachell Gober, Shalom Maidenbaum, Jordan Most, Mr. San, LLC, Janet Pinsky, Chaim Silberberg, Debra Eisenberg Wilder and The Boss's Daughter, LLC (collectively, "<u>BARM Victims Group</u>"),[1] by their attorneys, Locke Lord LLP, respectfully

---

[1] Each of the members of the BARM Victims Group has filed a proof of claim, each of which attaches the judgment referred to herein and, except for BARM's proof of claim, also attaches a schedule of transfers of funds from the

submit this Objection to the *Ex Parte Motion of Joseph Rosenberg, Jonathan Zelinger, Ethical Products, Inc. and Petex International Pursuant to Federal Rule of Bankruptcy Procedure 2004 and 9006 for Testimony and Directing Production of Documents by the Respondents* [Doc. No. 149] filed on March 12, 2015 (the "Ex Parte Motion").

## OVERVIEW

The BARM Victims Group and the Canadian Northern Respondents (as defined in the Ex Parte Motion) announced on the day before the scheduled March 11, 2015 meeting of creditors that they intended to call for an election of a permanent trustee, an announcement which they could by right have delayed until the meeting had been called to order, and in return they were met by the Movants' complaint to the U.S. Trustee that they were unprepared for what they should have known for months could happen at the meeting, resulting in the U.S. Trustee's adjournment of the meeting for an astounding six (6) weeks and the instant motion seeking extensive, burdensome, unwarranted and undeserved discovery on an expedited basis, filed on an ex parte basis in the hope that the Court would rule in their favor before the BARM Victims Group and the Canadian Northern Respondents could be heard. The BARM Victims Group submit that the Ex Parte Motion should be denied and, in any event, should not be granted on an ex parte basis.

Procedurally, the Ex Parte Motion is defective as it does not comply with Local Rule 9077-1, which requires that an ex parte request for an order be based on an affidavit or affirmation showing cause for ex parte relief and stating whether a previous application for

---

claimant to Barkany and from Barkany to the claimant. The BARM Respondents, a group defined in the Ex Parte Motion, includes the BARM Victims Group as well as several additional persons listed in the March 10, 2015 email which Alan Katz sent to the U.S. Trustee and the Interim Trustee. Those additional persons have not filed proofs of claim and have not otherwise appeared in this proceeding.

similar relief has been made. The Ex Parte Motion, the facts of which are affirmed by counsel Lester Kirshenbaum under penalty of perjury, says that no prior application for the same relief has been made, but that is simply not correct, as explained herein. And although the Ex Parte Motion attempts to show cause, it does so with a selective, self-serving presentation of facts, which omits much that is important to the Court's determination of whether it should award relief on an ex parte basis, without hearing from any opponents. The BARM Victims Group regrets having to provide the Court with an extensive statement of the facts and conduct of this case, much of which the Court may already be aware, but that is necessary to remedy the Ex Parte Motion's omissions and deficiencies.

Gershon Barkany began conducting a Ponzi scheme in 2008 and through that scheme stole more than $50,000,000.00 from the BARM Victims Group. The Ponzi scheme was discovered in late 2010, and Barkany began returning assets to the BARM Victims Group. In 2011 Barkany executed an affidavit of confession of judgment which subsequently became the foundation of a judgment which was assigned to BARM. To date, BARM has recovered only a portion of the amounts stolen by Barkany from the BARM Victims Group and has made no distributions to the victims of the Ponzi scheme.

Unknown to the BARM Victims Group, beginning in late 2012 Barkany apparently engaged in another fraudulent scheme, this time stealing an alleged $7,900,000.00 from the Canadian Northern Respondents. The second scheme continued until Barkany was arrested in March 2013. He subsequently pleaded guilty to federal charges of wire fraud and is presently awaiting sentencing.

In July 2013, the Canadian Northern Respondents sued Joseph Rosenberg and Jonathan Zelinger, who are two of the four Movants, as well as Marina District Development Co., LLC

("Borgata") and others, seeking the recovery of transfers Barkany made to them of funds he obtained from the Canadian Northern Respondents. Between March 2014 through May 2014, BARM filed lawsuits against, among others, the four Movants, Borgata, Saul Kessler and others seeking, among other things, the recovery of transfers Barkany made to them.

In an attempt to wrest control of the Canadian Northern Respondents' and BARM's lawsuits away from them, in June 2014 Rosenberg, Borgata and Kessler, alleging claims totaling only $535,000.00, as to which Rosenberg and Kessler have yet to provide the Court any evidence even though they have filed proofs of claim, filed an involuntary petition against Barkany. Although Barkany initially opposed the petition, he ultimately succumbed to pressure from Rosenberg, his father-in-law, and withdrew his opposition, and on January 14, 2015 the Court entered an order for relief [Doc. No. 118].

Before the order for relief was entered, BARM had also opposed the involuntary petition and had filed a motion to dismiss the case, and Rosenberg, Zelinger, Borgata and Kessler, along with other recipients of fraudulent transfers whom BARM and the Canadian Northern Respondents had sued, responded to BARM's efforts by making unsupported allegations that recoveries which BARM had obtained from or with the assistance of Barkany, almost entirely in 2010 through 2012, were somehow estate property or were somehow subject to avoidance and therefore should not be distributed to Barkany's victims, notwithstanding the undisputed fact that in 2011 Barkany acknowledged having stolen more than $50,000,000.00 from the BARM Victims Group and in 2013 admitted to the same in connection with the tendering of his guilty plea.

In an effort to put that issue on the side while the parties litigated the propriety of the bankruptcy proceeding, BARM offered, in open Court, to withhold distribution of some

$2,000,000.00 of what it had recovered for the benefit of Rosenberg, Borgata and Kessler, the only persons other than the Canadian Northern Respondents who were asserting non-contingent claims against Barkany. Notwithstanding that BARM was offering, in essence, to escrow four times the amount of their claims, and the Court's suggestion that they give BARM's offer consideration, Rosenberg, Borgata and Kessler did not respond to BARM's proposal. Apparently, they are not interested in recovering what they allege is owed to them.

Rather, Rosenberg, Zelinger, Borgata and Kessler, along with other fraudulent transfer recipients, then began to harass BARM with discovery, discovery which Mr. Kirshenbaum's affirmation fails to mention. On October 8, 2014, they moved (Doc. No. 57) for the issuance of a subpoena covering the same materials now being requested.[2] BARM's objection was overruled by an order entered on November 14, 2014 (Doc. No. 72), and a subpoena was served on BARM on November 17, 2014 (Doc. No. 73). On December 2, 2014, BARM moved to quash the subpoena (Doc. No. 88). That motion remains pending, and Rosenberg, Zelinger, Borgata, Kessler et al have not taken steps to obtain a ruling from the Court. Mr. Kirshenbaum's affirmation further fails to mention that BARM offered thousands of pages of documents to him, most of which he declined, or that BARM provided him with copies of Barkany's computer hard drives, a spreadsheet detailing recoveries obtained by BARM and documents evidencing many of the assignments to BARM which Barkany and his entities had made in 2010 and 2011.

Now, claiming that they were unaware that the BARM Victims Group and the Canadian Northern Respondents (who together hold the vast majority of non-contingent claims against

---

[2] Although the number of categories in the instant motion is less than the number in the previous motion, the extremely broad scope of what is requested has not changed.

Barkany[3]) would exercise their right to elect a permanent trustee, the Movants have begun their harassment again, except this time the Canadian Northern Respondents are also being harassed.

The U.S. Trustee appointed Marc A. Pergament as Interim Trustee (Doc. No. 120) and called a meeting of creditors to be held on March 11, 2015 (Doc. No. 127). On the day before the scheduled meeting, the BARM Victims Group and the Canadian Northern Respondents reached a decision that they would call for an election of a permanent trustee, and counsel for the BARM Victims Group immediately placed telephone calls to the U.S. Trustee and the Interim Trustee informing them of the decision. Although there is no requirement that advance notice be provided by a creditor who intends to call for an election, the BARM Victims Group called the U.S. Trustee because although the U.S. Trustee is required to conduct elections and file reports thereof, the U.S. Trustee generally is not present at meetings of creditors.

The U.S. Trustee's response was decidedly adverse. She was displeased, described counsel as "discourteous" and said that an election could not be held because of the disputes in the case.

The BARM Victims Group's counsel, after collaborating with the Canadian Northern Respondents' counsel, then sent the U.S. Trustee and the Interim Trustee the email which Movants have attached to their papers, confirming the telephone conversations, listing the creditors who were expected to call for the election and the amounts of their claims and identifying whom they would seek to elect. Later that afternoon, the BARM Victims Group were copied on a letter from Mr. Kirshenbaum to the U.S. Trustee (annexed hereto as Exhibit "1") referring to counsel's email, contesting the BARM Victims Group's right to vote, generally

---

[3] Indeed, the Schedule F prepared and filed by Mr. Kirshenbaum lists only $3,000,000.00 of undisputed, liquidated, non-contingent claims, more than one-half of which the Schedule F says is owed to members of the BARM Victims Group. The Canadian Northern Respondents alone have filed verified proofs of claim totaling $7,900,000.00.

expressing surprise, and requesting an adjournment "for a minimum of 45 days" of the already overdue meeting.[4] Mr. Kirshenbaum's letter indicated that he had a copy of counsel's email to the U.S. Trustee and the Interim Trustee, but it did not explain who provided it to him or how he knew that an election would be called.

In his letter, Mr. Kirshenbaum, an experienced bankruptcy practitioner who certainly knew before this case was commenced that a creditor could and might call for an election of a permanent trustee at a meeting of creditors, identified his clients, disparaged the judgment-supported claims of the BARM Victims Group without providing any basis for his assertions and requested an adjournment of the meeting of creditors "for a minimum of 45 days." The BARM Victims Group responded by letter (see annexed Exhibit "2"), noting that Movants' counsel (i) failed to point out that none of his clients are eligible to vote, (ii) failed to point out that the "Debtor's Schedules" to which counsel refers were signed and filed by Mr. Kirshenbaum, and not by the "Debtor," (iii) failed to acknowledge that his schedules are unverified and that he expressly disclaims any opinion as to their accuracy or completeness and (iv) failed, as he has already done on numerous occasions in this proceeding, to provide any basis for his assertion that the BARM Victims Group received avoidable transfers. Furthermore, the BARM Victims Group's letter pointed out that delaying the election would do nothing to resolve any dispute concerning it.

Later that evening, when counsel received a letter from Kessler's counsel to the U.S. Trustee (annexed as Exhibit "3"), it became apparent that the U.S. Trustee had notified Kessler's

---

[4] Under Federal Rule of Bankruptcy Procedure 2003(a), the meeting was required to be held no later than February 23, 2015, but for reasons unknown to the BARM Victims Group the U.S. Trustee did not comply with this requirement.

PAGE 7

counsel, and perhaps others, that the BARM Victims Group and the Canadian Northern Respondents intended to call for an election.[5]

And notwithstanding that notice of the March 11, 2015 meeting of creditors had been provided to interested parties, that all interested parties knew or should have known that an election could be called at that meeting, and that at the meeting the U.S. Trustee, who was present, could have taken votes, registered objections and provided an opportunity to those in attendance to submit documents in support of their positions, and could thereafter have filed a report with the Court, the U.S. Trustee commenced the meeting and immediately adjourned it for six (6) weeks, until April 22, 2015, so that she could "investigate."[6] In doing so, she essentially granted Mr. Kirshenbaum's request without regard to his numerous misstatements.

The very next morning, sensing an apparent need to resume his harassment of Barkany's victims and cause further delay to the prosecution of the actions pending against them, Movants filed the Ex Parte Motion, seeking tens of thousands of pages of documents on an expedited basis from the BARM Victims Group and the Canadian Northern Respondents. Never before have the Movants raised, and in fact even now they have not raised, any issue regarding the Canadian Northern Respondents' $7,900,000.00 claim.

---

[5] According to the Ex Parte Motion, counsel for Borgata also wrote to the U.S. Trustee. Undersigned counsel has not been provided a copy of that letter.

[6] The U.S. Trustee explained that April 22, forty-two (42) days after March 11, was the first day she would be available, a position which is hard to reconcile with Rule 2003(a)'s requirement that meetings of creditors be commenced within forty (40) days of entry of orders for relief and with the courts' policy that elections be conducted expeditiously.

# ARGUMENT

## I. MOVANTS CANNOT VOTE, HAVE NO STANDING AND HAVE NO NEED FOR THE TESTIMONY AND DOCUMENTS THEY SEEK.

Movants fail to address whether they have standing. To have standing, one must have an interest in the matter under consideration. None of the Movants, though, are eligible to vote in the pending election. Yet they cite no authority indicating that someone who cannot vote has standing to challenge an election.

Movants' letter to the U.S. Trustee failed to disclose that Joseph Rosenberg is debtor Gershon Barkany's father-in-law and, thus, an insider who may not vote. 11 U.S.C. §§ 101(31)(A)(i), 101(45), and 702(a)(3). Additionally, Movants did not disclose that Rosenberg holds a disputed claim and therefore cannot vote. In addition to the lawsuit which BARM filed against Rosenberg, Zelinger and their related entities, BARM has filed a detailed objection (Doc. 106) to Rosenberg's proof of claim, which is grounded on specific and serious allegations, much more than mere suspicion. *See In re New York Produce American & Korean Auction Corp.*, 106 B.R. 42 (Bankr. S.D.N.Y. 1989). Because there is an objective basis for a dispute as to the validity of Rosenberg's claim, it is considered to be disputed for purposes of determining his eligibility to vote. 11 U.S.C. § 702(a)(1); *In re Williams*, 277 B.R. 114 (Bankr. C.D. Cal. 2002).

Movants have also not disclosed that Jonathan Zelinger is Barkany's uncle (actually, the uncle of Barkany's wife). Thus, like his brother-in-law, Rosenberg, he is an insider and is disqualified from voting. 11 U.S.C. §§ 101(31)(A)(i), 101(45), and 702(a)(3). Also, he admits that his claim is contingent. Earlier in this case, Movants' counsel filed an Opposition on Zelinger's behalf, stating that Zelinger "has a contingent claim to the Barkany estate for the full amount of the claims asserted against him" in the actions filed against him by BARM and the

Canadian Northern Respondents. (Doc. No. 36, ¶ 13.) More recently, Movants' counsel filed a Schedule F which also acknowledged that Zelinger's claim is contingent and disputed. Contingent, disputed claims do not meet the "fixed" and "undisputed" eligibility requirements of 11 U.S.C. § 702(a)(1). *See In re All Media Properties, Inc.*, 5 B.R. 126 (Bankr. S.D. Tex. 1980), *aff'd*, 646 F.2d 193 (5th Cir. 1981).

The remaining Movants, Ethical Products, Inc. and Petex International, are legal entities operated by Zelinger and/or Rosenberg, and their only claims are contingent, disputed claims for indemnity against Barkany should BARM or the estate recover judgment against them in the fraudulent transfer lawsuit which has been filed against them.

None of Movants is eligible to vote. They have no interest to protect with regard to the election of a trustee and thus have no standing to take action in connection with that election. They have no right to appoint themselves as the guardians of the election process or of the case in general. They have no need for and no right to obtain the testimony and documents they seek.

II. **THE MEETING OF CREDITORS WAS ADJOURNED SO THAT THE U.S. TRUSTEE COULD INVESTIGATE, NOT SO THAT <u>MOVANTS COULD CONDUCT DISCOVERY</u>.**

The U.S. Trustee should not have adjourned the meeting of creditors, certainly not for six (6) weeks. Any needed investigation would at most require reviewing filed schedules and proofs of claim, all readily available to her. A review sufficient to allow the proper conduct of the election could have been accomplished prior to the meeting or during an hour or two adjournment.[7]

---

[7] That the U.S. Trustee adjourned the meeting for so many weeks and for the amount of time requested by Movants indicates that the purpose of the adjournment was not to investigate but to afford a second chance to creditors who had come to the meeting unprepared to conduct the business of the meeting.

In any event, though, the U.S. Trustee's expressly stated purpose for the adjournment was for her to "investigate." (The BARM Victims Group and the Canadian Northern Respondents do not acknowledge that the U.S. Trustee has authority to conduct an investigation at this stage of the proceeding.) She did not adjourn the meeting so that others could conduct discovery, and none should be allowed. The fact that the U.S. Trustee believed that she needed to conduct an investigation should not be allowed to open a door for the parties to take discovery which they would not have had the opportunity to take had the U.S. Trustee not adjourned the meeting. Parties represented by experienced counsel should not be given additional opportunities simply because the U.S. Trustee determined that she needed additional time to prepare.[8]

### III. THE INVESTIGATION SOUGHT BY MOVANTS IS PREMATURE AND UNWARRANTED AND IMPROPERLY INVOLVES THE COURT IN THE CONDUCT OF THE ELECTION.

Under the Bankruptcy Code and the Bankruptcy Rules, the U.S. Trustee conducts an election expeditiously and thereafter promptly files a report with the court. Thereafter, unless someone files a timely motion asking the court to resolve a dispute concerning the election, the interim trustee becomes the permanent trustee. Until a timely motion has been filed, the court has no active role to play. This is appropriate, for at any time prior to the filing of a motion a dispute might resolve without court intervention, and it saves the court from delaying the case and making what may turn out to be advisory decisions.

By the Ex Parte Motion and their expressed determination to delay the election, Movants ask the Court to involve itself prematurely and to turn the election process into a drawn out process to be regulated and directed at every step by the Court. In doing so, they show yet again

---

[8] Additionally, that a creditor is not required to give advance notice of its intention to call for an election indicates that there is to be no pre-election investigation concerning the eligibility of creditors to vote.

that they have no interest in the administration of the estate but desire only to delay the litigation pending against them.

The BARM Victims Group submits that the U.S. Trustee should conduct the election expeditiously and file a report with the Court. Only thereafter, should the parties join issue on a motion to resolve a dispute, should the Court determine discovery or examination is warranted. Allowing discovery now, before the U.S. Trustee has even filed a report, is at the least premature. When the Court has a report and the benefit of the parties' opening papers, it will be in a much better position to determine whether any discovery will be necessary.

### IV. THE REQUESTED DISCOVERY IS DUPLICATIVE OF PENDING DISCOVERY.

On October 8, 2014, Movants Rosenberg and Zelinger and others jointly moved (Doc. No. 57) for the issuance of a subpoena covering the materials now being requested.[9] BARM's objection was overruled by an order entered on November 14, 2014 (Doc. No. 72), and a subpoena was served on BARM on November 17, 2014 (Doc. No. 73). On December 2, 2014, BARM moved to quash the subpoena (Doc. No. 88). That motion remains pending, and Movants have taken no action to obtain a resolution for several months. There simply is no need for another motion seeking the same discovery sought by the pending subpoena.

Moreover, notwithstanding the pending motion to quash and without requiring any concessions in return, BARM offered to produce thousands of pages of documents as well as the Barkany hard drive copies in BARM's possession. Most of what was offered was declined, but BARM has produced the hard drive copies and a spreadsheet listing - with descriptions, dates

---

[9] Although the number of categories in the instant motion is less than the number in the previous motion, the extremely broad scope of what is requested has not changed.

and dollar amounts - the recoveries it had made. BARM also produced documents evidencing many of the assignments to BARM which Barkany and his entities had made. Thus, Movants have information concerning transfers made to BARM by Barkany, and the other members of the Barkany Victims Group have filed proofs of claim, under penalty of perjury, listing the financial transactions they had with Barkany.[10] Again, there simply is no need for the Ex Parte Motion and the further proceedings that it will entail.

V.  **MOVANTS HAVE HAD AMPLE TIME FOR DISCOVERY. THERE IS NO REASON FOR EXPEDITED RELIEF.**

This case has been pending for almost nine months. The order for relief was entered almost two months ago, and the meeting of creditors had been scheduled for more than one month. Movants knew for more than two months that a meeting of creditors would be held, and surely their experienced counsel knew an election might be held at the meeting and that no advance notice was required. Yet, they did nothing to prepare. Now they act surprised. They persuaded the U.S. Trustee to delay the election, and now seek expedited relief to take unwarranted discovery, including a shortening of the time within which recipients of subpoenas may file objections, motions for protective orders or motions to quash and the advance setting of a hearing nineteen (19) days from today for any objections, motions for protective orders or motions to quash that may be filed concerning the yet to be served subpoenas.

Throughout this case, Movants have repeatedly come to the Court late, claiming an immediate need for information which they could have requested long before. Movants are not entitled to the discovery they now seek, but even if they were so entitled they knew or should have known of their purported need months ago. Their inattention should not be rewarded. And

---

[10] Moreover, BARM has filed a proof of claim showing a credit for its recoveries.

on the other hand, the BARM Victims Group and the Canadian Northern Respondents have acted entirely within the bounds of the law and have conducted themselves within the standard time constraints imposed by the Bankruptcy Code and Rules, the Local Rules and the Court's orders. They exercised their rights to call for an election in a timely fashion and should not be made the subject of expedited relief simply because Movants sat on rights they believe (incorrectly) that they have and now claim to find themselves unprepared.

VI. **RESERVATION OF RIGHTS.**

Inasmuch as the Court's standard practice is to reserve to a party served with a Rule 2004 subpoena the right to challenge it after it has been served, the BARM Victims Group's purpose in filing this Objection is to present an overview of the procedural impropriety of the Ex Parte Motion, and this Objection is necessarily limited because of the need to respond quickly because ex parte relief is being requested. Therefore, the BARM Victims Group reserves the right to address any and all issues if and when the Court has authorized and the BARM Victims Group has been served with any subpoenas. Moreover, the BARM Victims Group reserves all rights concerning the election itself.

## **CONCLUSION**

WHEREFORE, the BARM Victims Group requests this Court deny the Ex Parte Motion and grant such other relief as is just and proper.

Dated: March 13, 2015
      New York, New York

Respectfully Submitted,

    */s/ Allen C. Wasserman*
Shalom Jacob
Alan H. Katz
Allen C. Wasserman
LOCKE LORD LLP
3 World Financial Center
New York, New York 10281-2101
Phone: (212) 415-8306
Fax: (212) 812-8366

Counsel to Barkany Asset Recovery and Management LLC, Cortland Realty Investments LLC, Marshal Eisenberg, Seth Farbman, Rachell Gober, Shalom Maidenbaum, Jordan Most, Mr. San, LLC, Janet Pinsky, Chaim Silberberg, Debra Eisenberg Wilder and The Boss's Daughter, LLC